Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 4507 | **DATE** | 7/24/2009 |
| **CASE TITLE** | Silverman vs. Motorola | | |

**DOCKET ENTRY TEXT**

Plaintiffs' motion to compel Defendants to produce documents [106] is granted in limited part.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

Lead Plaintiff Macomb County Employees' Retirement System ("MCERS" or "Plaintiffs") has moved to compel Defendants' responses to its Requests for Production Nos. 42 and 45. Request No. 42 seeks documents relating to Defendant Motorola, Inc.'s consideration of a potential sale of its mobile devices business. Request No. 45 seeks documents relating to Motorola shareholder Carl Icahn. For the following reasons, the Court grants Plaintiffs' motion in limited part.

Continued....

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## BACKGROUND

Plaintiffs bring this putative class action individually and on behalf of persons who purchased stock of Defendant Motorola between July 19, 2006 and January 5, 2007 (the "Class Period") alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder. 17 C.F.R. § 240.10b-5. Plaintiffs allege that leading up to the fourth quarter of 2006, certain Motorola executives and officers (the "Individual Defendants") intentionally made false and misleading communications that artificially inflated Motorola's stock price. Members of the putative class allegedly suffered harm when corrective information later became public and Motorola's share price fell.

Judge Moran addressed the extensive factual background of this case in his September 23, 2008 Order on Defendants' motion to dismiss. (R. 60-1; *See Silverman v. Motorola, Inc.*, No. 07-C-4507, 2008 WL 4360648, at *1 (N.D. Ill. Sept. 23, 2008).) Judge Moran's opinion held that a number of statements alleged by Plaintiffs to be false were not actionable. The statements Judge Moran excluded were: (1) statements regarding the price drop on Motorola's RAZR mobile phone products, (R. 60-1 at 15); (2) statements amounting to puffery, such as statements regarding Motorola's "proven record of growth," "upbeat" and "confident" outlook, or its "competitive" and "compelling" mobile products, (*id.* at 16); and (3) forward-looking statements subject to the safe harbor of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.* (*Id.* at 18–21.) Judge Moran also held that Plaintiffs could proceed as to certain statements—including statements regarding the status of product development and operations relating to Motorola's then-planned third-generation ("3G") mobile products. In particular, Judge Moran declined to dismiss at the Rule 12(b)(6) stage certain statements referencing that Motorola's 3G products were "on track," "quite on track," or "keyed up," as well as statements that Motorola was then "on" the Freescale platform and was at the time "on" or "had been moving resources over to the Linux Java platform." (R. 60-1 at 17.) In addition, Judge Moran found that omissions relating to the problems that plagued Motorola's 3G product rollout in 2006 may have been misleading to the extent that disclosure of the information would have been necessary to ensure the truthfulness of certain statements, such as the statement that Motorola's 3G products were not, at the time, "supply-constrained." (*Id.* at 17–18.)

Following reassignment of this case to the present Court's docket on April 17, 2009, Plaintiffs filed their current motion to compel on June 23, 2009. (R. 106-1, Pls.' Mot.) Plaintiffs' Request No. 42 seeks "[a]ll documents concerning the potential sale of [Defendant Motorola, Inc.'s] Mobile Devices business segment, including, but not limited to, documents and communications regarding the valuation of any business segment of" Motorola. (R. 107-12, Ex. K to Pl.'s Br. at 4.) Plaintiffs' Request No. 45 seeks "[a]ll documents concerning Carl Icahn or any entity or person Carl Icahn controls." (*Id.*)

## LEGAL STANDARD

The scope of federal discovery is broad but not infinite. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). At the same time, the Seventh Circuit has warned that "discovery is not to be used as a fishing expedition." *EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 971 (7th Cir. 1996); *see also Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, Case No. 05 C 5488, 2007 WL 2746654, at *5 (N.D. Ill. Sept. 18, 2007) (denying motion to compel and sanctioning movant pursuant to Rule 37).

Mindful of the need to balance the competing interests of the parties, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)). "Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the

parties." *Id.* As with all discovery matters, district courts have broad discretion in determining motions to compel. *Id.; see also Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007); *Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D. Ill. 2006) (Districts courts have "vast discretion in supervising discovery") (collecting cases).

## APPLICATION

Before proceeding further, the Court notes that both of Plaintiffs' requests are facially over broad. Request No. 42, for example, seeks "[a]ll documents concerning the potential sale of [Defendant Motorola, Inc.'s] Mobile Devices business segment, including, but not limited to, documents and communications regarding the valuation of any business segment of" Motorola. The time period defined for this request, June 1, 2005 to the present, (R. 107-12, Pl.'s Ex. K at 4), holds no apparent relation to Class Period. In addition, Request No. 42 could be construed as seeking documents valuing an unrelated Motorola business segment. Request No. 45 seeks "[a]ll documents concerning Carl Icahn or any entity or person Carl Icahn controls," which more than likely includes confidential information relating to Mr. Icahn's status as a holder of millions of Motorola shares, yet having no relation whatsoever to the Mobile Devices business, Motorola's 3G products, or this case. Mr. Icahn is not a party to this case. Consequently, the Court will not compel responses to Plaintiffs' Requests as originally drafted.

## I.      Request No. 42

Plaintiffs first argue that documents relating to the potential sale or spin-off of Motorola's Mobile Devices business are relevant to the element of scienter because "[d]ocuments related to defendants' valuation and potential spin-off of the Division, and in particular *when* defendants considered this action, are likely to indicate the extent to which Motorola's 3G business impacted the Division as a whole." (*Id.* at 11 (emphasis in original).) In addition, Plaintiffs allege that such documents suggest a lack of good faith on the part of individual defendants and support the element of scienter by revealing that "Individual Defendants were discussing the potential break-up value of the Company while simultaneously reassuring the market" that new 3G products were on the way. (*Id.*) Defendants respond that Judge Moran's previous September 23, 2008 Opinion limited the case to "statements made by Motorola about the development of two phones as of July 2006 and October 2006" (R. 111-1, Defs.' Resp. at 3), and that statements made in January 2007 and January 2008 regarding a potential spin-off are thus irrelevant to Plaintiffs' claims or Defendants' defenses.

Defendants' view of the case following Judge Moran's September 23, 2008 Opinion is too narrow. Although Judge Moran certainly excluded a number of the statements that Plaintiffs had previously alleged in their Consolidated Amended Complaint, Judge Moran did not explicitly limit Plaintiffs' claims to specific statements made "on three specific dates in the summer and fall of 2006." (R. 111-1 at 3.) Outside of the three dates referenced by Defendants, Motorola's consideration of whether to spin-off its Mobile Devices business may be relevant to what the Individual Defendants knew, when they knew it, and whether they made certain statements in good faith.

To the extent that Motorola considered whether to spin-off its Mobile Devices segment at some point well outside of the Class Period, however, this consideration is not relevant to what the Individual Defendants knew of the development or operational problems of Motorola's 3G product line during the Class Period. Plaintiffs have not explained how communications made long before or long after the Class Period have any potential relevance to this case.

With these considerations in mind, as well as the broad scope of discovery, the Court orders Defendants to produce documents and communications made during the Class Period or sixth months prior to or following the Class Period (from January 17, 2006 to June 5, 2007) concerning the potential sale or spin-off of Motorola's Mobile Devices business segment or Motorola's valuation of the Mobile Devices business segment.

## II.     Request No. 45

Plaintiffs also argue that documents concerning Motorola investor Carl Icahn are relevant because Mr. Icahn engaged in two proxy attempts, one in 2007 and one in 2008, aimed at gaining a position on Motorola's Board of Directors.  Icahn based each attempt on accusations of mismanagement that allegedly "stem[med] from the same facts alleged by plaintiffs."  (R. 107-1, Pls.' Br. at 9.)  Paragraph 104 of Plaintiffs' Consolidated Amended Complaint references an April 18, 2007 letter from Mr. Icahn to Motorola shareholders in which Mr. Icahn states:

> **Last October, fueled in large measure by management's statements which painted a rosy picture of Motorola's prospects, its stock price peaked at $26.20.  Since that time, following the disclosures of serious problems in the Mobile Devices business, more than $20 billion in shareholder value has evaporated.  This represents a loss to you of more than $8.00 per share —almost one third of the value of your investment. Ask yourself—How could this happen without the knowledge of Motorola's management and Board of Directors?**  I believe the answer lies in the lack of oversight and engagement that has plagued many of our public company boards.

> With your support, I will serve as an active, engaged director of Motorola, unafraid to demand management accountability and to ask the tough questions that appear to me to have gone unasked. Motorola's businesses operate in an extremely competitive environment—our Company can ill-afford further missteps.

(R. Consol. Am. Compl. ¶ 104 (emphasis in original).)  Mr. Icahn's April 17, 2007 letter also referenced a number of statements made earlier that day by then-Motorola CEO Ed Zander, including that "the lack of focus on the realities of 3G, while they were known were not executed."  (*Id.*)  Plaintiffs have pointed to this letter as evidence of post-Class Period admissions regarding Motorola's actions during and before the Class Period.  (R. 107-1 at 9.)  Defendants have responded that both requests are over broad, burdensome, and not calculated to seek information relevant to Plaintiffs' claims that remain after Judge Moran's September 23, 2008 Order.

Statements made by Individual Defendants outside of the Class Period could shed light on what Defendants knew when they made certain statements within the Class Period, and thus may be relevant to both materiality and scienter.  The statements referenced by Mr. Icahn's April 17, 2007 letter, however, are public statements made by one of the Individual Defendants during an earnings conference call on the same day.  Mr. Icahn's letter presents no unique source of potential admissions, and there is no reason to believe that internal Motorola documents referencing Mr. Icahn are likely to include similar statements.  In addition, given the Class Period at issue in this case, any value to be gained from documents relating to the 2007 proxy attempt is even less likely to be found in documents referencing the 2008 proxy attempt.

Plaintiffs' contention that Mr. Icahn's accusations of mismanagement "stem from the same facts alleged by plaintiffs" is similarly unpersuasive.  Plaintiffs' selective emphasis of Mr. Icahn's letter de-emphasizes the fact that Mr. Icahn disputed "the lack of oversight and engagement" that allegedly "plagued" the Motorola board. Nowhere does Mr. Icahn accuse Motorola executives of making misrepresentations during the Class Period.  To the contrary, Mr Icahn alleges the opposite—that Motorola executives were out of touch with the day-to-day workings of the company and thus insufficiently aware of the problems plaguing the 3G product line.[1]

---

[1]      In additon, the parties have had ample time to subpoena Mr. Icahn and any relevant information that he possesses, if any.

Regardless, Defendants emphasized multiple times that they will produce documents relevant to Plaintiffs' claims or Defendants' defenses, or reasonably calculated to lead to the discovery of admissible information, even if the documents reference Mr. Icahn and/or his two proxy attempts. (R. 111-1 at 2, 4, 8–9, 14.) This obligation is not limited solely to documents that reference the alleged misstatements at issue but includes documents otherwise responsive to Plaintiffs' other requests as well as documents that tend to show what Motorola executives knew when. As Defendants are well aware of their obligations, the Court finds no benefit in extending the scope of discovery to Mr. Icahn's 2007 and 2008 proxy attempts and thus denies this aspect of Plaintiffs' motion without prejudice.

## CONCLUSION

The Court grants Plaintiffs' motion in limited part and orders Defendants to produce documents and communications made between January 17, 2006 and June 5, 2007 concerning the potential sale or spin-off of Motorola's Mobile Devices business segment or valuation of the Mobile Devices business segment.