UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ERIC SILVERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 1:07-cv-04507 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge St. Eve Magistrate Judge Mason |
| MOTOROLA, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFFS' APPLICATION FOR ISSUANCE OF LETTERS OF REQUEST UNDER THE HAGUE CONVENTION REGARDING JENS SCHULTE-BOCKUM AND FRANK MEEHAN

509900_1

I.      **INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 4(f)(2)(B) and 28(b), and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Convention"), Plaintiffs Macomb County Employees' Retirement System and St. Clair Shores Police and Fire Pension System (collectively, "Plaintiffs") respectfully request the Court issue two Letters of Request to the appropriate authority of The Kingdom of the Netherlands, for the purpose of obtaining deposition testimony from non-party Jens Schulte-Bockum of Vodafone Group, Plc ("Vodafone"), and The United Kingdom, for the purpose of obtaining deposition testimony from non-party Frank Meehan of Hutchison Whampoa Limited ("H3G"). *See also* 28 U.S.C. §1781. Because Messrs. Schulte-Bockum and Meehan are foreign citizens residing in The Netherlands and England, respectively, they cannot be compelled to testify at trial in the United States. Therefore, the issuance of the Letters of Request under the procedures of the Hague Convention are the only feasible means for Plaintiffs to obtain this evidence for trial. The Letters must be issued by a court in the country of origin (here, the United States District Court for the Northern District of Illinois, Eastern Division). The Letters of Request comply with the procedures of the Hague Convention and are attached hereto as Exs. 1 and 2.[1] *See* Hague Convention, Ch. 1, Art. 1 (*see* 23 U.S.T. 2555).

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **Relevant Factual Background**

This certified class action concerns defendants' violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the Securities and

---

[1]     Exhibit 1 contains a Dutch translation of the Letter of Request, and an accompanying Certificate of Translation, as required by The Netherlands.

Exchange Commission ("SEC"), during the period from July 19, 2006 through January 5, 2007 (the "Class Period"), when defendants Motorola, Inc. ("Motorola" or the "Company") and certain executive officers (the "Individual Defendants")[2] repeatedly made public misstatements and material omissions concerning the Company's 3G mobile handset portfolio and its effect on the Company's financial performance during the Class Period.

Plaintiffs allege, among other things, that defendants concealed knowledge that Freescale Semiconductor, Inc. ("Freescale"), the sole manufacturer of the Argon chips to be used in Motorola's new 3G handsets, was experiencing significant development issues that had materially delayed and would continue to materially delay Motorola's 3G product launches. *See, e.g.*, ¶¶6-7, 17, 91.[3] As a result, Motorola was forced to fill its 3G product hole with 2G phones. ¶¶7-8, 17U, 31, 75, 89, 186. Rather than disclose its woeful 3G platform status and the likelihood that Argon-based 3G handsets would not timely launch in Europe, Motorola continued to assert, *inter alia*, that its products would ship in "October and early to mid-November [to] hit that all-important fill . . . channel for the holiday season." ¶111. Meanwhile, Motorola executives jumped ship, selling millions of dollars of Motorola stock without disclosing these matters to investors. ¶¶144-146.

Defendants' misrepresentations and omissions caused investors to suffer hundreds of

---

[2]  The Individual Defendants are: (i) Edward J. Zander, Chief Executive Officer and Chairman of Motorola's Board of Directors (the "Board"); (ii) David W. Devonshire, Executive Vice President and Chief Financial Officer; (iii) Ronald G. Garriques, Executive Vice President and President of Motorola's Mobile Devices division; (iv) Gregory Q. Brown, President, Chief Operating Officer and Executive Vice President of Motorola's Networks and Enterprise division; (v) Daniel M. Moloney, Executive Vice President and President of Motorola's Connected Home Solutions division; (vi) Richard N. Nottenburg, Executive Vice President and Chief Strategy Officer; and (vii) Padmasree Warrior, Executive Vice President and Chief Technology Officer.

[3]  Unless otherwise noted, references to "¶__" or "¶¶__" refer to the Second Amended Complaint for Violation of Federal Securities Laws (Dkt. No. 211).

millions of dollars in losses as the truth was revealed. ¶¶19-34, 180-187. As Motorola's stock price plummeted, the Company admitted to investors that the 3G chip delays "cost us big time" because of "*the inability to execute and have on the shelves at Cingular and **Europe** the kind of 3G products that they require*." ¶¶27, 185.[4]

### B. The Requested Discovery

Europe was Motorola's most important market for 3G handsets in 2006. Accordingly, the Company anticipated selling its 3G products to numerous European vendors, including Vodafone, H3G, Orange, T-Mobile, Telefonica and O2, among others. Documents produced by defendants reveal that Motorola had forecast to sell the vast majority of volume of one of its primary 3G products – the 3G RAZR XX – to Vodafone and H3G alone. Ex. 3 at MOS/SIL 065011. Accordingly, Plaintiffs seek permission to depose two individuals who were key to Motorola's Vodafone and H3G accounts – Jens Schulte-Bockum, of Vodafone, and Frank Meehan, of H3G. Additional facts demonstrating the relevance of these witnesses are set forth below. *See* Sections C & D, *infra*.

Plaintiffs believe the documents produced by defendants and third parties in this action are sufficient to conduct the depositions and have not requested that Messrs. Schulte-Bockum and Meehan (or Vodafone and H3G) produce documents separately. The Court's execution of the Letters of Request will not bar Messrs. Schulte-Bockum and Meehan from objecting to Plaintiffs' request under the laws of their country of residence. *See* Hague Convention, Art. 11.

---

[4] Emphasis added, unless otherwise noted.

Plaintiffs have provided the Court with pre-paid envelopes addressed to the appropriate central authorities in The Netherlands and The United Kingdom.  The Court need only sign the Letters of Request and execute the mailing.[5]

### C.    Jens Schulte-Bockum

Documents produced by Motorola reveal that Vodafone was Motorola's most important customer in Europe in 2006.  Within Vodafone, Jens Schulte-Bockum was one of the key decision-makers regarding Vodafone's purchase of 3G mobile handsets from Motorola.  As the Global Director of Terminals for Vodafone Global Marketing, Mr. Schulte-Bockum exchanged critical e-mails and attended key meetings with Motorola executives, including defendant Garriques, regarding Motorola's 3G handset portfolio.

For instance, as early as November 16, 2005, Vodafone expressed its concerns about the status of Motorola's 3G handset portfolio for 2006.  That day, Peter Bamford, Vodafone's Chief Marketing Officer at the time, informed defendant Garriques:

> I have now had a debrief from ***Jens [Schulte-Bockum]*** after his discussions with you and your team last week in Chicago.  I understand that he shared our concerns for the short term, ***especially the lack of new 3G products coming out in H1, 2006, which will weaken Motorola's position with Vodafone***.

Ex. 4 at MOT/SIL 213545-6.  On December 22, 2005, Mr. Schulte-Bockum contacted defendant Garriques after "many launch dates slipped" in Motorola's "2006 Product portfolio proposal," and suggested that Motorola "drive" its organization "to improve its reliability with regard to new

---

[5]  Plaintiffs specifically request that the Court mail the Letters of Request directly to the appropriate central authorities.  In the past, Plaintiffs' counsel have experienced resistance from foreign central authorities on the basis that the Letter of Request was not transmitted directly from the requesting court.

- 4 -

509900_1

product launches." Ex. 5 at MOT/SIL 208635. Motorola's inability to commit to specific launch dates jeopardized holiday sales. According to Mr. Schulte-Bockum:

> Regaining the confidence and trust of [Vodafone's] Operating Companies will work best if Motorola commits to product launch dates well in advance and subsequently manages to deliver the required volumes on time. What is very difficult for Vodafone is to agree [to] launch dates just 3 months prior to launch *as this will jeopardise [sic] any serious planning activity and as it would adversely impact the uptake of your products*.

*Id.* at 208635-636. In response, defendant Garriques promised Mr. Schulte-Bockum that Motorola would provide "regular progress reports" as well as a formal review beginning in June concerning 3G handset and Argon (3G) chip development. *Id*. at MOT/SIL 208633. By January 8, 2006, Vodafone "plan[ned] to manage down Motorola's new product volumes in Q4'06 to reduce risk to their financial results." Ex. 6 at MOT/SIL 207318. Vodafone was "particularly alarmed that all the new 2006 device launches have slipped into Q4" and continued to believe the product launch dates were subject to significant risk. *Id.* According to Vodafone, only a huge financial penalty in the form of €50 million bond held in escrow would force Motorola to perform better. *Id*.

In June 2006, Motorola employee Gary Morrison noted that when meeting with Mr. Schulte-Bockum, among other Vodafone employees, the Company would need to explain that slipped launch dates would potentially result in "no volume into warehouse before November." Ex. 7 at MOT/SIL 1-0593897; 1-0593900. Motorola's 3G product launch dates only continued to slip. By November 1, 2006, two of Motorola's 3G mobile handsets had yet to receive technical acceptance from Vodafone. Ex. 8 at MOT/SIL 060844. At this point, Motorola had already missed out on at least 40% of Vodafone's holiday sales volume, and the products had not even been approved for shipping. *See* Ex. 9 at MOT/SIL 028907. Indeed, early planning documents show that Motorola aimed to sell Vodafone 700,000 3G RAZR XX ("XX") handsets and 600,000 3G RAZR MAXX

("MAXX") handsets in 4Q06.[6]  Ex. 10 at MOT/SIL 040371, ln. 32 & 040372, ln. 79.  By August, Motorola had reduced those forecasts to 400,000 units of the XX and 200,000 units of the MAXX.  Ex. 3 at MOT/SIL 06501; Ex. 11 at MOT/SIL 1-0397773.  Ultimately, Motorola only managed to ship 24,000 units and 23,000 units to Vodafone, respectively.  *Id*.

As demonstrated, Mr. Schulte-Bockum authored and received critical e-mails and attended key meetings with Motorola concerning the Company's 3G products.  His testimony is highly relevant to Plaintiffs' claims and bears on both scienter and materiality, critical elements of Plaintiffs' fraud claims.

### D.     Frank Meehan

H3G was one of Motorola's critical customers for 3G products in 2006.  Indeed, H3G was a 3G-only carrier and did not purchase 2G handsets.  Within H3G, Frank Meehan was one of the key decision-makers regarding H3G's purchase of 3G mobile handsets from Motorola.  Ex. 12 at MOT/SIL 031419; Ex. 13.  As the Global Director of H3G's 3G Handset Group, Mr. Meehan was a key stakeholder in Motorola's H3G account.

For instance, in 2006, Motorola employees pitched a number of 3G products to Mr. Meehan.  Negotiating on behalf of H3G, Mr. Meehan was willing to purchase up to 800,000 XX handsets from Motorola as long as 500,000 units could be delivered by November 10, 2006, in time for holiday sales.  Ex. 14 at MOT/SIL 441733.  Mr. Meehan explained, however, that he was "very concerned about last [the 2005] supply issues" and indicated that he would "cancel all volume that is delivered late."  *Id*. at MOT/SIL 441733.  H3G was also willing to purchase 100,000 units of Motorola's 3G MAXX.  *Id*.  In early July 2006, H3G advised Motorola that because H3G had not yet received

---

[6]      Internally, Motorola referred to the XX as the "Izar" and the MAXX as the "Volans."

working samples of the proposed 3G handsets, "forecast[s] are not too brilliant." Ex. 15 at MOT/SIL 078287.

By mid-October, Mr. Meehan had one of his employees contact Motorola, on his behalf, to advise the Company that the 3G product development delays would have a "significant impact on the volume [H3G] will buy prior to Christmas." Ex. 16 at MOT/SIL 060643. Indeed, the XX phone did not receive technical acceptance from H3G until mid-November 2006 and was not approved for shipping until November 22. Ex. 17 at MOT/SIL 472708-09; Ex. 18. As a result of Motorola's inability to ship 3G phones to H3G on time, Motorola sold just 35,000 XX units and 3,000 MAXX units to H3G in the fourth-quarter. Ex. 3 at MOT/SIL 065011; Ex. 11 at MOT/SIL1-0397773.

As demonstrated, Mr. Meehan was a key player in Motorola's bid to launch its 3G portfolio in Europe. His testimony is highly relevant and bears on both scienter and materiality, critical elements of Plaintiffs' fraud claims.

**II.  ARGUMENT**

    **A.  A Letter of Request Is the Proper Method for Obtaining Testimony from Witnesses Located in The Netherlands**

The issuance of a Letter of Request seeking foreign judicial assistance in collecting evidence is authorized under the Hague Convention. The United States, The United Kingdom and The Kingdom of the Netherlands have signed this international treaty and are bound by its provisions as "Contracting States." *See* Hague Convention. *See also* 28 U.S.C. §1781; *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 533 (1987). The Hague Convention is recognized as part of the supreme law of the United States. U.S. Const. Art. VI, Cl. 2; *Laker Airways, Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42, 49 (D.D.C. 1984) (the Hague Convention is an international treaty and as such is entitled to be recognized as the supreme law of the land under Article VI, Section 2, of the United States Constitution).

The Hague Convention's purpose is to facilitate and increase the exchange of information between nations.  *Societe Nationale*, 482 U.S. at 534; *Laker Airways*, 103 F.R.D. at 49.  The preamble to the Hague Convention states its purpose is to "improve mutual judicial co-operation in civil or commercial matters" and to "facilitate the transmission and execution of Letters of Request."  Hague Convention (*see* 23 U.S.T. 2555).  *See also Societe Nationale*, 482 U.S. at 534.

The Hague Convention allows courts in one Contracting State to request another Contracting State to "obtain evidence, or to perform some other judicial act" by a Letter of Request.  Hague Convention, Ch. I, Art. 1 (*see* 23 U.S.T. 2555).  Each Contracting State designates a "Central Authority" to receive requests from courts of other member countries.  *Id*. at Art. 2.  The Central Authority then sends the request to the appropriate court or officer to execute the request.  *See* Exs. 1-2.

### B. The Testimony Sought from Messrs. Schulte-Bockum and Meehan Is Directly Relevant to Plaintiffs' Allegations

As summarized above, the information possessed by Messrs. Schulte-Bockum and Meehan is important in determining critical aspects of the alleged fraud.  Plaintiffs seek testimony under oath from these witnesses regarding their knowledge of the status of Motorola's 3G portfolio.  *See also* Exs. 1-2 (detailing areas for testimony).  Their testimony will thus likely reveal the explanations that Motorola executives gave the carriers for failing to introduce the 3G products on schedule.  The witnesses will also be able to provide information regarding how Motorola's 3G product development delays ultimately affected carriers like Vodafone and H3G, including, but not limited to, the carriers' willingness to purchase 2G products from Motorola in lieu of 3G products as well as their willingness to purchase 3G products from Motorola in the future.  Such key facts will speak directly to scienter as well as the materiality of Motorola's 3G handset business and Plaintiffs'

allegations that defendants made false statements and material omissions to investors during the Class Period.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their application and issue the Letters of Request, attached hereto as Exs. 1 and 2.

DATED: March 23, 2010

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MICHAEL J. DOWD
TOR GRONBORG
SUSAN G. TAYLOR
TRIG R. SMITH
JENNIFER L. GMITRO


        s/ JENNIFER L. GMITRO
          JENNIFER L. GMITRO

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312/332-3400
312/676-2676 (fax)

Liaison Counsel

VANOVERBEKE MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 23, 2010.

               s/ JENNIFER L. GMITRO
               JENNIFER L. GMITRO
               COUGHLIN STOIA GELLER
                 RUDMAN & ROBBINS LLP
               655 West Broadway, Suite 1900
               San Diego, CA 92101-3301
               Telephone: 619/231-1058
               619/231-7423 (fax)
               E-mail:jgmitro@csgrr.com

# Mailing Information for a Case 1:07-cv-04507

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **David K. Cole**
  courtnotification@mayerbrown.com

- **Michael J. Dowd**
  miked@csgrr.com,debg@csgrr.com

- **J. Timothy Eaton**
  teaton@shefskylaw.com,sfdocket@shefskylaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **Michael David Frisch**
  courtnotification@mayerbrown.com

- **Jennifer L. Gmitro**
  JGmitro@csgrr.com

- **Tor Gronborg**
  torg@csgrr.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **M. Sean Laane**
  sean.laane@aporter.com

- **Kim Ann Leffert**
  courtnotification@mayerbrown.com

- **Elizabeth Leise**
  elizabeth_leise@aporter.com,john_massaro@aporter.com

- **Richard A. Maniskas**
  sradcliffe@glancylaw.com

- **John C Massaro**
  john_massaro@aporter.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com

- **Matthew P Montgomery**
  mattm@csgrr.com

- **David A Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H Rudman**
  srudman@csgrr.com

- **Joseph Russello**
  jrussello@csgrr.com

- **Stephen M Sacks**
  stephen_sacks@aporter.com

- **Michael P. Sheehan**
  msheehan@shefskylaw.com,sfdocket@shefskylaw.com

- **Trig Randall Smith**
  trigs@csgrr.com,stremblay@csgrr.com,e_file_sd@csgrr.com

- **Susan G Taylor**
  SusanT@csgrr.com

- **James W. Thomas , Jr**
  james.thomas@aporter.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
D Seamus Kaskela
```
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087