UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ERIC SILVERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 1:07-cv-04507 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge St. Eve Magistrate Judge Mason |
| MOTOROLA, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY
QUALCOMM, INC. TO PRODUCE DOCUMENTS

512636_1

Pursuant to Fed. R. Civ. P. 26, 34, 37(a) and 45, class representatives Macomb County Employees' Retirement System and St. Clair Shores Police and Fire Pension System (hereinafter, "plaintiffs") respectfully submit this memorandum in support of their Motion to Compel Non-Party Qualcomm, Inc. ("QCOM") to Produce Documents.

This motion concerns a narrowly-tailored document subpoena served on QCOM on December 15, 2009. *See* Ex. A. The subpoena seeks highly relevant, non-privileged documents regarding a $275 million intellectual property ("IP") licensing agreement that Motorola purportedly executed with QCOM in 3Q06 (hereinafter, "3Q06 QCOM Deal"). QCOM has conceded that it is in the possession of numerous responsive documents and communications in hard-copy and electronic form concerning the 3Q06 QCOM Deal. Based on conversations with QCOM's counsel, plaintiffs understand these documents to include drafts and originals of the written agreement, as well as several "side agreements" associated with the deal. QCOM has had the subpoena at issue for over three months and, to date, has not produced a single page of relevant documents.

As the Court is aware, the operative complaint includes allegations that Motorola executed the $275 million 3Q06 QCOM Deal at the end of September 2006 at a 98.7% profit margin. *See* Dkt. No. 211, ¶¶17R, 172-178. Then, during the October 17, 2006 3Q06 earnings conference call, defendants misled investors regarding the financial effect that this deal, as well as the $165 million 3Q06 Freescale IP transaction, had on the Company's financial performance. *Id.*, ¶¶114-115, 118. Thus, while the pace of QCOM's document production has been frustrating, the reasons for its gait are becoming clear. For instance, evidence recently obtained by plaintiffs establishes that:

- ***On September 30, 2006, defendant Zander personally approved the $275 million 3Q06 QCOM Deal***;

- ***In the moments immediately preceding midnight, October 1, 2006, defendant Garriques failed to execute a final agreement with QCOM***;

- 1 -

512636_1

- *Prior to the Company's October 17, 2006 3Q06 earnings conference call and issuance of the 3Q06 earnings press release, defendants Zander, Garriques, Devonshire and the Company's Audit and Legal Committee and Investor Relations Team were well-aware that Motorola booked all of the $275 million for the QCOM deal, as well as $134.5 million of the Freescale 3Q06 IP licensing transaction, which represented over $400 million in 3Q06 operating earnings.*

Most, if not all, of the documents in QCOM's possession, custody or control regarding the 3Q06 QCOM Deal, therefore, are highly relevant to plaintiffs' case. QCOM cannot contest that fact.

As demonstrated below, moreover, plaintiffs have been patient enough in waiting for QCOM to commence its production. Since December 2009, plaintiffs have repeatedly engaged QCOM to get the production rolling. QCOM should have commenced its production long ago as many of the documents in its possession, such as hard-copies of the agreement at issue and associated side letters, are readily accessible. Yet, to date, QCOM has not produced a single responsive document. Accordingly, and in light of the June 30, 2010 fact discovery cut-off in this action, plaintiffs seek immediate relief with this Court.

## I.     HISTORY OF THE QCOM SUBPOENA

On December 23, 2009, QCOM served plaintiffs with its letter response to the subpoena at issue. *See* Ex. B. QCOM has not objected to the relevance of the documents plaintiffs seek. *Id. See also* Ex. C.

In January 2009, to eliminate any potential uncertainty as to the issue of relevance, however, plaintiffs agreed to hold the QCOM subpoena in abeyance. *See* Ex. D. Plaintiffs and QCOM agreed to this procedure to allow the Court to first rule on the Motion to Compel Defendants to Produce Documents Responsive to Plaintiffs' Fourth Set of Document Requests. *See* Dkt. No. 178, Ex. A at 4-5. In exchange for the abeyance, QCOM agreed to be bound by the terms of this Court's ruling concerning relevance. *See* Ex. D. On February 24, 2010, the Court granted plaintiffs' motion in part and denied it in part. Dkt. 200 (hereinafter, "Relevant Ruling"). On February 24, 2010, plaintiffs

immediately sent QCOM a copy of the Relevant Ruling, as well as the underlying discovery requests at issue with defendants. Ex. E.

Between December 23, 2009 and February 24, 2010, moreover, plaintiffs and QCOM regularly met and conferred regarding the subpoena. On January 13, 2007, before plaintiffs agreed to the abeyance, QCOM represented that it would begin producing relevant documents by the end of the month (*i.e.*, initiating the production with hard-copy documents and, then, following up the production of responsive electronic documents). Ex. C. During the abeyance, QCOM represented that it would "continue to search" for responsive documents in the interim and would "be in a position to begin production shortly after" a ruling in plaintiffs' favor. Ex. D. To facilitate QCOM's "continued search" during the abeyance, on January 25, 2010, plaintiffs and QCOM agreed to a limited universe of QCOM custodians, whose files were to be searched for responsive electronic documents. *Id.* During these communications with QCOM, plaintiffs repeatedly expressed their willingness, as well as acted on that willingness, to minimize burden on QCOM. Exs. C, D.

On March 8, 2010, plaintiffs sent another email to QCOM in order to get the company's production started. Ex. F. On March 11, 2010, plaintiffs sent QCOM search terms to be applied to the agreed custodians' electronic files. Ex. G. Nearly two weeks went by without a response from QCOM. Accordingly, on March 23, 2010, at 9:45 a.m. pacific, plaintiffs sent QCOM another email (and attached letter) for the purpose of initiating QCOM's production. *See* Ex. H. On March 23, 2010, at 8:11 p.m. pacific, QCOM responded to plaintiffs' email, claiming it was unable to read plaintiffs' attached letter. *See* Ex. I. Immediately thereafter, plaintiffs informed QCOM that it would not move the Court for relief on the condition that, by no later than March 24, 2010, at 10:00 a.m., QCOM verify in writing that its entire document production will be complete by April 5, 2010. *Id*. On March 24, 2010, plaintiffs and QCOM were unable to reach a mutually agreeable compromise regarding the management of QCOM's production.

## II. RELIEF SOUGHT

QCOM has had plaintiffs' subpoena for three months and has, to date, had not produced a single page of evidence. QCOM concedes that information in its possession, custody or control regarding the 3Q06 QCOM Deal is relevant. Plaintiffs have done everything within reason, and remain willing to do so, to facilitate the timely completion of QCOM's production without imposing undue burden. Plaintiffs, however, will no longer wait for QCOM to comply with its obligations pursuant to a subpoena issued from this Court in December 2009.

Accordingly, plaintiffs respectfully ask the Court for an order requiring QCOM to:

1. Immediately produce all responsive hard-copy documents in its possession, custody or control;

2. Complete the production of responsive electronic documents by no later than April 5, 2010; and

3. Produce responsive electronic documents from the files of the custodians identified in plaintiffs' January 25, 2010 email, Ex. D, utilizing the search terms identified in plaintiffs' March 11, 2010 email, Ex. G.

## III. CONCLUSION

For the reasons stated herein, plaintiffs respectfully request that the Court grant this motion in its entirety and order QCOM to complete the production of responsive hard-copy and electronic documents by no later than April 5, 2010.

DATED:  March 24, 2010

Respectfully submitted,
COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MICHAEL J. DOWD
TOR GRONBORG
SUSAN G. TAYLOR
TRIG R. SMITH
JENNIFER L. GMITRO


                s/ TRIG R. SMITH
                 TRIG R. SMITH

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)


Liaison Counsel

VANOVERBEKE MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

- 5 -

512636_1

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List as well as manually serving Mr. Donald J. Sullivan at Qualcomm Inc., 5775 Morehouse Drive, San Diego, CA 92121-1714.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 24, 2010.

s/ TRIG R. SMITH
TRIG R. SMITH

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: trigs@csgrr.com

# Mailing Information for a Case 1:07-cv-04507

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **David K. Cole**
  courtnotification@mayerbrown.com

- **Michael J. Dowd**
  miked@csgrr.com,debg@csgrr.com

- **J. Timothy Eaton**
  teaton@shefskylaw.com,sfdocket@shefskylaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **Michael David Frisch**
  courtnotification@mayerbrown.com

- **Jennifer L. Gmitro**
  JGmitro@csgrr.com

- **Tor Gronborg**
  torg@csgrr.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **M. Sean Laane**
  sean.laane@aporter.com

- **Kim Ann Leffert**
  courtnotification@mayerbrown.com

- **Elizabeth Leise**
  elizabeth_leise@aporter.com,john_massaro@aporter.com

- **Richard A. Maniskas**
  sradcliffe@glancylaw.com

- **John C Massaro**
  john_massaro@aporter.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com

- **Matthew P Montgomery**
  mattm@csgrr.com

- **David A Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H Rudman**
  srudman@csgrr.com

- **Joseph Russello**
  jrussello@csgrr.com

- **Stephen M Sacks**
  stephen_sacks@aporter.com

- **Michael P. Sheehan**
  msheehan@shefskylaw.com,sfdocket@shefskylaw.com

- **Trig Randall Smith**
  trigs@csgrr.com,stremblay@csgrr.com,e_file_sd@csgrr.com

- **Susan G Taylor**
  SusanT@csgrr.com

- **James W. Thomas , Jr**
  james.thomas@aporter.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
D Seamus Kaskela
```
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087