UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ERIC SILVERMAN, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MOTOROLA, INC., et al.,<br><br>Defendants. | ) | No. 1:07-cv-04507<br>**(Consolidated)**<br><br>CLASS ACTION<br><br>Judge St. Eve<br>Magistrate Judge Mason |

PLAINTIFFS' MOTION TO COMPEL THE DEPOSITIONS OF TERESA VEGA, MIKE HICKEY AND RASH SAHOTA OR, IN THE ALTERNATIVE, TO EXECUTE LETTERS OF REQUEST TO DEPOSE THESE WITNESSES PURSUANT TO THE HAGUE CONVENTION

Pursuant to Federal Rules of Civil Procedure 30 and 45 and the Court's inherent authority to manage discovery, plaintiffs Macomb County Employees' Retirement System and St. Clair Shores Police and Fire Pension System (collectively, "plaintiffs") respectfully request that this Court compel Motorola witnesses Teresa Vega, Mike Hickey and Rash Sahota to comply with plaintiffs' subpoenas and appear for deposition. Alternatively, to the extent these witnesses are not represented by defendants' counsel, defendants' counsel improperly accepted subpoenas issued out of this Court on behalf of Vega, Hickey and Sahota and the witnesses are located outside the United States, plaintiffs respectfully request that this Court execute Letters of Request pursuant to the Hague Convention on Taking Evidence Abroad in Civil or Criminal Matters (the "Hague Convention"), seeking deposition testimony from these witnesses, and submit them to the appropriate central authorities in the United Kingdom.

## I. INTRODUCTION

Plaintiffs served subpoenas issued out of the Northern District of Illinois, seeking deposition testimony and documents, on Mike Hickey ("Hickey"), Rash Sahota ("Sahota") and Teresa Vega ("Vega") (collectively, the "Witnesses") on July 6, August 18 and November 18, 2009, respectively (the "Subpoenas"). At those times, and until two weeks ago, counsel for Motorola, Inc. ("Motorola" or the "Company") and the Individual Defendants (collectively, "defendants") asserted that they represented Hickey, Sahota and Vega and accepted the Subpoenas on each of the Witness' behalf without objection. Subsequently, and through this month, plaintiffs have been trying to schedule each of the Witness' depositions, without success. On March 5, 2010, after repeated requests to confirm deposition dates for these Witnesses as well as other Motorola witnesses, plaintiffs advised defendants that they intended to raise the issue of delays in deposition scheduling in the Joint Status Report for the Court's March 10, 2010 status conference. Thereafter, on March 8, 2010 – eight months after the first of the Subpoenas was served – defendants' counsel stated that none of the

Witnesses would appear for deposition pursuant to the Subpoenas and told plaintiffs' counsel that the Witnesses were located in the United Kingdom (the "U.K.") and plaintiffs should proceed under the Hague Convention if they wanted to try to obtain deposition testimony.

With just three months left until fact discovery closes, plaintiffs have been severely prejudiced by defendants' sudden change in position and assertion that the Witnesses will not comply with the previously accepted and unobjected to Subpoenas. Accordingly, plaintiffs respectfully request that this Court enforce the Subpoenas and require Vega, Hickey and Sahota to comply with the Subpoenas and appear for deposition. In the event the Court determines that the Subpoenas cannot be enforced, plaintiffs request that the Court serve Letters of Request pursuant to the Hague Convention on the appropriate U.K. central authorities, requesting that plaintiffs be permitted to depose the Witnesses. The proposed Letters of Request are attached hereto as Exhibits A-B.[1]

## II. PROCEDURAL HISTORY

### A. The Litigation

This is a certified class action brought on behalf of all persons or entities who purchased or otherwise acquired Motorola publicly traded securities between July 19, 2006 and January 4, 2007 (the "Class Period"). Plaintiffs allege that defendants made public misstatements and material omissions regarding Motorola's 3G mobile handset portfolio and the Company's Mobile Devices business unit during the Class Period. *See* Second Amended Complaint for Violation of Federal

---

[1] The U.K. has separate central authorities for England and Scotland. Because Hickey and Sahota reside in England and Scotland, respectively, plaintiffs have drafted separate Letters of Request for these witnesses, directed to the appropriate central authority.

Securities Laws, ¶¶5-18. Each of the Witnesses indisputably possesses information central to plaintiffs' allegations.

**B. Relevant Factual Background**

In July 2009, plaintiffs began serving subpoenas seeking deposition testimony and documents on approximately 30 current and former Motorola employees. Defendants' Rule 26 initial disclosures identified many of these individuals and noted that "[a]lthough we cannot state definitively that Arnold & Porter LLP does or will represent each of the above-named individuals, with respect to Motorola-related matters concerning this case all individuals should be reached initially via the undersigned counsel at Arnold & Porter LLP." Ex. C at 7. Accordingly, plaintiffs discussed the proposed Motorola deponents with defendants' counsel who asserted that they represented all 30 witnesses and advised plaintiffs that they would accept service of subpoenas on the identified witnesses' behalf.

Among the subpoenaed Motorola witnesses were Vega, Hickey and Sahota, all of whom held senior positions in Motorola's Mobile Devices Division during the Class Period. Two of these Witnesses – Vega and Hickey – were identified in defendants' Rule 26 initial disclosures on a non-exhaustive list of Motorola employees possessing knowledge relevant to this case.[2] Ex. C at 3-7. Defendants' document production to date confirms that all three Witnesses played key roles in Motorola's planned 3G handset portfolio in 2006. *See* Section III.

Plaintiffs served Subpoenas out of this Court for deposition testimony and documents on Hickey, Sahota and Vega dated July 6, 2009, August 18, 2009 and November 18, 2009, respectively.

---

[2] Although defendants did not list Sahota in their initial disclosures, defendants noted that their list of individuals likely to possess knowledge of the case was not exhaustive, explaining that "[a]scertaining the identity of each [individual with knowledge] would be impractical and unduly burdensome. Ex. C at 3.

Exs. D-F. Consistent with prior representations, defendants' counsel accepted service of the subpoenas on each of the Witness' behalf. Neither defendants nor the Witnesses objected or otherwise indicated that Hickey, Sahota or Vega were unavailable or unwilling to appear for deposition pursuant to the Northern District of Illinois Subpoenas.[3]

The Subpoenas not only requested that the Witnesses appear for deposition, but also requested that each Witness produce documents in his or her possession related to Motorola's 3G handset development during the relevant period. *See* Ex. D at 6; Ex. E at 6; Ex. F at 6; Ex. G at 6; Ex. H at 6. Defendants' counsel made no objection to the aforementioned request.[4] Nor did they indicate that the Witnesses had not received the Subpoenas or that they were not, in fact, preserving documents responsive to plaintiffs' request.

Since June 2009, the parties have exchanged numerous letters, e-mails and phone calls concerning the scheduling of the Witnesses' depositions. Indeed, in mid-September, defendants' counsel advised plaintiffs that Hickey and Sahota currently reside in the U.K. and specifically proposed that those depositions take place back-to-back in order to reduce costs and eliminate the need for repeated foreign travel. Plaintiffs offered to conduct the depositions, pursuant to the Subpoenas issued out of this Court, in the U.K., and proposed a schedule that accommodated defendants' counsel's request, suggesting that the depositions take place on March 9 and March 11,

---

3 Following service of the Subpoenas, the parties were unable to establish an agreed-upon deposition schedule. Consequently, plaintiffs' initial proposed deposition dates for Hickey and Sahota expired and plaintiffs re-served these individuals on November 18, 2009. Exs. G-H. Again, defendants' counsel accepted the Subpoenas on behalf of each of the Witnesses without objection.

4 Plaintiffs' Subpoenas served on November 18, 2009 contained an additional document request concerning the Witnesses' trading records in Freescale Semiconductor, Inc.'s ("Freescale") stock. *See* Exs. F at 6-7, G at 6-7, H at 6-7. Defendants' counsel did object, on behalf of all witnesses, to this request. However, there was no objection to any of the Witnesses appearing for deposition or to the remainder of plaintiffs' document requests.

2010. *See* Ex. I (September 16, 2009 Letter from Trig Smith to John Massaro). Despite repeated requests, defendants' counsel did not respond to this proposal.

On November 18, 2009, defendants' counsel accepted service of a subpoena issued out of this Court for the deposition testimony and documents of Teresa Vega. Again, defendants' counsel not only accepted service of the subpoena, but no objections were made to the time or place of the deposition. Months later, however, in late January 2010, in response to repeated requests to confirm that non-party Motorola witnesses were preserving and producing documents responsive to plaintiffs' subpoenas, defendants' counsel, John Massaro, stated for the first time that they were having a "difficult time" contacting Vega. Despite plaintiffs' request for clarification on the matter, defendants' counsel never stated that they did not represent Vega, nor did they indicate that Ms. Vega (or Hickey or Sahota) would not appear for her deposition as noticed or that their clients would not comply with the Subpoenas. *See* Ex. J (January 25, 2010 Letter from Trig Smith to John Massaro).

Throughout February, plaintiffs continued with their efforts to get all of the Motorola witness depositions scheduled. Ultimately, by early March, defendants' counsel had confirmed numerous depositions, but still had not confirmed dates for Vega, Hickey and Sahota, as well as the Individual Defendants. As a result, on March 5, 2010, plaintiffs notified defendants' counsel that they intended to raise the issue of delays in deposition scheduling in the Joint Status Report for the Court's March 10, 2010 status conference. On March 8, 2010, during a call regarding the proposed contents of the Joint Status Report, defendants' counsel stated, for the first time, that neither Hickey, Sahota nor Vega would appear for deposition pursuant to the Subpoenas accepted months earlier and that,

because each Witness was in the U.K., plaintiffs would have to seek their testimony pursuant to the Hague Convention.[5] As a result, plaintiffs have been forced to bring this motion.[6]

As the Court is aware, discovery is well under way in this case. Plaintiffs have taken approximately 15 depositions of present and former Motorola employees to date and fact discovery is set to close on June 30, 2010.

## III. THE WITNESSES POSSESS KNOWLEDGE THAT IS HIGHLY RELEVANT TO PLAINTIFFS' ALLEGATIONS

There is no dispute that these Witnesses possess knowledge highly relevant to this case. A brief summary demonstrating each Witness' involvement in and knowledge of the development and launch of Motorola's 3G handsets during 2006 is set forth below.

### A. Teresa Vega

During the Class Period, Teresa Vega was the Senior Vice President of 3GSM & CDMA Devices in Motorola's Mobile Devices Division. Accordingly, Vega was responsible for the development and delivery of all of Motorola's 3G products during the Class Period. She reported directly to defendant Garriques and helped plan and execute strategies to deliver 3G products to Motorola's key carriers in 2006. *See* Ex. K. Vega was involved in or kept apprised of all aspects of

---

5 Subsequent to defendants' assertion that plaintiffs had to issue Letters of Request pursuant to the Hague Convention, plaintiffs' counsel initiated an investigation to ascertain the Witnesses' residences. Despite defendants' claims to the contrary, plaintiffs determined that Teresa Vega actually lives at 11 Wilrich Glenn Road, Morristown, NJ 07960. Out of an abundance of caution, plaintiffs attempted to serve a subpoena on Ms. Vega, issued out of the District of New Jersey, at this address and personal service was effected on March 25, 2010. With regard to Hickey and Sahota, both individuals appear to reside in the United Kingdom. *See* Exs. A at 5, B at 5.

6 Pursuant to Local Rule 37.2, plaintiffs' counsel Tor Gronborg and Jennifer Gmitro and defendants' counsel James Thomas and Elizabeth Leise consulted by telephone several times between March 5, 2010 and March 29, 2010. Despite good faith attempts to resolve the matter, the parties were unable to reach an accord. Defendants have indicated that they do not oppose plaintiffs' application to serve Letters of Request on witnesses residing in the U.K.

Motorola's 3G business including negotiations with wireless service carriers and 3G handset strategy, development and anticipated delivery schedules. Documents produced by defendants demonstrate Vega's broad knowledge of issues related to Motorola's 3G handset portfolio. *See, e.g.*, Ex. L (July 8, 2006 e-mail in which Vega advises defendant Garriques that Motorola knew it could not meet its customers' October 1, 2006 launch date when the Company committed to the schedule); Ex. M (September 15-26, 2006 e-mail chain among Cingular and Motorola employees indicating Vega's responsibility following up with Cingular concerning delays that will prevent the Izar/RAZR XX from launching in time for the holidays); Ex. N (October 4, 2006 e-mail exchange whereby Vega admonishes Freescale for unresolved issues with the Argon chipset that are delaying Motorola's 3G product launches). Indeed, Vega is the author or recipient of approximately 4,000 documents produced by defendants concerning the development and delays in Motorola's 3G handset portfolio in 2006.

**B. Mike Hickey**

Mike Hickey was a member of Motorola's Senior Leadership Team and played a critical role in formulating and executing Motorola's 3G handset strategy in 2006. He was the Senior Vice President of Mobile Devices' Global Customer Solutions Center ("Customer Solutions") during the Class Period and reported directly to defendant Garriques. *See* Ex. K. As head of Customer Solutions, Hickey was responsible for and directly interacted with the Company's most important customers, including Vodafone Group Plc. ("Vodafone"), Hutchison Whampoa Ltd. ("H3G") and O2. Accordingly, Hickey was directly involved in or kept apprised of all matters related to Motorola's 3G handset portfolio in 2006, ranging from the Company's global 3G strategy to the delays in the development and delivery of specific 3G handsets to Motorola's customers. Documents produced by defendants reveal that Hickey was one of Garriques' key correspondents with respect to Motorola's 3G debacle and was intimately involved in nearly every issue related to

Motorola's 3G handsets, including overall strategy, discussions with carriers, negotiations with Freescale and the failed efforts to meet product launch dates. *See, e.g.*, Ex. O at 028710 (February 11, 2006 e-mail chain in which Hickey suggests that Motorola "cut and run" from Freescale because the Company cannot get viable 3G chips); Ex. P (April 20, 2006 e-mail chain in which defendant Garriques advises Hickey and others about Motorola's "UMTS [3G] F'UP with Freescale"); Ex. Q at 210565-66 (February 13-22, 2006, e-mail exchange in which Hickey notes "this is the year that matters in 3g" and outlines aggressive measures and focus needed to participate in the 3G "land grab"); Ex. R at 033503-04 (November 16, 2006 e-mail in which Hickey forwards to Ray Roman, Motorola's Senior Vice President of Global Sales, a slide deck entitled "3g – freescale issues" noting that Motorola becoming "irrelevant" in the 3G market because the Company is "missing the market 2-3g transition . . . big share losses probable"). *See also* Plaintiffs' Application For Issuance of Letters of Request Under the Hague Convention Regarding Jens Schulte-Bockum and Frank Meehan ("Plaintiffs' Application") (Dkt. 213), Exs. 4, 6, 7, 10, 12, 14. Hickey is the author or recipient of nearly 4,000 documents produced by defendants concerning the development and delays in Motorola's 3G handset portfolio in 2006 and has been mentioned or discussed in nearly every deposition taken by plaintiffs to date. Moreover, Hickey's name appears on more than 120 exhibits introduced by plaintiffs during those depositions.[7]

---

[7] Due to the high number of critical documents and communications concerning Hickey, plaintiffs request that they be permitted 12 hours of deposition testimony from Hickey. In the event plaintiffs are forced to serve a Letter of Request to obtain deposition testimony from Hickey, the U.K. central authority will have the discretion to grant or deny this request.

**C. Rash Sahota**

During the Class Period, Sahota was Vice President of Customer Solutions – Europe, Motorola's most important market for 3G in 2006, and reported directly to Mike Hickey. *See* Ex. S. Sahota executed on the European 2.5G and 3G product roadmap and provided technical support to all the European account teams, including Vodafone and H3G, two of Motorola's most important customers for 3G products in 2006. Sahota was Hickey's "right hand man" and handled all issues concerning delivery of 3G products in the region. Defendants' document production reveals that Sahota played a key role in managing Motorola's European customers with regard to the development and launch of Motorola's 3G handsets. *See, e.g.*, Ex. T (January 5, 2006 e-mail from defendant Garriques announcing Sahota's role and objective to execute on Motorola's 3G roadmap); Ex. U at 195451, 195455 (January 19, 2006 e-mail chain in which Sahota forwards a slide deck used during a meeting with Vodafone indicating importance of October 1, 2006 3G handset launch dates); Ex. V at 057739 (February 27, 2006 e-mail in which Sahota explains that Izar (RAZR XX) must be delivered in September 2006 because Motorola's "GMs . . . feel this could save Q4"); Ex. W at 471225 (October 18-20, 2006 e-mail chain in which Sahota explains that Izar/RAZR XX and Volans/RAZR MAXX will not be approved for shipping until mid-November at the earliest). *See also* Dkt. 213, Exs. 6, 7, 8, 9, 15, 16. Sahota is the author or recipient of more than 3,000 documents produced by defendants concerning the development and delays in Motorola's 3G handset portfolio in 2006.

## IV. VEGA, HICKEY AND SAHOTA SHOULD BE COMPELLED TO APPEAR FOR DEPOSITION

Vega, Hickey and Sahota should be compelled to appear for deposition. Plaintiffs served Subpoenas on these Witnesses between four and eight months ago, providing the Witnesses ample time to object. To the extent Hickey and Sahota belatedly object based on the depositions' proposed

location, such defects were cured by the parties' agreement to conduct the depositions in the U.K. Such an agreement obviates the need to proceed pursuant to the Hague Convention, not only because the Witnesses were served in the United States, but also because an attorney from the United States is "allowed to depose anyone in the U.K. provided they are willing witnesses. No commission from a court is necessary." Ex. X at 2. With regard to Vega, plaintiffs are willing to take her deposition in either this District or the District of New Jersey were she was recently served.

There is no dispute that defendants' counsel accepted the Subpoenas on behalf of the Witnesses and the parties spent months discussing both scheduling and location to accommodate the Witnesses' schedules and places of residence.[8] *See id.* Now, four to eight months after the Subpoenas were served, defendants' counsel wants to unring the bell and force plaintiffs to initiate cumbersome procedures under the Hague Convention. Plaintiffs should not be forced to undergo such procedures because ***the Subpoenas have already been served and accepted***. Furthermore, requiring plaintiffs to serve Letters of Request pursuant to the Hague Convention will undoubtedly delay the depositions of Hickey and Sahota and could potentially result in plaintiffs' inability to obtain trial testimony from these critical Witnesses. The U.K. central authority has complete discretion in deciding whether to permit the witnesses to be deposed and may deny plaintiffs' request. Ex. X at 2 ("[i]t is at the discretion of the [U.K.] court whether to allow" the depositions).

In order to avoid the severe prejudice to plaintiffs that would result from initiating complicated procedures under the Hague Convention, this Court should enforce the Subpoenas that were served on and accepted by the Witnesses many months ago. *See Comm-Tract Corp. v. N.*

---

[8] It is unclear whether defendants' counsel continues to represent the Witnesses and/or whether defendant Motorola intends to pay for their representation.

*Telecom*, 168 F.R.D. 4, 6-7 (D. Mass. 1996) (the Court compelled a witness to appear for deposition, in Hong Kong, pursuant to a subpoena issued out of a district court in the United States); *see also Mercexchange, L.L.C., v. eBay Inc.*, No. M8-85, 2007 WL 582729, at *1-*2 (S.D.N.Y. Feb. 23, 2007) (compelling compliance with a subpoena where counsel accepted service on his client's behalf but failed to forward the subpoena to him). With regard to Vega, given the procedural history to date, plaintiffs request that Vega be compelled to comply with the subpoena issued out of the Northern District of Illinois.[9]

## V. IN THE ALTERNATIVE, PLAINTIFFS REQUEST THAT THIS COURT EXECUTE AND SERVE LETTERS OF REQUEST PURSUANT TO THE HAGUE CONVENTION

In the event that the Court determines that the subpoenas to Hickey and Sahota cannot be enforced, plaintiffs request that this Court issue Letters of Request pursuant to the Hague Convention to the appropriate U.K. central authorities.[10] Because Hickey and Sahota appear to reside in the U.K., absent compliance with the Subpoenas previously accepted on their behalf, issuance of Letters of Request may be the only feasible means for plaintiffs to obtain this evidence for trial.

The Hague Convention establishes judicial cooperation between foreign courts and, more specifically, "facilitate[s] the transmission and execution of Letters of Request" to obtain evidence from individuals residing abroad. 23 U.S.T. 2555. The Letters must be issued by the United States District Court for the Northern District of Illinois and sent to the designated central authority in the United Kingdom. Hague Convention, Ch. I, Art. 1-2 (*see* 23 U.S.T. 2555). Plaintiffs' proposed

---

[9] In the event Ms. Vega or defendants confirm that Vega will appear for a deposition on a date certain pursuant to the subpoena issued out of the Northern District of Illinois or District of New Jersey, plaintiffs will withdraw this motion with respect to Vega.

[10] The United States and the United Kingdom are both parties to the Hague Convention. *See* 28 U.S.C. §1781. The Hague Convention is recognized as part of the supreme law of the United States. U.S. Const. Art. VI, Cl. 2.

Letters of Request comply with the Hague Convention procedures and are attached hereto as Exhibits A and B. *See* Hague Convention, Ch. 1, Art. 1 (*see* 23 U.S.T. 2555).

As summarized above, Hickey and Sahota were high ranking employees in Motorola's Mobile Devices Division during the Class Period. There is no dispute that the Witnesses possess information that is highly relevant to plaintiffs' allegations. Indeed, each of these Witnesses possesses critical knowledge and information concerning the delays and problems with Motorola's development and launch of new 3G handsets in 2006 and early 2007.

## VI. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court enforce the Subpoenas and require defendants to secure Vega, Hickey and Sahota's cooperation in discovery and appearance for deposition. In the alternative, plaintiffs request that this Court issue the Letters of Request attached hereto as Exs. A and B.

DATED: March 29, 2010

Respectfully submitted,

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
MICHAEL J. DOWD
TOR GRONBORG
SUSAN G. TAYLOR
TRIG R. SMITH
JENNIFER L. GMITRO

s/ JENNIFER L. GMITRO
JENNIFER L. GMITRO

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312/332-3400
312/676-2676 (fax)

Liaison Counsel

VANOVERBEKE MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 29, 2010.

s/ JENNIFER L. GMITRO

JENNIFER L. GMITRO
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail:jgmitor@csgrr.com

# Mailing Information for a Case 1:07-cv-04507

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **David K. Cole**
  courtnotification@mayerbrown.com
- **Michael J. Dowd**
  miked@csgrr.com,debg@csgrr.com
- **J. Timothy Eaton**
  teaton@shefskylaw.com,sfdocket@shefskylaw.com
- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com
- **Michael David Frisch**
  courtnotification@mayerbrown.com
- **Jennifer L. Gmitro**
  JGmitro@csgrr.com
- **Tor Gronborg**
  torg@csgrr.com
- **Deborah R. Gross**
  debbie@bernardmgross.com
- **M. Sean Laane**
  sean.laane@aporter.com
- **Kim Ann Leffert**
  courtnotification@mayerbrown.com
- **Elizabeth Leise**
  elizabeth_leise@aporter.com,john_massaro@aporter.com
- **Richard A. Maniskas**
  sradcliffe@glancylaw.com
- **John C Massaro**
  john_massaro@aporter.com
- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com
- **Matthew P Montgomery**
  mattm@csgrr.com
- **David A Rosenfeld**
  drosenfeld@csgrr.com
- **Samuel H Rudman**
  srudman@csgrr.com

- **Joseph Russello**
  jrussello@csgrr.com
- **Stephen M Sacks**
  stephen_sacks@aporter.com
- **Michael P. Sheehan**
  msheehan@shefskylaw.com,sfdocket@shefskylaw.com
- **Trig Randall Smith**
  trigs@csgrr.com,stremblay@csgrr.com,e_file_sd@csgrr.com
- **Susan G Taylor**
  SusanT@csgrr.com
- **James W. Thomas , Jr**
  james.thomas@aporter.com
- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**D Seamus Kaskela**
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087