IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC SILVERMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA, INC., et al.,<br><br>Defendants. | Case No. 1:07-CV-04507 (Consolidated)<br><br>CLASS ACTION<br><br>Honorable Amy St. Eve<br>Magistrate Judge Michael T. Mason |

---

**NON-PARTIES KPMG LLP, DAVID PRATT, AND
DENNIS PARROTT'S MEMORANDUM IN SUPPORT OF THEIR MOTION
TO QUASH OR MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

---

James R. Figliulo (ARDC No. 6183947)
Stephanie D. Jones (ARDC No. 6220362)
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois 60603
(312) 251-5262

Counsel for Non-Parties KPMG LLP,
David Pratt, and Dennis Parrott

Scott R. Lassar (ARDC No. 1586270)
Jeffrey C. Sharer (ARDC No. 6239167)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Michael C. Kelley (*pro hac vice*
    application pending)
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000

Counsel for Non-Parties KPMG LLP, David
Pratt, and Dennis Parrott

Dated: May 4, 2010

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

I. THE LITIGATION, MOTOROLA, KPMG, AND PLAINTIFFS' SUBPOENAS. ................3

II. THE SARBANES-OXLEY ACT, THE PCAOB, AND THE AUDIT INSPECTION PROCESS. ................................................................................................................3

III. PLAINTIFFS' SUBPOENAS FOR DOCUMENTS RELATED TO THE PCAOB'S 2007 INSPECTION OF KPMG'S AUDIT PRACTICE. ...............................................5

ARGUMENT..........................................................................................................................6

I. TO ENSURE THE EFFECTIVENESS OF THE PCAOB INSPECTION PROCESS, THE SARBANES-OXLEY ACT CREATES AN EXPLICIT STATUTORY PRIVILEGE FOR DOCUMENTS AND INFORMATION RELATED TO PCAOB INSPECTIONS. .......................................................................................................7

   A. CONGRESS' INTENT TO ESTABLISH A ROBUST PRIVILEGE IS DEMONSTRATED BY THE ACT'S LEGISLATIVE HISTORY AND IN THE BROAD STATUTORY LANGUAGE CREATING THE PRIVILEGE. .................................................................................7

   B. SECTION 105(B)(5)(A) CREATES A BROAD PRIVILEGE THAT APPLIES TO MATERIAL HELD BY INSPECTED FIRMS INCLUDING INTERNAL FIRM DOCUMENTS RELATED TO THE INSPECTION PROCESS. ......................................................9

II. DOCUMENTS AND INFORMATION RELATING TO THE PCAOB'S INSPECTION OF KPMG'S AUDIT PRACTICE ARE IRRELEVANT TO THIS LITIGATION. .............................................................................................................13

CONCLUSION....................................................................................................................15

## INTRODUCTION

When Congress, through the Sarbanes-Oxley Act of 2002 (the "Act"), created the Public Company Accounting Oversight Board ("PCAOB" or the "Board") and directed the newly formed Board to conduct inspections of registered accounting firms, as a means of enhancing the quality and effectiveness of independent audits of financial statements, Congress created a new statutory privilege to insulate documents and information related to those inspections from civil discovery. Specifically, section 105(b)(5)(A) of the Act clearly and categorically provides that such materials are "confidential and privileged as an evidentiary matter" and are exempt from "civil discovery or other legal process ... in any proceeding in any Federal or State court or administrative agency ...." 15 U.S.C. § 7215(b)(5)(A) (App. Ex. A).

Notwithstanding this broad statutory privilege, plaintiffs have issued subpoenas (the "Subpoenas") to compel production by non-parties KPMG LLP and two of its professionals (collectively, the "KPMG Non-Parties") of,

Redacted

Although, in the course of the "meet and confer" process mandated by Local Rule 37.2, plaintiffs have narrowed in some respects the scope of their invasive subpoena, their continued efforts to use this Court's process to probe into the statutorily privileged PCAOB inspection process requires KPMG to file this motion to quash. And, despite having been referred to both the statutory privilege as well as clear authority that

---

[1] Although plaintiffs have issued separate subpoenas to KPMG (on December 29, 2009) and Messrs. Pratt and Parrott (both on April 19, 2010), the only documents, responsive to plaintiffs' requests, within the possession, custody, or control of Messrs. Pratt and Parrott are documents that were prepared or obtained in the course of their professional duties for KPMG and are therefore within the possession, custody, or control of KPMG. Accordingly, this motion asks that all of plaintiffs' subpoenas be quashed or modified to the full extent that they call for documents subject to the PCAOB inspection privilege, but for simplicity refers simply to the documents in question as "KPMG documents."

demonstrates that the PCAOB itself interprets the privilege to protect the identity of an audit client whose audits become the subject of inspection, plaintiffs have refused KPMG's request for an agreement that this motion should be filed under seal, and have stated their intent preemptively to compromise the confidentiality afforded to KPMG and its clients by the Act by filing a motion to compel on the public docket of this Court. For that reason, KPMG has filed, simultaneously with this motion, a request that this motion (and any response or related motion that plaintiffs may seek to file) be filed under seal.

The scope of the PCAOB privilege is a matter of first impression. KPMG is not aware of any other instance, in the eight years since Sarbanes-Oxley was enacted, in which a litigant asked a court to compel production of documents related to the PCAOB inspection process. However, as demonstrated below, the breadth of the privilege is clear from the language of the statute, as well as from the ample legislative record of what Congress was trying to achieve in crafting it. In response to KPMG's detailed explication of the textual, legislative history, and policy support for its interpretation of the statute, plaintiffs' counsel has not provided any reasoned explanation of why the privilege does not protect the information they demand by the Subpoenas. To date, the substance of plaintiffs' response has been limited to the *ipse dixit* that KPMG's interpretation is "too broad." As explained below, KPMG's position reflects the proper interpretation of the statutory privilege set forth in section 105(b)(5)(A), and on that basis alone this motion must be granted.

KPMG additionally notes that the documents and information demanded by plaintiffs are not likely to lead to the discovery of admissible evidence relevant to plaintiffs' securities fraud claim against Motorola and the individual defendants. The lack of probative value in the material that plaintiffs seek, weighed as it must be against the burden that enforcement of the Subpoenas would place on KPMG and other inspected accounting firms by threatening to disrupt and chill the PCAOB inspection process, provides an additional basis upon which this motion should be granted.

## BACKGROUND

I. THE LITIGATION, MOTOROLA, KPMG, AND PLAINTIFFS' SUBPOENAS.

This is a class action alleging that defendant Motorola, Inc. and certain of its directors and officers committed securities fraud primarily by making materially false and misleading statements and omissions regarding the status of Motorola's product portfolio and business and financial results.[2] At all times relevant, including for Motorola's fiscal year ended December 31, 2006, KPMG has been Motorola's independent auditor. KPMG is not a party to this litigation and plaintiffs have not alleged any false or misleading statement or omission on the part of KPMG or any of its professionals.

II. THE SARBANES-OXLEY ACT, THE PCAOB, AND THE AUDIT INSPECTION PROCESS.

In Title I of the Sarbanes-Oxley Act, Congress established the PCAOB and charged it with the mission "to oversee the audit of public companies that are subject to the securities laws ... in order to protect the interests of investors and further the public interest in the preparation of informative, accurate, and independent audit reports." 15 U.S.C. § 7211(a) (App. Ex. A). The PCAOB is authorized to register public accounting firms; to promulgate audit and other professional standards governing audits of public companies; and to conduct inspections of registered accounting firms. *Id.* § 7211(c); *see also id.* §§ 7201(9), (11) (App. Ex. A). Generally, as part of an inspection, PCAOB inspectors select and evaluate certain audit engagements, visit the accounting firm's offices, review audit workpapers and other materials, and engage in a substantive dialogue with the audit firm and engagement team members about the auditor's work and relevant accounting or auditing issues identified by the inspectors.[3]

In crafting the inspection process under the Act, Congress opted to create a framework that was non-adversarial and would encourage cooperation between the PCAOB and

---

[2] *See generally* Second Amended Complaint for Violation of Federal Securities Laws, ¶¶ 5-18, Docket No. 211 (entered Mar. 15, 2010).

[3] *See generally* Report on the PCAOB's 2004, 2005, 2006, and 2007 Inspections of Domestic Annually Inspected Firms, PCAOB Release No. 2008-008, at 7-8 (Dec. 5, 2008) (App. Ex. B).

the accounting firms it regulates in order best to achieve the goal of improving the quality of public company audits.[4] Congress recognized that confidentiality of PCAOB inspections is critical to fostering constructive engagement with accounting firms, and chose to assure accounting firms that their cooperation and openness with the PCAOB could not be used against them by actual or prospective litigants, including by creating a broad privilege restricting the access that outsiders would have to documents and information related to the inspection process.[5]

The PCAOB has reported that its cooperative model is working to foster effective remediation of perceived deficiencies in audit quality control systems, resulting in increased quality and reliability of public company audits,[6] and that confidentiality has contributed to this success:

> The Board's initial experience ... validates the premise of the approach set out by Congress in Section 104(g)(2) of the Act. That legislative approach rested on the hypothesis that firms could be genuinely motivated by the prospect of keeping the Board's quality control criticisms *confidential*. The Board's initial experience with the larger firms supports that hypothesis. *Moreover, the firms were responsive to the Board's supervisory model, taking the initiative to engage constructively with the staff in an ongoing dialogue toward a result satisfactory to the Board, rather than emphasizing points of disagreement and taking an adversarial approach.*[7]

The PCAOB has stated that it benefits from this productive dynamic as a direct result of the confidentiality and privilege provisions in the Act.[8] Indeed, in its 2007 Annual Report, *supra* note 8, at 3, the PCAOB noted: "We increasingly are finding that the PCAOB can foster improvement in audit quality through the on-site dialogue the inspection process allows for."

---

[4] S. Rep. No. 107-205 at 9-10 (July 3, 2002) (App. Ex. C).

[5] *Accounting Reform and Investor Protection: Hearing on S. 2673 Before the S. Comm. on Banking, Housing, and Urban Affairs*, 107th Cong., 724 (2002) (App. Ex. D) (Statement of Shaun F. O'Malley, Chairman, 2000 Public Oversight Board Panel on Audit Effectiveness).

[6] Observations on the Initial Implementation of the Process for Addressing Quality Control Criticisms Within 12 Months After an Inspection Report, PCAOB Release No. 104-2006-078, at 2 (Mar. 21, 2006) (App. Ex. E).

[7] *Id.* (emphasis added).

[8] PCAOB 2007 Annual RepLort at 3 (App. Ex. F).

III. PLAINTIFFS' SUBPOENAS FOR DOCUMENTS RELATED TO THE PCAOB'S 2007 INSPECTION OF KPMG'S AUDIT PRACTICE.

Plaintiffs have served document subpoenas, under Fed. R. Civ. P. 45, on KPMG and two of its professionals (App. Exs. G, H, and I), as well as deposition subpoenas on the individuals (App. Exs. J and K) (all subpoenas collectively, the "Subpoenas"), concerning KPMG's professional services related to

Redacted

Plaintiffs have agreed to exclude correspondence between KPMG and the PCAOB and documents that KPMG "created specifically in response to a request from the PCAOB"; however, plaintiffs still insist that KPMG produce all other, internal documents concerning the PCAOB Inspection that KPMG did not send or produce to the PCAOB.

Beyond their requests to the KPMG Non-Parties, plaintiffs served a subpoena on the PCAOB, demanding that the Board produce documents related to its 2007 inspection of KPMG's audit practice, including, among other things, documents

Redacted

Tellingly, following discussions with counsel for the PCAOB about the privilege set forth in section 105(b)(5)(A), and in light of that privilege, plaintiffs' counsel withdrew that subpoena. (App. Ex. M.)

To be clear, KPMG has produced, and is producing, voluminous materials responsive to plaintiffs' requests.

Redacted

5.

Redacted

However, KPMG strongly objects to plaintiffs' effort to compel production of documents and deposition testimony concerning the PCAOB inspection process that has been made confidential and privileged by Congress under section 105(b)(5)(A) of the Act. KPMG has informed plaintiffs' counsel that it considers the information subpoenaed to be privileged. Nevertheless, plaintiffs, who have withdrawn their subpoena to the PCAOB, have refused to withdraw their corresponding Subpoenas to the KPMG Non-Parties.[10] Accordingly, the KPMG Non-Parties must ask this Court to quash the Subpoenas to the extent that they call for documents and information related to the PCAOB Inspection.

## ARGUMENT

Federal Rule of Civil Procedure 45(c) instructs litigants to "avoid imposing undue burden" on non-parties, and directs courts to quash or modify a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to an undue burden." Fed. R. Civ. P. 45(c)(1), (3)(A)(iii), 3(A)(iv). Rule 26(c) further provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including, among other things, by "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1).

In addition to being privileged, the information called for by the Subpoenas has

---

[9] Plaintiffs have also demanded that KPMG produce any responsive documents in its possession, custody, or control that were generated by third parties, as well as communications between KPMG and third parties. As explained above, to the extent that such documents exist, independent of the PCAOB Inspection, KPMG is not asserting privilege under section 105(b)(5)(A).

[10] KPMG's compliance with the "meet and confer" requirement of Local Rule 37.2 is further detailed in the Motion being filed contemporaneously with this Memorandum.

no relevance to this litigation and the Subpoenas represent an unwarranted and unduly burdensome intrusion into the PCAOB inspection process, which is conducted by the PCAOB and accounting firms on the express understanding that it will be confidential as to third-party litigants like plaintiffs. For these reasons, to the extent that they call for documents and information related to the PCAOB Inspection, the Subpoenas should be quashed. *E.g., Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003); *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-42 (1st Cir. 2003).

I. TO ENSURE THE EFFECTIVENESS OF THE PCAOB INSPECTION PROCESS, THE SARBANES-OXLEY ACT CREATES AN EXPLICIT STATUTORY PRIVILEGE FOR DOCUMENTS AND INFORMATION RELATED TO PCAOB INSPECTIONS.

   A. Congress' Intent To Establish A Robust Privilege Is Demonstrated By The Act's Legislative History And In The Broad Statutory Language Creating The Privilege.

Congress established the PCAOB "to provide for more effective oversight of the part of the nation's accounting industry that audits public companies."[11] The PCAOB inspection process is the principal means by which the Board accomplishes that oversight. To that end, section 105(b)(5)(A) of the Act provides broadly that:

> [A]ll documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection ... , ***shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court*** or administrative agency ....

15 U.S.C. § 7215(b)(5)(A) (emphasis added). As the PCAOB itself has stated, the Act "reflects a legislative policy choice favoring the correction of quality control problems over the exposure of them."[12] The legislative history of the Act likewise demonstrates that Congress intended to keep documents and information relating to the PCAOB's inspection process confidential and

---

[11] S. Rep. No. 107-205, *supra* note 4, at 4.

[12] The Process for Board Determinations Regarding Firms' Efforts to Address Quality Control Criticisms in Inspection Reports, PCAOB Release No. 104-2006-077, at 2 (Mar. 21, 2006) (App. Ex. N).

"privileged from outsiders" and "out of the hands of the litigating lawyers" in order to create a supervisory model of regulation built fundamentally on cooperation and dialogue.[13]

In crafting the Act, including the PCAOB inspection process, Congress was acutely aware that a robust evidentiary privilege for inspection-related materials—unequivocally foreclosing discovery of such materials in civil litigation such as this—was an essential ingredient of an effective regulatory regime. Indeed, the lack of such protection afforded to the PCAOB's predecessor, the Public Oversight Board ("POB"), had been a key cause of that agency's regulatory ineffectiveness. Congress heard testimony that the POB's oversight efforts had been "hampered by distrust and by concerns that the materials developed were not protected,"[14] and that the effectiveness of enforcement efforts was greatly limited because "firms will not disclose documents or other information that is likely to wind up in the hands of litigants in legal proceedings."[15]

The inability of the POB to provide confidentiality caused its investigatory and enforcement activities to be significantly delayed, as investigations could not effectively begin until any private litigation had been concluded.[16] As the POB explained:

---

[13] S. Rep. No. 107-205, *supra* note 4, at 10 and Hearing on S. 2673, *supra* note 5, at 377 (Statement of John H. Biggs, Chairman, President, and CEO, Teachers' Insurance and Annuity Association), respectively.

[14] Hearing on S. 2673, *supra* note 5, at 724 (Statement of Shaun F. O'Malley, Chairman, 2000 Public Oversight Board Panel on Audit Effectiveness).

[15] *Id.* at 987 ("The Road to Reform: A White Paper From The Public Oversight Board On Legislation to Create a New Private Sector Regulatory Structure for the Accounting Profession").

[16] *Id.* at 799 (Statement of Bevis Longstreth, Member of the O'Malley Commission, Former Commissioner of the Securities & Exchange Commission, 1981-84; Retired Partner, Debevoise & Plimpton). *Id.* at 987 ("The Road to Reform, A White Paper from the Public Oversight Board on Legislation to Create a New Private Sector Regulatory Structure for the Accounting Profession"). A member of the POB itself echoed these concerns, testifying that a new privilege was needed "to keep the information gathered out of the hands of the litigating lawyers." *Id.* at 377 (Statement of John H. Biggs, Chairman, President, and CEO, Teachers' Insurance and Annuity Association).

> One reason for the delay in the current system stems from the fact that those charged with administering the system lack privilege to ascertain facts. Privilege would give the investigative entity the authority to protect information it uncovers from outside demands until any enforcement action is concluded. At present, firms will not disclose documents or other information that is likely to wind up in the hands of litigants in legal proceedings.[17]

Several witnesses also testified that oversight of the accounting profession would best function, and the problem of delay would be best addressed, if Congress created "a privilege from discovery of investigative files to facilitate auditing discipline during the pendency of other Government or private litigation."[18]

Congress addressed all of these concerns head-on in the Act. First, Congress made clear in section 104(d)(1) that inspections could proceed as to "audit engagements that are the subject of ongoing litigation or other controversy between the firm and 1 or more third parties." 15 U.S.C. § 7214(d)(1) (App. Ex. A). This provision alleviates the delay that caused disciplinary and other enforcement mechanisms to be ineffective in the prior oversight models. An essential accompaniment to that provision, however, was the privilege set forth in section 105(b)(5)(A). That privilege, previously lacking, protects documents and information related to PCAOB inspections from being "subject to civil discovery or other legal process" or being used "in any proceeding in any Federal or State court or administrative agency" and is precisely the protection that had been widely urged on Congress. 15 U.S.C. § 7215(b)(5)(A).

   B. Section 105(b)(5)(A) Creates A Broad Privilege That Applies To Material Held By Inspected Firms Including Internal Firm Documents Related to the Inspection Process.

As explained above, section 105(b)(5)(A) provides that protected, inspection-related documents and information are "confidential and privileged as an evidentiary matter (and

---

[17] *Id.* at 987 ("The Road to Reform, A White Paper from the Public Oversight Board on Legislation to Create a New Private Sector Regulatory Structure for the Accounting Profession").

[18] *Id.* at 579 (Statement of Joel Seligman, Dean and Ethan A.H. Shepley University Professor, Washington University School of Law); *see also id.* at 800 (Statement of Bevis Longstreth (identifying as key criterion for regulatory body "[p]rivilege from discovery of investigative files")).

shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court ...." 15 U.S.C. § 7215(b)(5)(A). The phrase "civil discovery or other legal process" plainly encompasses subpoenas, such as those issued by plaintiffs here, under Fed. R. Civ. P. 45.

The language used by Congress to define the materials that are confidential and privileged under the Act is broad and clearly extends to the materials subpoenaed by plaintiffs. Section 105(b)(5)(A) protects both "*all documents*" and "*all information*" that are "prepared or received by or specifically for the Board ...." 15 U.S.C. § 7215(b)(5)(A). Section 105(b)(5)(A) further protects the deliberations of the Board and its employees and agents. *Id.* In order to give proper effect to the privilege intended by Congress and the broader statutory scheme of which it is part, section 105(b)(5)(A) must be read to encompass all documents and information that reflect the substance of the inspection process and the interaction between the PCAOB and the accounting firms subjected to inspections. *See Director, Office of Workers' Comp. Programs, U.S. Dept. of Labor v. Forsyth Energy, Inc.*, 666 F.2d 1104, 1107 (7th Cir. 1981) ("In interpreting a statute, this court's function '... is to give effect to the intent of Congress.'") (quoting *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940)). Much of such material will be "prepared or received by or specifically for the Board"; all of such material will be inextricably intertwined with—if not directly reciting—the "deliberations of the Board and its employees and agents," 15 U.S.C. § 7215(b)(1)(A), whether in the form of communications between the accounting firm and the inspectors or internal accounting firm documents discussing PCAOB inquiries, comments, or suggestions, or reflecting actions taken by the accounting firm in response to such communications.

Plaintiffs assert that internal KPMG documents that were not provided to the PCAOB are beyond the scope of section 105(b)(5)(A). (App. Ex. O.) There is no support in the statute for such a construction. To the contrary, Congress explicitly directed that both material "received by ... the Board" *and* material "prepared ... specifically for the Board" would be protected. This necessarily means that the privilege extends beyond material provided to the

10

Board; if it did not, the words "prepared ... specifically for the Board"—on top of the words "received ... by the Board"—would be meaningless surplusage, contrary to the fundamental canon of interpretation that a statute must be interpreted in a manner that gives effect to every word. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001).[19]

Moreover, established case law addressing other evidentiary privileges consistently extends protection to *all* materials that could reveal privileged content; reasoning that applies fully to the PCAOB inspection privilege and comports with the intent behind Congress' creation of the broad privilege in section 105(b)(5)(A).[20] In order for that section to have meaningful effect, the privilege it creates must extend to internal documents and information created by an accounting firm in connection with a PCAOB inspection, for such materials necessarily recite or reflect much, if not all, of the same substantive information as those that are transmitted to or prepared specifically for transmission to the PCAOB or that otherwise reflect the work of the inspectors (*i.e.*, the "deliberations" of the Board's agents). During the inspection process, accounting firms are expected to analyze, discuss, and address observations made by the PCAOB inspectors, and to proactively engage in self-evaluation and

---

[19] Indeed, if section 105(b)(5)(A) conferred protection as narrow as plaintiffs suggest, civil litigants—such as plaintiffs here—could routinely end-run Congress' intent by seeking to compel production of documents from an accounting firm that constitute, recite, or otherwise disclose the substance of the inspectors' communications with the firm. *E.g.*, *In re Atlantic Fin. Fed. Sec. Litig.*, No. 89-645, 1992 WL 50074, *4 (E.D. Pa. Mar. 3, 1992) (App. Ex. P) (holding, as to privilege applied to documents produced during bank examinations by Office of Thrift Supervision, that "[p]lainly, to prohibit disclosure only of those materials generated by the [OTS] as a result of the examination while allowing discovery of responsive documents prepared by the financial institution would circumvent the objective of the regulation—to protect the confidentiality of the examination process"). The statute cannot be interpreted to create such an illogical result. *See Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 343 (1994).

[20] *E.g.*, *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567-68 (7th Cir. 1990) (holding that otherwise unprivileged information must be protected by attorney-client privilege if "disclosure would be tantamount to revealing the premise of a confidential communication"); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (same as to deliberative process privilege); *Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993) (same as to bank examination privilege); *Hetter v. Eighth Judicial Dist. Court*, 874 P.2d 762, 764 (Nev. 1994) (same as to physician-patient privilege).

consider the need for remedial actions or quality improvements.[21] Because such internal documents and communications occur only as a result of the inspection and directly or indirectly reflect the substance of the PCAOB inspectors' own work, such documents must be entitled to the same protections, lest the privilege that Congress created be rendered dead letter.[22]

If litigants can compel production of materials related to the PCAOB's confidential inspection process notwithstanding section 105(b)(5)(A), open and constructive engagement between the PCAOB and accounting firms could be chilled by the threat of increased civil litigation, and the statutory framework carefully crafted by Congress to improve the quality of public company audits could be frustrated. It defies logic to think that Congress chose to protect the free flow of information in the PCAOB inspection process with the privilege set forth in section 105(b)(5)(A), yet left litigants free to compel non-party accounting firms to divulge the same information contained in their internal documents. Congress cannot be presumed to permit indirectly what it prohibits directly, *see Dep't of Rev. of Or.*, 510 U.S. at 343, and there is no basis in law or reason for such an interpretation, which "would produce an absurd and unjust result which Congress could not have intended." *Clinton v. City of New York*, 524 U.S. 417, 429 (1998).

For these reasons, this Court should conclude that any documents and information

---

[21] The statutory privilege set forth in section 105(b)(5)(A) effectively codifies, among other concepts, the privilege for self-evaluative measures that several courts have recognized. *E.g., Dowling v. Am. Haw. Cruises, Inc.*, 971 F.2d 423, 425-26 (9th Cir. 1992) (describing privilege as to information resulting from party's "critical self-analysis" where "the public [has] a strong interest in preserving the free flow of the type of information" subject to the privilege). The statute thus should be interpreted in a manner consistent with the reasoning that has led courts to recognize that privilege—namely, the promotion of self-critical analysis and remediation. *See Coates v. Johnson & Johnson*, 756 F.2d 524, 552 (7th Cir. 1985) ("Allowing self-critical evaluations to remain confidential is thought to assure fairness to persons who have been required by law to engage in self-evaluation ... and to make the self-evaluation process more effective by creating an effective incentive structure for candid and unconstrained self-evaluation") (ellipsis in original; citation and internal quotation marks omitted).

[22] *See Shoen v. Shoen*, 5 F.3d 1289, 1294 (9th Cir. 1993) (rejecting arguments for limiting evidentiary privilege where such limitation would "substantially undercut the public policy favoring the free flow of information that is the foundation for the privilege") (quoting *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980)).

within KPMG's possession, custody, or control that relate to the PCAOB Inspection are privileged and protected from disclosure by section 105(b)(5)(A) of the Act; quash the Subpoenas to the extent that they call for such documents and information; and grant the requested protective order with respect to the depositions of Messrs. Pratt and Parrott.[23]

## II. DOCUMENTS AND INFORMATION RELATING TO THE PCAOB'S INSPECTION OF KPMG'S AUDIT PRACTICE ARE IRRELEVANT TO THIS LITIGATION.

KPMG's motion to quash should be granted for the additional reason that documents and information relating to the PCAOB's inspection of KPMG's audit practice cannot lead to the discovery of admissible evidence, and are without evidentiary value. Further, such a request is overly burdensome on KPMG as a non-party.

PCAOB inspections of registered accounting firms are conducted to "assess the degree of compliance of each registered public accounting firm and associated persons of that firm with the Act, the Board's rules, the rules of the Commission, and professional standards, in connection with its performance of audits, issuance of audit reports, and related matters involving issuers." PCAOB Rule 4000(a) (App. Ex. R). The PCAOB's concern, therefore, is whether registered public accounting firms perform their audits in accordance with professional standards. But violations of accounting and auditing standards generally are insufficient to

---

[23] Plaintiffs have also demanded that the KPMG Non-Parties produce a privilege log identifying all documents that it is refusing to produce under section 105(b)(5)(A). Federal Rule of Civil Procedure 45(d)(2)(A) requires only that "a person withholding subpoenaed information under a claim that it is privileged ... describe the nature of the withheld documents ... in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Plaintiffs' demand that KPMG provide a detailed log of documents related to the PCAOB's inspection itself constitutes an improper and unduly burdensome attempt by plaintiffs to pry into materials that section 105(b)(5)(A) explicitly places beyond the bounds of "civil discovery or other legal process ...." 15 U.S.C. § 7215(b)(5)(A); *see also* Fed. R. Civ. P. 26(b)(5)(A) (description of withheld material required only where a party "withholds information *otherwise discoverable*") (emphasis added); *SEC v. Thrasher*, No. 92-cv-6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) (App. Ex. Q) (holding that a court "may permit the holder of withheld documents to provide summaries of the documents by category or otherwise to limit the extent of his disclosure. This would certainly be the case if (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded.").

support a claim of securities fraud. *See Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 797 (N.D. Ill. 2007) (noting that "allegations of GAAP violations, the restatement of income, or statements regarding the internal controls of a company that are later proven to be false, are not sufficient to demonstrate that those who made the statements committed securities fraud"). Further, the PCAOB has warned against using documents and information relating to its inspections in legal proceedings: "[T]he Board emphasizes that an inspection report's descriptions of departures from professional standards are not a result of an adversarial adjudicative process and do not constitute conclusive findings of fact or of violations for purposes of imposing legal liability." Statement Concerning the Issuance of Inspection Reports, PCAOB Release No. 104-2004-001 (Aug. 26, 2004) (App. Ex. S). Because KPMG is not a party here, material related to the PCAOB Inspection is even further removed—it reflects no more than the Board's views on the conduct of KPMG's audit work, but KPMG's conduct is not at issue in this litigation.

Rather, the only information from KPMG that could possibly be relevant to plaintiffs' claims are what communications, if any, took place between KPMG Redacted But plaintiffs have other, less burdensome, ways of obtaining this information. As an initial matter, information concerning communications between KPMG and Redacted would be available through discovery from defendants, and that reason alone is sufficient to justify quashing the subpoenas. *Morrow v. Air Ride Techs., Inc.*, No. 05-113, 2006 WL 559288, at *2 (S.D. Ind., Mar. 6, 2006) (App. Ex. T) ("Absent such assurances of unavailability of this information from this less burdensome source [*i.e.* the defendant], this Court is reluctant to allow the Plaintiffs to jettison the burden of production on a non-party."). In addition, plaintiffs have separately requested, and KPMG has produced and is continuing to produce, certain audit workpapers and other nonprivileged information pertaining to Motorola's accounting for and disclosure of the two IP licensing transactions, entered into in the quarter ended September 30, 2006, upon which plaintiffs partly base their claims against Motorola and the individual defendants. The irrelevant and burdensome nature of plaintiffs' Subpoenas is an

additional basis upon which KPMG's motion to quash should be granted.[24]

## CONCLUSION

For the reasons set forth above, the KPMG Non-Parties respectfully request that the Court enter an order (1) quashing the Subpoenas to the extent that they call for production of documents received from or communicated to the PCAOB as part of the PCAOB Inspection, or prepared as a result of the PCAOB Inspection or otherwise related to the PCAOB Inspection; and (2) precluding plaintiffs from questioning KPMG, through Messrs. Pratt and Parrott or any other witness, regarding the PCAOB inspection process and KPMG's responses to that process.

Dated: May 4, 2010

Respectfully submitted,

KPMG LLP, DAVID PRATT, AND DENNIS PARROTT

/s/ Jeffrey C. Sharer

James R. Figliulo (ARDC No. 6183947)
Stephanie D. Jones (ARDC No. 6220362)
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois 60603
(312) 251-5262

Counsel for Non-Parties KPMG LLP,
David Pratt, and Dennis Parrott

Scott R. Lassar (ARDC No. 1586270)
Jeffrey C. Sharer (ARDC No. 6239167)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Michael C. Kelley (*pro hac vice* application pending)
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000

Counsel for Non-Parties KPMG LLP, David Pratt, and Dennis Parrott

---

[24] This is particularly true given the additional protections against unnecessary and irrelevant discovery that are afforded to KPMG as a non-party under the Federal Rules. *See* Fed. R. Civ. P. 45(c); *see also Mintel Int'l Group, Ltd. v. Neerghen*, No. 08-3939, 2009 WL 249227, at *6 (N.D. Ill. Feb. 3, 2009) (App. Ex. U) ("Restrictions on discovery may be broader where a nonparty is the target of the discovery."); *Patterson v. Burge*, No. 03-4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005) (App. Ex. V) (same).

## CERTIFICATE OF SERVICE

I, Jeffrey C. Sharer, one of the attorneys for Non-Parties KPMG LLP, David Pratt, and Dennis Parrott, hereby certify that on May 6, 2010, service of the foregoing Memorandum in Support of the KPMG Non-Parties' Motion to Quash or Modify Subpoena and for Protective Order was accomplished pursuant to ECF as to Filing Users and in compliance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ Jeffrey C. Sharer
Jeffrey C. Sharer