UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ERIC SILVERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 1:07-cv-04507 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge St. Eve Magistrate Judge Mason |
| MOTOROLA, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE
PRODUCTION OF DOCUMENTS FROM KPMG, LLP

Pursuant to Fed. R. Civ. P. 26(b)(3), 34, 37(a) and 45, class representatives Macomb County Employees' Retirement System and St. Clair Shores Police and Fire Pension System (hereinafter, "plaintiffs") respectfully submit this memorandum in support of their Motion to Compel the Production of Documents from KPMG, LLP ("KPMG").

## I.   INTRODUCTION

This motion concerns plaintiffs' requests for relevant documents in KPMG's possession, custody or control pertaining to Motorola's accounting and disclosure of two 3Q06 IP licensing transactions with Freescale and Qualcomm.  The IP transactions boosted Motorola's reported operating earnings by $405 million and obfuscated losses the Company was suffering as a consequence of severe, but undisclosed, 3G handset development problems.  *See* Dkt. No. 208, Second Amended Complaint for Violation of Federal Securities Laws ("Second Amended Complaint"), ¶¶9-12, 152-179.[1]  In response to plaintiffs' allegations, defendants have asserted the affirmative defense of reasonable reliance upon "professionals" and "outside consultants," particularly with respect to the accounting and disclosure of the 3Q06 IP arrangements.  Dkt. Nos. 69 at 91; 220 at 126.  Those professionals include Motorola's independent auditor, KPMG.

In December 2009, plaintiffs served their document subpoena on KPMG, which sought, *inter alia*, quarterly review and audit workpapers related to the accounting and disclosure of the 3Q06 IP transactions.  It was not until March 22, 2010 that plaintiffs received KPMG's production of a limited subset of workpapers[2] concerning the 3Q06 IP transactions.  On April 1, 2010, after a detailed review and analysis of the narrow 400-page production, and in light of defendants' renewed

---

[1]      *See also* Dkt. No. 200, February 24, 2010 Order (holding that documents regarding the 3Q06 IP arrangements are relevant to this litigation).

[2]      "Workpapers" are records kept by KPMG evidencing the procedures applied, the tests performed, the information obtained and the pertinent conclusions reached by the auditor for an engagement.

reliance on KPMG, plaintiffs requested that KPMG produce additional responsive 3Q06 quarterly review and 2006 audit workpapers.  KPMG refused.  And, over the course of several weeks, KPMG has refused every reasonable offer of compromise extended by plaintiffs.  KPMG, moreover, has no choice but to concede that it will suffer no undue burden in producing full sets of 3Q06 quarterly review and 2006 audit workpapers as they are readily accessible and easily produced.[3]  *See* Declaration of Patricia Gleitsmann in Support of Plaintiffs' Motion to Compel the Production of Documents from KPMG, LLP ("Gleitsmann Decl.").

The June 30, 2010 fact discovery cut-off is rapidly approaching.  KPMG has full knowledge of this fact and has blocked plaintiffs' efforts to procure timely production of key evidence concerning Motorola's 3G failures and the sham 3Q06 IP transactions concocted by defendants to conceal the impact of those failures from investors.  Plaintiffs intend to depose KPMG witnesses in the next several weeks and the documents at issue are critically important to the conduct of those depositions.[4]  KPMG's obstruction is now only serving to prejudice plaintiffs' ability to get relevant facts into the record.  Plaintiffs, therefore, respectfully request that this Court order KPMG to produce the complete set of Relevant Workpapers without further delay.[5]

---

[3]     KPMG is required, by law, to assemble and separately maintain full and complete sets of final quarterly review and audit workpapers for seven years.  Public Company Accounting Oversight Board ("PCAOB") Statement No. 3, ¶¶14-15.  In addition, plaintiffs have agreed to reimburse KPMG for reasonable production and copying costs.

[4]     On April 20, 2010, plaintiffs served relevant KPMG personnel – the audit partner and a key audit manager – with deposition subpoenas.  KPMG's counsel also represents Messrs. Parrott and Pratt, the recipients of the noted deposition subpoenas.  To date, counsel for Messrs. Parrott and Pratt has yet to confirm available dates for the depositions, despite promising to do so by the end of April.

[5]     For purposes of plaintiffs' motion, "Relevant Workpapers" has the same meaning as those documents plaintiffs have set out in the Proposed Order, filed herewith.

## II.      RELEVANT PROCEDURAL HISTORY

On December 15, 2009, plaintiffs served their subpoena on KPMG out of this Court.  *See* Ex. B.  In January 2010, plaintiffs and KPMG conducted several meet and confers to discuss the relevance of the documents sought by plaintiffs' subpoena, largely coming to agreement as to the scope of KPMG's initial production.  Ex. C.  At the same time, however, defendants in this case were disputing the relevance of the 3Q06 IP transactions and plaintiffs were forced to bring a motion to compel Motorola to produce documents regarding the arrangements.  *See* Dkt. No. 158.  KPMG immediately seized upon the opportunity to slow the production of documents and, in a joint effort with defendants, protested that KPMG ought not produce any materials until the Court decided the underlying issue.  *See* Exs. D and E.  Accordingly, plaintiffs reluctantly agreed to hold the KPMG subpoena in abeyance until the Court had the opportunity to issue an order.

In the interim, however, plaintiffs remained diligent in working to resolve any dispute regarding KPMG's discovery obligations.  Specifically, on January 21, 2010, in order to clarify KPMG's obligations, minimize burden and expedite discovery, KPMG and plaintiffs agreed that hard copies of relevant workpapers would be produced within 15 days of a favorable Court ruling concerning the 3Q06 IP agreements.  *See* Ex. E.  Plaintiffs and KPMG also agreed that the auditor would produce relevant electronic discovery (*e.g.*, email communications and other electronic documents) within 40 days of the Court's ruling.  *Id.*  On February 24, 2010, the Court granted plaintiffs' Motion to Compel in large part.  *See* Dkt. No. 200.  That day, plaintiffs sent KPMG's counsel a copy of the February 24, 2010 Order.  On March 12, 2010, KPMG provided the narrow, 400-page production of workpapers to defendants, but not plaintiffs, purportedly so defendants could review the workpapers for privileged material.  Finally, on March 19, 2010, KPMG produced the subset of workpapers to plaintiffs (no documents were withheld as privileged).

- 3 -

Immediately after receiving the documents, plaintiffs reviewed and analyzed the sufficiency of KPMG's initial production of workpapers.  At the same time, defendants served their answer to the Second Amended Complaint.  Dkt. No. 220.  Accordingly, on April 1, 2010, plaintiffs' counsel contacted KPMG regarding the deficiency of the March 19, 2010 production.  Ex. F.  Among other things, plaintiffs informed KPMG that, given allegations of a $1.0 billion operating earnings gap defendants had forecast for 2H06 as a result of the 3G product development problems and in light of the $405 million in sham 3Q06 IP transactions defendants utilized to conceal the operating earnings gap from investors, highly relevant portions of the workpapers had not been produced.  *Id.*

On April 1, 2010, plaintiffs specifically requested that KPMG produce those workpapers related to the Motorola Mobile Devices business ("MDb") financial accounts directly impacted by the 3Q06 IP arrangements, as well as KPMG's audit procedures, audit checklists and MDb and certain corporate administrative audit files.[6]  *Id.*  On the same day, counsel for plaintiffs and KPMG agreed to conduct a meet and confer on April 7 regarding plaintiffs' request for a production of Relevant Workpapers.  *Id.*  On April 5, 2010, however, KPMG informed plaintiffs that in light of

---

[6]     It is plaintiffs' understanding that KPMG maintains "administrative files" in its audit workpapers associated with both the MDb and Motorola corporate audits.  The specific administrative files plaintiffs seek here are the "Company and Business," "Engagement Management," "Completion," "Planning," and "Specific Topics APG" audit files.  The purpose of the administrative files is to document important items mandated by professional auditing standards, including such items as the auditor's evaluation of its ability to rely on management's representations, assessment of the likelihood of fraud or improper accounting in different subsidiary accounts, audit work plans for individual subsidiaries and their accounts, an understanding of recent important business trends, a compilation of accounting errors found at the subsidiary and corporate level that were not corrected, deficiencies in internal control noted, significant issues flagged for the attention of the audit partner, the assessment of materiality thresholds, and communications with management and the board of directors.

- 4 -

recent "developments in this case," it would be unable to meet and confer on April 7 and that it had "hired counsel to assist us."[7]  Ex. G

Despite these setbacks, plaintiffs continued to work in good faith with KPMG to secure the production of Relevant Workpapers.  KPMG's delay tactics, however, persisted.  On April 8, 2010, plaintiffs offered to enter into a stipulation confirming that all workpapers relevant to the 3Q06 IP arrangements had been produced, thus eliminating the need for production of all MDb final workpapers.  *See* Ex. H.  ***KPMG said no***.  On April 16, 2010, plaintiffs and KPMG conferred again. At the end of the call, and in order to facilitate further discussion, plaintiffs requested that KPMG produce indices of the Relevant Workpapers.  Over a week later, on April 25, 2010, KPMG finally produced the indices.  *See* Ex. A.

Thereafter, on April 26, 2010, plaintiffs and KPMG conferred once again.  Based on the indices produced by KPMG, plaintiffs identified specific categories of workpapers that KPMG could exclude from its production in order to address purported issues of relevance.  Specifically, plaintiffs stated they did not seek the tax, accounts payable, miscellaneous liabilities and warranty sections of the final workpapers.  *See id*. at 4.  Plaintiffs then offered detailed explanations why the remaining categories of workpapers would likely contain relevant materials.  ***KPMG contested each***, rejecting virtually every explanation offered by forensic accountants with decades of experience.  KPMG's counsel conceded, however, that the indices did not accurately reflect the universe of audit workpapers in KPMG's possession (this informational dissymmetry clearly prejudiced plaintiffs).

---

[7]  Also on April 5, plaintiffs' counsel requested KPMG confirm that it had produced electronic documents to defendants, as previously agreed on, within 40 days, of the February 24, 2010 Order. Ex. G. In response, KPMG's counsel conceded that the firm had not done so and would not be producing the documents as previously agreed.  *Id*.  After several meet and confers with KPMG's outside counsel regarding the auditor's electronic documents, plaintiffs extended the April 5, 2010 deadline to April 27, 2010.  KPMG produced its responsive electronic documents to Motorola for defendants' "privilege review" on April 30, 2010.  To date, plaintiffs still have not received these documents.

- 5 -

Nevertheless, plaintiffs proposed yet another compromise.  Finally, plaintiffs requested that KPMG allow them to review the Relevant Workpapers on an attorneys-eyes-only basis at KPMG's facilities and, based on that review, plaintiffs would identify the relevant workpapers for production.  ***KPMG, again, said no***.[8]  As a result of KPMG's failure to produce the relevant workpapers, plaintiffs are forced to bring this motion to compel.

## III.   ARGUMENT

### A.      Standards Governing Discovery

The Federal Rules of Civil Procedure specifically provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" or that are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Federal Rules "'permit the broadest possible scope of discovery.'" *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 566 (7th Cir. 1984).[9]  KPMG's final 3Q06 quarterly review and 2006 audit workpapers squarely fall within the broad confines of Fed. R. Civ. P. 26(b)(1).

Because KPMG contests the discovery at issue, it must make a factual showing of undue burden.  *See Hogdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007).  KPMG will be unable to do so.

### B.      KPMG Will Suffer No Undue Burden in Producing Complete Sets of Final Quarterly Review and Audit Workpapers

Plaintiffs have already agreed to reimburse KPMG for all reasonable production and copying costs.  Further, at no time has KPMG, or its counsel, asserted that the documents at issue here are not

---

[8]      KPMG's counsel insisted that "no rational auditor" would ever agree to such a procedure.  In fact, on numerous occasions, plaintiffs' counsel has engaged in just such a review.  *See, e.g.*, Exs. I - K (Arthur Andersen LLP, Ernst & Young LLP and PwC LLP have all so agreed.).

[9]      Unless otherwise noted, all internal citations are omitted.

readily accessible as they are kept in the ordinary course of business. For good reason, KPMG may

not make such an assertion. Public auditors are required to maintain complete sets of quarterly

review and audit documentation in readily accessible format for at least seven years after the audit

period. *See* PCAOB Statement No. 3, ¶¶14-15. KPMG, therefore, will not be unduly burdened by

an order requiring immediate production of complete sets of the Relevant Workpapers as they are

kept in the ordinary course of business.

Further, plaintiffs seek production of the Relevant Workpapers for **only** MDb and a small

sub-section of the corporate workpapers, **not** the entire Company (*i.e.*, not for Motorola's Networks

and Enterprise and Connected Home Solutions business segments). Accordingly, the relief plaintiffs

seek here is tailored to minimize any burden on KPMG.

> **C.     KPMG's Quarterly Review and Audit Workpapers Are Highly
>          Relevant as to Whether Defendants Appropriately Accounted for and
>          Disclosed the 3Q06 IP Licensing Transactions**

In order to appropriately analyze: (a) the financial implications of severe 3G product

development problems; (b) the accounting and disclosure issues associated with the 3Q06 IP

transactions utilized by defendants to conceal the financial impact of the 3G product problems; and

(c) defendants' reasonable reliance on the advice of their auditor, KPMG should produce full and

complete sets of workpapers as they are "interdependent and make up a single, integral whole." *In*

*re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 89-0894X, 1991 U.S. Dist. LEXIS 14486, at *8-*9

(N.D. Ohio June 21, 1991). *See also Robin v. Doctors Officenters Corp.*, No, 84-10798, 1986 U.S.

Dist. LEXIS 22836, at *2-*5 (N.D. Ill. July 16, 1986) (ordering full sets of workpapers to be

produced). Here, a former audit partner of Price Waterhouse agrees that a review of the full set of

KPMG's MDb audit workpapers is appropriate given the allegations in this case. *See* Gleitsmann

Decl., ¶¶6-15. Importantly, an incomplete production of workpapers may render them misleading,

as the workpapers could be taken out of context or misinterpreted during the fact-finding process.[10]
*Id.*, ¶¶16-17.

In securities fraud cases, such as this one, courts have ordered non-party auditors to produce complete sets of workpapers. *See, e.g.*, *Goodyear*, 1986 U.S. District LEXIS 14486, at *10 ("piecemeal review of certain workpapers would not adequately serve the function of indentifying the relevant information for use in the principal litigation"); *Cooperman v. Fairfield Cmty., Inc.*, No. LR-C-90-464, 1992 U.S. Dist. LEXIS 22877, at *6 (E.D. Ark. May 13, 1992) (noting that "[a non-party auditor's] observations . . . regarding [the defendant's] financial condition are relevant [and] [t]he observations and conclusions are contained in [the auditor's] integrated set of workpapers, which . . . in order for any part of them to be properly understood, must be produced in their entirety"); *Fein v. Numex Corp.*, 92 F.R.D. 94, 96 (S.D.N.Y. 1981) (holding that a non-party accounting firm must produce full sets of workpapers where the defendant's financial condition, at the time of the audits, was at issue).

Beyond KPMG's tacit admissions that the workpapers produced to date are incomplete, there is ample basis for compelling KPMG to produce a complete set of the Relevant Workpapers. As KPMG was conducting its 3Q06 quarterly review and 2006 audit, Motorola's 3G business was suffering from severe development problems and massive operating earnings losses. *See* Dkt. No. 208, ¶¶17H-Q. As a result, defendants executed the two sham IP transactions exceeding $400 million in earnings to conceal the 3G product development problem and associated operating

---

[10]     The American Institute of Certified Public Accountants ("AICPA") agrees and instructs its members, including KPMG, that workpapers "should be viewed as an integrated presentation of information."  AICPA Auditing and Accounting Manual §6300.02. Indeed, a key purpose of plaintiffs' proposed stipulation, was to preclude KPMG deponents and defendants' experts from testifying that portions of the workpapers, which were not produced, could evidence relevant audit procedures KPMG may or may not have performed. *See* Ex. H, ¶¶1-2 .  Given KPMG's refusal to so stipulate, the subset of workpapers produced is clearly deficient.

earnings drag from investors.  *Id.*, ¶¶17R, 152-179.  As a result of the size and scope of the 3G problems and IP arrangements, MDb's financial statements were globally infected by these serious issues.  *Id.*  As a result, KPMG's audit procedures should have identified these material business risks and should have included detailed analysis of material fluctuations in nearly every line item of MDb's Class Period financial statements.  Further, the absence of documents evidencing KPMG procedures is relevant in determining what procedures KPMG **did not do**.  *See* Gleitsmann Decl., ¶¶14-15.  For KPMG to argue that plaintiffs' requests are too broad, therefore, is untenable.

KPMG's limited production of workpapers further proves that the auditor only produced a sliver of the universe of Relevant Workpapers.  Based on plaintiffs' review, and KPMG's workpaper index itself (*see* Ex. A), KPMG has omitted from its production large swaths of relevant materials.[11] By way of example:

- **KPMG produced nothing** from its "A – Engagement Management" workpapers, which would include critical documents evidencing communications with Motorola's Audit Committee and communications with management regarding the MDb's 3G financial performance and the 3Q06 transactions (Ex. A at 2);

- **KPMG produced nothing** from its "B – Completion" workpapers, which would include audit checklists (*i.e.*, what KPMG did or did not do during its procedures), summary of audit differences (which should identify and analyze problematic accounting issues), final business analytics (unusual financial trends), summaries of control deficiencies at Motorola (such as the accounting and disclosure of the 3Q06 transactions) and documents evidencing management's evaluation of the MDb business (*id.* at 3);

- **KPMG failed to produce** the vast majority of documents from its "C – Planning" workpapers, which would include KPMG's audit planning materials (what KPMG planned to do given certain risk assessments), KPMG's materiality threshold, consultations with "External Experts" regarding significant issues, including the

---

[11]     *See also* Gleitsmann Decl., ¶16 (the documents produced are limited, apparently, to only those that directly reference the 3Q06 transactions and are fragments of the workpaper binders, making it difficult to determine from what context the documents were taken).

3Q06 IP transactions, as well as indices of documents Motorola provided to KPMG in connection with 3Q06 quarterly review and 2006 audit (*id.*);[12] and

- ***KPMG produced nothing*** from its "G – Financial Reporting" workpapers, which would include documents evidencing material trends in gross margin and operating earnings and how defendants determined what should be disclosed in the Company's financial statements, including the accounting for and disclosure of the 3Q06 IP transactions, and what revenue streams and earnings are to be separately broken out for investors in the Company's financial statements (*id.* at 4).

In fact, given that the transactions accounted for $410 million in revenue and over half of MDb's 3Q06 operating earnings, the 3Q06 IP deals would have materially impacted the following line items in MDb's income statement: (a) revenue; (b) cost of goods sold; (c) operating earnings; (d) income taxes;[13] and (e) net income, to name a few.  *See* Gleitsmann Decl., ¶¶8, 13.  The transactions would have also materially impacted MDb's balance sheet and statement of cash flow. For instance, with regard to the $135.4 million Freescale IP deal, Motorola simultaneously purchased over $100 million in "strategic inventory" (chips that, as Motorola told Freescale, was "stuff we don't need but agree to take anyway") from Freescale in order to fund Freescale's 3Q06 acquisition of IP.  As a result of this blatant, and unlawful, round-tripping of cash, MDb's accounts receivable, accounts payable, cash, and inventory accounts would have been materially impacted. This should be reflected in KPMG's workpapers if the truth was disclosed to the auditor.  Without doubt, the 3Q06 IP transactions had a far reaching impact on almost every line-item of MDb's

---

[12]    Significantly, Motorola's counsel have asserted in response to document requests, that the Company does not know and did not maintain a set of the documents given to KPMG in connection with the 3Q06 review and 2006 audit.

[13]    In conversations with KPMG's counsel, plaintiffs stated that they were willing to forego the production of income tax workpapers as further compromised. Yet, these workpapers appear to be relevant as well.  In October 2006, Motorola was considering, with the advice of KPMG, reporting the $275 million 3Q06 QCOM deal to tax authorities as "a wash" against royalty payments owed to QCOM for the purpose of eliminating income tax liability.

financial statements, all of which were within the scope of KPMG's audit procedures.  Thus, the

Relevant Workpapers are highly relevant and should be produced immediately.

> **D.      KPMG's Delay Tactics Has Prejudiced Plaintiffs' Ability to Fully
> Develop the Record**

Plaintiffs have patiently engaged KPMG to procure documents that are highly relevant to the

claims and defense in this action.  Over the course of several months, plaintiffs have extended the

auditor numerous reasonable offers of compromise.  KPMG has rejected them all.  Plaintiffs are

preparing to conduct depositions of relevant KPMG audit personnel and Motorola employees,

including defendants before the fact discovery cut-off of June 30, 2010.  The ability to assess what

KPMG actually did, ***and what it did not do***, will be critical for these depositions.  As such, the Court

has every reason to order the immediate production of full sets of the Relevant Workpapers.

## IV.     CONCLUSION

For the reasons stated herein, the Court should grant plaintiffs' motion in its entirety.  For the

Court's convenience, a Proposed Order is submitted herewith.

DATED:  May 10, 2010                              Respectfully submitted,

                                                  ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
                                                  MICHAEL J. DOWD
                                                  TOR GRONBORG
                                                  SUSAN G. TAYLOR
                                                  TRIG R. SMITH
                                                  JENNIFER L. GMITRO


                                                  _____
                                                          s/ TRIG R. SMITH
                                                          TRIG R. SMITH

                                                  655 West Broadway, Suite 1900
                                                  San Diego, CA  92101
                                                  Telephone:  619/231-1058
                                                  619/231-7423 (fax)

                                                  Lead Counsel for Plaintiffs

- 11 -

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel

VANOVERBEKE MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiffs

- 12 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 10, 2010.

s/ TRIG R. SMITH
TRIG R. SMITH

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: trigs@rgrdlaw.com

# Mailing Information for a Case 1:07-cv-04507

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **David K. Cole**
  courtnotification@mayerbrown.com

- **Michael J. Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **J. Timothy Eaton**
  teaton@shefskylaw.com,sfdocket@shefskylaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **Michael David Frisch**
  courtnotification@mayerbrown.com

- **Jennifer L. Gmitro**
  JGmitro@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **M. Sean Laane**
  sean.laane@aporter.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com

- **Kim Ann Leffert**
  courtnotification@mayerbrown.com

- **Elizabeth Leise**
  elizabeth_leise@aporter.com,john_massaro@aporter.com

- **Erin K. Lynch**
  elynch@shefskylaw.com

- **Richard A. Maniskas**
  sradcliffe@glancylaw.com

- **John C Massaro**
  john_massaro@aporter.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com

- **Matthew P Montgomery**
  mattm@csgrr.com

- **David A Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Joseph Russello**
  jrussello@csgrr.com

- **Stephen M Sacks**
  stephen_sacks@aporter.com

- **Jeffrey Charles Sharer**
  jsharer@sidley.com,efilingnotice@sidley.com

- **Michael P. Sheehan**
  msheehan@shefskylaw.com,sfdocket@shefskylaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,stremblay@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Susan G Taylor**
  SusanT@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James W. Thomas , Jr**
  james.thomas@aporter.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**D Seamus Kaskela**
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087

**Michael Kelley**
Sidley and Austin
555 West Fifth Street
40th Floor
Los Angeles, CA 90013