**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIC SILVERMAN, on behalf of himself and all others similarly situated, | Case No. 1:07-CV-04507 (Consolidated) |
| Plaintiff, | CLASS ACTION |
| v. | Honorable Amy St. Eve |
| MOTOROLA, INC., et al., | Magistrate Judge Michael T. Mason |
| Defendants. | |

---

**NON-PARTY KPMG LLP'S RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL**

---

James R. Figliulo (ARDC No. 6183947)
Stephanie D. Jones (ARDC No. 6220362)
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois  60603
(312) 251-5262

Counsel for Non-Parties KPMG LLP,
David Pratt, and Dennis Parrott


Scott R. Lassar (ARDC No. 1586270)
Jeffrey C. Sharer (ARDC No. 6239167)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

Michael C. Kelley
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California  90013
(213) 896-6000

Counsel for Non-Parties KPMG LLP, David
Pratt, and Dennis Parrott

Dated:  May 17, 2010

KPMG LLP ("KPMG"), a non-party to this case, submits this response in opposition to Plaintiff's Motion to Compel the Production of Documents.

## INTRODUCTION

This case arises out of allegations by Plaintiff that Motorola, Inc. and certain Motorola officers and directors (collectively, "Defendants" or "Motorola") failed to disclose certain information about its 3G mobile handheld portfolio. As part of its discovery, Plaintiff sought audit workpapers and other information from KPMG, the independent auditor who reviewed or audited Motorola's financial statements during the period of time at issue, in particular the workpapers and other documents dealing with Motorola's accounting for and disclosure of certain licensing agreements (the "3Q06 Agreements"). KPMG objected on relevance grounds, but entered into an agreement with Plaintiff to produce workpapers relating to the accounting for and disclosure of 3Q06 Agreements if the Court determined that Plaintiff could seek discovery regarding the 3Q06 Agreements from Motorola. The Court permitted that discovery, and thus KPMG produced the workpapers it had agreed to produce at the time agreed to.

In its current motion, Plaintiff repeatedly refers to KPMG's production as "deficient" and claims that KPMG, a non-party, is supposedly seeking to delay the case. Contrary to these accusations, the issue here has nothing to do with KPMG's compliance with the production Plaintiff and KPMG both agreed KPMG would make. Nor does it have anything to do with the relevance of the 3Q06 Agreements to the lawsuit, as KPMG has already produced the workpapers relating to the accounting for and disclosure of the 3Q06 Agreements. Instead, the only issue presented by Plaintiff's motion is whether KPMG should also produce numerous other workpapers, not related to the 3Q06 Agreements, which Plaintiff demanded in April 2010.[1] Because these workpapers are voluminous and deal with numerous aspects of KPMG's review and audit of Motorola's financial statements that are wholly unrelated to the parties' claims and defenses, and so were not addressed by the Court's earlier decision permitting limited additional discovery, KPMG asserts that it is improper to burden a non-party with such discovery.

---

[1] Indeed, Plaintiff's Motion expands its request to include certain workpapers, those relating to Motorola businesses other than Mobile Devices, that it did not seek from KPMG even in April. (See Plaintiff's Proposed Order ¶ 1(c), seeking workpapers not from Motorola's Mobile Devices business, and compare with Plaintiff's Exhibit H, demonstrating that even Plaintiff's expanded demand from KPMG was for "Mobile Devices" workpapers. See also proposed stipulation included in Plaintiff's Exhibit F, which states that Plaintiff's requested workpapers for the "Mobile Devices segment," and further acknowledges that Plaintiff's interest in these documents is based on what they demonstrate regarding Motorola's accounting for the 3Q06 Agreements.)

Plaintiff has not offered any cogent, reasonable explanation for expanding the production, let alone expanding it to essentially all workpapers.  Plaintiff's current claim that it cannot understand the limited workpapers produced without production of all other workpapers is disingenuous and – plainly – false, both as a general matter and with regard to the workpapers produced in this case.  Rather, it is clear that Plaintiff's strategy is to use KPMG's good faith agreement with Plaintiff to produce a subset of its workpapers, i.e., those related to the 3Q06 Agreements, as a pretext to obtain discovery of <u>all</u> of KPMG's workpapers.  KPMG has already represented – and here represents again – that all workpapers relating to the accounting and disclosure of the 3Q06 Agreements have been produced.  The balance of KPMG's workpapers have no bearing on the parties' claims and defenses.  In short, Plaintiff has gone fishing.  KPMG therefore respectfully requests that this Court deny Plaintiff's motion to compel.

## FACTUAL BACKGROUND

### A.      The Original Agreement and Production of Workpapers

Plaintiff first sought documents from KPMG in December 2009, with the service of the Subpoena.  (See Exhibit A.)   The Subpoena was vague and overly broad, and implicitly threatened to impose substantial production costs onto KPMG, leading to a variety of objections. (See Exhibit B.)   However, even before the resolution of these objections, the Subpoena demanded substantially less than what Plaintiff now seeks.  In particular, the Subpoena sought only documents relating to KPMG's review of Motorola's third quarter financial statements, and focused on those documents "associated with KPMG's review of the 3Q06 Agreements" and "Motorola's disclosure of the 3Q06 Agreements in [its] SEC filings."  (See Exhibit A, pp. 7-8.)

In January 2010, KPMG entered into discussions with Plaintiff regarding KPMG's burdensomeness and vagueness objections, in an effort to determine more precisely the documents that Plaintiff was seeking.   KPMG also requested information regarding the underlying case in order to understand how the documents sought were relevant.  As a result of these discussions, two agreements were reached:

<u>First</u>, Plaintiff and KPMG entered into an agreement as to the scope of the production, if any, to be made by KPMG.  Plaintiff and KPMG mutually agreed that the workpapers sought by Plaintiff were those relating to the disclosure and accounting of the 3Q06 Agreements.  (See Exhibit C, p. 1 (email dated 01/14/10).)  Significantly, Plaintiff never claimed at that time (or at any time prior to its filing of its current Motion) that it needed all workpapers – i.e., beyond those relating to the 3Q06 Agreements – in order to understand the issues relating to those

2

agreements.  If it had, those issues could and would have been raised with the Court at that time.

Second, KPMG and the parties entered into an agreement as to how to determine whether the documents sought were relevant to the litigation.  Following its review of the pleadings, KPMG had expressed concern that documents relating to the accounting and disclosure of the 3Q06 Agreements were not relevant.  Because the relevance issue existed also with regard to discovery sought by Plaintiff from Motorola – specifically, certain requests in Plaintiff's Fourth Request of Documents from All Defendants (see Exhibit D) – the parties and KPMG agreed that the Court should resolve the relevance issue between the parties, and that KPMG would adhere to that decision.[2]  Again, then, this demonstrates that the parties and KPMG all understood that the workpapers being sought were only those relating to the 3Q06 Agreements.

On February 24, 2010, this Court held that the 3Q06 Agreements were potentially relevant to the claims asserted by Plaintiff and ordered Motorola to produce certain of the documents sought by Plaintiff.  The Court further held, however, that Plaintiff was not entitled to "a fishing expedition" and limited Plaintiff's request to the 3Q06 Agreements themselves, as well as communications relating to the "disclosure and revenue recognition treatment of the 3Q06 Agreements."  (See 2/24/2010 Order (Dkt. No. 200).)  Therefore, on March 22, 2010, KPMG produced the workpapers it had agreed to produce regarding the 3Q06 Agreements.[3]

By agreement between KPMG and Plaintiff, the documents produced were to be a limited subset of the overall workpapers for Motorola or its Mobile Devices business.  For example, the workpapers as a whole include documentation regarding numerous issues raised during the audit or in the review of Motorola's quarterly financial statements.  These include topics such as: fixed assets, prepaid expenses, intangible assets, litigation review, taxes, restructuring, accounts payable, reserves, compensation and benefits, debt agreements, review of outside service providers, internal checklists and programs, leases and general administrative costs, journal

---

[2] The workpapers produced by KPMG are even more attenuated from the subject matter of the lawsuit than the 3Q06 Agreements and related documents in Motorola's possession, and thus KPMG believes that it is possible that even the produced documents could have been found to be irrelevant, despite the determination that Motorola should produce certain documents relating to the 3Q06 Agreements.  Nevertheless, KPMG agreed to be bound by the ruling between the parties on this issue in order to avoid the associated expenses of briefing a discovery motion.

[3] Prior to this production, KPMG allowed Motorola to review the documents to determine if it wished to assert any privilege objections.  Motorola did not assert any objections.  Although Plaintiff now complains about this process (see Plaintiff's Memorandum, p. 3), the fact is that it was part of the agreement between KPMG and the parties, and not the subject of any surprise by Plaintiff or dispute at the time.  (See, e.g., Exhibit E.)

entries testwork, IRM testwork, and many other such areas.  During the original discussions with Plaintiff regarding KPMG's response to the Subpoena, Plaintiff never suggested that any of these topics, or the numerous other issues related to Motorola's accounting, were relevant, but stated that it was interested in the workpapers and other KPMG documents to the extent they related to the 3Q06 Agreements.  (See also Exhibits A-D, demonstrating Plaintiff's focus on the 3Q06 Agreements as the basis for the production; Plaintiff's Exhibit H, including stipulation which continues to focus on the 3Q06 Agreements as the basis for seeking workpapers.)  That is precisely what KPMG produced.

In order to collect and produce the workpapers, KPMG had members of the relevant audit engagement team conduct a careful and detailed review of the workpapers to identify those relating to Motorola's accounting for and disclosure of the 3Q06 Agreements.  Contrary to Plaintiff's current argument, the issues relating to the 3Q06 Agreements were largely discrete ones, and therefore it was not difficult to identify the relevant documents.  The workpapers produced set forth all of KPMG's documented consideration and conclusions regarding of the nature of the 3Q06 Agreements, all information collected and documented by KPMG in connection with these conclusions, and the testwork performed by KPMG on the various aspects and elements of the transactions at issue.  The workpapers produced also document KPMG's analysis and deliberations as to the accounting treatment for the transactions, all analysis related to the revenue recognition considerations of the transactions, and all documentation of communications with Motorola, including its management and its Audit Committee, with regard to the transactions.  Finally, the workpapers produced include other KPMG internal documentation related to the agreements, such as consultation with KPMG's department of professional practice, with regard to the accounting for the transactions.  The production even included sections of documents and checklists that may have merely mentioned the transactions.

KPMG's production therefore satisfied its obligations under the Subpoena, as modified by its agreement with Plaintiff.  In particular, despite the alleged "deficiencies" complained of in Plaintiff's Motion to Compel, Plaintiff has never claimed that KPMG had failed to comply with the existing agreement or pointed out in its discussions with KPMG any alleged problems with the production.[4]

---

[4] KPMG's counsel specifically asked Plaintiff's counsel on April 16, 2010, during one of their discussions regarding Plaintiff's demands, whether Plaintiff was claiming that KPMG had failed to produce any workpapers previously agreed to, as KPMG would certainly follow-up on any suggested inadequacies in the production.  Plaintiff's counsel said that Plaintiff was not claiming

B.    Plaintiff's April 2010 Request for Additional Workpapers

Instead, in early April, 2010, Plaintiff informed KPMG that it had decided – supposedly due to a "reasonable reliance on professionals" defense asserted by Motorola – that it wanted to expand the production to all KPMG workpapers relating to the review of the third quarter 2006 financial statements and audit of the 2006 year-end financial statements of Motorola's Mobile Devices business. (See Exhibits G-H.) Plaintiff attempts to suggest in his Memorandum that this request to expand discovery was related, somehow, to the 3Q06 Agreements. Plaintiff asserts that its request was for workpapers related to "financial accounts directly impacted by the" 3Q06 Agreements. (See Plaintiff's Memorandum, p. 4.) That is not the case. Had Plaintiff ever limited its requests to documents relating to accounting for the 3Q06 Agreements or even outlined the connection it saw between the documents produced and additional categories of documents, it may have been able to resolve the issue without involving the Court. Instead, however, Plaintiff admitted that it was not seeking documents regarding the 3Q06 Agreements or claiming that KPMG had failed to produce documents previously part of the agreement to produce, but that KPMG also should produce all other workpapers, regardless of their connection to the 3Q06 Agreements. (See, e.g., Exhibits F-H.)

As set forth above, Plaintiff's basis for this exceedingly broad demand was Motorola's assertion of a "reasonable reliance on professionals" defense, which had supposedly changed the nature of the case and made "a broader set of review and audit workpapers . . . relevant," specifically those not related to the 3Q06 Agreements. (See Exhibit G, pp. 102; see also Exhibit F-H.). When KPMG asked for an explanation of this theory, as it did not believe the scope of the allegations or the issues in the case had been changed in any relevant way, Plaintiff consistently refused to elaborate or give a reasonable basis for its bald assertion and demands. Despite several conversations and communications with KPMG's in-house and outside counsel, Plaintiff never gave KPMG any legitimate reason for expanding the production beyond the workpapers originally agreed to. (See Exhibits F-H.) Indeed, Plaintiff's initial basis for expanding the scope of discovery to all workpapers, on April 1, 2010, was simply that it would be "more expedient" for KPMG to produce all workpapers.[5] (See Exhibit G, pp. 1-2.)

_____

that KPMG had failed to produce the workpapers agreed to, but that a much broader set of workpapers were now required. (See also Exhibit F, p 3 (04/16/10 email reflecting that discussion of expansion of request was based on Motorola's defense, and not any claimed failure by KPMG to comply with the original agreement).)

[5] Similarly, Plaintiff offered to "help" by accepting the workpapers without a prior review by

While Plaintiff failed to explain any connection between the defense asserted by Motorola in its answer to the amended complaint and the burdensome demand on KPMG for all workpapers, Plaintiff did offer to drop its demand if KPMG would stipulate that the workpapers produced set forth "all bases for the conclusions KPMG reached…" (See Exhibit H.)  As KPMG explained to Plaintiff, if the purpose of the proposed stipulation were simply to obtain KPMG's agreement that the documents produced were those it had agreed to produce, no stipulation was required or customary.  Given the context of the request, however, it was clear that something more was being demanded.  In particular, as KPMG pointed out, the demand that KPMG stipulate that the workpapers set forth "all bases for the conclusions" had nothing to do with the scope of the workpapers produced but whether the audit team considered anything not set forth in the workpapers.  That is a topic for depositions, not a stipulation.

KPMG's counsel and Plaintiff's counsel then had a series of conversations in which KPMG attempted to understand what additional documents, if any, Plaintiff claimed were related to the subject matter of the lawsuit.  Again, Plaintiff refused to participate in meaningful discussions of this topic, repeatedly insisting that it wanted "all workpapers," and that "all workpapers" were relevant due to Motorola's new defense.  Despite this blanket demand, Plaintiff never made the claim that it is making here, that the only way to understand any particular workpaper is to have the entire set of workpapers, and so non-party accounting firms must always produce all of their workpapers.  First, of course, Plaintiff would have had a hard time asserting that workpapers could not be produced in a partial or limited form, because Plaintiff had already agreed with KPMG to take a limited set of workpapers.  If Plaintiff really believed that workpapers need to be produced *in toto*, why would he have agreed to take a subset?  The prior agreement with KPMG would have been made in bad faith.  Second, and even more important, Plaintiff was simply unable to point to anything in the documents produced that would relate to or require the production of additional documents.  For example, Plaintiff did not

KPMG's counsel as another plan which would supposedly be more expedient.  It was this offer that KPMG's counsel rejected as one no responsible auditor would agree to.  (See Plaintiff's Memorandum, p. 6, n. 8, which references this interchange in an out-of-context and inaccurate manner; Exhibit F, pp. 1-2.)  Plaintiff made a similar demand for production without prior review in connection with its request for electronic documents.  (See Exhibit H, p. 1.)  Plaintiff's consistent efforts to place unreasonable time restrictions on KPMG and demand production without prior review is highly inappropriate, and its creation of unnecessary urgency with regard to the current motion, by waiting until April 2010 to inform KPMG that it would not adhere to an agreement for less than the full set of workpapers is simply another example of these improper tactics.

point to references in the produced workpapers to documents not produced and seemingly relevant. Plaintiff did not point to topics referenced in the workpapers produced that were supported or reflected in other workpapers. Despite having two months to review the produced workpapers, Plaintiff still has not done so, but asserts only generally that these other workpapers are needed. Nor did Plaintiff assert that it was seeking any documents that it believed should have been produced under the prior agreement but were not – the type of analysis engaged in on pages 9-10 of its Memorandum, for example – and therefore it has never met and conferred with KPMG regarding such a claim, other than to admit that it was not making any such claim.[6]

Rather than expressing a basis for believing that additional KPMG workpapers related to the 3Q06 Agreements or some other issue in the case, it became clear that Plaintiff instead wanted to take advantage of KPMG's agreement to a limited production to obtain a burdensome production of all or nearly all workpapers relating to Motorola's Mobile Devices business. Given the absence of any connection between the unproduced portion of these documents and the parties' claims and defenses, it appears that Plaintiff is merely hoping to use KPMG's production as an opportunity to go on a fishing expedition regarding the numerous unrelated accounting issues reflected in the workpapers.

## ARGUMENT

A. **Plaintiff's Request for Workpapers Not Related to the 3Q06 Agreements Is Overbroad and Should Be Denied.**

Plaintiff is arguing that because KPMG, a non-party, agreed to produce a limited portion of its workpapers on an issue "tangential" to the allegations in the lawsuit, KPMG should be required to produce all workpapers relating to Motorola's Mobile Devices business. Plaintiff's argument would serve to make any agreement between a party and non-party auditor as to the production of documents impossible, other than in a case where the central allegations relate to the broadest swath of auditing issues. That is because Plaintiff – after entering into an agreement to obtain the documents which were produced – now claims that production of any workpapers

---

[6] For example, on page 5 of his Memorandum, Plaintiff asserts that its forensic accountants explained the connection between the documents sought and the lawsuit. To the contrary, Plaintiff's "explanation" was that all documents were relevant to the 3Q06 Agreements, because the absence of a discussion of the 3Q06 Agreements were evidence that the 3Q06 Agreements were not discussed. Therefore, it claimed, both workpapers which did and workpapers which did not discuss the 3Q06 Agreements were relevant. Obviously, such a position would make any document potentially relevant, and Plaintiff refused to support its position with anything more or to limit the subject matter of its request beyond carving out a few topics.

requires production of all of them, a position that it has notably failed to support by anything more than generalities from its own hired expert.

Plaintiff's argument fails, because no connection exists between the additional documents it seeks and the existing allegations in the lawsuit. It is well-established that discovery is not to be used as a fishing expedition. *Equal Employment Opportunity Commission v. Harvey L. Walner & Associates*, 91 F.3d 963, 971-72 (7th Cir. 1996); *Piacenti v. General Motors Corp.*, 173 F.R.D. 221, 224 (N.D. Ill. 1997). Instead, parties are only entitled to discovery which is "relevant to the claim or defense of any party." *Cannon v. Burge*, No. 05 C 2192, 2007 WL 2410392, *1 (N.D. Ill. Aug. 20, 2007) (unpublished cases cited are attached as Exhibit I). Some basis must exist to believe that the discovery sought will lead to admissible evidence concerning the claims in the case. *Id.*, at *5. Absent such a showing, the burden on the person from whom the discovery is sought outweighs any interest in discovery, and the discovery should be denied. *Woods v. Fresenius Med. Care Group of North America*, No. 1:06-CV-1804-RLY-WTL, 2008 WL 151836, *1 (S.D. Ind. Jan. 16, 2008).

In order to consider the relevance of the expanded request for workpapers made by Plaintiff, then, the Court should look to the allegations in this case. This litigation is not about auditing or KPMG's conclusions, but supposed misstatements and omissions made by Motorola regarding its 3G mobile handset portfolio and, specifically, an alleged failure to disclose expected delays in the 3G product launch. (2/24/10 Order, p. 1.) Plaintiff argues that the 3Q06 Agreements are relevant, because Motorola allegedly entered into them for the purpose of using the revenue from the transactions to conceal its financial problems associated with the delay in the 3G launch during the third quarter of 2006. (*Id.*, at 1-2.) Based on that theory, Plaintiffs were permitted to seek limited discovery from Motorola regarding the 3Q06 Agreements to determine whether they were entered into in an attempt to cover up earnings gaps in the third quarter of 2006, and KPMG also agreed to produce documents regarding the 3Q06 Agreement. (Id., at 4.) The production of limited documents regarding the 3Q06 Agreements does not somehow bring all accounting issues involved in KPMG's review or audit of Motorola's financial statements – including analyses of its accounts receivable, testwork on its journal entries, tax issues, and all the other numerous issues, some set forth above, relevant to the lawsuit.

Indeed, if they were, discovery would have first been sought from Motorola, not from a third party. Significantly, however, this Court did not hold – and Plaintiff did not even try to

argue – that all other Motorola accounting-related documents were relevant because the revenue from the 3Q06 Agreements were included as part of Motorola's overall total revenue. Yet that is what Plaintiff is asserting here, in demanding the production of all workpapers from KPMG, a non-party. In order to succeed on that request, Plaintiff must demonstrate how the documents relating to non-3Q06 Agreement-aspects of KPMG's audit of Motorola's financial statements are related to its claims, and that it cannot do. *See, e.g., Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 927-28 (7th Cir. 2004) (holding that denial of discovery was proper where party could not give an explanation of what it expected to find and how that was connected to its claims).

In a weak effort to meet its burden, Plaintiff argues that documents other than those produced are related, somehow, to the 3Q06 Agreements is simply that those transactions would have impacted the total amount of revenue, income, and taxes and the like. (Plaintiff's Memorandum, p. 10.) While that is true, it does not make all workpapers relating to those topics relevant. For example, numerous other issues would have affected the amount of income Motorola earned or the taxes it paid. That the 3Q06 Agreements may have been one of those factors does not make the analysis of, for example, an unrelated tax credit relevant to the accounting for the 3Q06 Agreements. As discussed above, KPMG carefully reviewed the workpapers and produced all documents regarding the accounting for the 3Q06 Agreements,[7] and Plaintiff has pointed to nothing in the documents produced themselves which it claims are unclear or require more to be understood.

The only other arguments presented by Plaintiff are no better. Plaintiff asserts that the documents are relevant for the following reasons: (1) they relate to the reasonableness of Motorola's reliance on the audit (Gleitsmann, ¶¶ 14-15); (2) they demonstrate what KPMG was not told or did not consider (Gleitsmann, ¶ 15; Memorandum, p. 9); and (3) the workpapers are so interconnected that the 3Q06 Agreements inherently involve all other workpapers (see

---

[7] Plaintiff's hired expert, Patricia Gleitsmann, speculates inaccurately regarding how KPMG may have determined the documents to produce, but Plaintiff never asked KPMG for any information about the process during the discussions regarding the production. Similarly, Ms. Gleitsmann's declaration (pp. 9-10) and Plaintiff's Memorandum (pp. 9-10) contain a number of complaints regarding documents produced and not produced and the fact that in some cases KPMG produced sections of large multi-topic documents rather than the entire document. Again, Plaintiff could have raised these issues during its meet and confer discussions with KPMG, but chose not to, insisting instead that it wanted all workpapers and that its concern was not whether the original production were complete. It is improper for Plaintiff to raise such issues in its Motion for the first time.

Gleitsmann, pp. 11-12).  None of these arguments are valid.

First, as discussed above, Motorola's reliance on professionals defense does not expand the issues involved in this case, but only relates to Motorola's state of mind in connection with the issues already in the case.  Therefore, it provides no basis to seek the production of workpapers beyond those relating to the 3Q06 Agreements.  In addition, the workpapers sought are internal KPMG documents that Motorola would not have seen in their current form (certain portions of them would have been provided by Motorola), and therefore they cannot provide evidence as to Motorola's state of mind.  They simply are not relevant to Motorola's defense.

In a convoluted fashion, Plaintiff argues that a full set of workpapers is needed to show what procedures KPMG did not do, and what things it did not consider.  (See Plaintiff's Memorandum, p. 9.)  But KPMG's interim review and audit work is not at issue in this case.  As for the 3Q06 Agreements, the issue is not what KPMG did or did not do insofar as its review and audit procedures are concerned, or how the review and audit were documented, but how the those agreements were accounted for and disclosed.  Plaintiff already has those workpapers.

Finally, Plaintiff also asserts that the workpapers are so interconnected that the issue of the 3Q06 Agreements must be considered in light of the workpapers as a whole.  In support of this assertion – which would serve to preclude any limitation on the scope of production when audit workpapers are sought – Plaintiff relies on generalities from its own hired expert, Ms. Gleitsmann.  According to Ms. Gleitsmann, audit workpapers are cross-referenced to show connections between accounts and are planned so as to demonstrate the significance of a transaction to the financial statements as a whole. (See Gleitsmann, ¶ 20.)  Workpapers, taken as a whole, are designed to support all conclusions reached in the engagement.  (*Id.*, ¶ 21.) Understanding the entire scope of the procedures performed is essential to understanding those conclusions.  (*See, e.g., id.,* ¶ 22.)

Ms. Gleitsmann's conclusory statements have no relationship to the question presented here, however, which is whether the workpapers regarding the 3Q06 Agreements constitute all workpapers relevant to the accounting for those transactions specifically.  Ms. Gleitsmann seems to be considering what information should be considered to determine whether KPMG's audit opinion on the financial statements as a whole is supported.  But KPMG's audit opinion on the financial statements as a whole (or on any topic) is not at issue.  The only issue even arguably relevant to the litigation – and if so, only in a tangential way – is the accounting for and disclosure of the 3Q06 Agreements.  While Plaintiff may want to use this issue to put Motorola's

financial statements as a whole into issue, the fact is that they have not been, and it is not proper to seek such discovery from a non-party.[8]

Moreover, if accepted, Plaintiff's assertion that whenever any audit workpapers are produced all others become relevant would have a dramatic effect on litigation. The production of limited portions of workpapers, currently a common practice that Plaintiff himself agreed to, would not be possible. Auditors and their clients would be far more likely to fight the production of even limited requests for documents than they currently are. Moreover, opposing parties could easily obtain discovery involving whatever accounting issues might exist through the back door, but subpoenaing an auditor, even where they – as here – lacked evidence to seek the accounting documents at issue from the parties in the lawsuit. Given the sensitive nature of much of the information in audit workpapers, parties could easily use the threat of an auditor's subpoena tactically and improperly, if such a strategy were allowed. *See also Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1161 (7th Cir. 1984), *rev'd on other grounds*, 470 U.S. 373 (1985) (explaining concern about misuse of discovery of sensitive documents sought in order to pressure parties into settlement).

**B.    The Production of All Workpapers Will Place an Undue Burden on KPMG.**

The discovery sought is not only irrelevant, but, contrary to Plaintiff's claim, production of the documents is highly burdensome to KPMG. As discussed above, Plaintiff is seeking the

---

[8]   As support for its position, Plaintiff also cites cases in which production of a full set of workpapers was required. But Plaintiff fails to point out the differences between those cases and this one. In those cases, the overall financial statements and conclusions of the auditor on the accounting as a whole were at least arguably relevant. For example, in *Robin v. Doctors Officenters Corp.*, Nos. 84 C 10798, 85 C 8913, 1986 WL 8054 (N.D. Ill. July 16, 1986), the audit workpapers were being sought regarding the overall "financial condition of [the company] at the time of the offering and the accuracy and completeness of the representations contained in the prospectus," and specifically were alleged to include all disclosures in the attached audited financial statements. *Accord Fein v. Numex Corp.*, 92 F.R.D. 94 (S.D.N.Y. 1981) (allowing discovery of workpapers based on allegation that financial statements as a whole failed to disclose company's true financial condition, and not limited allegation regarding particular disclosure). Similarly, in *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 1:89-0894X, 1991 WL 172930, *3 (N.D. Ohio June 21, 1991), the court did not hold that the production of portions of workpapers were inherently inadequate, as Plaintiff argues, but only that they were " in view of the kinds of issues . . . involved in the principal litigation." It that case, unlike this one, the party seeking discovery had pointed to specific connections between the issues in dispute and the full set of workpapers sought, not merely relied on generalities, as Plaintiff does. Indeed, the only accounting issue even arguably relevant here is far more limited – that relating to the 3Q06 Agreements. There is no basis to put the financial statements as a whole or the audit thereof into issue.

audit workpapers in an effort to learn information about Motorola's overall accounting and the related issues that it lacks any basis to seek from Motorola directly.  In an effort to justify seeking discovery from a third party that it has not and cannot seek from its opposing parties, Plaintiff asserts, dismissively, that no meaningful burden on KPMG will result, because KPMG keeps the workpapers in the ordinary course of business.  Plaintiff's statement is inaccurate and shows a striking disregard of the burden it is placing on KPMG, a pattern which it has shown in all of its recent interactions with KPMG.

First, it is always a burden to force a non-party to produce documents that have no relevance whatsoever to parties' claims and defenses.

Second, KPMG's workpapers are KPMG's proprietary documents, and the forms and procedures used by KPMG in its audits are confidential business information.  While a Protective Order exists, that Protective Order is primarily for the benefit of the parties, who will not have the same interest in protecting KPMG's interest and documents that KPMG does, yet as a non-party, it will be more difficult for KPMG to monitor and control the use of its documents, including by the professional consultants and witnesses employed by the parties.  Therefore, it is in KPMG's interest to prevent the production of these documents where they are not actually relevant to the litigation at hand.  And, the documents Plaintiff seeks are not.

Third, Plaintiff's agreement to reimburse KPMG for "production and copying costs" does not come close to addressing the burden of the production demanded.  Plaintiff is seeking voluminous documents regarding a broad variety of accounting issues.  In order to determine whether the documents are privileged or other issues which may arise in connection with their production, KPMG will be forced to pay attorneys and other legal professionals to review the documents.  KPMG has already incurred substantial cost in connection with the production of the documents it has produced.  Similarly, in order to understand the issues raised in the documents, KPMG and its attorneys likely will need to consult the professionals who were on the audit team, interfering with their day-to-day job responsibilities.

In its discussions with KPMG, Plaintiff has consistently ignored or minimized the burden by demanding that KPMG produce the documents to Plaintiff without first reviewing them. (See, e.g., Exhibit F, p. 2; Exhibit H, p. 1.)  It was this demand that KPMG's counsel informed Plaintiff that no responsible auditor would consider.  (See Plaintiff's Memorandum, p. 6, n. 8.) Indeed, even non-parties do not ordinarily produce documents which might be used in litigation without first reviewing them to determine any privilege, confidentiality, or other issues, and it is

highly objectionable that Plaintiff seeks to force KPMG into producing its documents without such a review.

Finally, the burden on KPMG caused by Plantiff's unwarranted expansion of the production to all workpapers is even greater given the fact that Plaintiff plans to take the deposition of two KPMG witnesses. The greater the scope of the production, the more time which will be involved for the deponents in preparing for their depositions and the longer Plaintiff is likely to spend, including the investigation of irrelevant topics addressed in the workpapers. Again, then, it is not proper to force a non-party to bear these costs when the issues that Plaintiff is currently seeking discovery of have not been the subject of discovery or allegations in the underlying lawsuit.

## CONCLUSION

For all of the reasons set forth above, KPMG respectfully requests that Plaintiff's Motion to Compel the Production of Documents be denied in its entirety.

Dated: May 17, 2010                        Respectfully submitted,

                                           KPMG LLP

                               By:    /s/ James R. Figliulo
                                      One of Its Attorneys

James R. Figliulo (ARDC No. 6183947)
Stephanie D. Jones (ARDC No. 6220362)
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois  60603
(312) 251-5262

Scott R. Lassar (ARDC No. 1586270)
Jeffrey C. Sharer (ARDC No. 6239167)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

Michael C. Kelley
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California  90013
(213) 896-6000

Counsel for Non-Parties KPMG LLP,
David Pratt, and Dennis Parrott

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on May 17, 2010, service of the foregoing **Non-Party KPMG LLP's Response to Plaintiff's Motion to Compel** was accomplished pursuant to ECF as to Filing Users and in compliance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ James F. Figliulo_____