UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ERIC SILVERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 1:07-cv-04507 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge St. Eve Magistrate Judge Mason |
| MOTOROLA, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFFS' OPPOSITION TO NON-PARTIES KPMG, LLP, DAVID PRATT AND
DENNIS PARROTT'S MOTION TO QUASH OR MODIFY SUBPOENA AND FOR
PROTECTIVE ORDER

**REDACTED**

Class representatives Macomb County Employees' Retirement System and St. Clair Shores Police and Fire Pension System ("plaintiffs") respectfully submit this opposition to Non-Parties KPMG, LLP, David Pratt and Dennis Parrott's Motion to Quash or Modify Subpoena and for Protective Order ("KPMG's Motion") (Dkt. No. 239).

## I.    INTRODUCTION AND OVERVIEW

On March 19, 2010, KPMG produced to plaintiffs a limited set of workpapers concerning its 3Q06 quarterly review and 2006 audit of Motorola, Inc. ("Motorola" or the "Company"). *See* Dkt. No. 242 at 3 (Memorandum in Support of Plaintiffs' Motion to Compel the Production of Documents from KPMG, LLP). Upon review of this subset of relevant documents, it was apparent that KPMG's workpapers had been updated ███████████████████████████████ ████████████████████████████████████████████████ Plaintiffs allege that defendants entered into these very transactions to inflate Motorola's 3Q06 financial results and cover up a massive earnings gap associated with severe 3G handset development problems. *See* Dkt. No. 208, ¶¶12, 152-179 (Second Amended Complaint).

At the same time that plaintiffs were reviewing KPMG's production of workpapers, they continued to investigate public sources of information, including reports posted on the Public Company Accounting Oversight Board's ("PCAOB") website. *See* www.pcaob.org/. Of particular relevance to this case, in August 2008 the PCAOB issued a public report concluding that KPMG's audit procedures, with respect to "Issuer C's" accounting for and disclosure of two large "third quarter" licensing arrangements, were plagued by "significant deficiencies."[1]  Ex. A.  Given the relevance of the 3Q06 IP transactions, as well as the sufficiency of KPMG's audit of those deals, to

---

[1]    "Issuer C" is ███████  In order to minimize redactions to this brief, plaintiffs hereinafter refer to ███████ as "Issuer C."

plaintiffs' allegations and defendants' "reasonable reliance on professionals" defense, plaintiffs immediately requested that KPMG supplement its production to include certain documents with respect to post-audit reviews of the 3Q06 IP deals. KPMG has refused to produce responsive documents, asserting that they are irrelevant, would be burdensome to produce, and that plaintiffs are otherwise barred from the discovery at issue pursuant to the evidentiary privilege codified at Section 105(b)(5)(A) of the Sarbanes-Oxley Act of 2002. That section states that:

> [A]ll documents and information prepared or received by or specifically for the Board, and deliberations of the Board and its employees and agents, in connection with an inspection under section 104 or with an investigation under this section, shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency . . . .

15 U.S.C. §7215(b)(5)(A).

KPMG's relevance argument borders on the frivolous. *See* Non-Parties KPMG, LLP, David Pratt, and Dennis Parrott's Memorandum in Support of KPMG's Motion ("KPMG's Memo") (Dkt. No. 240) at 14 (arguing "KPMG's conduct is not at issue in this litigation"). KPMG is fully aware that the 3Q06 IP transactions are highly relevant to this litigation and knows full well that defendants have brought KPMG's conduct – *i.e.*, what accounting and disclosure advice KPMG provided to Issuer C and its officers – directly into issue. *See* Ex. B (KPMG's counsel requesting a copy of the Second Amended Complaint after being informed of defendants' affirmative defense). *See also* Dkt. No. 220 at 126 (Answer to Second Amended Complaint).[2] Thus, there is no real dispute that KPMG's conduct is directly at issue here.

KPMG's argument that producing the materials plaintiffs seek would cause it undue burden fares no better and should be rejected. *See* KPMG's Memo at 14-15. As demonstrated below,

---

[2]      *See* Ex. C (defendants have informed plaintiffs that the record is clear that defendants reasonably relied on the audit procedures provided by KPMG during the Class Period).

plaintiffs have asked for a discrete set of documents and KPMG has failed to make any factual showing of undue burden.

The crux of KPMG's Motion is that Section 105(b)(5)(A) bans any and all of the discovery at issue. KPMG is wrong. In order to block the discovery of critical evidence, KPMG is forced to ignore the plain language of Section 105(b)(5)(A) and stretch its reach beyond any reasonable bounds.[3] Specifically, KPMG contends that it has "clear authority" that Section 105(b)(5)(A) bars discovery of documents in any way "***related to***," "***concerning***," or "***reflecting***" the PCAOB's inspection of Issuer C. KPMG's Memo at 1-2, 5, 7-10, 15. To the contrary, KPMG has not come forward with any "clear authority" and, in fact, concedes this issue is a matter of first impression. KPMG's Memo at 2. Further, KPMG's broad interpretation of Section 105(b)(5)(A) is improper, especially where long-standing precedent requires that such claims of privilege be construed narrowly. *See, e.g.*, *Pierce County v. Guillen*, 537 U.S. 129, 144-45 (2003) (collecting cases and noting "[w]e have often recognized that statutes establishing evidentiary privileges must be construed narrowly because [they] impede the search for the truth").

The question before the Court, therefore, is straightforward: Does Section 105(b)(5)(A) bar discovery of ***any*** responsive documents in KPMG's possession, custody or control that were not "prepared . . . for the [PCAOB]," "received by . . . the [PCAOB]" or otherwise created or generated "specifically for the [PCAOB]"? The answer is no. As such, all documents and communications in KPMG's possession about KPMG's audit, review or analysis of Issuer C's 3Q06 IP deals that were

---

[3] Just how far KPMG seeks to stretch the reach of Section 105(b)(5)(A) was made clear during the May 6, 2010 status conference when the auditor's counsel asserted that the privilege extended to any factual inference that may be made as to the identity of Issuer C. *See* Ex. D at 5:19-6:8 (Transcript of May 6, 2010 Status Conference).

523139_1

not prepared for, received by, or created or generated **specifically** for the PCAOB should be produced.

To avoid confusion and dispose of KPMG's straw man arguments, plaintiffs will make clear for the Court what they made clear to KPMG before it filed its motion. First, plaintiffs do **not** seek communications between the PCAOB and KPMG in connection with the 2007 inspection. *Cf.* KPMG's Memo at 15. Second, plaintiffs do **not** seek documents KPMG prepared and sent to the PCAOB in response to the PCAOB's inquiries in connection with the 2007 inspection. *Id.* Third, plaintiffs do **not** seek drafts of documents encompassed within the first and second categories.[4]

What plaintiffs seek, and what KPMG should be compelled to produce, are the documents in KPMG's possession, custody or control regarding the 3Q06 IP deals, including communications and analysis generated after the audit of those deals, other than those documents prepared for or received from the PCAOB.

## II.    STANDARDS GOVERNING DISCOVERY

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" or that is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Federal Rules "'permit the broadest possible scope of discovery.'" *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 566 (7th Cir. 1984).[5]    Documents regarding KPMG's audit procedures on the 3Q06 IP

---

[4]    KPMG also seeks to muddy the waters by implying that plaintiffs seek certain categories of documents, which plaintiffs concede are not at issue. *See, e.g.*, KPMG's Memo at 4, 9. Plaintiffs do **not** seek: (1) documents evidencing KPMG's cooperation with the PCAOB during the 2007 inspection; (2) PCAOB quality control criticism materials; (3) documents memorializing "on-site dialogue" between KPMG and the PCAOB; or (4) the PCAOB's investigative files.

[5]    Unless otherwise noted, all internal citations are omitted and all emphasis is added.

deals, including documents created before, during and after any PCAOB inspection, fall squarely within the parameters of permissible discovery.

Because KPMG claims, even if only half-heartedly, that it will be unduly burdened by the discovery at issue, it must make a factual showing establishing such burden. *See Brodsky v. Humana, Inc.*, No. 08 C 50188, 2009 U.S. Dist. LEXIS 58087, at *3 (N.D. Ill. July 8, 2009); *Hogdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007). KPMG has failed to make such a showing.[6]

## III.   ARGUMENT

### A.   The Discovery Requested by Plaintiffs Is Highly Relevant to the Claims and Defenses in This Action

As part of plaintiffs' continuing investigation of this action, they have been seeking documents regarding KPMG's quarterly review and audit procedures of the 3Q06 IP deals since December 2009. This includes not only all relevant workpapers, but also KPMG's internal analysis of the 3Q06 deals, review of the audit procedures undertaken (or not undertaken) and communications, both internally and with other parties (such as Issuer C, Qualcomm or Freescale) concerning the transactions. Based on the publicly available PCAOB report and notations in KPMG's workpapers produced to date, it is apparent that the auditor's analysis and review of these

---

[6]     The authority KPMG submits in support of its argument for quashing the subpoenas is factually inapposite and provides little guidance. The decisions simply stand for the proposition that a court has the ability to quash a subpoena and, in any event, do not constitute binding authority on this Court. *See* KPMG's Memo at 7. Indeed, KPMG's reliance on *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) is puzzling. In *Mattel*, plaintiff served a subpoena on the San Francisco Museum of Modern Art because it was the employer of an expert witness in a copyright infringement case. *Id.* at 797, 813-14. The court specifically concluded "that the two subpoenas were served for the purpose of getting the museums to exert pressure on [defendant's expert] not to testify" and, therefore, found them to be oppressive. *Id.* at 813-14. KPMG makes no such allegation here. Additionally, in *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38 (1st Cir. 2003) (KPMG's Memo at 7), the court found the materials requested by the subpoena had no relationship to whether one of the parties "engaged in unlawful dumping, the threshold issue in the . . . litigation." *Id.* at 41. The same cannot be argued here as the requested materials bear directly on Issuer C's 3Q06 IP deals and KPMG's audit procedures with respect to those transactions.

- 5 -

seminal IP deals continued well into 2007. Further, it is apparent that KPMG's auditing procedures with respect to the 3Q06 deals suffered from serious deficiencies. Ex. A at 6. By way of example:

- "A significant portion of [Issuer C's] operating earnings for the third quarter was derived from two licensing transactions with different customers that were recorded during the last three days of the quarter. . . . For one of the above transactions, the final contract was not signed until . . . the fourth quarter. . . . In these circumstances *[KPMG] failed* to obtain persuasive evidence of an arrangement for revenue recognition purposes in the third quarter." *Id*.

- "*[KPMG] failed* to adequately evaluate and test whether the licensing transactions . . . were recorded at fair value in light of the ongoing customer-vendor relationships." *Id*.

- "Finally, *[KPMG] failed* to identify and appropriately address that [Issuer C] had not disclosed its accounting policy for recording sales to customers that also are vendors." *Id*.

*Compare* Ex. A at 6 *to* Dkt. No. 208, ¶¶162-171, 173-179 (Second Amended Complaint).

The documents plaintiffs seek are highly relevant. For example, internal KPMG communications, whether or not brought on by the PCAOB inspection, regarding the lack of evidence of an "arrangement for revenue recognition purposes" or "fair value" at the time KPMG performed its audit procedures would strike at the heart of defendants' reasonable reliance defense. KPMG documents, whether created during KPMG's field work, or a year later for that matter, regarding the facts Issuer C failed to bring to KPMG's attention while performing its audit procedures, would be directly relevant to defendants' affirmative defense. Any communication between KPMG and Issuer C (or the counter parties to the licensing transactions) regarding the 3Q06 deals, whether or not instigated during the PCAOB inspection, would also be highly relevant. Indeed, the audit and review procedures KPMG performed with regard to the 3Q06 IP deals are inextricably intertwined with the allegations and affirmative defenses in this case. As such, the documents at issue here are plainly relevant and should be produced.

**B.    The Discovery Requested by Plaintiffs Is Not Precluded by the Section 105(b)(5)(B) Evidentiary Privilege**

**1.    Evidentiary Privileges Must Be Narrowly Construed**

KPMG's argument that Section 105(b)(5)(A) swallows any and all documents that could "reflect" or in any way "relate" to a PCAOB inspection runs afoul of well-settled precedent instructing that evidentiary privileges are to be construed narrowly. *See Pierce County*, 537 U.S. at 144-45. Whether judicially or statutorily created, it is widely recognized that the withholding of evidence under a claim of privilege is in derogation of the search for truth and, therefore, any privilege must be narrowly construed. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). *See also United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (same).[7]

The claim of privilege cannot be a blanket claim; it "must be made and sustained on a question-by-question or document-by-document basis." *Lawless*, 709 F.2d at 487. KPMG, however, served with the subpoena at issue five months ago, pleads for the widest possible reach of privilege and, to date, has failed to produce a privilege log let alone identify a single specific document it has withheld pursuant to Section 105(b)(5)(A). *See, e.g.*, *LG Elecs. vs. Whirlpool Corp.*, No. 08 C 242, 2009 U.S. Dist. LEXIS 108084, at *3-*5 (N.D. Ill. June 22, 2009) (a privilege log must be issued when discovery is withheld on the basis of privilege and to allow a court, if necessary, to determine if documents have been properly withheld).[8]

---

[7]    The party "refusing to disclose information based on a claim of privilege" bears the burden of showing the privilege applies. *Searcy v. eFunds Corp.*, No. 08 C 985, 2009 U.S. Dist. LEXIS 16986, at *9 (N.D. Ill. Mar. 5, 2009) (citing *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000)); *Evans*, 113 F.3d at 1461; *Lawless*, 709 F.2d at 487.

[8]    For the first time in its motion papers, KPMG suggests that it would be too revealing and burdensome to provide a privilege log. *See* KPMG's Memo at 13 n.23. In other words, KPMG seeks to withhold

KPMG is well aware that the Section 105(b)(5)(A) privilege must be narrowly construed. KPMG is well aware that a privilege log will facilitate an analysis of whether the privilege applies to any given document at issue here. Yet, KPMG asks the Court to pen an abstract opinion interpreting Section 105(b)(5)(A) so broadly as to encompass all documents and information in any way "related to," "concerning" or "reflecting" any PCAOB inspection. KPMG's Memo at 1-2, 5, 7-10, 15.[9] The protection KPMG seeks here is an anathema to the fact-finding process and federal rules. *See Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990) (vague assertions of privilege are insufficient pursuant to the federal rules). At bottom, KPMG urges this Court to accept the position that any and all documents or information in any way related to the subject matter of a PCAOB inspection are privileged just because KPMG says they are. The Court should reject this overwrought argument and deny KPMG's Motion in its entirety.

### 2. The Plain Language of Section 105(b)(5)(A) Does Not Prohibit the Production of Documents Plaintiffs Seek

The Court need look no further than the plain language of Section 105(b)(5)(A) to determine its reach. It is axiomatic that when dealing with an issue of statutory interpretation, "[t]here is . . . no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. Am. Trucking Assns.*, 310 U.S. 534,

---

documents based on an entirely vague and impermissibly overbroad interpretation of Section 105(b)(5)(A), but does not want to have to identify any of the documents it withholds.

[9] The Center for Audit Quality's ("CAQ") Brief simply parrots KPMG's arguments, generally claiming that Section 105(b)(5)(A) should be construed to cover any scrap of paper that "reflects," is "relating" or "pertaining" to, or even "refers" to any information considered by the PCAOB. *See* Dkt No. 250 at 2, 8, 13 ("CAQ Brief"). What the CAQ, like KPMG, fails to do is put any limits on the breadth of the privilege or what materials an auditor can cloak under Section 105(b)(5)(A). Ironically, CAQ and KPMG plead for all of this secrecy purportedly to "foster confidence in the audit process and . . . aid investors." CAQ Brief at 1. The CAQ's position, however, is not surprising given that it is a three-year old lobbying group based in Washington, D.C., which had no role in the formation or organization of the PCAOB, and is headed by the CEOs of eight of the largest accounting firms in the United States. *See* Ex. E.

543 (1940). Unless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). It is only when following the plain meaning of the words leads to "absurd or futile results" or unreasonable results "'plainly at variance with the policy of the legislation as a whole'" that courts may look beyond the statute itself for further guidance. *Am. Trucking*, 310 U.S. at 543.

In relevant part, Section 105(b)(5)(A) provides that "all documents and information prepared or received by or specifically for the [PCAOB] shall be confidential and privileged." 15 U.S.C. §7215(b)(5)(A). The relevant language is neither vague nor ambiguous. It is clear in that documents and information shall be privileged ***only if*** they are "***prepared . . . for the Board***," "***received by*** . . . ***the Board***" or are created or generated "***specifically for the Board***." *Id.* Also, the statute provides the privilege lies in the hands of the PCAOB, not KPMG. Accordingly, internal KPMG communications about the audit procedures it conducted on the 3Q06 IP deals, communications between KPMG, Issuer C, Qualcomm, Freescale, or other parties other than the PCAOB, and documents in KPMG's possession about the audit procedures it conducted on the 3Q06 IP deals, which were not prepared specifically for the PCAOB, are not privileged and must be produced. Further, these categories of documents are independently discoverable regardless of whether they were created or generated in anticipation of a PCAOB inspection, during such an inspection, or as a result of the inspection. To conclude otherwise requires reading words into statute that simply do not exist. And, that is exactly what KPMG (and the CAQ) asks the Court to do.

In advancing its position, KPMG forces extraneous words into Section 105(b)(5)(A) to contort its plain meaning. Throughout its memorandum, KPMG repeatedly contends that any and all documents and information "related to," "concerning," or "reflecting" anything to do with a PCAOB

- 9 -

inspection must be shielded from discovery.[10]  KPMG's Memo. at 9-13.  This overly broad interpretation of Section 105(b)(5)(A) is inconsistent with the relevant language itself.  Indeed, had Congress intended to shield from disclosure all documents and information "relating to," "concerning," or "reflecting" PCAOB inspections in the hands of third-parties, it would have placed that precise language into Section 105(b)(5)(A).  Congress did not.  Congress could have made clear in the legislative record that it intended to give Section 105(b)(5)(A) a reach consistent with the one KPMG advocates.  Congress did not.  KPMG, moreover, has failed to identify any authority suggesting otherwise.

Even if the Court finds it necessary to review the legislative intent behind Section 105(b)(5)(A), KPMG's impermissibly broad interpretation of the privilege finds no support.  The purpose of establishing the PCAOB in the wake of the Enron debacle was not to protect audit companies from disclosing documents to defrauded investors, but rather:

> **[T]o oversee the audit of public companies** that are subject to the securities laws, and related matters, **in order to protect the interests of investors and further the public interest** in the preparation of informative, accurate, and independent audit reports for companies the securities of which are sold to, and held by and for, public investors.

---

[10]     The utilization of this argument – that the privilege covers anything "related" to the PCAOB inspection – is stretched beyond all limits in the CAQ Brief.  The CAQ quotes the operative language of Section 105(b)(5)(A) and then nullifies it by positing "[b]ut that is not what the statute says."  CAQ Brief at 10.  From that unusual premise, the CAQ advances the following argument based on nothing but supposition: (1) KPMG created documents as a consequence of the PCAOB inspection; (2) but for the PCAOB inspection, these documents would never exist; (3) those documents, therefore, must have been "prepared . . . specifically for the Board"; and, (4) all such documents must be privileged pursuant to Section 105(b)(5)(A).  CAQ Brief at 10.  In addition to finding no support in the language of the statute, CAQ's argument should be rejected because it simply assumes all documents KPMG possesses regarding any matter that was investigated by the PCAOB must have been created "specifically for the Board."  It is the CAQ's interpretation of the evidentiary privilege that leads to absurdity.  Indeed, following the CAQ's logic, even this brief would be privileged because, but for the PCAOB inspection, it would never have been written.

15 U.S.C. §7211(a).  *See also* Ex. F ("The PCAOB . . . created by the Sarbanes-Oxley Act of 2002 . .

. oversee[s] the auditors of public companies in order to protect the interests of investors . . . .").[11]

Allowing the production of the documents at issue here will do nothing to undermine Congress's

express intent.  If anything, ordering production is ***consistent*** with the relevant Congressional intent.

What better way to protect public investors and instill confidence in KPMG than to allow the

examination of information which might prove whether or not KPMG's audit procedures were

appropriate?  And, what better way to advance the public interest than to allow Issuer C, its former

officers and voting shareholders to take appropriate measures if KPMG's audit procedures

concerning the 3Q06 IP transactions were, in fact, significantly deficient?  Ex. A at 4, 6.

### 3. KPMG Has Come Forward With No "Clear Authority" Regarding the Reach of Section 105(b)(5)(A) and Disregards Relevant PCAOB Rulemaking

Throughout KPMG's Memo, it contends that it has come forward with clear authority

supporting its position that Section 105(b)(5)(A) bars the discovery at issue.  KPMG's Memo at 1-2.

Of course, KPMG also concedes this issue is a matter of first impression.  *Id.* at 2.  Conspicuously

---

[11]     Interestingly, in all of the snippets of Congressional hearing testimony KPMG selected and cites to in support of its argument for a broad reading of the statutory language, the speakers comment on the purpose of enacting the legislation and the need to create strong regulations to protect the investing public, not audit firms.  *See, e.g.*, *Accounting Reform and Investor Protection: Hearing on S. 2673 Before the S. Comm. on Banking, Housing, and Urban Affairs*, 107th Cong. (2002) (Statement of John H. Biggs at 373 and 377 noting "the need for a strong regulatory model to oversee the accounting profession" and stating the new regulatory body "should have real teeth" in order to bring "a new ethic and culture to a profession that needs to change."); (Statement of Shaun F. O'Malley at 723-24 noting that the regulatory body established should be "given the authority to commission special reviews related to significant professional matters that affect the public's confidence in the audit profession."); (Statement of Bevis Longstreth at 801 stating "Congress should act to insure that the system by which our corporations present their financial condition to the world is worthy of trust by the investing public.  The auditors are the last line of defense against management's inclination to fudge the numbers and, in recent years, with disturbing frequency, to present misleading and even false numbers. . . .  I hope that the Enron hearings will convince Congress that the public's trust in the auditing system must be restored by prompt and forceful legislative intervention.").  *See* KPMG's Memo, Exhibit D.

absent from the briefs submitted by KPMG and the CAQ, however, is any reference to the fact that the PCAOB has already issued rules concerning the reach of Section 105(b)(5)(A).

In July 2003, the PCAOB drafted and submitted proposed rules concerning PCAOB investigations for comment. *See* Ex. G at 1 (*Proposed Rules on Investigations and Adjudications*, PCAOB Release No. 2003-012 (July 28, 2003)). Notice of the PCAOB proposed rules was published and time was given for interested parties, including the KPMG and the other "Big Four" accounting firms, to comment. The proposed text for Rule 5108 – *Confidentiality of Investigatory Records* – was as follows:

> [I]nformal inquiries and formal investigations, and any documents, testimony or other information prepared or received by or specifically for the Board or the staff of the Board in connection with such inquiries and investigations, ***shall be confidential in the hands of the Board*** . . . .

*Id*. at A1-xviii. Several accounting firms submitted comment letters, protesting that Rule 5108 extended privilege only to those documents and information "in the hands of the Board." *See, e.g.*, Ex. H at 1 (August 18, 2003 letter from PricewaterhouseCoopers LLP).

While deliberating on comments to the proposed rule, the PCAOB observed that an accounting firm "suggested that [Rule 5108] should expressly provide for confidentiality of documents in the hands of [accounting] firms, associated persons, issuers whose audits are of concern in the investigation, and any witness who provides documents." Ex. I at A2-39-40 (*Rules on Investigations and Adjudications*, PCAOB Release No. 2003-015 (September 29, 2003)). Notably, the PCAOB "decline[d] to make any changes along those suggested lines." *Id*. Thereafter, on May 14, 2004, the SEC approved Rule 5108. Ex. J (SEC Release No. 34-49704).[12]

---

[12]    The PCAOB has also publicly noted that nothing in Section 105(b)(5)(A) prohibits KPMG from "voluntarily disclosing or providing [KPMG's] response[s] [to the PCAOB's draft or final inspection reports] to any other person." Ex. K at A2-20 n.14. As such, KPMG's attempt to analogize Section 105(b)(5)(A) with

Accordingly, the PCAOB has already stated its position concerning the reach of Section 105(b)(5)(A) – a position consistent with the plain language of the statute, but in direct contradiction to the arguments advanced here by KPMG and the CAQ. The PCAOB's position is apparent. ***Documents in the hands of auditing firms and third-parties*** concerning PCAOB informal inquiries and investigations, which are not "in hands of the [PCAOB]," ***are not privileged***. Yet, KPMG and the CAQ ask this Court to issue an opinion that would collide with this highly persuasive authority.

### C. KPMG Has Made No Showing It Will Suffer Undue Burden in Producing the Requested Documents

In order to sustain its objection, KPMG must make a factual showing of undue burden. *Hogdon*, 245 F.R.D. at 341. KPMG has failed to do so. Not only has KPMG failed to explain any basis for the claim of burden during extensive conferences with plaintiffs, but KPMG's papers are void of any evidence that the documents plaintiffs seek are not readily accessible. Plaintiffs have also agreed to reimburse KPMG for reasonable production and copying costs. Thus, KPMG's burden argument is without merit.

To the extent KPMG suggests that it will be unduly burdened because the documents plaintiffs seek are more readily obtained from Issuer C and its officers, KPMG is mistaken. *See* KPMG's Memo at 14. As an initial matter, Issuer C and its officers have been incapable of identifying what documents, if any, they sent to or received from KPMG regarding the 3Q06 IP

---

the Office of Thrift Supervision ("OTS") "bank examination privilege" falls flat. KPMG's Memo at 11 n.20. OTS regulations specifically state that the "Report of Examination" and "***other information***" "remain[s] the property of the OTS and, except as permitted by this section . . . ***no person***, company, agency or authority to whom the information is made available, or any officer, director, employee or agent thereof, ***shall disclose any such information***." 12 C.F.R. §510.5(c)(4)(v). Thus, no entity or person, other than the OTS itself, has the authority to disclose. In contrast, neither Section 105(b)(5)(A) nor relevant regulations promulgated by the PCAOB contain such restrictions on the disclosure of documents and information in the hands of auditors or third-parties. Congress could have included such language in Section 105(b)(5)(A). It did not. The PCAOB could have promulgated rules analogous in reach to the "bank examination privilege." It did not, even after being urged to do so by the "Big Four" accountancies.

arrangements.  Second, KPMG has already produced several key documents created or generated by Issuer C and its officers, which Issuer C and its officers have failed to produce.  Third, any internal analysis memorializing discussions KPMG personnel had with Issuer C, Issuer C's audit and legal committee or any of its officers concerning the 3Q06 IP deals (whether or not such documents were generated during any PCAOB inspection) would reside with KPMG, not Issuer C.  Accordingly, KPMG will suffer no real undue burden in producing the requested documents.

### D. The Deposition Subpoenas Served on Messrs. Parrott and Pratt Need Not Be Quashed or Modified

Finally, in the conclusion of its brief, KPMG asks the Court to preclude "plaintiffs from questioning KPMG, through Messrs. Pratt and Parrott or any other witness, regarding the PCAOB inspection process and KPMG's responses to that process."  KPMG's Memo at 15.  Once again, KPMG is apparently trying to use an unsupported and impermissibly broad interpretation of Section 105(b)(5)(A) to thwart discovery of the truth.  There is no basis for limiting plaintiffs' inquiry into how KPMG may have responded to an inspection of the 3Q06 IP deals.  In accordance with Section 105(b)(5)(A), plaintiffs do not intend and will not inquire about communications between KPMG and the PCAOB, documents prepared by KPMG for the PCAOB or PCAOB deliberations.  No further limitations are warranted.  Accordingly, there is no basis to quash or otherwise limit plaintiffs' deposition subpoenas.[13]

## IV. CONCLUSION

For the reasons stated herein, the Court should deny KPMG's motion to quash or modify the subpoenas or impose a protective order.  Plaintiffs respectfully request that the Court order KPMG to

---

[13]     While plaintiffs' deposition subpoenas were served on April 20, 2010, to date KPMG's counsel has refused to schedule deposition dates for either Mr. Parrott or Mr. Pratt (despite representing they would do so by the end of April 2010).  Ex. L.

comply with plaintiffs' subpoenas and produce all documents and communications in its possession, custody or control regarding the accounting and disclosure of the 3Q06 IP arrangements, other than those materials that were sent from, specifically prepared for or received by the PCAOB. In addition, plaintiffs respectfully request that the Court order KPMG to provide plaintiffs with a privilege log of all documents withheld from production on the basis of Section 105(b)(5)(A). Given the impending discovery cutoff and upcoming depositions of KPMG witnesses, KPMG should be required to produce documents and/or any privilege log within five business days of an order on this matter.

DATED: May 17, 2010

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
MICHAEL J. DOWD
TOR GRONBORG
SUSAN G. TAYLOR
TRIG R. SMITH
JENNIFER L. GMITRO


                              s/ SUSAN G. TAYLOR
                            SUSAN G. TAYLOR

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

- 15 -

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312/332-3400
312/676-2676 (fax)

Liaison Counsel

VANOVERBEKE MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiffs

523139_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 17, 2010.

s/ SUSAN G. TAYLOR
SUSAN G. TAYLOR

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: susant@rgrdlaw.com

# Mailing Information for a Case 1:07-cv-04507

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **John Joseph Barber**
  jbarber@tdrlawfirm.com,edocket@tdrlawfirm.com

- **David K. Cole**
  courtnotification@mayerbrown.com

- **Michael J. Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **J. Timothy Eaton**
  teaton@shefskylaw.com,sfdocket@shefskylaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **James R. Figliulo**
  jfigliulo@fslegal.com

- **Michael David Frisch**
  courtnotification@mayerbrown.com

- **Jennifer L. Gmitro**
  JGmitro@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Mark H Horwitch**
  mhorwitch@tdrlawfirm.com,edocket@tdrlawfirm.com

- **Stephanie D. Jones**
  sjones@fslegal.com

- **M. Sean Laane**
  sean.laane@aporter.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com

- **Kim Ann Leffert**
  courtnotification@mayerbrown.com

- **Elizabeth Leise**
  elizabeth_leise@aporter.com,john_massaro@aporter.com

- **Erin K. Lynch**
  elynch@shefskylaw.com

- **Richard A. Maniskas**
  sradcliffe@glancylaw.com

- **John C Massaro**
  john_massaro@aporter.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com

- **Matthew P Montgomery**
  mattm@csgrr.com

- **David A Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Joseph Russello**
  jrussello@csgrr.com

- **Stephen M Sacks**
  stephen_sacks@aporter.com

- **Jeffrey Charles Sharer**
  jsharer@sidley.com,efilingnotice@sidley.com

- **Michael P. Sheehan**
  msheehan@shefskylaw.com,sfdocket@shefskylaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,stremblay@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Susan G Taylor**
  SusanT@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James W. Thomas , Jr**
  james.thomas@aporter.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Joseph I. Goldstein**
LeClairRyan
1101 Connecticut Avenue, NW
Washington, DC 20036

**Jerry A Isenberg**
LeClairRyan
1101 Connecticut Avenue, NW
Washington, DC 20036

**D Seamus Kaskela**
Schiffrin Barroway Topaz & Kessler LLP

```
280 King of Prussia Road
Radnor, PA 19087
```

**Michael Kelley**
```
Sidley and Austin
555 West Fifth Street
40th Floor
Los Angeles, CA 90013
```