# EXHIBIT H

# PRICEWATERHOUSE COOPERS 🅾

|  |  |
|---|---|
|  | **PricewaterhouseCoopers LLP**<br>1177 Avenue of the Americas<br>New York 10036<br>Telephone (646) 471 1125<br>Facsimile (813) 637 7768 |

August 18, 2003

Office of the Secretary
Public Company Accounting Oversight Board
1666 K Street, N.W.
Washington, D.C. 20006-2803

**Re: PCAOB Rulemaking Docket Matter No. 005, Proposed Rules Relating to
Investigations and Adjudications**

Dear Mr. Secretary:

PricewaterhouseCoopers LLP appreciates the opportunity to comment on the Proposed Rules
establishing procedures for investigations and adjudications. The following are our
comments.

**The Privileged and Confidential Nature of Investigatory Material**

*The Scope of the Privilege and Confidential Treatment*

Proposed Rule 5108 provides for confidentiality of investigatory material. The first note to
Proposed Rule 5108 sets forth the language provided under section 105(b)(5)(A) of the
Sarbanes-Oxley Act (the "Act") with respect to the confidential and privileged nature of
investigatory material. Unlike the Act and the note, the Proposed Rule provides that
investigatory material -- documents, testimony, or other information -- is confidential "in the
hands of the Board." That language implies that confidentiality would not extend to the same
material in the hands of the member firms and associated persons or counsel for the member
firms or associated persons. The insertion of the "in the hands of the Board" language blurs
whether the Board intends to afford confidential treatment to other investigatory material that
is apparently protected by the statute -- for example (i) documents in the possession of a
member firm or associated person that were prepared by that member firm or associated
person and were transmitted to the Board; and (ii) documents shared by the Board or its staff
with a member firm or associated person.

# PRICEWATERHOUSECOOPERS 🅿

The potential limitation of confidentiality to material "in the hands of the Board" under the Proposed Rule creates a distinction between confidential material and privileged material that is not found in the Act. Under the Act, "any information gathered in the course of the investigation is to be confidential and privileged for all purposes (including civil discovery), unless and until particular information is presented in connection with a public proceeding."[1] The Act -- and specifically, the key confidentiality provision, section 105(b)(5) -- does not distinguish between material that is "confidential" and material that is "privileged." Both terms refer to the same universe of documents and information enumerated in the Act. (Section 105(b)(5) ("documents and information prepared or received by or specifically for the Board . . . in connection with an investigation . . . shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process).") Although the scope of the privilege is ultimately defined by the Act, Rule 5108 seeks to redefine the scope of the confidentiality clause in a way that departs from the Act's definition of confidentiality as well as its definition of privilege.

To eliminate any confusion and unnecessary litigation as to the scope of the protection provided under the Proposed Rule, to further Congress's intent that investigatory material not be available to "outsiders," and to foster the sharing of information between the Board and its staff and the member firms, we propose that the language of the Proposed Rule conform to the Act by striking "in the hands of the Board." Alternatively, we would propose amending Proposed Rule 5108 to read as follows: "shall be confidential in the hands of (1) the Board; (2) the member firm being investigated and its associated persons; (3) the associated person being investigated and the member firm to which that associated person belongs; (4) the issuer whose audit forms the basis for an investigation; (5) any witness who provides testimony or documents in connection with an inquiry or investigation, and (6) counsel for any of the foregoing."

### The Materials To Be Afforded Privileged and Confidential Treatment

Proposed Rule 5108 affords confidential treatment to "any documents, testimony, or other information prepared or received by or specifically for the Board or the staff of the Board" in connection with an inquiry or investigation. To clarify the type of documents and information that is confidential, we believe it would be helpful to insert the following language after "in connection with such inquiries and investigations":

> including originals and/or copies of transcripts procured by a
> witness pursuant to Rule 5109(c), Statements of Position
> submitted pursuant to Rule 5109(d), materials made available to

---

[1] Senate Rep. No. 107-205 (Jul. 3, 2002).

# PRICEWATERHOUSE COOPERS 🅡

parties pursuant to Rules 5422 and 5423, offers of settlement
pursuant to Rule 5205, and motions or other work product
submitted to or filed with the Board or the staff of the Board,

The additional clarification will serve to remove any doubt created by either the Act or the
Proposed Rule about the type of documents and information that is to be treated as
confidential. For instance, any argument that audit working papers submitted to the Board or
its staff become confidential simply because those documents have been "received by" the
Board would be negated by the type of information listed in the language proposed above.

### *The Loss of the Privilege and Confidential Treatment*

Under the Act, confidential and privileged investigatory material loses its protection only if
such material is presented in connection with a public hearing or is released in accordance
with section 105(c). The Proposed Rule nevertheless provides that confidential protection will
also be lost if "otherwise ordered by the Board or the Commission." The Act expressly
enumerates the circumstances under which investigatory material loses its protections, which
does not include the discretion of the Board or the Commission. We would, therefore,
recommend that the phrase "Unless otherwise ordered by the Board or the Commission" be
deleted from the Proposed Rule.

**Informal Investigations**

Proposed Rule 5100(b) provides that the Director of Enforcement and Investigation can
request documents, information, or testimony from any person in connection with an informal
inquiry. At the start of an informal inquiry, requests for broad categories of documents – such
as all documents relating to an audit, which might include drafts, e-mails, and desk files of
individual auditors – could create an unnecessary burden for the enforcement staff. For the
member firms, such requests are not only burdensome, but very costly. In many instances,
however, the matter can be expeditiously and efficiently resolved without propounding a
broad request and instead requesting readily available documents and/or an interview of a
knowledgeable person. We believe that the information gained by reviewing the available
documents – i.e., documents retained by the member firm pursuant to 17 C.F.R. § 210.2.06 –
and interviewing the knowledgeable person would sometimes eliminate the need for a broad
request and thereby resolve the matter at a lesser cost to the Board and the responding firm.
We, therefore, suggest that the following Note be added to Proposed Rule 5100(b):

> Note: The Board is cognizant of the expense to the Board and the responding persons
> of any request for information or documents made pursuant to this Rule, and therefore
> encourages the Director of Enforcement and Investigations and the Director's staff to

(3)

# PRICEWATERHOUSECOOPERS 🏢

commence informal inquiries with a request for relevant documents retained by the registered public accounting firm pursuant to 17 C.F.R. § 210.2-06 and/or an interview of a knowledgeable person and seek discrete reviews of readily available documents, before propounding broad requests for all relevant documents and testimony.

**A Witness's Right to Testimony and Other Evidence**

Proposed Rule 5109(c) allows a witness who has provided testimony or other evidence in connection with an inquiry or investigation to obtain a copy of such testimony or evidence, "except that prior to such evidence or testimony being presented in connection with a proceeding or released in accordance with Section 105(c) of the Act, and the Board's rules thereunder, the Director of Enforcement and Investigations may for good cause deny such request." The reference to "released in accordance with section 105(c) of the Act" is confusing and unnecessary. The Director of Enforcement and Investigations may also deny a request for good cause if that language is omitted. Thus, for the sake of clarity, the reference to section 105(c) should be stricken so that the exception reads "except that prior to such evidence or testimony being presented in connection with a proceeding, the Director of Enforcement and Investigations may for good cause deny such request."

In addition, the Proposed Rule does not provide a mechanism for determining "good cause." We would suggest adding at the end of Proposed Rule 5109(c) the following language: "Any decision by the Director of Enforcement and Investigations to withhold the testimony or evidence of a witness from that witness is reviewable."

**Grounds for Instituting Proceedings for Noncooperation**

Proposed Rule 5110(a) provides that a disciplinary proceeding can be instituted if it appears that a member firm or associated person "may have given testimony that is false or misleading or omits material information." We agree that by providing false and misleading testimony a witness is not cooperating with the Board's investigation. However, we think that, if, as seems likely, the inclusion of the phrase "or omits material information" is intended to track the language of the securities laws pertaining to fraud violation, it would be helpful to insert the phrase "necessary in order to make the statement made not misleading" after "omits material information". Otherwise, the phrase might mean the omission of any information that may turn out to be material, which would impose an unusual and unfair duty on the witness because it would require the witness to volunteer all information that the witness believes might be material. Normal practice is for the witness to answer the questions asked, and for the investigator to formulate questions that will further the inquiry.

\* \* \* \* \*

(4)

# PRICEWATERHOUSECOOPERS

We appreciate the opportunity to express our views and would be pleased to discuss our comments or answer any questions that the staff may have.  Please do not hesitate to contact Walter Ricciardi at (646) 471 1125 or Ted Senger at (415) 498 7135 regarding our submission.


Sincerely,

PricewaterhouseCoopers LLP

(5)

EXHIBIT I

File No. PCAOB-2003-06 Page 408



**PCAOB**

Public Company Accounting Oversight Board

1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

|  |  |
|---|---|
| RULES ON INVESTIGATIONS AND ADJUDICATIONS | ) ) ) ) ) ) ) ) ) ) ) |

PCAOB Release No. 2003-015
September 29, 2003

PCAOB Rulemaking
Docket Matter No. 005

Summary: After public comment, the Public Company Accounting Oversight Board ("Board" or "PCAOB") has adopted rules on investigations and adjudications. The rules would govern investigations and hearings in disciplinary proceedings, pursuant to Section 105 of the Sarbanes-Oxley Act ("Act"), and hearings on registration applications pursuant to Section 102 of the Act. The Board will submit these rules to the Securities and Exchange Commission ("Commission") for approval pursuant to Section 107 of the Act. The Board's rules will not take effect unless approved by the Commission.

Board
Contacts: Samantha Ross, Chief of Staff (202/207-9093; rosss@pcaobus.org); Michael Stevenson, Associate General Counsel (202/207-9054; stevensonm@pcaobus.org).

\*       \*       \*

Section 105 of the Act grants the Board broad investigative and disciplinary authority over registered public accounting firms and persons associated with such firms. To implement this authority, Section 105(a) directs the Board to establish, by rule, fair procedures for the investigation and discipline of registered public accounting firms and associated persons of such firms. As directed by the Act, the Board has adopted rules relating to investigations and adjudications.



PCAOB Release No. 2003-015
September 29, 2003
Page  2

The rules on investigations and adjudications consist of 64 rules (PCAOB Rules 5000 through 5501), plus certain definitions that would appear in Rule 1001 and a rule on time computation that would be Rule 1002.  Appendices 1 and 2 to this release contain, respectively, the text of these rules and a section-by-section analysis of the rules.  Section A of this release provides a general overview of the operation of the rules.  Section B of this release describes the changes made to the rules in response to public comments.

A.      Operation of the Rules on Investigations and Adjudications

Under the rules, the Board and its staff may conduct investigations concerning any acts or practices, or omissions to act, by registered public accounting firms and persons associated with such firms, or both, that may violate any provision of the Act, the rules of the Board, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including the rules of the Commission issued under the Act, or professional standards.  The Board's rules require registered public accounting firms and their associated persons to cooperate with Board investigations, including producing documents and providing testimony.  The rules also permit the Board to seek information from other persons, including clients of registered firms.

When violations are detected, the Board will provide an opportunity for a hearing, and in appropriate cases, impose sanctions designed to deter a possible recurrence and to enhance the quality and reliability of future audits.  The sanctions may be as severe as revoking a firm's registration or barring a person from participating in audits of public companies.  Lesser sanctions include monetary penalties and requirements for remedial measures, such as training, new quality control procedures, and the appointment of an independent monitor.

The Board may also hold hearings on registration applications, pursuant to Section 102 of the Act.  Under the Board's registration rules, if the Board is unable to determine that a public accounting firm has met the standard for approval of an application, the Board may provide the firm with a notice of a hearing, which the firm may elect to treat as a written notice of disapproval for purposes of making an appeal to the Commission under Section 107.  If such a firm chooses instead to request a hearing, the Board would, in appropriate circumstances, afford the firm a hearing pursuant to the rules.



PCAOB Release No. 2003-015
September 29, 2003
Page 3

  With the exception of the changes discussed in Section B below, the rules adopted today are substantially similar to the rules proposed by the Board on July 28, 2003. The operation of those rules was summarized in greater detail in PCAOB Release No. 2003-012 (July 28, 2003).

- <u>Special Issues Relating to Non-U.S. Firms</u>

  The nature and scope of the Board's oversight over non-U.S. accounting firms that audit the financial statements of U.S. public companies is the subject of an ongoing dialogue between the Board and its foreign counterparts. As the Board has previously stated, the Board is committed to accomplishing the oversight goals of the Act by coordinating in areas where there is a common programmatic interest without subjecting non-U.S. firms to unnecessary burdens. The adoption of these rules is not intended in any way to signal that the Board has already determined how its oversight should operate as to those firms. Before non-U.S. accounting firms are required to register with the Board, the Board intends to issue a release describing how it will carry out its investigative and disciplinary responsibilities with respect to such firms.

B. <u>Public Comment Process and Board Responses</u>

  The Board proposed rules on investigations and adjudications, and released them for public comment, on July 28, 2003. The Board received 17 written comment letters.[1/] In response to these comments, the Board's final rules both clarify and modify certain aspects of the proposal. Most importantly, the changes include –

- Clarifying the Board's views of what privileges may be invoked in Board proceedings, including that the Board will not treat proper invocations of the Fifth Amendment privilege against self-incrimination as noncooperation;

- Reducing the reach of noncooperation sanctions in the context of testimony, by eliminating the possibility that omitting material information, can, by itself, be grounds for a noncooperation proceeding;

---

   [1/]  The Board's responses to the comments are discussed in more detail in the section-by-section analysis in Appendix B. The comment letters are available on the Board's website – www.pcaobus.org – and will be attached to the Board's Form 19b-4, to be filed with the Commission.



PCAOB Release No. 2003-015
September 29, 2003
Page  4

- Specifying that the Board staff bears the burden of proof by a preponderance of the evidence in a disciplinary proceeding;

- Clarifying that the Board will not withhold material exculpatory evidence from a respondent;

- Requiring that any exercise of the Board's authority to conduct an examination to verify information supplied in an investigation must be approved by the Director of the Board's Division of Enforcement and Investigations;

- Clarifying how a bar or suspension of an associated person affects the ways in which a firm may compensate that person;

- Clarifying in the rules that all staff in the Board's Division of Enforcement and Investigations will be excluded from participating in the adjudication of any disciplinary proceeding;

- Revising the definition of "hearing officer" to provide that neither a Board member nor interested staff may serve as a hearing officer;

- Expanding the scope of the Board's staff that is covered by restrictions on ex parte communications with the Board after a disciplinary proceeding is authorized;

- Providing that firms can produce copies of documents in response to a demand for the production of documents, unless the accounting board demand expressly requires originals to be produced;

- Providing that permission for an attorney to withdraw as counsel in a proceeding before the Board or a hearing officer will not be unreasonably withheld;

- Extending the time for witnesses to request changes to the transcript of their testimony;



PCAOB Release No. 2003-015
September 29, 2003
Page  5

- Requiring Board staff to provide a "privilege log" for certain documents that the staff withholds from respondents based on a claim of privilege;

- Revising the procedures for appeals to the Board of actions taken by Board staff under delegated authority;

- Allowing state regulatory authorities to participate in a proceeding for purposes of requesting a stay of the proceeding; and

- Clarifying when a firm's registration may be suspended for failing to pay a money penalty.

*        *        *

On the 29th day of September, in the year 2003, the foregoing was, in accordance with the bylaws of the Public Company Accounting Oversight Board,

ADOPTED BY THE BOARD.

/s/ J. Gordon Seymour
Acting Secretary

September 29, 2003

APPENDICES –

1.    Rules Relating to Investigations and Adjudications

2.    Section-by-Section Analysis of Rules Relating to Investigations and Adjudication



## Appendix 1 – Proposed Rules Relating to Investigations and Adjudications

### TABLE OF CONTENTS

SECTION 1. GENERAL PROVISIONS ............................................................. 1

    1001. Definitions of Terms Employed in Rules ................................. 1

    1002. Time Computation ................................................................. 4

SECTION 5. INVESTIGATIONS AND DISCIPLINARY PROCEEDINGS.................. 4

    5000. General ................................................................................. 4

    Part 1 – Inquiries and Investigations............................................... 4

    5100. Informal Inquiries ................................................................. 4

    5101. Commencement and Closure of Investigations ...................... 5

    5102. Testimony of Registered Public Accounting Firms and Associated Persons . 5

    5103. Production of Audit Workpapers and Other Documents in Investigations...... 8

    5104. Examination of Books and Records in Aid of Investigations ...................... 9

    5105. Requests for Testimony or Production of Documents from Persons Not Associated With Registered Public Accounting Firms........................... 9

    5106. Assertion of Claim of Privilege ............................................. 10

    5107. Uniform Definitions in Demands and Requests for Information .............. 12

    5108. Confidentiality of Investigatory Records................................. 14

    5109. Rights of Witnesses in Inquiries and Investigations ................ 15

    5110. Noncooperation with an Investigation .................................... 16

    5111. Requests for Issuance of Commission Subpoenas in Aid of an Investigation ........................................................................ 17

    5112. Coordination and Referral of Investigations........................... 17

    Part 2 – Disciplinary Proceedings.................................................. 18

    5200. Commencement of Disciplinary Proceedings ......................... 18

    5201. Notification of Commencement of Disciplinary Proceedings.................... 21

    5202. Record of Disciplinary Proceedings ....................................... 23

    5203. Public and Private Hearings.................................................. 26

    5204. Determinations in Disciplinary Proceedings............................ 26

    5205. Settlement of Disciplinary Proceedings Without a Determination After Hearing ............................................................................... 27

PCAOB
Public Company Accounting Oversight Board

5206.   Automatic Stay of Final Disciplinary Actions ........................................... 29

Part 3 – Disciplinary Sanctions ........................................................................... 30

5300.   Sanctions ............................................................................................... 30

5301.   Effect of Sanctions ................................................................................ 32

5302.   Applications for Relief From, or Modification of, Revocations and Bars ....... 33

5303.   Use of Money Penalties ......................................................................... 36

5304.   Summary Suspension for Failure to Pay Money Penalties ..................... 36

Part 4 – Rules of Board Procedure ...................................................................... 37

GENERAL ................................................................................................... 37

5400.   Hearings ................................................................................................ 37

5401.   Appearance and Practice Before the Board ........................................... 37

5402.   Hearing Officer Disqualification and Withdrawal .................................... 39

5403.   Ex Parte Communications ...................................................................... 40

5404.   Service of Papers by Parties .................................................................. 40

5405.   Filing of Papers With the Board: Procedure ........................................... 40

5406.   Filing of Papers: Form ............................................................................ 41

5407.   Filing of Papers: Signature Requirement and Effect ............................... 42

5408.   Motions .................................................................................................. 42

5409.   Default and Motions to Set Aside Default .............................................. 43

5410.   Additional Time for Service by Mail ........................................................ 43

5411.   Modifications of Time, Postponements and Adjournments ..................... 44

5412. – 5419. [Reserved] ................................................................................. 44

PREHEARING RULES ................................................................................. 44

5420.   Leave to Participate to Request a Stay ................................................... 44

5421.   Answer to Allegations ............................................................................ 45

5422.   Availability of Documents For Inspection and Copying ........................... 46

5423.   Production of Witness Statements .......................................................... 50

5424.   Accounting Board Demands and Commission Subpoenas ..................... 50

5425.   Depositions to Preserve Testimony for Hearing ..................................... 52

5426.   Prior Sworn Statements of Witnesses in Lieu of Live Testimony ............ 54

5427.   Motion for Summary Disposition ............................................................ 54

# PCAOB
Public Company Accounting Oversight Board

Rules 5428. – 5439. [Reserved] ........................................................... 56

CONDUCT OF HEARINGS ................................................................. 56

5440.    Record of Hearings ............................................................. 56

5441.    Evidence:  Admissibility ...................................................... 56

5442.    Evidence:  Objections and Offers of Proof ............................... 57

5443.    Evidence:  Presentation Under Oath or Affirmation ................... 57

5444.    Evidence:  Presentation, Rebuttal and Cross-examination ......... 57

5445.    Post-hearing Briefs and Other Submissions ........................... 58

5446. – 5459.  [Reserved] ............................................................... 58

APPEALS TO THE BOARD ................................................................ 59

5460.    Board Review of Determinations of Hearing Officers ............... 59

5461.    Interlocutory Review .......................................................... 60

5462.    Briefs Filed with the Board ................................................. 61

5463.    Oral Argument Before the Board ......................................... 62

5464.    Additional Evidence ........................................................... 63

5465.    Record Before the Board .................................................... 64

5466.    Reconsideration ................................................................ 65

5467.    Receipt of Petitions for Commission or Judicial Review ........... 65

5468.    Appeal of Actions Made Pursuant to Delegated Authority ....... 66

5469.    Board Consideration of Actions Made Pursuant to Delegated Authority .. 66

5470. – 5499. [Reserved] ............................................................... 67

Part 5 – Hearings on Disapproval of Registration Applications ................... 67

5500.    Commencement of Hearing on Disapproval of a Registration Application ..... 67

5501.    Procedures for a Hearing on Disapproval of a Registration Application ....... 68



PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-36

sanction even if the noncompliance is cured, while always holding out the possibility that curing the noncompliance may bear on the ultimate severity of any sanction.

**Rule 5107 – Uniform Definitions in Demands and Requests for Information**

Rule 5107 supplies certain definitions and rules of construction that shall be deemed to be incorporated by reference into all accounting board demands and accounting board requests for information. These definitions and rules of construction are modeled on those in use by the federal districts courts in the Southern District of New York. Rule 5107 does not preclude the Board or the staff, in any particular accounting board demand or accounting board request, from defining other terms, or from using abbreviations, or supplementing or using only part of a definition of a term defined in Rule 5107.

**Rule 5108 – Confidentiality of Investigatory Records**

Rule 5108 provides that unless otherwise ordered by the Board or the Commission, all documents, testimony, or other information prepared or received by or specifically for the Board or its staff in connection with an informal inquiry or a formal investigation shall be confidential in the hands of the Board, unless and until presented in connection with a public proceeding or released in accordance with Section 105(c) of the Act and the Board's rules thereunder. Consistent with Section 105(b)(5) of the Act, however, Rule 5108 provides that the Board may supply any such information to the



# PCAOB
Public Company Accounting Oversight Board

PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-37

Commission and, when determined by the Board to be necessary to accomplish the purposes of the Act or to protect investors, to certain other government entities, specifically: the Attorney General of the United States, an appropriate Federal functional regulator (as defined in section 509 of the Gramm-Leach-Bliley Act) other than the Commission if the information pertains to an audit report for an institution subject to the jurisdiction of such regulator, state attorneys general in connection with any criminal investigation, and appropriate state regulatory authorities.

Commenters expressed several concerns and made several suggestions about proposed Rule 5108. We have made only one change to the rule in response to comments. Specifically, we have deleted the phrase "unless otherwise ordered by the Board or the Commission" from the beginning of the rule. Although the phrase was not intended to provide general discretionary authority to disclose confidential materials other than on the Act's own terms, we have instead adopted the rule with a new paragraph (b), which more precisely addresses the relevant point.

The new paragraph (b) provides that nothing in paragraph (a) "shall prohibit the Board or the staff of the Board from disclosing any documents, testimony, or other information to any other person as is reasonably necessary to carry out the Board's responsibility, under Section 105 of the Act, to conduct investigations according to fair procedures." The purpose of this provision is to provide notice that the Board does not



PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-38

interpret Section 105(b)(5)(A) to prohibit the Board from doing such fundamental things as, for example, questioning a witness about a document supplied to the staff by someone other than that witness.

Read literally and in isolation, Section 105(b)(5)(A) could be understood to prohibit the staff not only from showing exhibits to witnesses, but even from transmitting to a firm a written accounting board demand for documents, since the demand would be a document encompassed by the language of Section 105(b)(5)(A) and would therefore be confidential. We read Section 105(b)(5)(A) in light of, rather than in isolation from, the rest of Section 105. Section 105 begins by authorizing the Board to conduct investigations and requiring the Board to do so according to fair procedures. An overly literal reading of Section 105(b)(5)(A) would negate any possibility of doing so.

Rule 5108(b) reflects our understanding that the Act authorizes the Board and its staff to disclose documents and information (even if otherwise covered by Section 105(b)(5)(A)) as reasonably necessary to execute the Board's authority and responsibility to conduct fair investigations. Rule 5108(b)'s application does not extend outside the sphere of a Board investigation. It is not authority for disclosing information other than to a person from whom the Board demands or requests information in connection with an investigation. Even as to those persons, the rule is not authority for



**PCAOB**
Public Company Accounting Oversight Board

PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-39

disclosing information other than as reasonably necessary to carry out legitimate investigative functions in a manner that is fair to the person.

Commenters also voiced other concerns about Rule 5108. For various reasons, however, we do not believe that any of these other concerns warrant changing the rule in the ways suggested by the commenters.

Commenters noted that the rule's confidentiality provision applies only to materials and information "in the hands of the Board," while Section 105(b)(5)(A) includes no such limiting phrase. Commenters suggested that the language of the Act contemplates that the protection of 105(b)(5)(A) extends much further, including to copies of documents that are prepared specifically for the Board, but that remain in the hands of the person who prepared them. One commenter suggested that the rule should expressly provide for confidentiality of documents in the hands of firms, associated persons, issuers whose audits are of concern in the investigation, and any witness who provides documents. The commenter also suggested that the rule should specify that the documents that are protected in the hands of such persons include originals and copies of transcripts, statements of position under Rule 5109(d), materials made available to a respondent under Rules 5422 and 5423, offers of settlement, and motions made during a disciplinary proceeding.



PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-40

We decline to make any changes along those suggested lines. The phrasing of the rule, however, is not intended to narrow the effect or the reach of the Act. Indeed, to try to avert any such misunderstanding, the first note to Rule 5108 describes what is provided in Section 105(b)(5) of the Act, as distinct from what is provided by Rule 5108. Our reason for limiting the wording of Rule 5108 has nothing to do with limiting the reach of Section 105(b)(5)(A), but, rather, has to do with limiting our rules to their appropriate reach. By using the phrase "in the Board's hands," we do not mean to express a view on whether the Act reaches further than that.

Similarly, the rule omits the Act's reference to an evidentiary privilege because, as to materials and information in the Board's hands, any evidentiary privilege the Board would assert would necessarily be based on the Act. The statute does not require an implementing rule in order for the Board to assert the privilege.

In contrast, we see value in implementing through Rule 5108 certain aspects of Section 105(b)(5), principally for purposes of notice concerning how the Board will comply with the requirements of 105(b)(5) (e.g., by keeping the relevant documents confidential) and that the Board will make appropriate use of its authority to share confidential materials with certain other regulators.

One commenter also suggested that the rules should reflect that the Board may enter into agreements with firms pursuant to which a firm could provide the Board with



PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-41

certain materials in which the firm may have a privilege, such as reports prepared by counsel concerning internal investigations, without waiving the privilege as to any third party.[3/]  We decline to adopt this suggestion.  We do not believe a rule is necessary in order to provide for the possibility of such protection in appropriate circumstances.

Commenters also suggested that the rule should do more to protect the confidentiality of documents that the Board provides to other agencies under Rule 5108(a)(1)-(2).  Commenters suggested that the rule should make clear that the Act's provision requiring those agencies to maintain the materials as confidential and privileged preempts any state laws requiring open public access to records.  Commenters also suggested that the rule should provide that the Board would only provide protected materials to an agency on the condition that the agency enter into a confidentiality agreement concerning the materials.

We do not doubt that Section 105(b) of the Act preempts state open records laws with respect to materials and information provided by the Board to an agency under

---

[3/]      The commenter noted that Commission staff has sometimes entered into such agreements, and that some courts have given effect to the agreements.  See, e.g., Saito v. McKesson HBOC, Inc., 2002 WL 31657622 (Del. Ch. Nov. 13, 2002) and McKesson HBOC, Inc. v. Adler, 562 S.E.2d 809 (Ga. App. 2002).


**PCAOB**
Public Company Accounting Oversight Board

PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-42

Section 105(b)(5)(B).[4/] Again, however, we do not see this as a point that has a place in the Board's rules. The Act speaks clearly for itself on this point.

For similar reasons, the rule does not seek to prohibit agencies from disclosing materials that the Act itself forbids them to disclose. Nor do we see a need to provide, by rule, for a confidentiality agreement in every case to reinforce the requirements of the Act. It is the Act, and not the Board's rules, that constrain the conduct of those agencies. In the event that we discover that any particular agency makes disclosures that we believe are inconsistent with Section 105(b)(5), both the Act and Rule 5108 allow us the flexibility to decline to supply certain information to that agency or to require appropriate assurances of confidentiality.

Finally, some commenters suggested that the rules should provide for some sort of notice to a firm or associated person when the Board provides documents or information to another agency. One commenter suggested that such notice be provided to the firm or person being investigated. The comment apparently means to suggest that such notice be provided to the firm or person being investigated, regardless of whether the documents being transmitted to an agency were supplied by the firm or

---

[4/]     Any otherwise applicable state or local law that would conflict with a requirement of the Act or stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress is preempted. See, e.g., Crosby v. National Foreign Trade Council, 530 U.S. 363, 372-73 (2000); City of New York v. FCC, 486 U.S. 57, 64 (1988).


Public Company Accounting Oversight Board

PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-43

associated person being investigated. Other comments might also be understood to suggest that the notice be supplied to the firm or person who supplied the documents to the Board. Commenters suggested that such notice would be appropriate so that persons with an incentive to enforce the confidentiality provisions that restrict those agencies are in fact aware when the agencies obtain protected materials.

We have not included any notice requirement in the rule. We cannot identify any reasonable rationale for providing, as one commenter suggested, notice to a person who is not the person who supplied the Board with the documents that the Board is transmitting to an agency. The commenters' narrower suggestion that the rules should provide for notice to the person who actually supplied the documents or information to the Board raises a slightly different question, yet we still believe there are compelling reasons not to adopt such a notice requirement.

Most significantly, providing such notice might well undermine the legitimate investigative needs of the agency to whom the documents and information are supplied. With no clear indication in the Act that Congress intended or expected us to provide this type of notice, we are loathe to neglect the obvious interests of federal and state regulators and law enforcement agencies in maintaining the confidentiality of aspects of



**PCAOB**
Public Company Accounting Oversight Board

PCAOB Release No. 2003-015
September 29, 2003
Appendix 2 – Section-by-Section Analysis
Page A2-44

their processes.[5]  In addition, the notion that any fairness considerations require this type of notice has effectively been rejected by the Supreme Court in the context of Commission investigations.  In S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735 (1984), the Court held, among other things, that general policy considerations did not entitle a person whose conduct was at issue in a Commission investigation to receive notice of Commission subpoenas directed to other persons in the investigation.  One argument that the Court rejected – that the person was entitled to an opportunity to protect his rights with respect to Commission requests for information from others[6] – is similar to an argument advanced by commenters here -- that notice would ensure them of an opportunity to enforce the confidentiality restrictions against the receiving agency.

The second note to Rule 5108 points out that the Director of Enforcement and Investigations may engage in, and may authorize staff to engage in, discussions with persons identified in Rule 5108 concerning documents, testimony, and information described in the rule.

---

[5]    We also note that, in the context of Commission investigations, with very limited exceptions concerning certain of an individual's financial institution account records covered by the Right to Financial Privacy Act, 12 U.S.C. 3401, et seq., no notice is required or provided when the Commission shares documents or information with other regulatory or law enforcement agencies.

[6]    See 467 U.S. at 748-49.

EXHIBIT J

'CAOB Rulemaking: Rel. 34-49704 re: Public Company Accounting Oversight Board; Order Approving... Page 1 of ...

Case: 1:07-cv-04305 Document #: 201-3 Filed: 05/17/10 Page 26 of 77 PageID #:7366

Home | Previous Page



# U.S. Securities and Exchange Commission

## PCAOB Rulemaking:
## Public Company Accounting Oversight Board; Order Approving Proposed Rules Relating to Investigations and Adjudications

**SECURITIES AND EXCHANGE COMMISSION**

**(Release No. 34-49704; File No. PCAOB-2003-07)**

**May 14, 2004**

### I. Introduction

On October 10, 2003, the Public Company Accounting Oversight Board (the "Board" or the "PCAOB") filed with the Securities and Exchange Commission (the "Commission") proposed rules pursuant to Section 107 of the Sarbanes-Oxley Act of 2002 (the "Act") and Section 19(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), relating to investigations and adjudications. Notice of the proposed rules was published in the Federal Register on March 26, 2004.[1] The Commission received five comment letters relating to these rules. For the reasons discussed below, the Commission is granting approval of the proposed rules.

### II. Description

Section 105 of the Act directs the PCAOB to establish fair procedures for the investigation and disciplining of registered public accounting firms and associated persons of such firms. In furtherance of this provision, the PCAOB proposed rules to establish procedures for investigations and adjudications, and adopted the proposed rules on September 29, 2003. Pursuant to the requirements of Section 107(b) of the Act and Section 19 (b) of the Exchange Act, the Commission published the proposed rules for public comment on March 26, 2003. The proposed rules on investigations and adjudications consist of 64 rules (PCAOB Rules 5000 through 5469 and 5500 through 5501), plus certain definitions that appear in PCAOB Rule 1001.

The proposed rules on investigations and adjudications provide that the PCAOB and its staff may conduct investigations concerning any acts or practices, or omissions to act, by registered public accounting firms and persons associated with such firms that may violate any provisions of the Act, the rules of the PCAOB, the provisions of the securities laws relating to the preparation and issuance of audit reports and the obligations and liabilities of accountants with respect thereto, including Commission rules issued under the Act or professional standards. Pursuant to the Act, the PCAOB's proposed rules provide that it may require registered public accounting firms and their associated persons to cooperate with Board investigations and may seek information from other persons, including clients of registered firms.

When violations are detected, the proposed rules provide an opportunity for

a hearing, and in appropriate cases, for the PCAOB to impose sanctions designed to prevent a repetition of the violation and to enhance the quality and reliability of future audits. These sanctions may include temporarily or permanently prohibiting a firm or associated person from participating in audits of public companies or from being associated with a registered public accounting firm. Sanctions also may require special remedial measures, such as training, new quality control procedures, and the appointment of an independent monitor.

The PCAOB also may hold hearings on disapproved registration applications, pursuant to Section 102 of the Act. Under the PCAOB's registration rules, if the PCAOB is unable to determine that a public accounting firm has met the standard for approval of an application, the PCAOB may provide the firm with a notice of a hearing, which the firm may elect to treat as a written notice of disapproval for purposes of making an appeal to the Commission under Section 107(c) of the Act. If the firm chooses to request a hearing, the PCAOB would, in appropriate circumstances, afford the firm a hearing pursuant to its proposed rules relating to investigations and adjudications.

At the time the PCAOB approved the rules relating to investigations and adjudications, it separately approved, and submitted for Commission approval on an accelerated basis, a subset of those rules that were intended to serve as temporary hearing rules in the event the PCAOB decided to disapprove an application for registration while the Commission was still considering action on the rules relating to investigations and adjudications. The Commission approved the PCAOB's temporary hearing rules on an accelerated basis on November 10, 2003, with the expectation that if it approved the proposed rules relating to investigations and adjudications, those permanent rules would supersede and replace the temporary hearing rules.[2]

## III. Discussion

The PCAOB rules relating to investigations and adjudications generally establish a basic procedural framework for conducting investigations and disciplinary proceedings. Several of the comments the Commission received on the proposed rules reflected concern about the rules' lack of specificity with respect to certain matters left to the discretion of the PCAOB and its staff. These matters include, for example, the determination as to which persons will be permitted to be present during an investigatory examination. The Commission recognizes that the rules are broad in scope and that they contemplate the exercise of discretion by the PCAOB and its staff in a number of important areas. We fully expect the PCAOB and its staff to exercise this discretion in a balanced and fair-minded fashion with due regard for both the purposes of Section 105 of the Act and the legitimate concerns of the firms and individuals affected by the rules. The Commission also recognizes that the rules are new and undoubtedly will be revised and improved over time, as the PCAOB gains experience with their implementation. As this process continues, we would encourage the PCAOB to consider carefully the concerns expressed by commenters and others affected by the rules.

The Commission previously indicated its concern with the operation of proposed Rule 5424(b), which would permit the PCAOB to request issuance of Commission subpoenas in connection with PCAOB disciplinary proceedings, either on the PCAOB's own behalf or for the benefit of the party that is the subject of the proceeding. The Commission notes, in connection with proposed Rule 5424(b), that the issuance of Commission

subpoenas in connection with PCAOB disciplinary proceedings would be a novel and potentially complex arrangement, and the Commission staff has discussed with the PCAOB staff the need to develop and implement additional rules and procedures regarding the handling of subpoena requests. The two comment letters that addressed this issue supported the idea that respondents in a PCAOB hearing could ask the PCAOB to request a Commission subpoena to compel appearance by non-parties to the hearing. They agreed, however, that this procedure raised novel issues, and that the Commission and the PCAOB should adopt additional, carefully crafted rules to implement Rule 5424(b). The additional rules and procedures being developed by the PCAOB and Commission staffs would address, among other things, the steps that the parties to PCAOB proceedings would need to follow prior to applying for Commission subpoenas, as well as the Commission's processes for handling such requests once they are received. It is our understanding and expectation, which we have discussed with the PCAOB staff, that Rule 5424(b) will not be available for use in PCAOB proceedings until these additional rules and procedures have been developed and implemented to our satisfaction.

We are satisfied that the rules proposed by the PCAOB create a reasonable operating framework for investigating and disciplining registered public accounting firms and their associated persons.

### IV. Conclusion

On the basis of the foregoing, the Commission finds that the proposed rules are consistent with the requirements of the Act and the securities laws and are necessary and appropriate in the public interest and for the protection of investors.

IT IS THEFORE ORDERED, pursuant to Section 107 of the Act and Section 19(b)(2) of the Exchange Act, that the proposed rules on investigations and adjudications (File No. PCAOB-2003-07) be and hereby are approved (with the understanding that Rule 5424(b) will not be available for use in PCAOB proceedings until the appropriate implementation framework is in place), and that such rules, as of the date of this approval, supersede and replace the temporary hearing rules (File No. PCAOB-2003-06) in their entirety.

    By the Commission.

J. Lynn Taylor
Assistant Secretary

### Endnotes

[1] Release No. 34-49454 (March 19, 2004).

[2] Release No. 34-48765 (November 10, 2003).

*http://www.sec.gov/rules/pcaob/34-49704.htm*

# EXHIBIT K



**PCAOB**

Public Company Accounting Oversight Board

1666 K Street, N.W.
Washington, DC 20006
Telephone: (202) 207-9100
Facsimile: (202) 862-8430
www.pcaobus.org

|  |  |
|---|---|
| INSPECTION OF<br>REGISTERED PUBLIC ACCOUNTING FIRMS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PCAOB Release No. 2003-019<br>October 7, 2003<br><br>PCAOB Rulemaking<br>Docket Matter No. 006 |

Summary: After public comment, the Public Company Accounting Oversight Board (the "Board" or "PCAOB") has adopted rules on inspections of registered public accounting firms. Section 104(a) of the Sarbanes-Oxley Act of 2002 (the "Act") directs the Board to conduct a continuing program of inspections to assess the degree of compliance of each public accounting firm registered with the Board, and that firm's associated persons, with the Act, the rules of the Board, the rules of the Securities and Exchange Commission (the "Commission"), and professional standards in connection with the performance of audits, the issuance of audit reports, and related matters involving U.S. public companies. The proposal consists of 10 rules (PCAOB Rules 4000 through 4010) plus two related definitions. The Board will submit these rules to the Securities and Exchange Commission ("Commission") for approval pursuant to Section 107 of the Act. The Board's rules will not take effect unless approved by the Commission.

Board
Contacts: Phoebe Brown, Special Counsel to Board Member Goelzer (202/207-9073; brownp@pcaobus.org), Michael Stevenson, Associate General Counsel (202/207-9054; stevensonm@pcaobus.org), or Chris Mandaleris, Deputy Director – Inspections (202/207-9057; mandalerisc@pcaobus.org).

\*       \*       \*



PCAOB Release No. 2003-019
October 7, 2003
Page 2

Section 104(a) of the Act directs the Board to conduct a continuing program of inspections to assess the degree of compliance of each registered public accounting firm and associated persons of that firm with the Act, the Board's and the Commission's rules, and professional standards in connection with the performance of audits, the issuance of audit reports, and related matters involving U.S. public companies.[1] Section 101(c)(3) of the Act provides that the Board shall "conduct inspections of registered public accounting firms, in accordance with section 104 and the rules of the Board." To implement this directive and to comply with Section 101(c)(3), the Board has adopted rules relating to inspections.[2]

The rules adopted by the Board consist of 10 rules (PCAOB Rules 4000 through 4010) plus two related definitions. The text of these rules and a detailed discussion of each of the rules are attached as Appendices 1 and 2, respectively. Section A of this release provides a general overview of the operation of the rules. Section B of this release describes the changes made to the rules in response to public comments. Section C discusses special issues relating to non U.S. accounting firms.

A.   Overview of the Rules on Inspections

Consistent with Section 104(a) of the Act, the Board's proposed rules subject public accounting firms that are registered with the Board to such regular and special inspections as the Board may from time-to-time conduct. The Board's rules establish a schedule for regular inspections that is consistent with Section 104(b)(1) of the Act, including annual inspections for firms that do the largest volume of audit work and at least triennial inspections for other firms that do some volume of audit work.[3] Special

---

[1]   This release uses the term "U.S. public companies" as shorthand for the companies that are "issuers" under the Act and the Board's rules. This includes domestic public companies, whether listed on an exchange or not, and foreign private issuers that have either registered, or are in the process of registering, a class of securities with the Commission or are otherwise subject to Commission reporting requirements.

[2]   The rules govern procedural matters concerning the Board's inspection program. Board staff will carry out particular inspections according to detailed, nonpublic inspection plans.

[3]   The rules do not provide for regular inspections of registered firms that do no audit work. The Board does not encourage the registration of firms that have no public company clients and are not actively seeking to develop a public company



PCAOB Release No. 2003-019
October 7, 2003
Page 3

inspections are not subject to an inspection schedule and will be conducted at such time as is necessary or appropriate to address issues that come to the Board's attention.

The Board's rules provide that a regular inspection will include, but is not limited to, the steps and procedures as specified in Sections 104(d)(1) and (2) of the Act and any other tests of the audit, supervisory, and quality control procedures of the firm as the Director of the Division of Registration and Inspections or the Board determines appropriate. In addition, the rules provide that special inspections will include all steps and procedures necessary or appropriate to address the issue or issues raised by the Board when it authorized the inspection.

The rules implement the authority and responsibility that the Act gives the Board to report information indicating possible violations of law or professional standards to the Commission, appropriate state regulatory authorities, and other regulators and law enforcement authorities. Similarly, the rules implement the Board's authority to commence its own investigation or disciplinary proceeding based on such information.

The rules also set forth a process by which a firm may submit written comments on a draft inspection report before the Board issues a final inspection report. The firm's response to the draft inspection report will be attached to and made part of the final inspection report. In addition, the rules implement the Act's requirement that portions of a final inspection report that deal with criticisms or potential defects in a firm's quality control systems may be made public only if the firm fails to address those matters to the Board's satisfaction within 12 months after the issuance of the final inspection report.

The rules provide that the Board may, at any time, publish reports concerning the procedures, findings, and results of its various inspections. These reports may include discussion of criticisms of, or potential defects in, quality control systems of any firm or firms that were the subject of a Board inspection. Under the rules, these published reports will not identify the firm or firms to which these criticisms relate, or at which the defects were found, unless the information has previously been made public pursuant to the Board's rules or other lawful means.

With the exception of the changes discussed below, the rules adopted today are substantially similar to the rules proposed by the Board on July 28, 2003. The operation of those rules was summarized in greater detail in PCAOB Release No. 2003-013 (July 28, 2003).

---

clientele. See "Frequently Asked Questions Regarding Registration With the Board," Question #8, PCAOB Release No. 2003-011 (July 18, 2003).



PCAOB Release No. 2003-019
October 7, 2003
Page 4


B.  Public Comment Process and Board Responses

    The Board proposed inspection rules, and released them for public comment, on July 28, 2003.  The Board received 16 written comment letters.[4/]  In response to these comments, the Board's final rules both clarify and modify certain aspects of the proposal.  Most significantly, the changes include –

- •   providing a definition of the term "appropriate state regulatory authority" (following the definition in the Act), and employing that term rather than referring to a "state agency, board, or other authority that has issued a license or certification number to the firm or person who engaged, or may have engaged in such act, practice, or omission authorizing such firm or person to engage in the business of auditing or accounting;"

- •   clarifying that a registered firm's and an associated person's duty to cooperate with an inspection includes cooperating and complying with any request made in furtherance of the Board's authority and responsibilities under the Act;

- •   more closely tracking the Act by allowing the Board the flexibility to make draft and final inspection reports available to a firm for review rather than providing by rule that the Board will necessarily transmit copies to the firm;

- •   adding a provision implementing the Act's procedural requirements concerning a firm's response to a draft inspection report;

- •   providing that the Board will notify the Commission and each appropriate state regulatory authority if the Board determines that a firm has satisfactorily addressed quality control defects and criticisms within the twelve-month period provided by the Act; and

- •   reorganizing portions of the rules to make clear that the overarching purpose of both regular and special inspections is to assess the degree of compliance with the Act, Board rules, Commission rules, and professional

---

[4/]   The Board's responses to the comments are discussed in more detail in the section-by-section analysis in Appendix 2.  The comment letters are available on the Board's Web site – www.pcaobus.org – and will be attached to the Board's Form 19b-4, to be filed with the Commission.



PCAOB Release No. 2003-019
October 7, 2003
Page 5

standards, in connection with the performance of audits, the issuance of audit reports, and related matters involving issuers.

C.    Special Issues Relating to Non-U.S. Firms

      The nature and scope of the Board's oversight over non-U.S. accounting firms that audit the financial statements of U.S. public companies is the subject of an ongoing dialogue between the Board and its foreign counterparts. As the Board has previously stated, the Board is committed to finding ways of accomplishing the oversight goals of the Act by coordinating in areas where there is a common programmatic interest without subjecting non-U.S. firms to unnecessary burdens. The adoption of these rules is not intended in any way to signal that the Board has already determined how its oversight should operate as to those firms. Before non-U.S. accounting firms are required to register with the Board, the Board intends to issue a release describing how it will carry out its inspection responsibilities with respect to such firms.

*     *     *

      On the 7th day of October, in the year 2003, the foregoing was, in accordance with the bylaws of the Public Company Accounting Oversight Board,

ADOPTED BY THE BOARD.

/s/ J. Gordon Seymour
Acting Secretary

October 7, 2003

APPENDICES –

    1.    Rules Relating to Inspections

    2.    Section-by-Section Analysis of Inspection Rules



## Appendix 1 – Rules Relating to Inspections

### SECTION 1. GENERAL PROVISIONS

**Rule 1001. Definitions of Terms Employed in Rules.**

When used in Rules, unless the context otherwise requires:

**(a)(xi) Appropriate State Regulatory Authority**

The term "appropriate state regulatory authority" means the State agency or other authority responsible for the licensure or other regulation of the practice of accounting in the State or States having jurisdiction over a registered public accounting firm or associated person thereof, with respect to the matter in question.

**(p)(vi) Professional Standards**

The term "professional standards" means –

(A)     accounting principles that are –

(i)     established by the standard setting body described in section 19(b) of the Securities Act of 1933, as amended by the Act, or prescribed by the Commission under section 19(a) of the Securities Act of 1933 or section 13(b) of the Securities Exchange Act of 1934; and

(ii)     relevant to audit reports for particular issuers, or dealt with in the quality control system of a particular registered public accounting firm; and

(B)     auditing standards, standards for attestation engagements, quality control policies and procedures, ethical and competency standards, and independence standards (including rules implementing Title II of the Act) that the Board or the Commission determines –

(i)     relate to the preparation or issuance of audit reports for issuers; and

(ii)     are established or adopted by the Board under section 103(a) of the Act, or are promulgated as rules of the Commission.



PCAOB Release No. 2003-019
October 7, 2003
Page A1-2 – Rules

## SECTION 4. INSPECTIONS

**Rule 4000.  General**

Every registered public accounting firm shall be subject to all such regular and special inspections as the Board may from time-to-time conduct in order to assess the degree of compliance of each registered public accounting firm and associated persons of that firm with the Act, the Board's rules, the rules of the Commission, and professional standards, in connection with its performance of audits, issuance of audit reports, and related matters involving issuers. Inspection steps and procedures shall be performed by the staff of the Division of Registration and Inspections, and by such other persons as the Board may authorize to participate in particular inspections or categories of inspections.

**Rule 4001.  Regular Inspections**

In performing a regular inspection, the staff of the Division of Registration and Inspections and any other person authorized by the Board to participate in the inspection shall take such steps, and perform such procedures, as the Board determines are necessary or appropriate. Such steps and procedures must include, but need not be limited to, those set forth in Section 104(d)(1) and (2) of the Act and such other tests of the audit, supervisory, and quality control procedures of the firm as the Director of the Division of Registration and Inspections or the Board determines.

**Rule 4002.  Special Inspections**

In performing a special inspection, the staff of the Division of Registration and Inspections and any other person authorized by the Board to participate in the inspection shall take such steps, and perform such procedures, as are necessary or appropriate concerning the issue or issues specified by the Board in connection with its authorization of the special inspection.

Note: Under Section 104(b)(2) of the Act, the Board may authorize a special inspection on its own initiative or at the request of the Commission.

**Rule 4003.  Frequency of Inspections**

(a)      During each calendar year, beginning no later than the calendar year following the calendar year in which its application for registration with the



**PCAOB**
Public Company Accounting Oversight Board

PCAOB Release No. 2003-019
October 7, 2003
Page A1-3 – Rules

Board is approved, a registered public accounting firm that, during the prior calendar year, issued audit reports with respect to more than 100 issuers shall be subject to a regular inspection.

    (b)    At least once in every three calendar years, beginning with the three-year period following the calendar year in which its application for registration with the Board is approved, a registered public accounting firm that, during any of the three prior calendar years, issued an audit report with respect to at least one, but no more than 100, issuers, or that played a substantial role in the preparation or furnishing of an audit report with respect to at least one issuer, shall be subject to a regular inspection.

    (c)    With respect to a registered public accounting firm that has filed a completed Form 1-WD under Rule 2107, the Board shall have the discretion to forego any regular inspection that would otherwise commence during the period beginning on the fifth day following the filing of the completed Form 1-WD and continuing until the firm's registration is deemed withdrawn or the firm withdraws the Form 1-WD.

**Rule 4004.   Procedure Regarding Possible Violations**

    If the Board determines that information obtained by the Board's staff during any inspection indicates that the registered public accounting firm subject to such inspection, any associated person thereof, or any other person, may have engaged, or may be engaged, in any act, practice, or omission to act that is or may be in violation of the Act, the rules of the Board, any statute or rule administered by the Commission, the firm's own quality control policies, or any professional standard, the Board shall, if it determines appropriate –

    (a)    report information concerning such act, practice, or omission to –

        (1)    the Commission; and

        (2)    each appropriate state regulatory authority; and

    (b)    commence an investigation of such act, practice, or omission in accordance with Section 105(b) of the Act and the Board's rules thereunder or a disciplinary proceeding in accordance with Section 105(c) of the Act and the Board's rules thereunder.



PCAOB Release No. 2003-019
October 7, 2003
Page A1-4 – Rules

> Note: The Board may, as appropriate, make referrals or report information to regulatory and law enforcement agencies other than those specifically described in Rule 4004.

**Rule 4005.   Record Retention and Availability**

**[Reserved]**

**Rule 4006.   Duty to Cooperate With Inspectors**

Every registered public accounting firm, and every associated person of a registered public accounting firm, shall cooperate with the Board in the performance of any Board inspection. Cooperation shall include, but is not limited to, cooperating and complying with any request, made in furtherance of the Board's authority and responsibilities under the Act, to –

(1)   provide access to, and the ability to copy, any record in the possession, custody, or control of such firm or person, and

(2)   provide information by oral interviews, written responses, or otherwise.

**Rule 4007.   Procedures Concerning Draft Inspection Reports**

(a)   The Director of the Division of Registration and Inspections shall make a draft inspection report available for review by the firm that is the subject of the report. The firm may, within the 30 days after the draft inspection report is first made available for the firm's review, or such longer period as the Board may order, submit to the Board a written response to the draft report.

(b)   (1)   In submitting a response pursuant to paragraph (a), the firm may indicate any portions of the response for which the firm requests confidential treatment under Section 104(f) of the Act, and may supply any supporting authority or other justification for according confidential treatment to the information.

(2)   The Board shall attach to, and make part of the inspection report, any response submitted pursuant to paragraph (a), but shall redact from the response attached to the inspection report any information for which the firm requested confidential treatment and which it is reasonable to characterize as confidential.



PCAOB Release No. 2003-019
October 7, 2003
Page A1-5 – Rules

(c)     After receiving and reviewing any response letter pursuant to paragraph (a) of this rule, the Board may take such action with respect to the draft inspection report as it considers appropriate, including adopting the draft report as the final report, revising the draft report, or continuing or supplementing the inspection before issuing a final report.  In the event that, prior to issuing a final report, the Board directs the staff to continue or supplement the inspection or revise the draft report, the Board may, in its discretion, afford the firm the opportunity to review any revised draft inspection report.

### Rule 4008.   Procedures Concerning Final Inspection Reports

Promptly following the Board's issuance of a final inspection report, the Board shall –

(a)     make the final report available for review by the firm that is the subject of the report;

(b)     transmit to the Commission the final report, any additional letter or comments by the Board or the Board's inspectors that the Board deems appropriate, and any response submitted by the firm to a draft inspection report; and

(c)     transmit to each appropriate state regulatory authority, in appropriate detail, the final report, any additional letter or comments by the Board or the Board's inspectors that the Board deems appropriate, and any response submitted by the firm to a draft inspection report.

### Rule 4009.   Firm Response to Quality Control Defects

(a)     With respect to any final inspection report that contains criticisms of, or potential defects in, the quality control systems of the firm under inspection, the firm may submit evidence or otherwise demonstrate to the Director of the Division of Registration and Inspections that it has improved such systems, and remedied such defects no later than 12 months after the issuance of the Board's final inspection report.  After reviewing such evidence, the Director shall advise the firm whether he or she will recommend to the Board that the Board determine that the firm has satisfactorily addressed the criticisms or defects in the quality control system of the firm identified in the final inspection report and, if not, why not.



PCAOB Release No. 2003-019
October 7, 2003
Page A1-6 – Rules

(b)     If the Board determines that the firm has satisfactorily addressed the criticisms or defects in the quality control system, the Board shall provide notice of that determination to the Commission and to any appropriate state regulatory authority to which the Board had supplied any portion of the final inspection report.

(c)     The Board shall notify the firm of its final determination concerning whether the firm has addressed the criticisms or defects in the quality control system of the firm identified in the final inspection report to the satisfaction of the Board.

(d)     The portions of the Board's inspection report that deal with criticisms of or potential defects in quality control systems that the firm has not addressed to the satisfaction of the Board shall be made public by the Board –

(1)     upon the expiration of the 12-month period described in paragraph (a) of this rule if the firm fails to make any submission pursuant to paragraph (a); or

(2)     upon the expiration of the period in which the firm may seek Commission review of any board determination made under paragraph (b) of this rule, if the firm does not seek Commission review of the Board determination; or

(3)     unless otherwise directed by Commission order or rule, 30 days after the firm formally requests Commission review pursuant to Section 104(h)(1)(B) of the Act.

**Rule 4010.   Board Public Reports**

Notwithstanding any provision of Rules 4007, 4008, and 4009, the Board may, at any time, publish such summaries, compilations, or other general reports concerning the procedures, findings, and results of its various inspections as the Board deems appropriate.  Such reports may include discussion of criticisms of, or potential defects in, quality control systems of any firm or firms that were the subject of a Board inspection, <u>provided</u> that no such published report shall identify the firm or firms to which such criticisms relate, or at which such defects were found, unless that information has previously been made public in accordance with Rule 4009, by the firm or firms involved, or by other lawful means.



## Appendix 2 – Section-by-Section Analysis of Inspection Rules

There are 10 inspection rules (PCAOB Rules 4000 through 4010, with Rule 4005 reserved) plus related definitions (PCAOB Rule 1001(a)(xi) and PCAOB Rule 1001(p)(vi)). Each of the rules is discussed below.

### Rule 1001 – Definitions of Terms Employed in Rules

*Appropriate State Regulatory Authority*

As discussed in more detail below, the Board has decided to add a definition of the term "appropriate state regulatory authority." The definition of that term in Rule 1001(a)(xi) is identical to the definition of the same term in Section 2(a)(1) of the Act.

*Professional Standards*

The definition of professional standards in Rule1001(p)(vi) references that in Section 2(a)(10) of the Act. It should be noted that the term "professional standards" is broader than "auditing and related professional practice standards," which is defined in Rule 1001(a)(viii) of the Board's rules.

A few commenters suggested that the Board clarify this term, particularly in conjunction with reporting possible violations under Rules 4004 and identifying criticisms or potential defects in quality control systems under Rule 4009. The Board has clarified the use of this term vis à vis these two rules below.

### Rule 4000 – General

Consistent with Section 104(a) of the Act, Rule 4000 subjects every registered public accounting firm to all such regular and special inspections as



the Board may from time-to-time conduct in order to assess the degree of compliance of each registered public accounting firm and associated persons of that firm with the Act, the Board's rules, the rules of the Commission, and professional standards, in connection with its performance of audits, issuance of audit reports, and related matters involving issuers. The rule provides that inspection steps and procedures will be performed by the staff of the Division of Registration and Inspections and by such other persons authorized by the Board.

To address one commenter's concern about the scope of the Board's inspections, the Board has clarified in this rule that registered public accounting firms will be subject to regular and special inspections "in order to assess the degree of compliance of each registered public accounting firm and associated persons of that firm with the Act, the Board's rules, the rules of the Commission, and professional standards, in connection with its performance of audits, issuance of audit reports, and related matters involving issuers."

Several commenters requested that the Board clarify the types of persons covered by the phrase "such other persons authorized by the Board" and whether such persons would be subject to the Board's Ethics Code and certain confidentiality agreements. The Board anticipates that "other persons authorized by the Board" to perform an inspection will include consultants and staff of the



PCAOB Release No. 2003-019
October 7, 2003
Page A2-3 – Section-by-Section Analysis

Board, other than staff of the Board's Division of Registration and Inspections.[5/]

The Board does not anticipate that practicing accountants associated with public

accounting firms will participate in the Board's inspections.

**Rule 4001 – Regular Inspections**

Rule 4001 requires that in performing a regular inspection, the staff of the

Division of Registration and Inspections and other authorized persons take such

steps and perform such procedures as the Board determines are necessary or

appropriate. The rule requires the inclusion of steps and procedures set forth in

Sections 104(d)(1) and (2) of the Act and such other tests of the audit,

supervisory, and quality control procedures of the firm as the Director of the

Division of Registration and Inspections or the Board determines.

Section 104(d)(1) requires the Board to "inspect and review engagements

of the firm (which may include audit engagements that are the subject of ongoing

litigation or other controversy between the firm and 1 or more third parties),

performed at various offices and by various associated persons of the firm, as

---

[5/]     The Board anticipates using some consultants to supplement its
permanent staff on certain inspections during its first cycle of inspections. All
inspections will be led by a senior staff member of the PCAOB's Division of
Registration and Inspections. Once the first cycle of inspections is complete and
the Board has further added to its inspections staff, the Board anticipates that
consultants will be primarily used as technical specialists, as needed, on discrete
issues in the course of inspections. Non-staff that participate in the Board's
inspections will be subject to relevant provisions of the Board's Ethics Code,
including the same confidentiality requirements to which the Board's inspection
staff is subject.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-4 – Section-by-Section Analysis

selected by the Board." Section 104(d)(2) requires the Board to "evaluate the sufficiency of the quality control system of the firm, and the manner of documentation and communication of that system by the firm."

**Rule 4002 – Special Inspections**

Rule 4002 requires that in performing a special inspection, the staff of the Division of Registration and Inspections and other authorized persons take such steps and perform such procedures, as are necessary or appropriate concerning the issue or issues specified by the Board in connection with its authorization of the special inspection. A note to the rule makes clear that under Section 104(b)(2) of the Act, the Board may authorize a special inspection on its own initiative or at the request of the Commission. Several commenters expressed uncertainty about whether, under Rule 4002, Board approval would be required to authorize a special inspection. Since the rule requires Board authorization, like any other Board action, the vote of a majority of the Board members present at a meeting at which a quorum of Board members is present is required to authorize a special inspection.[6]

Further, a number of commenters requested additional guidance as to the type of information that would trigger a special inspection. In order to retain flexibility and avoid a formulaic approach to such inspections, the Board has

---

[6] <u>See</u> Article 4.3 of the PCAOB's bylaws.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-5 – Section-by-Section Analysis

decided not to develop a set threshold or list of criteria that may lead to the commencement of a special inspection. For example, while the Board will consider the source of information it receives, the Board may find that in certain circumstances anonymous tips or media stories may be sufficient to begin a special inspection. Similarly, in order to retain flexibility, the Board has decided not to include a specific notice provision in the rule, as suggested by one commenter. However, as a practical matter, the Board's staff intends to give firms subject to special inspections reasonable notice in advance of commencing such inspections.

Some commenters requested that the Board clarify the difference between an investigation and a special inspection. In response to this comment, the Board notes that special inspections are not intended to serve the same function as a Board investigation, which will be conducted pursuant to the Board's investigative rules and procedures. Special inspections are designed to address issues that come to the Board's attention and, as a general matter, will be performed in order to assess the degree of compliance of each registered public accounting firm and associated persons of that firm with the Act, the Board's rules, the rules of the Commission, and professional standards, in connection with its performance of audits, issuance of audit reports, and related matters involving issuers. Nevertheless, any inspection – whether a regular inspection or



**PCAOB**
Public Company Accounting Oversight Board

a special inspection – may result in a particular matter being turned over to the Board's enforcement staff for investigation.

**Rule 4003 – Frequency of Inspections**

Rule 4003 sets forth the schedule for regular inspections. Rule 4003(a) is consistent with the schedule for larger registered public accounting firms set forth in Section 104(b)(1)(A) of the Act. This rule requires that beginning no later than the year after its registration with the Board has been approved, a registered public accounting firm that, during the prior calendar year, issued audit reports with respect to more than 100 issuers will be subject to a regular inspection.[7/] Rule 4003(b) is consistent with the schedule for smaller registered public accounting firms set forth in Section 104(b)(1)(B) of the Act. Rule 4003(b) requires that beginning with the three-year period following the calendar year in which its registration with the Board has been approved, a registered public accounting firm that, during any of the three prior calendar years, issued audit reports with respect to at least one, but no more than 100, issuers, or that played a substantial role in the preparation or furnishing of an audit report with respect to at least one issuer, will be subject to a regular inspection.

In accordance with Section 104(b)(2) of the Act, the Board has added Rule 4003(c) which adjusts the regular inspection schedule for a registered

---

[7/]     A technical change has been made to Rule 4003(a) and (b). This change does not affect the rule's meaning.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-7 – Section-by-Section Analysis

public accounting firm that has requested to withdraw from registration by filing a completed Form 1-WD.[8/] Specifically, the rule provides that the Board shall have discretion not to conduct a regular inspection that would otherwise commence during the period beginning on the fifth day following the filing of the completed Form 1-WD and continuing until the firm's registration is deemed withdrawn or the firm withdraws its Form 1-WD.

One commenter noted that the Board may wish to add more flexibility in its rules to allow regular inspections to be conducted more frequently than the statutory schedule in Section 104(b)(1) allows. To address this concern, the Board notes its authority under Section 104(b)(2) to adjust inspection schedules set forth in Section 104(b)(1) if it finds that different inspection schedules are consistent with the purposes of the Act, the public interest, and the protection of investors. While the Board has decided to align the regular inspection schedule with that set forth in Section 104(b)(1) of the Act as an initial matter, the Board may decide at a later point, given subsequent developments and the benefit of experience with its inspection program, that adjustments to the schedule are appropriate.

Several commenters recommended that the Board coordinate the timing of its regular inspections with the peer review process. At this time, in order to

---

[8/]    See PCAOB Release No. 2003-016 (September 29, 2003).



PCAOB Release No. 2003-019
October 7, 2003
Page A2-8 – Section-by-Section Analysis

retain flexibility in performing its regular inspections, the Board has decided not to commit to align its regular inspections with the peer review process. The Board understands that firms that register with the Board will also have practices relating to audits other than public company audits, and that state regulatory requirements continue to involve a peer review process related to those practices. The Board expects its inspections staff to make any appropriate recommendations concerning coordination with such reviews as the staff gains experience with issues relating to the implementation of the Board's inspection responsibilities.

**Rule 4004 – Procedure Regarding Possible Violations**

Consistent with Section 104(c) of the Act, Rule 4004 sets forth procedures which the Board is required to follow with respect to possible violations by firms under inspection. Specifically, the rule requires that if the Board determines that information obtained by the Board's staff during any inspection indicates that the registered public accounting firm subject to such inspection, any associated person thereof, or any other person, may have engaged, or may be engaged in any act, practice, or omission to act that is or may be in violation of the Act, the rules of the Board, any statute or rule administered by the Commission, the firm's own quality control policies, or any professional standard, then the Board shall, if it determines it appropriate, report such possible violations to the Commission



PCAOB Release No. 2003-019
October 7, 2003
Page A2-9 – Section-by-Section Analysis

and each appropriate state regulatory authority.[9/]  The Board has removed the phrase "subject to the provisions of Section 105(b)(5)(B) of the Act" from Rule 4004(a) because it is the Act, rather than the Board's rules that directs the recipients of this information to maintain such information as confidential and privileged.  This change does not mean that information reported under Rule 4004(a) is not covered by Section 105(b)(5)(A) of the Act.

In addition, under Rule 4004, if the Board determines it appropriate, the Board shall commence an investigation of such act, practice, or omission in accordance with Section 105(b) of the Act and the Board's rules thereunder or commence a disciplinary proceeding in accordance with Section 105(c) of the Act and the Board's rules thereunder.

The phrase "if it determines appropriate" in Rule 4004 is meant to signal that the Board will decide which of these acts, practices and omissions would be appropriate to refer to the Commission and to the states or other authorities.  In making this determination, depending on the nature of the possible violation, the Board could conclude that it may be appropriate to report information to the

---

[9/]     As discussed in more detail below in the section-by-section analysis of Rule 4008, the Board has, in order to more closely track the Act, added a definition of "appropriate state regulatory authority" based on the definition of that term in the Act.  The Board expects that, in most cases, the appropriate state regulatory authority to receive an inspection report will be any state, agency, board or other authority that has issued a license or certification number authorizing the firm to engage in the business of auditing or accounting.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-10 – Section-by-Section Analysis

Commission, and not the states or other authorities, and vice versa. A note to the rule makes clear that the Board may, as appropriate, report information and make referrals to agencies other than those specifically described in Rule 4004.

The Board received a number of comments on proposed Rule 4004. Most of these comments related to the proposed rule's standard for triggering a possible Board report. Several commenters indicated that they believed the threshold of a possible violation was too low. On the other hand, one commenter believed the threshold, as it related to reports to state regulatory authorities, was too high and encouraged the Board to provide such reports to state authorities anytime a possible violation is detected unless the Board determines such a report to be inappropriate. Other commenters urged the Board to use discretion in making referrals generally or as it relates to certain types of possible violations. In particular, several commenters expressed concern about the parallel treatment in the Act and the Board's rules of possible violations of the firm's own quality control policies with possible violations of laws and professional standards.

After considering these comments, the Board has decided not to change the threshold for reports under Rule 4004. The rule tracks Section 104(c) of the Act, which is itself a directive to the Board, and the Board does not consider it appropriate to change the threshold for reporting set forth by Congress in the Act. The Board notes, however, that, as provided for in the Act, Rule 4004 calls for the Board to report such information "if it determines [such a report to be]



PCAOB Release No. 2003-019
October 7, 2003
Page A2-11 – Section-by-Section Analysis

appropriate." The Board will exercise judgment in determining when to make reports pursuant to Rule 4004. The Board recognizes that the circumstances calling for a report of a possible violation of a statute or rule administered by the Commission differ significantly from any circumstances in which a report of a possible violation of a firm's own quality control policies would be appropriate.

To clarify the purpose of the note, we have revised it to speak in terms of the Board "report[ing] information" – as the rule does – as well as in terms of "referrals." One commenter asserted that the Note to the rule exceeded the Board's statutory authority and that referrals should be limited to the agencies specifically listed as the required recipients of Board reports in Section 104(c) of the Act. The Board does not believe that its authority to report information or to make referrals is limited in the way suggested by the commenter. While Section 104(c) requires the Board to report such information to the Commission and the appropriate state regulatory authority, other parts of the Act, such as Section 105(b)(5), clearly contemplate that the Board is permitted to make information from its inspections available to other regulatory authorities. Similarly, other parts of the Act, such as Section 105(b)(4), clearly contemplate that the Board is permitted to make referrals to other regulatory authorities.

Another commenter suggested that the Board limit the Note to Rule 4004 to the agencies listed in Section 105(b)(5)(B) of the Act. The Note to the rule is intended to serve a different purpose. The Note is intended to provide notice that



PCAOB Release No. 2003-019
October 7, 2003
Page A2-12 – Section-by-Section Analysis

Rule 4004, in implementing Section 104(c) of the Act, should not be understood as precluding the Board from exercising the Board's other statutory authority to make referrals or to report information from inspections. Neither the rule nor the note are intended to describe the limit of that authority.[10]

Finally, one commenter recommended that the Board provide for notification to the firm when the Board reports information under this rule. In light of the fact that the Board's reports under this rule could, in appropriate circumstances, trigger a law enforcement investigation, the Board does not believe that adding a right to such notification to its rules would be appropriate.

**Rule 4005 – Record Retention and Availability**

Section 104(e) of the Act provides that the "rules of the Board may require the retention by registered public accounting firms for inspection purposes of records whose retention is not otherwise required by Section 103 or the rules issued thereunder." The Board is reserving this rule in anticipation of issuing

---

[10]     Several commenters suggested the Board go further and require agencies receiving reports pursuant to this rule to enter into confidentiality agreements. The Board does not see a need for a rule that requires confidentiality agreements with respect to such reports. The Board intends, however, to take reasonable measures to seek to ensure that the confidentiality requirements of the Act will be honored with respect to confidential information the Board reports to any regulatory or law enforcement authority.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-13 – Section-by-Section Analysis

standards on record retention as part of its standard setting process once it has experience with its inspection program.[11/]

One commenter suggested that, when the Board does promulgate record retention standards, they be consistent with the rules of the Commission implementing Section 802 of the Sarbanes-Oxley Act.[12/]  The Board will consider this suggestion at the appropriate time.  The Board reminds registered public accounting firms that they should continue to comply with all other applicable federal, state and professional record retention requirements.

**Rule 4006 – Duty to Cooperate with Inspectors**

Rule 4006 requires every registered public accounting firm and every associated person of such firm to cooperate with the Board in any Board inspection.  The rule requires that such firms and persons must cooperate and comply with any request, made in furtherance of the Board's authority and responsibilities under the Act, for documents or information.  We have revised the rule slightly from the proposed rule.  The proposed rule provided that cooperation included providing documents or information "that the Board

---

[11/]     The Board anticipates that standards concerning record retention will continue to be codified in the standards sections of the Board's rules.  Any future Rule 4005 on record retention and availability for inspections will supplement those standards.

[12/]     See Securities and Exchange Commission, Retention of Records Relevant to Audits and Reviews, Release No. 34-47241 (Jan. 24, 2003).



PCAOB Release No. 2003-019
October 7, 2003
Page A2-14 – Section-by-Section Analysis

considers relevant or material to the subject matter of the inspection." Upon further reflection and upon consideration of the comments generally, we have eliminated that standard, which appears in Section 105 of the Act concerning investigations, and replaced it with the general cooperation standard described in Section 102(b)(3). Like Section 102(b)(3), the rule now describes the required cooperation in terms of cooperating and complying with any request "made in furtherance of the Board's authority and responsibilities under the Act."

Rule 4006 is intended to provide for Board access to documents and information to the full extent authorized by the Act. Among other things, that means that the scope of the rule is not limited to documents and information generated in the course of audits of issuers. Under Section 104(d) of the Act, Board inspections involve evaluations and testing of, among other things, a firm's quality control and supervisory procedures. Accordingly, the documents and information the Board is likely to request as part of its authority and responsibilities to inspect registered public accounting firms, and that therefore a firm must cooperate by providing access to, will involve more than documents and information generated in the course of audits of issuers.

One commenter inquired about the confidentiality of documents provided by firms and associated persons to the Board pursuant to their duty to cooperate with the Board under Rule 4006. The Act provides that, in general, "all documents and information prepared or received by or specifically for the Board,



PCAOB Release No. 2003-019
October 7, 2003
Page A2-15 – Section-by-Section Analysis

and deliberations of the Board and its employees and agents, in connection with an inspection under section 104 . . . shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency . . . ." Accordingly, documents and information received by the Board pursuant to Rule 4006 in connection with a Section 104 inspection are entitled to this statutory protection.

Another commenter suggested that the Board's staff should have to make a demonstration of its need for copies of documents before making copies of firm documents, rather than just having access to them. The Board has decided not to add this requirement to its rule. While the Board expects to only make and remove copies of documents it needs, it is clear that the Board cannot conduct the type of rigorous inspection program contemplated in the Act without the ready ability to make and remove copies of documents in the possession of registered firms and their associated persons. Adding a "demonstration of need" standard to Rule 4006 could create needless disagreements about whether the Board needs copies of particular documents that might frustrate the Board's compliance with its statutory responsibilities.

Finally, one commenter expressed concern that cooperating with the Board, as provided for in Rule 4006, "presents numerous potential conflicts with state laws and with non-U.S. laws and professional standards." This commenter



PCAOB Release No. 2003-019
October 7, 2003
Page A2-16 – Section-by-Section Analysis

therefore recommended that the Board amend the rule to provide that the production of documents and other information covered by the rule is only required to the extent consistent with applicable laws and professional standards. As discussed above in this release, the Board recognizes that its oversight of non-U.S. auditors raises special issues and is committed to finding ways to accomplish the goals of the Act without subjecting non-U.S. firms to conflicting requirements.

In addition, as discussed in more detail in the Board's release adopting its investigation and adjudication rules,[13/] the Board intends to recognize certain privileges recognized elsewhere in the law. As explained in more detail in that release, however, the Board will not honor assertions of an "accountant-client" privilege. More generally, any perceived state law or professional nondisclosure requirements or other obstacles to compliance with an accounting board demand (other than a privilege that would be a valid basis for resisting a Commission subpoena) are, in the Board's view, preempted by the Act. Accordingly, a failure to cooperate with a Board inspection on the basis of such requirements would be a violation of Rule 4006.

---

[13/]     PCAOB Release No. 2003-016, at pages A2-33 - A2-34 (Sept. 29, 2003).



PCAOB Release No. 2003-019
October 7, 2003
Page A2-17 – Section-by-Section Analysis

**Rule 4007 – Procedures Concerning Draft Inspection Reports**

Rule 4007 describes procedures relating to a registered public accounting firm's opportunity to review and comment on a draft inspection report before the Board issues a final inspection report concerning the firm.  In the final rules, nonsubstantive changes have been made to more explicitly delineate a distinction between a rule concerning draft inspection reports (Rule 4007) and a rule concerning final inspection reports (Rule 4008).   As discussed below, however, we have also made substantive changes to both rules.

Rule 4007(a) provides that the Director of the Division of Registration and Inspections will make a draft report available for review by the firm that is the subject of the report.  Paragraph (a) provides that a firm then has 30 days, or such longer period as the Board may order, in which to submit any written response that the firm wishes to submit to the draft.  A firm is not required to submit a response, and any response that a firm chooses to submit may include any comments, objections, recommended revisions, or other views on the draft report.

At least one commenter was confused by, and asked the Board to explain, the provisions of the proposed rule that stated that, at the conclusion of each inspection, the Director would submit a draft report to the Board and then, unless the Board directed that transmittal be deferred, transmit the draft report to the firm under review.  This part of the rule only described internal Board procedures.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-18 – Section-by-Section Analysis

To eliminate any confusion created by this provision and to preserve the Board's flexibility to structure its internal processes, we have deleted these provisions from the rule. Instead, the final rule begins with what had been paragraph (b) of the proposed rule, and we have made certain changes to that paragraph.

One change concerns the amount of time within which the rule requires a firm to submit any response. Commenters suggested that 30 days was too short a period, and that a more appropriate period would be 60 days. We believe that, as a general matter, 30 days allows sufficient time, so we decline to make the suggested change. We have, however, added a provision that would allow the Board to grant a longer period when warranted by unusual circumstances.

Commenters also raised concerns and questions about the confidential nature of the draft report, including the question of the draft report's status under Section 105(b)(5)(A) of the Act. Section 105(b)(5)(A) provides, among other things, that any document prepared by the Board in connection with an inspection "shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process) in any proceeding in any Federal or State court or administrative agency . . . ." A draft inspection report is plainly encompassed by that provision. We do not, however, read the Act to prohibit a firm, once in possession of a draft (or final) report, from voluntarily disclosing or providing the report or any portion of it to any other person.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-19 – Section-by-Section Analysis

In light of that, we have revised Rule 4007 to implement certain flexibility afforded by the Act. Specifically, proposed Rule 4007 would have provided that the Board would transmit the draft report to the firm. The Act, however, requires only that the Board "provide a procedure for the review of" the draft, and does not require that the Board allow a firm to retain a copy of the draft. The flexibility afforded by the Act would allow the Board to exercise some discretion with respect to whether the sensitivity of certain information is appropriately guarded by not allowing the firm to retain a copy of a portion of the report. To allow for the option of making appropriate use of that flexibility, the rule that we adopt provides that the Board will make a draft report available for a firm's review.

Rule 4007(b) concerns requests that a firm may make for confidential treatment of portions of its response to the draft. The proposed rule addressed this point partially in rule text and partially in a note to the rule. In response to comments, the final rule that we adopt addresses the issue only in rule text. In addition, at a commenter's suggestion, we have added rule text so that the rule more closely tracks certain aspects of the statute.

Rule 4007(b)(1) provides that a firm may request confidential treatment under Section 104(f) of the Act for any portion of the firm's response to the draft report and may supply any supporting authority or other justification for according confidential treatment to the specified information. Rule 4007(b)(2) implements Section 104(f)'s requirement that the Board shall attach to, and make part of, the



PCAOB Release No. 2003-019
October 7, 2003
Page A2-20 – Section-by-Section Analysis

inspection report, any response submitted by the firm. Further implementing Section 104(f), Rule 4007(b)(2) provides that the version of the response that becomes part of the inspection report will be redacted to exclude any information for which the firm requested confidential treatment and which it is reasonable to characterize as confidential.

One commenter suggested that the rule should supply some guidelines concerning how the Board will determine what is "reasonable to characterize as confidential." We decline to articulate guidelines to describe categorically what is reasonable to characterize as confidential. Another commenter raised questions about the applicability of Section 105(b)(5)(A)'s confidentiality protection to various documents in the inspection process, including the firm's response to a draft. The Section 105(b)(5)(A) protection described above for documents prepared by the Board in connection with an inspection, extends also to documents "received by" the Board and to documents "prepared . . . specifically for" the Board. The response that a firm provides to the Board falls into both of those categories. The Board will therefore maintain the response as confidential except to the extent that the Act expressly allows or requires the Board to disclose it.[14]

---

[14]    As with draft and final inspection reports, nothing in the Act affirmatively prohibits a firm from voluntarily disclosing or providing its response to any other person.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-21 – Section-by-Section Analysis

The Act expressly allows or requires the Board to disclose the firm's response in at least three ways. First, Section 104(f) of the Act requires that the text of the firm's response must be attached to and made part of the inspection report. As part of the inspection report, the response will become public if and when the relevant portion of the report becomes public. Second, Section 104(g)(1) of the Act requires that the Board transmit the firm's response to the Commission and to appropriate state regulatory authorities when the Board transmits the final report to them.[15] Third, Section 105(b)(5)(B) allows the Board to transmit to the regulatory and law enforcement agencies specified there any materials covered by Section 105(b)(5)(A), which would include the firm's response to the draft.

Any confidential treatment that the Board grants pursuant to a firm's request under Section 104(f) would restrict disclosure of the information only in the context of the first of those three possibilities – the inclusion of the response as part of the inspection report. The only consequence of the confidential treatment afforded under Section 104(f) is that the Board will redact the confidential information from the version of the response that is attached to and made part of the inspection report. Accordingly, if the portion of the final report

---

[15]    The proposed rules did not explicitly implement this provision of the Act. We have, however, adopted revisions to Rule 4008, discussed below, that implement this provision.



**PCAOB**
Public Company Accounting Oversight Board

PCAOB Release No. 2003-019
October 7, 2003
Page A2-22 – Section-by-Section Analysis

that includes the response eventually becomes public, it will not include any information granted confidential treatment under Section 104(f).[16/] In the second and third contexts described in the preceding paragraph, however, nothing in Section 104(f) operates to limit what the Board may disclose to certain regulatory and law enforcement agencies.

Rule 4007(c) provides that after receiving the firm's response, the Board has various options. The rule permits the Board to take such action with respect to the draft report as it considers appropriate. For example, the Board may adopt the draft report as the final report, revise the draft report, or continue or supplement the inspection before issuing a final report. If the Board directs the staff to continue or supplement the inspection or revise the draft report, the Board may, in its discretion, afford the firm the opportunity to review any revised draft inspection report.

A number of commenters suggested that Rule 4007 should mandate a second review period by the registered firm whenever the Board revises a draft inspection report. Rule 4007(c) permits the Board, in its discretion, to afford firms

---

[16/]     For example, if the firm's response is directed to the portion of the report that deals with quality control defects, the response will not be made public for as long as that portion of the report is not made public. That portion of the report may be made public, however, if the firm fails to address the criticisms to the Board's satisfaction within 12 months. At that time, that portion of the report, including the firm's response, would be made public, but any part of the response that had received confidential treatment under Section 104(f) would be redacted from the report that is made public.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-23 – Section-by-Section Analysis

a second opportunity to comment on an inspection report when the Board continues or supplements its inspection or revises a draft report after receiving a firm response. The Board intends to afford registered firms an opportunity to comment on revised reports when new findings or assessments have been made or, more generally, when significant changes have been made to the draft report by the Board. A mandatory requirement for a second round of review by the firm, however, would mean that the Board would have to go through an additional period of at least 30 days even in those situations where the report was revised just to eliminate assessments that the Board believes should not be in the final report in light of the firm's comments on the draft of the report. A mandatory second round of comment in such situations would be both unnecessary and inefficient.

One commenter suggested the Board allow registered firms a hearing before adopting a final inspection report without incorporated changes suggested by the registered firm after reviewing the draft inspection report. More generally, several commenters suggested that the Board needed to add "due process" to the inspection process. The Act provides sufficient and appropriate process with respect to inspections, and the rules fully implement the process provided by the Act. In addition to at least one mandatory round of review and comment before the Board finalizes an inspection report, registered firms have rights under the Act to seek review by the Commission of aspects of final inspection reports and



PCAOB Release No. 2003-019
October 7, 2003
Page A2-24 – Section-by-Section Analysis

of Board determinations that criticisms or defects identified in a final inspection report have not been addressed to the Board's satisfaction within 12 months of the date of the inspection report.

**Rule 4008 – Procedures Concerning Final Inspection Reports**

Rule 4008 describes procedures related to a final inspection report. Rule 4008(a) provides that the Board will make a final inspection report available for review by the firm that is the subject of the report. Rule 4008(b) provides that the Board will transmit the final report to the Commission, along with any additional letter or comments by the Board or the Board's inspectors and along with the firm's response to any draft of the report. Rule 4008(c) provides that the Board will transmit to each appropriate state regulatory authority, in appropriate detail, the final report, any additional letter or comments by the Board or inspectors, and the firm's response to any draft of the report.

As with the corresponding provision of proposed Rule 4007 concerning draft reports, and for the same reasons discussed there, we have revised Rule 4008 to more closely track the Act. Under the rule, as revised, while the Board will always make the final report available for the firm's review, the Board need not necessarily allow the firm to have and maintain its own copy of the full report.

Section 104(g)(1) of the Act requires that the Board transmit the final report "in appropriate detail, to the Commission and each appropriate State regulatory authority, accompanied by any letter or comments by the Board or the



**PCAOB**
Public Company Accounting Oversight Board

PCAOB Release No. 2003-019
October 7, 2003
Page A2-25 – Section-by-Section Analysis

inspector, and any letter of response from the registered public accounting firm."
Rules 4008(b) and 4008(c) implement that provision of the Act. Proposed Rules
4008(b) and 4008(c) did not specifically implement Section 104(g)(1)'s
requirement to transmit the firm's response to the draft. The final rule we adopt
does implement that requirement.

Commenters had several comments on Rule 4008, as proposed. Several
commenters recommended that the Board permit the accounting firm subject to
the inspection to review any additional letter or comments by the Board or its
inspector or forego making such communications.[17] The Board has not taken
this recommendation and has retained this part of the rule, as proposed.

One commenter noted that the Board's description of the state authorities
that would receive the final inspection report under Rule 4008, as proposed,
differed slightly from the authorities described in the Act's definition of
"appropriate state regulatory authority." In response to this comment, the Board
has changed its rule to more closely track the Act. To implement this change,
the Board has added a definition of "appropriate state regulatory authority" based
on the definition of that term in the Act. The Board expects that, in most cases,
the appropriate state regulatory authority to receive an inspection report will be

---

[17]     One commenter stated that the Board lacks authority to make such
communications. Section 104(g)(1) of the Act, however, expressly provides for
the Board to provide such a letter or comments to the recipients of the inspection
report other than the subject accounting firm.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-26 – Section-by-Section Analysis

any state, agency, board or other authority that has issued a license or certification number authorizing the firm to engage in the business of auditing or accounting.

The proposed rule provided that, with respect to final reports transmitted to appropriate state regulatory authorities, the Board could omit from the report "any information the disclosure of which could interfere with any investigation, prosecution, or disciplinary proceeding." One commenter suggested that the Board should consult with state regulators before deciding to omit information for this reason. We have not added such a consultation requirement to the rule. The Act leaves to the Board's discretion the determination of what detail is or is not appropriate for reporting to a state regulator. The rule allows the Board the flexibility to exercise that discretion, including discretion about whether to consult with a state regulator about a possible omission, in light of the circumstances surrounding a particular report.

We have, however, deleted from the rule the provision concerning omitting information from a report. We are concerned that including the provision could give rise unnecessarily to an argument that the reasons specified in the provision are the only grounds on which the Board may omit information when transmitting the final report. The Act gives the Board broader discretion than that, and we have revised the rule to avoid creating any ambiguity on that point.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-27 – Section-by-Section Analysis

Finally, one commenter recommended that the Board state expressly that inspection reports provided to an appropriate state regulatory authority are subject to Section 105(b)(5) of the Act and that such status preempts state freedom of information or "open records" acts. A final inspection report is a document prepared by the Board in connection with an inspection, and would therefore generally be covered by Section 105(b)(5)(A)'s confidentiality protection. A final inspection report is also likely to contain substantial information "received by" the Board in connection with an inspection, and that is independently subject to the protection of 105(b)(5)(A), as the Act explicitly notes in Section 104(g)(2).[18/] A final inspection report is also unique, however, in that the Act separately contemplates, in Section 104(g)(2), that at least some portions of it will be publicly available.

The Act plainly does not require that a state regulator maintain the confidentiality of any portion of a final report that becomes publicly available pursuant to Section 104(g)(2). Any other portion of the final report, however, as well as any letter that accompanies the transmittal and any copy of the firm's response to a draft report, are subject to the protection of Section 105(b)(5)(A) and, as a consequence, a state regulator receives them subject to Section 105(b)(5)(B)'s express requirement to maintain them as confidential and

---

[18/]     See Section 104(g)(2) (noting that disclosure of reports to public is "subject to section 105(b)(5)(A)").



**PCAOB**
Public Company Accounting Oversight Board

PCAOB Release No. 2003-019
October 7, 2003
Page A2-28 – Section-by-Section Analysis

privileged. Moreover, with respect to portions of the final report that address quality control defects, state regulatory authorities are equally bound by Section 104(g)(2)'s command that such portions of the report shall not be made public unless the firm fails to do certain things within 12 months of the report's issuance.[19] Any otherwise applicable state or local law that conflicts with this requirement or stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress would be preempted.[20]

**Rule 4009 – Firm Response to Quality Control Defects**

Consistent with Section 104(g)(2) of the Act, when a final inspection report contains any discussion of criticisms of, or potential defects in, the firm's quality control systems, Rule 4009(a) permits the firm to submit evidence or otherwise to demonstrate to the Director of the Division of Registration and Inspections that it has improved such quality control systems, and remedied such defects.[21] This

---

[19] As noted in the discussion of Rule 4007, however, the Act does not prohibit a firm from voluntarily disclosing or providing a report or any portion of a report to any person.

[20] See Crosby v. National Foreign Trade Council, 530 U.S. 363, 372-73 (2000); City of New York v. FCC, 486 U.S. 57, 64 (1988).

[21] As proposed, Rule 4009(a) referred only to the firm under inspection submitting evidence to the Board's staff within 12 months after the issuance of the final inspection report. The Board has changed the rule to refer to the firm "submit[ting] evidence or otherwise demonstrat[ing]" that it has improved its systems or remedied such defects. This change is intended to make clear that the Board's staff may need to conduct more than a "desk review" to determine whether to recommend to the Board that the firm has satisfactorily



PCAOB Release No. 2003-019
October 7, 2003
Page A2-29 – Section-by-Section Analysis

submission or demonstration must be made no later than 12 months after the issuance of the Board's final inspection report. The rule requires the Director, after reviewing the evidence, to advise the firm whether he or she will recommend to the Board that the firm has satisfactorily addressed the criticisms or defects in the quality control system of the firm identified in the final inspection report and, if not, why not.

Rule 4009(b) has been added in response to a comment. Rule 4009(b) provides that if the Board determines that the firm has satisfactorily addressed all quality control defects and criticisms in the final report, the Board will promptly provide notice of that determination to the Commission and to any appropriate state regulatory authority to which the Board had provided any portion of the final inspection report.

Rule 4009(c) requires the Board to notify the firm of its final determination as to whether the firm has addressed to the satisfaction of the Board the criticisms or defects in the firm's quality control system.

Rule 4009(d) provides that the Board will make public those portions of a final inspection report dealing with such criticisms and defects if the firm fails to address those matters to the Board's satisfaction within 12 months of the issuance of the final inspection report. Rule 4009(d) specifically addresses the

addressed the criticisms or defects in the quality control system of the firm identified in the final inspection report.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-30 – Section-by-Section Analysis

time of any such public disclosure. Under Rule 4009(d), if a firm made no submission to the Board under Rule 4009(a) concerning the firm's efforts to address the criticisms or potential defects, then the Board would make those portions of the report public upon the expiration of the 12-month period. If the firm made a submission under Rule 4009(a), but then failed to seek Commission review of an adverse Board determination concerning that submission within the time allowed to seek such review, the Board would make those portions of the report public upon the expiration of the period allowed for seeking Commission review. If the firm did timely seek Commission review, under Section 104(h)(1)(B) of the Act, of an adverse Board determination, the Board would make those portions of the report public 30 days after the firm formally requested Commission review, unless the Commission, by rule or order, directs otherwise. The Board is adopting a 30-day delay, subject to any superseding Commission rule or order, to allow the Commission an opportunity to consider whether to order a longer stay of public disclosure in a particular case, since the Act does not operate to stay such disclosure.[22]

Commenters suggested a number of changes to Rule 4009. One commenter stated that the rule was "too lenient" in allowing the firm under

---

[22]    The Board has extended this period from 15 days to 30 days in response to several comments that expressed the opinion that the 15-day period provided for in Rule 4009(d)(3), as proposed, was too short.



PCAOB Release No. 2003-019
October 7, 2003
Page A2-31 – Section-by-Section Analysis

inspection 12 months to submit evidence that it has improved its systems or remedied the defects identified in the final inspection report. Another commenter thought the 12-month period was appropriate, but recommended that the rule reflect that some deficiencies may need to be corrected in a shorter time period. The 12-month time period is explicitly provided for in the Act as the period during which the firm must improve its quality control systems or remedy defects in those systems for those portions of a final inspection report dealing with such criticisms or defects to remain non-public. The time period, of course, does not limit a firm from improving its systems or remedying such defects sooner, nor does it limit the Board or its staff from using its authority to direct any appropriate remedial action.

Another commenter recommended that the Board define the terms "criticisms" or "potential defects" as used in this rule. The Board believes the terms, which are used without definition in the Act, are self-explanatory and has decided not to define them. The same commenter, joined by several other commenters, recommended that the Board establish a formal process for a registered public accounting firm to respond to notification of the firm by the Director of the Division of Registration and Inspection of his or her recommendation under Rule 4009(a). (One commenter suggested the firm should be allowed a hearing in cases where there is uncertainty about whether the firm has made the improvements or remedied the defects identified.) In light


Public Company Accounting Oversight Board

PCAOB Release No. 2003-019
October 7, 2003
Page A2-32 – Section-by-Section Analysis

of the multiple steps of review and comment already built in to the Board's inspection process, the Board does not believe that it needs to establish an additional, formal mechanism for a response at this point in the process. The Board notes, however, that Rule 4009(a)'s requirement that the Director notify the firm of his or her recommendation will, in the event of a recommendation adverse to the firm, provide a practical opportunity for the firm to come forward quickly with any additional evidence or demonstration that it has in fact improved its systems or remedied the identified defects. Rule 4009(c) provides for the firm to be notified of the Board's final determination and, under Section 104(h)(1)(B) of the Act, a firm that continues to disagree with the Board's determination may seek review of that determination by the Commission.[23]

Another commenter asked that the Board clarify what date serves as the date of "issuance" of an inspection report under Rule 4009(a). The date of issuance will be the date the final inspection report is adopted by the Board as

---

[23]    More generally, several commenters suggested that the rules should provide more procedural specificity and procedural protection. We have not changed the rules in response to those comments. As described above, the Board's inspection rules implement the substantial statutory opportunities for review and comment provided for in the Act. In addition, the Board notes that Section 104(h) of the Act provides an opportunity for registered public accounting firms to seek Commission review of both certain aspects of final inspection reports and final determinations of the Board under Rule 4009(b) with which they disagree. Moreover, the inspection process authorized by the Act and implemented by these rules affords at least as much process as is afforded in comparable inspections and examinations conducted by other authorities, such as the Commission and self-regulatory organizations.



final. Absent extraordinary circumstances, the report will be available for review by the firm beginning on that date.

Finally, one commenter suggested that the Board notify the Commission and each appropriate state regulatory authority to which the final inspection report was provided under Rule 4008(b) and (c) of its final determination concerning whether the firm has addressed the criticisms or defects in the quality control system of the firm identified in the inspection report to the satisfaction of the Board. The Board agrees and has implemented this suggestion by adding paragraph (b) to Rule 4009.

**Rule 4010 – Board Public Reports**

Rule 4010 permits the Board, at any time, to publish public summaries, compilations, or other general reports concerning the procedures, findings, and results of its various inspections as the Board deems appropriate. The rule allows for these reports to include discussion of criticisms of, or potential defects in, quality control systems of any firm or firms that were the subject of a Board inspection. However, the rule prohibits these published reports from identifying the firm or firms to which these criticisms relate, or at which the defects were found, unless the information has previously been made public pursuant to the Board's rules or other lawful means.

The Board received a few comments on Rule 4010. Several commenters expressed concern that public reports under Rule 4010 not indirectly indicate the


PCAOB
Public Company Accounting Oversight Board

PCAOB Release No. 2003-019
October 7, 2003
Page A2-34 – Section-by-Section Analysis

firm or firms involved. The Board agrees and does not intend to issue public reports in a manner that identifies the firm or firms involved, directly or indirectly. Another commenter asked the Board to clarify what is meant by "other lawful means" at the end of Rule 4010. This phrase is meant to address situations in which the covered information is made public by lawful means provided for in the Act. One commenter suggested that the rule indicate that the Board will issue public reports on best practices and positive trends. The Board anticipates that its practice will be to issue such reports in appropriate circumstances, but does not believe its rule needs to be changed to permit this type of report to be issued.

Finally, one commenter expressed concern that Rule 4010 did not adequately protect confidentiality concerns. In issuing public reports under this rule, the Board does not intend to identify, directly or indirectly, the firm or firms involved. Moreover, consistent with one of the provisions of Section 104(g)(2) of the Act, the Board in issuing such reports will protect such confidential and proprietary information as the Board may determine to be appropriate or as may be required by law. Rule 4010 does not implement Section 104(g)(2) of the Act, however, and the Board is not bound by the specific confidentiality provisions of that section of the Act in issuing these general reports. Since the point of these reports is, when appropriate, to alert the investing public to relevant inspection-related information that would not otherwise be available, maintaining the



PCAOB Release No. 2003-019
October 7, 2003
Page A2-35 – Section-by-Section Analysis

confidentiality of these reports to the same degree that is required for reports that identify specific firms and issuers would defeat the purpose of the report.

**Other Comments**

In the release that accompanied the proposed rules, the Board noted that "[t]he proposed rules govern procedural matters concerning the Board's inspection program. Board staff will carry out particular inspections according to detailed, nonpublic inspection plans."[24] Some commenters offered suggestions that pertain to the details of carrying out inspections and other aspects of how the Board should conduct its inspection program, rather than to the procedural issues that these rules address. Rather than address all such comments here, we reiterate the general point that the Board will carry out inspections according to inspection plans that are nonpublic and not available to the firms being inspected. The confidentiality of this aspect of the inspection process is important to the effectiveness of the process from the standpoint of the public interest and the protection of investors. In addition, we recognize that commenters made other valuable suggestions about the conduct of the Board's inspection program that the Board and its staff will consider as they continue to develop that program.

---

[24]    PCAOB Release No. 2003-013 (July 28, 2003) at 4.

# EXHIBIT L

**Trig Smith**

| | |
|---|---|
| **From:** | Stephanie Jones [sjones@fslegal.com] |
| **Sent:** | Friday, April 23, 2010 9:51 AM |
| **To:** | Trig Smith |
| **Subject:** | Fw: |
| **Attachments:** | SCAN4070_000.pdf |

Attached please find the indices to the Mobile Devices workpapers for the periods requested.

In addition, we have received the subpoenas you served seeking depositions of Mr. Parrott and Mr. Pratt. The dates selected do not work, but I am obtaining dates which do and will communicate with you further about them next week.

Stephanie

Stephanie D. Jones

---

**From:** "Vicky Pietrusiewicz" <VPietrusiewicz@fslegal.com>
**Date:** Fri, 23 Apr 2010 11:28:31 -0500
**To:** Stephanie Jones<sjones@fslegal.com>
**Subject:**

5/17/2010