IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC SILVERMAN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>MOTOROLA, INC., et al.,<br><br>    Defendants. | Case No. 1:07-CV-04507 (Consolidated)<br><br>CLASS ACTION<br><br>Honorable Amy St. Eve<br>Magistrate Judge Michael T. Mason |

---

## NON-PARTIES KPMG LLP, DAVID PRATT, AND DENNIS PARROTT'S REPLY IN SUPPORT OF THEIR MOTION TO QUASH OR MODIFY SUBPOENA AND FOR PROTECTIVE ORDER

---

James R. Figliulo (ARDC No. 6183947)
Stephanie D. Jones (ARDC No. 6220362)
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois 60603
(312) 251-5262

Counsel for Non-Parties KPMG LLP,
David Pratt, and Dennis Parrott

Dated: May 24, 2010

Scott R. Lassar (ARDC No. 1586270)
Jeffrey C. Sharer (ARDC No. 6239167)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Michael C. Kelley (*pro hac vice*)
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000

Counsel for Non-Parties KPMG LLP, David
Pratt, and Dennis Parrott

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

I. SECTION 105(B)(5)(A) APPLIES TO DOCUMENTS IN THE HANDS OF ACCOUNTING FIRMS AND MAY BE ASSERTED BY ACCOUNTING FIRMS .......... 4

II. PLAINTIFFS MISCHARACTERIZE KPMG'S ASSERTION OF PRIVILEGE. ............... 8

III. PLAINTIFFS' RELEVANCE ARGUMENTS ARE MISPLACED AND WRONG ......... 10

IV. THE BURDEN ON KPMG OF PRODUCING MATERIALS HERE WOULD BE SUBSTANTIAL. ............................................................................................................ 12

V. KPMG SHOULD NOT BE REQUIRED INDIVIDUALLY TO LOG DOCUMENTS WITHHELD UNDER SECTION 105(B)(5)(A) OR, LTERNATIVELY, SHOULD BE PERMITTED TO LOG ON A CATEGORICAL BASIS. ................................................ 14

CONCLUSION .................................................................................................................... 15

## INTRODUCTION

The issue before this Court — the applicability of the PCAOB inspection privilege established in section 105(b)(5)(A) of the Sarbanes-Oxley Act to inspection-related documents in the possession of inspected accounting firms — is a matter of first impression that is of extreme importance, not only to KPMG, but also to the relationship between the accounting profession as a whole and the PCAOB, the agency created by Congress for the purpose of regulating that profession and improving audit quality. In particular, two issues related to the section 105(b)(5)(A) privilege are presented, and well framed, by the facts of this dispute.

First, this Court must decide whether the privilege applies only to documents and information "in the hands of the PCAOB," as plaintiffs contend, or applies equally to the same documents and information when they remain in the possession of inspected accounting firms. Plaintiffs' attempt to strip accounting firms of the privilege:

- contravenes Congress's purpose, in adopting section 105(b)(5)(A), to keep covered documents and information "out of the hands of the litigating lawyers";[1]

- flies in the face of the statutory language, which clearly applies to "all documents and information" related to the inspection process, without limitation as to what party holds that information; and

- would nullify the privilege by permitting litigants to access through the proverbial "back door" the very information Congress sought to shield from them.

KPMG is confident that the Court will find that an inspected accounting firm can assert the privilege with respect to all documents and information within the scope of section 105(b)(5)(A), and will uphold KPMG's assertion of the privilege in the context of the instant subpoena.

Second, this Court must decide whether the proper interpretation of section 105(b)(5)(A) protects only "documents and information" in the accounting firm's possession that constitute or reflect communications received from, or sent to, the PCAOB inspection team in the course of a PCAOB inspection and drafts of such communications — which plaintiffs have

---

[1] *Accounting Reform and Investor Protection: Hearing on S. 2673 Before the S. Comm. on Banking, Housing, and Urban Affairs*, 107th Cong., 377 (2002) (KPMG Memo. App. Ex. D) (Statement of John H. Biggs, Chairman, President, and CEO, TIAA).

1

implicitly acknowledged are privileged — or, as KPMG contends, also protects internal documents created by the inspected accounting firm in order to discuss, evaluate, and respond to inquiries, observations, or critiques posited by the PCAOB inspectors — in particular those documents that recite or reflect the substance of the inspectors' inquiries, observations, or critiques or the firm's consideration of those matters, as well as documents created in the course of preparing the responses that the accounting firm ultimately makes to the inspection team. While the Court certainly could conclude that every document which refers or relates to a PCAOB inspection was intended by Congress to be privileged, that is not KPMG's position here. Rather, KPMG contends that the plain meaning of the Act, when read consistently with the expressed intent of Congress, protects documents and information that recite, reflect, or reveal the substance of the inspection process because such materials are "prepared ... specifically for the Board ... in connection with an inspection," and because such materials reflect and reveal the "deliberations of the Board and its employees."

        While it is true, as plaintiffs argue, that not all documents prepared in the course of a PCAOB inspection are communicated to the PCAOB inspection team, the phrase "prepared ... specifically for the Board" — used *in addition to* the phrase "received by ... the Board" — clearly includes documents not communicated to the Board and operates to distinguish internal documents prepared as part of the inspection process from those documents prepared as part of the underlying audit but provided to the inspectors (*e.g.*, the audit workpapers). In this regard, internal documents necessarily created by inspected accounting firms to engage in the inspection process, which would not exist other than "in connection with an inspection," are in fact prepared specifically to respond to the Board's employees in connection with an inspection, and are within the scope of the section 105(b)(5)(A) privilege. Further, many of these internal documents necessarily record, recite, and analyze the questions, comments, observations, and critiques of the inspected firm's engagement(s) and/or its systems and controls posed by the inspectors, which comments undeniably constitute "deliberations of the Board and its

2

employees." Thus, documents containing such "information" clearly fall within the statutory language, whether they constitute communications received from the inspectors or the firm's own documentation of such comments. It is the content of these internal documents — specifically, whether or not they reflect the substance of the privileged inspection process — that determines whether they are privileged. By its motion, KPMG asserts privilege as to those internal documents that were prepared in connection with a PCAOB inspection and that include content that would reveal substantive information regarding the inspection process — information Congress clearly intended to keep out of the hands of litigants like plaintiffs.

Equally specious and misguided is plaintiffs' argument that KPMG's inspection-related information is discoverable because it is relevant to their scienter-based claims against Motorola and the individual defendants.[2] Two simple responses defeat this argument: (1) the privilege established by Congress is absolute and, as such, issues of relevance and need are irrelevant to this motion; and (2) KPMG has already produced all documents that bear on the scienter issue (and what plaintiffs refer to as Motorola's "reliance on professionals" defense). Thus, KPMG has already produced all documents constituting or reflecting communications between KPMG and Motorola personnel regarding the transactions at issue in the suit, as well as its audit and review workpapers referring to any of those transactions. Plaintiffs thus have already received all KPMG documents arguably relevant to this action.

Plaintiffs make clear in their opposition that this motion has been made necessary solely by plaintiffs' counsel's desire to mount the first challenge to the PCOAB inspection

---

[2] Redacted

privilege; not to obtain evidence relevant to this action, but attempting to gain information about PCAOB criticisms of KPMG's audit work as part of "plaintiffs' continuing investigation of this action" to support their contention "that KPMG's auditing procedures with respect to the 3Q06 deals suffered from serious deficiencies." (Pl. Opp. 5-6). In short, plaintiffs' demands for PCAOB inspection–related documents were not issued in support of their claims against Motorola and its management, but rather are a fishing expedition attempting to manufacture claims against KPMG. The subpoena requests at issue are emblematic of predictable efforts by the plaintiff class action bar to invade and bootstrap the PCAOB inspection process as a means of promoting litigation against accounting firms, efforts that Congress foresaw and foreclosed through section 105(b)(5)(A).

Contrary to plaintiffs' assertion, and wishful thinking (Pl. Opp. 11), Congress did not commission the plaintiffs' bar to regulate the accounting profession; it created the PCAOB to fill that role. And promoting securities litigation against accounting firms was *not* the method by which Congress sought to pursue meaningful regulation; rather that goal was accomplished through the enactment of a carefully designed statutory scheme that includes the conduct of *confidential* and *objective* inspections of accounting firms by professional regulators.

In short, the documents the subpoena demands are plainly privileged under section 105(b)(5)(A). Plaintiffs' conduct here is precisely the sort of action that Congress anticipated and precluded in order to make the Board's oversight of the accounting profession truly effective. To grant plaintiffs the discovery they seek would eviscerate the privilege and seriously undermine the inspection process by which Congress envisioned the PCAOB would regulate the accounting profession and improve audit quality.

## ARGUMENT

I. SECTION 105(B)(5)(A) APPLIES TO DOCUMENTS IN THE HANDS OF ACCOUNTING FIRMS AND MAY BE ASSERTED BY ACCOUNTING FIRMS.

As KPMG established in its opening brief, both the statutory language and legislative history of section 105 of the Act establish conclusively that the PCAOB inspection

privilege extends to documents and information in the hands of accounting firms and may be asserted by accounting firms. (*See* KPMG Br. 7-13.) Nonetheless, plaintiffs now assert that "the statute provides the privilege lies in the hands of the PCAOB, not KPMG." (Pl. Opp. 9.) Plaintiffs do not, and cannot, cite any support for that assertion.

First and foremost, plaintiffs' assertion is contradicted by the statutory language. Section 105(b)(5)(A) repeatedly uses expansive language to define the privilege, providing that "*all documents and information*" within its scope are both privileged as an evidentiary matter and, further, "shall not be subject to civil discovery or other legal process" in "*any* proceeding in *any* Federal or State court or administrative agency." 15 U.S.C. § 7215(b)(5)(A) (emphasis added). Nowhere in the text of the statute is the protection of "*all*" covered "*documents and information*" limited to documents in the possession of the Board. Given that it was obvious that inspected audit firms would have in their possession "documents and information" generated as part of the inspection process, Congress's choice of language attaching the privilege to "documents and information," rather than attaching it to the PCAOB, makes clear that the privilege applies to any covered "documents and information" regardless of who holds them.

Moreover, the statute expressly extends protection to both materials "prepared … for" and "received by" the PCAOB. *Id.* If only materials in the possession of (*i.e.*, "received by") the Board were protected, then the phrase "prepared … for" would be rendered superfluous. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (it is a court's duty "to give effect, if possible, to every clause and word of a statute").

The broad language used by Congress here also stands in contrast to more narrow language historically used to confer similar, but less robust, privileges in other contexts. For example, the regulation creating a privilege for documents related to bank inspections conducted by the Office of Thrift Supervision ("OTS") makes clear that that privilege belongs solely to the agency. *See* 12 CFR § 510.5(c)(4)(v) ("All reports or other information … shall remain the property of the OTS and, except as permitted by this section or otherwise by the Director or his

5

delegate, no person ... to whom the information is made available ... shall disclose any such information"); *see also* 12 CFR § 309.6(a) (FDIC inspections); 12 CFR § 261.20(g) (Federal Reserve Board inspections). Because section 105(b)(5)(A) does not include such limiting language, it is clear that *either* the regulator or the regulated entity may assert the privilege.

Plaintiffs purport to find support for their cramped reading of the statute in PCAOB Rule 5108 and comments made by the PCAOB in promulgating that rule. Rule 5108(a) provides that "[i]nformal inquiries and formal investigations, and any documents, testimony or other information prepared or received by or specifically for the Board or the staff of the Board in connection with such inquiries and investigations, shall be confidential in the hands of the Board." Plaintiffs rely on the phrase "in the hands of the Board" and the PCAOB's comments for the proposition that the Board views the statutory privilege provided by section 105(b)(5)(A) as limited to documents in its own possession. (*See* Pl. Opp. 12-13.)

But plaintiffs misrepresent the position stated by the PCAOB in adopting Rule 5108. ***On the very same page as the passage selectively quoted by plaintiffs, the Board expressly states that neither Rule 5108, nor the Board's action in enacting it, expressed the view for which plaintiffs say it stands.*** In fact, the Board made express that it did *not* intend Rule 5108 to express a view of, much less limit, the scope of section 105(b)(5)(A). Specifically, the Board stated that its "reason for limiting the wording of Rule 5108 has *nothing to do with limiting the reach of Section 105(b)(5)(A)*":

> The phrasing of the rule ... *is not intended to narrow the effect or the reach of the Act.* Indeed, to try to avert any such misunderstanding, the first note to Rule 5108 describes what is provided in Section 105(b)(5) of the Act, *as distinct from what is provided by Rule 5108.* Our reason for limiting the wording of Rule 5108 has *nothing to do with limiting the reach of Section 105(b)(5)(A)*, but, rather, has to do with limiting our rules to their appropriate reach. By using the phrase "in the Board's hands," *we do not mean to express a view on whether the Act reaches further than that.*

(Ex. I to Pl. Opp. at A2-40 (PCAOB Release No. 2003-015, RULES ON INVESTIGATIONS AND ADJUDICATIONS (Sept. 29, 2003)) (emphasis added).) Plaintiffs' assertion that "[t]he PCAOB's position is apparent" and supports their reading of the statute (Pl. Opp. 13) is demonstrably false.

6

Finally, plaintiffs claim incorrectly that the legislative history of the Act supports their constricted view of section 105(b)(5)(A). (Pl. Opp. 10-11.) Although plaintiffs are correct that a principal goal of the Sarbanes-Oxley Act was to protect investors (*see* Pl. Opp. 10 (quoting 15 U.S.C. § 7211(a))), plaintiffs are dead wrong about how Congress chose to achieve that goal. In the Act, Congress created an entirely new regulatory body (*i.e.*, the PCAOB) and directed it to perform an entirely new regulatory function (*i.e.*, annual inspections of registered accounting firms) in order to improve audit quality and thereby enhance the financial reporting process. *See* 15 U.S.C. § 7211 (establishing PCAOB); *id.*, § 7214 (providing for inspections). Congress further determined that such inspections would best function if the documents and information associated with them were confidential and privileged, thereby enabling accounting firms to participate candidly and cooperatively in the inspection process without fear that such candor or cooperation might increase the firms' litigation risk. (*See* KPMG Br. at 7-9.)

By creating the PCAOB inspection privilege in order to keep inspection-related materials "out of the hands of the litigating lawyers,"[3] Congress acted deliberately and in a manner that was litigation-neutral. That is, where audit work is at issue in litigation, the parties still remain able to discover the accounting firm's workpapers and other documents created or received in the course of performing the such work. What Congress placed beyond the scope of such discovery, through section 105(b)(5)(A), are documents and information that previously did not exist, *i.e.*, those that reflect the substance of the newly created inspection process. In Congress' judgment, such protection was a *sine qua non* of an effective inspection process.

The text and purposes of the Act generally, and of section 105(b)(5)(A) specifically, make clear that the PCAOB inspection privilege extends to materials in the possession of KPMG and may be asserted by KPMG. Indeed, plaintiffs effectively concede as much, having withdrawn their requests as to large swaths of inspection-related documents in the

---

[3] Hearing on S. 2673, *supra* note 1, at 377.

possession of KPMG (Pl. Opp. 4), and stating in their Opposition that "*[i]n accordance with Section 105(b)(5)(A)*, plaintiffs do not intend and will not inquire [in depositions of KPMG witnesses] about communications between KPMG and the PCAOB, documents prepared by KPMG for the PCAOB or PCAOB deliberations" (*id.* at 14 (emphasis added)).

## II. PLAINTIFFS MISCHARACTERIZE KPMG'S ASSERTION OF PRIVILEGE.

Plaintiffs assert that KPMG seeks a ruling "that any and all documents or information in any way related to the subject matter of a PCAOB inspection are privileged." (Pl. Opp. 8.) But that is not KPMG's position. Again, it is important to identify what is *not* at issue here. First, even plaintiffs do not seriously dispute that the privilege extends to communications between KPMG and the PCAOB, documents KPMG sent to the PCAOB in response to Board inquiries, or (as newly conceded in plaintiffs' Opposition) drafts of any such documents. (*Id.* at 4.) Not surprisingly, plaintiffs have withdrawn their requests as to such documents.

Second, KPMG is not asserting privilege as to, and has already produced to plaintiffs, all of its audit workpapers and other hard copy and electronic documents, including communications between KPMG and Motorola, related to the IP licensing transactions at issue in this litigation.[4] (*See* Pl. Opp. 5-6.) Nor is KPMG asserting that any such non-privileged workpapers or other documents could become privileged simply by virtue of being provided to the PCAOB as part of an inspection (any more than an otherwise non-privileged document could become an attorney-client communication simply because it is provided to an attorney).[5]

Contrary to plaintiffs' assertion, KPMG has never suggested that "that any and all documents or information in any way related to the subject matter of a PCAOB inspection are

---

[4] Hard copy and electronic documents outside of KPMG's audit workpapers were collected from custodians, and using search terms, that were negotiated and agreed by plaintiffs and KPMG.

[5] Indeed, in response to plaintiffs' inquiry regarding documents generated by third parties, KPMG has expressly represented to plaintiffs that there are no documents in KPMG's possession that were prepared by third parties other than documents that were provided to KPMG in the course of audit or review work, and thus no such documents are being withheld as privileged under section 105(b)(5)(A). (*See* Ex. A, 3/4/10 letter from M. Kelley to T. Smith.)

privileged." (Pl. Opp. 8.) KPMG's position is, and has always been, that documents and information that are created in response to a PCAOB inspection and that relate or reflect the substance of the inspection process — such as internal KPMG communications that discuss, but are not in themselves, communications with the Board or the inspectors, or that discuss the content of confidential questions, comments, or critiques made by Board inspectors, or that reflect the firm's development of responses to those questions, comments, or critiques ultimately to be communicated to the Board's inspection team — are protected. (*See* KPMG Br. 11-13 (explaining that based on statutory text and well established law of evidentiary privileges, the PCAOB inspection privilege extends "to all materials that could reveal privileged content").)

KPMG's position follows from the statutory text. Congress made clear, by limiting the privilege to documents and information "*prepared* or received *by or specifically for the Board*, and deliberations of the Board ... *in connection with an inspection*" (emphasis added), that the privilege does *not* extend to all documents provided to the Board regardless of their origin; most obviously, this means that audit workpapers that are requested and reviewed by the Board are not privileged simply because they were "received by ... the Board." At the same time, however, Congress used the broad phrase "in connection with an inspection" to define the nexus, between documents and information and the regulatory process, sufficient to bring such materials within the privilege. *Accord Appert v. Morgan Stanley Dean Witter, Inc.*, No. 08-7130, 2009 WL 3764120, at *6 (N.D. Ill. Nov. 6, 2009) (Ex. B) (for purposes of section 10(b), Supreme Court has "stated that the phrase 'in connection with' should be construed broadly") (citing *SEC v. Zandford*, 535 U.S. 813, 819 (2002)); *In re WorldCom, Inc. Secs. Litig.*, No. 02-3288, 2004 WL 1435356, at *8 (S.D.N.Y. June 28, 2004) (Ex. C) ("The 'in connection with' requirement [under section 10(b)] must be construed broadly and flexibly ...."). The term "prepared ... specifically for the Board ... in connection with an inspection" thus encompasses

documents not "received by" the Board, and operates to distinguish internal accounting firm documents prepared as part of the inspection process, on the one hand, from those prepared as part of the underlying audit, on the other. Documents created during the inspection process would not exist other than "in connection with an inspection," and are prepared specifically for purposes of enabling the accounting firm's dialogue with the Board and its employees. In addition, to the extent that they reveal comments and questions from the PCAOB inspectors, such documents reflect "the deliberations of the Board and its employees," which are additionally privileged. By using such expansive language to craft section 105(b)(5)(A), Congress made clear that materials that are created in connection with an inspection and that relate to or reflect the substance of the inspection process, including communications with the Board or deliberations or comments of the Board's employees, are "confidential and privileged" and "shall not be subject to civil discovery or other legal process."

Plaintiffs state the unremarkable proposition that, as a general rule, evidentiary privileges are interpreted narrowly. (Pl. Opp. 7-8.) But plaintiffs' reading does not "narrowly interpret" section 105(b)(5)(A); it eviscerates it. Plaintiffs would open for discovery precisely the information sought to be protected by Congress, simply because it appears in an accounting firm's internal communications or other documents themselves not provided to the PCAOB. This would epitomize an absurd result, which even plaintiffs acknowledge cannot stand. (*See* Pl. Opp. 9 (statutory interpretation cannot lead to "absurd" results).)

III. PLAINTIFFS' RELEVANCE ARGUMENTS ARE MISPLACED AND WRONG.

Plaintiffs spend much energy arguing that the documents they seek are relevant. (*E.g.*, Pl. Opp. 1-2, 5-6.) But relevance has no place in the question before the Court. Neither KPMG nor plaintiffs contend that section 105(b)(5)(A) creates a qualified privilege that can be overcome by relevance, need, or some other showing. To the contrary, the privilege is absolute; it makes no exception for documents that litigants maintain are relevant, needed, or not otherwise

available, and although plaintiffs' extensive discursion into relevance muddies the waters, even they do not assert that relevance negates the privilege created by section 105(b)(5)(A).

Rather, KPMG and plaintiffs disagree only about what documents are encompassed by section 105(b)(5)(A), a pure question of law on which relevance has no bearing. However, that the materials plaintiffs seek are not relevant to this litigation is a *separate* ground upon which the Court should grant KPMG's motion. Indeed, it is a particularly compelling ground here given KPMG's status as a non-party and the specific protections afforded to non-parties under Fed. R. Civ. P. 45. *E.g.*, *Morrow v. Air Ride Techs., Inc.*, No. 05-113, 2006 WL 559288, at *2 (S.D. Ind., Mar. 6, 2006) (KPMG Br. App. Ex. T).

Redacted

Without commenting on the merits of that defense, KPMG notes that it requires that the defendant must have (1) made a complete disclosure; (2) requested advice; (3) received advice; and (4) relied in good faith on that advice. *SEC v. Goldfield Deep Mines Co.*, 758 F.2d 459, 467 (9th Cir. 1985); *see also Markowski v. SEC*, 34 F.3d 99, 104-05 (2d Cir. 1994); *SEC v. Caserta*, 75 F. Supp. 2d 79, 95 (E.D.N.Y. 1999).

Redacted

And, again, it is equally important to focus on what is *not* in dispute: namely, KPMG's audit workpapers and other documents generated in the course of KPMG's audit work, including documents constituting or

11

reflecting communications between KPMG and Motorola regarding KPMG's audit work, all of which, to the extent they relate to the transactions in question, have been produced to plaintiffs.

Redacted

Rather, plaintiffs themselves make clear that what they really want is for this Court to abet a fishing expedition into *KPMG's* conduct. (*E.g.*, Pl. Opp. 11 (asking Court to allow them to "examin[e] ... information which might prove whether or not KPMG's audit procedures were appropriate").) But KPMG is not a party here and plaintiffs have not alleged misconduct by KPMG. It is axiomatic that fishing expeditions such as the one sought here are an abuse of Rule 45. *E.g., Patterson v. Burge*, No. 03-C-4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005) (KPMG Memo. App. Ex. V); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001). For this independent reason, KPMG's motion should be granted.

IV. THE BURDEN ON KPMG OF PRODUCING MATERIALS HERE WOULD BE SUBSTANTIAL.

Finally, although KPMG has not asserted the burden of responding to plaintiffs' requests as a stand-alone basis for granting its motion to quash, that burden is relevant to the

Court's analysis. *See Patterson*, 2005 WL 43240, at *1 (in reviewing third-party subpoena, "the court must engage in a balancing process, balancing the burden of compliance against the benefits of the requested production"). Here, the burden would be substantial.

If plaintiffs are permitted to invade the PCAOB inspection process, Congress' cooperative inspection model likely will be negatively impacted. Regulated accounting firms will likely feel their ability freely to speak with the Board, and freely to generate documents that further the inspection process, chilled by increased litigation risk. For this very reason, both Congress and the PCAOB have recognized the importance of confidentiality to the inspection process. As the PCAOB itself has explained, the legislative approach embodied in the Act "rest[s] on the hypothesis that firms could be genuinely motivated by the prospect of keeping the Board's quality control criticisms confidential. The Board's initial experience with the larger firms supports that hypothesis."[6] Granting plaintiffs the discovery they seek here, in derogation of the confidentiality and privilege so strongly crafted by Congress, would unduly burden the ability of KPMG — and other accounting firms — to participate in the inspection process as envisioned by Congress and the PCAOB. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004) (affirming order quashing third-party subpoena where, although "the *administrative* hardship from compliance would be modest," request would unduly burden privacy interests of hospital patients and damage relationship between hospital and patients).

KPMG underwent the inspection at issue here under the protection of an express statutory privilege. To capsize that privilege now will unsettle the expectations of the Board, of KPMG, and of all other accounting firms that participate in the PCAOB inspection process. KPMG's motion should be granted.

---

[6] OBSERVATIONS ON THE INITIAL IMPLEMENTATION OF THE PROCESS FOR ADDRESSING QUALITY CONTROL CRITICISMS WITHIN 12 MONTHS AFTER AN INSPECTION REPORT, PCAOB Release No. 104-2006-078, at 2 (Mar. 21, 2006) (KPMG Memo. App. Ex. E).

V. KPMG SHOULD NOT BE REQUIRED INDIVIDUALLY TO LOG DOCUMENTS WITHHELD UNDER SECTION 105(B)(5)(A) OR, LTERNATIVELY, SHOULD BE PERMITTED TO LOG ON A CATEGORICAL BASIS.

Plaintiffs repeat their demand that KPMG produce a privilege log identifying each document that it is refusing to produce pursuant to section 105(b)(5)(A), but they do not address the authority cited by KPMG that shows that their demand is improper and unduly burdensome.

Section 105(b)(5)(A) places the materials to which it applies beyond the reach of civil discovery, necessarily including Fed. R. Civ. P. 26, 34, and 45. Indeed, Rule 26(b)(5)(A) on its face calls for a description of withheld material only where the material is "*otherwise discoverable* ...." But section 105(b)(5)(A) provides that covered material "*shall not be subject to* civil discovery or other legal process." (Emphasis added.) In other words, such documents are removed from the discovery process altogether and are not "otherwise discoverable."

Moreover, Rule 45(d) does not require a document-by-document log; rather, it requires only that the objecting party "describe the nature of the withheld documents ... in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." The nature of the documents at issue here have been adequately described in the course of this motion. Indeed, plaintiffs' request is akin to asking for all communications between a party and its counsel regarding trial strategy; because such documents are categorically privileged — as are documents and information within the scope of § 105(b)(5)(A) — a document-by-document log is not necessary to "enable the parties to assess the claim."

At the same time, requiring KPMG, a non-party, to spend the time and resources required to generate the log that plaintiffs seek — *i.e.*, a log describing individually documents that Congress has made clear categorically are "not to [be] subject to civil discovery" and therefore should not have been subpoenaed in the first instance — would impose an undue burden on KPMG. *See Mintel Int'l Group, Ltd. v. Neerghen*, No. 08-3939, 2009 WL 249227, at *6 (N.D. Ill. Feb. 3, 2009) (KPMG Memo. App. Ex. U) ("Restrictions on discovery may be

14

broader where a nonparty is the target ...."); *Patterson*, 2005 WL 43240, at *1. Several courts have held that a log identifying documents by category, rather than individually, can satisfy the requirements of the rule. *E.g., Beattie v. CenturyTel, Inc.*, No. 02-10277, 2009 WL 4646116, at *3 (E.D. Mich. Dec. 7, 2009) (Ex. D) (ordering defendant to produce privilege log "describing documents or categories of documents that it asserts to be privileged"); *SEC v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2007 WL 219966, at *3-4, 10-11 (D. Colo. Jan. 25, 2007) (Ex. E) (holding that document-by-document log was not required and accepting categorical log and declaration explaining that withheld documents were prepared in anticipation of litigation). No more should be required of non-party KPMG here.

## CONCLUSION

For the reasons set forth above and in Non-Parties KPMG LLP, David Pratt, and Dennis Parrott's opening Memorandum, the KPMG Non-Parties respectfully request that the Court enter an order granting the relief sought by this motion.

Dated: May 24, 2010

Respectfully submitted,

KPMG LLP, DAVID PRATT, AND DENNIS PARROTT

**/s/ Jeffrey C. Sharer**

| | |
|---|---|
| James R. Figliulo (ARDC No. 6183947) | Scott R. Lassar (ARDC No. 1586270) |
| Stephanie D. Jones (ARDC No. 6220362) | Jeffrey C. Sharer (ARDC No. 6239167) |
| FIGLIULO & SILVERMAN, P.C. | SIDLEY AUSTIN LLP |
| 10 South La Salle Street | One South Dearborn Street |
| Suite 3600 | Chicago, Illinois 60603 |
| Chicago, Illinois 60603 | (312) 853-7028 |
| (312) 251-5262 | |
| | Michael C. Kelley (*pro hac vice*) |
| Counsel for Non-Parties KPMG LLP, | SIDLEY AUSTIN LLP |
| David Pratt, and Dennis Parrott | 555 West Fifth Street |
| | Los Angeles, California 90013 |
| | (213) 896-6000 |

## CERTIFICATE OF SERVICE

I, Jeffrey C. Sharer, one of the attorneys for Non-Parties KPMG LLP, David Pratt, and Dennis Parrott, hereby certify that on May 24, 2010, service of the foregoing Reply in Support of the KPMG Non-Parties' Motion to Quash or Modify Subpoena and for Protective Order was accomplished pursuant to ECF as to Filing Users and in compliance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ Jeffrey C. Sharer
Jeffrey C. Sharer