**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIC SILVERMAN, on behalf of himself and all others similarly situated, | Case No. 1:07-CV-04507 (Consolidated) |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | Honorable Amy St. Eve<br>Magistrate Judge Michael T. Mason |
| MOTOROLA, INC., et al., | |
| Defendants. | |

---

**NON-PARTY KPMG LLP'S SURREPLY
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

---

James R. Figliulo (ARDC No. 6183947)
Stephanie D. Jones (ARDC No. 6220362)
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois  60603
(312) 251-5262

Counsel for Non-Parties KPMG LLP,
David Pratt, and Dennis Parrott

Scott R. Lassar (ARDC No. 1586270)
Jeffrey C. Sharer (ARDC No. 6239167)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

Michael C. Kelley (*pro hac vice*
     application pending)
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California  90013
(213) 896-6000

Counsel for Non-Parties KPMG LLP, David
Pratt, and Dennis Parrott

Dated:  June 3, 2010

Non-Party KPMG LLP ("KPMG") submits this Surreply, pursuant to the Court's May 27, 2010 Order, to respond to the new arguments raised in Section III of Plaintiffs' Reply.

## INTRODUCTION

Plaintiffs apparently concede that the only workpapers even arguably relevant to the allegations in this litigation are those relating to Motorola's accounting for and disclosure of the 3Q06 Agreements. Unable to defend their argument that all workpapers should be produced on some other basis, Plaintiffs assert, <u>for the first time in their Reply</u>, that KPMG failed to produce documents which should have been produced under its prior agreement with Plaintiffs to produce such documents. Plaintiffs' tactic is to obtain a wholesale production of all workpapers by suggesting that KPMG did not comply with its agreement to produce workpapers relating to the 3Q06 Agreements – workpapers that, once again, KPMG has already produced. As discussed in KPMG's prior briefs, however, Plaintiffs made no such claim during the meet and confer process or even in their Motion to Compel. Instead, Plaintiffs assured KPMG that they were not questioning KPMG's fulfillment of its agreement, but seeking to expand the scope of the agreement.

Plaintiffs' argument is not only untimely and contradicted by its own prior actions and representations, it is simply wrong. The workpapers cited by Plaintiffs as support for their argument, as well as the workpapers Plaintiffs now claim should have been produced, demonstrate that the additional documents sought either do not relate to the accounting and disclosure of the 3Q06 Agreements or were already produced.

## ARGUMENT

**A.    KPMG Produced All Workpapers Relating to Motorola's Accounting for and Disclosure of the 3Q06 Agreements.**

Plaintiffs concede that they entered into an agreement with KPMG pursuant to which KPMG would produce workpapers relating to Motorola's accounting for and disclosure of the 3Q06 Agreements. Tellingly, by virtue of having entered into this very agreement, Plaintiffs knew then, as they know now, that they do not need the entire set of audit workpapers to get the

2

information they seek.[1]  And as explained in KPMG's Response to Plaintiffs' Motion to Compel (Dkt. 258), KPMG did not rely only on attorneys to identify the workpapers or base its identification of the relevant workpapers on a simple word search.  Instead, KPMG worked with members of its audit engagement team to perform a comprehensive review of its files to identify the relevant workpapers.

Now, Plaintiffs seek, for the first time, to raise questions as to whether additional workpapers should have been produced under the terms of the original agreement.  The tactic is transparent: KPMG should produce all the workpapers so that we (Plaintiffs) can make sure that KPMG produced the limited workpapers it agreed to produce.  Such an argument, contradicting the normal process of any document production, is especially inappropriate here, where KPMG is a non-party, there has been no hint of any bad faith, and Plaintiffs has never before raised the issue with KPMG.  Therefore, even if Plaintiffs were correct in claiming that one or more of the documents sought related to the accounting or disclosure of the 3Q06 Agreements – and as shown below, they are not – Plaintiffs' arguments would, at most, support a finding that KPMG should produce the specific documents identified.

In any event, a review of the specific documents identified by Plaintiffs demonstrates that they were either already produced or, contrary to Plaintiffs' claims, not workpapers relating to the accounting or disclosure of the 3Q06 Agreements:

(1) <u>Workpapers H-650 and H-601.</u>  First, Plaintiffs assert that workpapers H-650 and H-601 should have been produced.  According to Plaintiffs, those documents must relate to the Qualcomm transaction (one of the 3Q06 Agreements), because they were cited in one of the workpapers produced, H-661.2, which specifically addressed that transaction.  Contrary to Plaintiffs' assertion, the references to H-650 and H-601 in H-661.2 in no way suggest that the documents relate to the 3Q06 Agreements.  The reference to H-650 states that the document

---

[1] Were the Court to adopt Plaintiffs' argument otherwise, every non-party subpoena to an auditing firm would require production of all of that firm's workpapers.  Plaintiffs offer no justification for imposing that sweeping and categorical burden on non-party auditing firms.

refers to KPMG's general review of Motorola's revenue generating contracts, and that to H-601 even states that it is cited with regard to certain audit procedures which were "not considered to be necessary" with regard to the Qualcomm transaction. (See Reply (Dkt. 269), Ex. 3, at KPMG 00403-04.)

While the references in H-661.2 do not, in fact, suggest that the workpapers in question relate to the 3Q06 Agreements, it would not have been unreasonable for Plaintiffs to raise questions about those documents with KPMG, and KPMG would have provided Plaintiffs with the same information KPMG is providing here. Specifically, H-650 does not discuss either of the 3Q06 Agreements, but instead documents a general review of Motorola's agreements with its top five customers, not including Qualcomm or Freescale. (See Motion to Strike (Dkt. 278), Ex. B.) H-601 documents certain testing procedures done in connection with accounts receivables which, again, did not involve the Qualcomm or Freescale transactions. (*Id.*, Ex. C.) Therefore, neither of these documents fall under the terms of Plaintiffs' agreement with KPMG.

(2) <u>Workpapers H-630 and Q3-5.</u> The same is true with respect to second set of questions raised by Plantiffs – those relating to workpapers H-630 and Q3-5. Drafts of these workpapers were produced by KPMG in connection with its agreement to produce certain electronic documents, an agreement not at issue here. Drafts of two workpapers – Q3-5 (which was created in connection with the review of Motorola's third quarter 2006 financial statements) and H-630 (a similar workpaper created in connection with the year-end audit of Motorola's 2006 financial statements) – were included in the production of electronic documents, and Plaintiffs question why the final versions of these workpapers were not included in the workpaper production. Again, had Plaintiffs properly raised the issue during its meet and confer with KPMG or at any time before filing its Reply brief, KPMG could have easily resolved any concerns.

H-630 and Q3-5 document procedures done with respect to a variety of recurring agreements entered into by Motorola which are not material on their own, but may be material in

4

combination. Plaintiffs' question relates to a statement contained in Section 7 of each of the draft workpapers. (Reply (Dkt. 269), Ex. 4-5.) Although the drafts demonstrate that the workpapers deal in detail only with matters not relevant to the lawsuit, Section 7 in both drafts states that two "significant new royalty agreement[s]" were entered into in the third quarter and identifies the 3Q06 Agreements. The draft workpapers then reference the workpapers documenting the procedures done with respect to those agreements – <u>the very workpapers already produced</u>. (*Id.*, Ex. 5, at KPMG 05946.) With regard to the H-630 workpaper, this reference does not exist in the final version contained in KPMG's workpaper files, because – as is not an uncommon practice – when the draft was finalized and updated for the year-end 2006 audit, the reference to "new royalty agreements" in the third quarter was replaced with a reference to the royalty agreements that were new in the fourth quarter of 2006. The 3Q06 Agreements therefore are not included. With regard to the Q3-5 workpaper, the passing reference to the 3Q06 Agreements does not make the workpaper relevant to the accounting for and disclosure of those agreements. The procedures done with respect to Motorola's accounting for the 3Q06 Agreements are documented in separate workpapers, the workpapers which (again) KPMG <u>has</u> produced.

    (3) <u>Workpaper C1.</u> Plaintiffs next assert that a workpaper identified as "C1" relates to the 3Q06 Agreements and should have been produced by KPMG. Plaintiffs are wrong. Plaintiffs rely on a handwritten note on one of the workpapers produced by KPMG which discusses the date of the workpaper and the date on which it was added to the workpaper file. (See Reply (Dkt. 269), Ex. 2, at KPMG 00113.) Nothing in this note suggests that the citation is to a document which relates to the 3Q06 Agreements, and had Plaintiffs raised the issue with KPMG, KPMG would have explained that the citation to C1 simply documented the fact that the workpaper had been added to the workpaper file after documentation completion date for the audit. (See Reply (Dkt. 269), Ex. 2, at KPMG 00113; Motion to Strike (Dkt. 278), Ex. E.)

(4)    <u>Motorola's fair value analysis</u>.  Plaintiffs next complain that KPMG did not produce Motorola's "fair value analysis," which is referenced in one of the produced workpapers.  That is because the referenced document is not contained in KPMG's workpapers.

(5)    <u>Workpaper Q4-15-1.</u>   Plaintiffs also question KPMG's failure to include workpaper Q4-15-1 in its production.  That workpaper is referenced on one of the produced workpapers, Q3-15-2, but a review of the cited workpaper demonstrates that it consists of nothing more than a handwritten note referring to the general review of contracts contained in H-650, as discussed above.  (See Motion to Strike (Dkt. 278), Ex. D.)  Again, then, while it would not have been unreasonable for Plaintiffs to raise questions regarding the referenced document with KPMG, doing so would simply have revealed that the document does not relate to Motorola's accounting for or disclosure of the 3Q06 Agreements.

(6)    <u>Workpapers A-1, D-1, and D-2.</u>  The last specific documents identified by Plaintiffs are those documents described as "attached work papers labeled A, A-1, B, C, D-1 and D-2" in produced workpaper Q3-19-01.  (See Reply (Dkt. 269), Ex. 7, at KPMG 00038.)  KPMG <u>has already produced these documents</u>.  Any confusion on this point relates to the fact that the reference in the workpaper was inconsistent with the numbering applied to the final workpapers, as the reference was not updated to reflect the correct numbering.  KPMG has confirmed that the reference is to the documents produced.

**B.    Plaintiffs Also Fail to Identify Any General Categories of Unproduced Workpapers Relating to Motorola's Accounting and Disclosure of the 3Q06 Agreements**.

In addition to the specific documents cited above, Plaintiffs assert that certain general categories of documents should have been produced.  However, none of those categories of workpapers relates wholesale to the accounting for or disclosure of the 3Q06 Agreements.  To the extent specific documents or portions of documents do so, they <u>have already been produced</u>.

(1)    <u>ER series workpapers.</u>  The first general category of workpapers asserted by Plaintiffs to be related to the 3Q06 Agreements are the ER series.  The workpapers produced by KPMG contained a copy of Motorola's third quarter 2006 financial statements, filed as part of

Motorola's Form 8-K dated October 17, 2006. (Reply (Dkt. 269), Ex. 8.) This document contains a handwritten note stating that they were agreed to the final third quarter 2006 Earnings Release issued by Motorola, and references the ER series of workpapers. Based on this, Plaintiffs assert that the ER series relates to Motorola's accounting for and disclosure of the 3Q06 Agreement and that KPMG should have produced them. (*Id.*, at 8.) All the ER series of workpapers are, however, is another copy of Motorola's third quarter 2006 financial statements with "tick" marks documenting that KPMG checked the numbers in the release, none of which specifically reference the 3Q06 Agreements. Nor do these documents contain any analysis of the underlying components included in the numbers disclosed in the earnings release. Therefore, Plaintiffs are mistaken in claiming that the ER series related to Motorola's accounting for and disclosure of the 3Q06 Agreements, and have no basis to assert that these documents or any additional workpapers should be produced.

(2)     <u>Engagement Management Workpapers.</u> The next general category of workpapers Plaintiffs claim should have been produced are the Engagement Management workpapers. Plaintiffs' base this assertion on an argument that the documents would contain communications between KPMG and Motorola. But the only relevant communications – and certainly the only communications that were the subject of the prior agreement between KPMG and Plaintiffs – are those relating to Motorola's accounting for and disclosure of the 3Q06 Agreements. Again, KPMG <u>has already produced</u> any such communications. Therefore, no basis exists to require a blanket production of the Engagement Management workpapers.

(3)     <u>Planning and Completion Workpapers.</u> Plaintiffs next assert that KPMG either should have produced or should be ordered to produce its Planning and Completion workpapers on the grounds that certain of those workpapers would relate to the 3Q06 Agreements. To the extent these workpapers relate to the 3Q06 Agreements, however, <u>they (again) already have been produced</u>. Indeed, Plaintiffs demonstrated this by attaching certain relevant portions of the Completion workpapers to their Reply. (See Reply (Dkt. 269), Ex. 2.) Plaintiffs have cited

7

nothing to support a conclusion that KPMG's production excluded other documents relating to the 3Q06 Agreements or, in the alternative, explaining why KPMG should produce Planning and Completion workpapers addressing other accounting and auditing matters unrelated to the 3Q06 Agreements.

Plaintiffs' specific arguments regarding the Planning workpapers are similarly flawed. Contrary to Plaintiffs' speculation, the Planning workpapers do not address the 3Q06 Agreements. If they did, the relevant portions would have been produced. And to the extent that Plaintiffs are demanding Planning workpapers other than those relating specifically to the 3Q06 Agreements – those setting forth general information about the audit procedures, for example – such documents are simply not relevant to the claims and defenses in this litigation. Plaintiffs have failed to show otherwise. Plaintiffs assert that they need the Planning workpapers to determine whether "KPMG did or did not evaluate the materiality of Motorola's licensing revenue in general, and the 3Q06 [Agreements] in particular." But <u>KPMG's</u> actions, and in particular what KPMG <u>did not do</u>, are not at issue in the litigation. Moreover, as KPMG has already explained to Plaintiffs, any workpapers relating to the accounting for the 3Q06 Agreements, which would include those evaluating the materiality of the Agreements, if such workpapers exist, <u>have been produced</u>. In short, Plaintiffs have failed to demonstrate that a more general production of the planning workpapers is appropriate for any reason.

(4) <u>Financial Reporting Workpapers.</u> Plaintiffs then assert that the Financial Reporting workpapers should be produced because they may contain documents regarding KPMG's review of Motorola's decision not to disclose the 3Q06 Agreements. Once again, however, KPMG <u>has produced</u> all workpapers relating to the disclosure of the 3Q06 Agreements. Plaintiffs have cited nothing to suggest that KPMG failed to produce the documents it agreed to produce, and cite nothing to support a claim that the Financial Reporting workpapers are relevant except to the extent they specifically relate to the disclosure of the 3Q06 Agreements. Therefore, Plaintiffs have failed to show the need for any additional production.

(5)     <u>Accounts Receivable and Revenue Workpapers</u>.  Plaintiffs' next argument is that KPMG should produce all workpapers relating to accounts receivables and revenue, even those unrelated to the 3Q06 Agreements.  According to Plaintiffs, all such documents are nonetheless relevant because the 3Q06 Agreements were a component of total accounts receivable and revenue.[2]  (See Reply (Dkt. 269), at 11.)  Plaintiffs' argument makes no sense.  Simply because the 3Q06 Agreements were a component of total revenue does not make all other items which were components of total revenue – income from any of Motorola's other agreements, of any type, or business transactions or sales, for example – relevant to the 3Q06 Agreements.  This is simply a revision of Plaintiffs' initial argument that, because KPMG considered one accounting issue that is allegedly relevant, all of KPMG's workpapers therefore become relevant, even those relating to issues on which no discovery has occurred.  Plaintiffs have failed to set forth any basis to claim that all accounts receivable and revenue workpapers should have been produced by KPMG or that they should be produced now.

Plaintiffs make an additional argument with regard to a subset of these documents, claiming that KPMG should produce all documents relating to the accounting for and disclosure of licensing agreements so that Plaintiffs can compare the treatment with the 3Q06 Agreements.  KPMG's understanding, however, is that the other licensing agreements have not been the subject of any allegations or discovery in this lawsuit, despite the fact that Plaintiffs have sought discovery of the 3Q06 Agreements directly from Motorola.  Plaintiffs' claim that discovery regarding the other licensing agreements is necessary to place the 3Q06 Agreements in context rings false, and certainly does not explain why a non-party should be burdened with discovery beyond the scope of the discovery between the parties.  Rather than being relevant to the accounting and disclosure of the 3Q06 Agreements, Plaintiffs' demand for these documents

---

[2] Plaintiffs also assert that the documents produced contain references to "the Accounts Receivable and Revenue documentation," but cites nothing in support of this general claim. It appears that Plaintiffs are simply referring to the fact that the 3Q06 Agreements are among those included in Motorola's calculation of its total accounts receivable and revenue in the 2006 financial statements.

merely demonstrates, again, that Plaintiffs are seeking to use KPMG's good faith agreement to produce a narrow portion of the workpapers into a broad expansion of the scope of discovery at the expense of a non-party.

(5) <u>Accounts Payable, Inventory and Subsequent Events Workpapers.</u> Finally, Plaintiffs demand workpapers relating to accounts payable, inventory, and subsequent events. Although – as with the other categories of documents cited – KPMG <u>has already produced</u> all such workpapers to the extent those workpapers related to Motorola's accounting for and disclosure of the 3Q06 Agreements, Plaintiffs appear to be seeking *all* workpapers in this additional category of documents, again based in part on allegations and arguments asserted for the first time. (Indeed, Plaintiffs conceded in their Motion that the accounts payable documents were among those the few categories of documents they informed KPMG they were not seeking during the meet and confer process.)

Plaintiffs now argue that all workpapers relating to accounts payable, inventory, and subsequent events are relevant based on an assertion that Motorola supposedly agreed to purchase $106 million in strategic inventory from Freescale and that the 3Q06 Agreement with Freescale formed part of the terms for this alleged agreement. Plaintiffs do not and cannot explain how their assertion would transform the workpapers sought into ones relating to the accounting and disclosure of the 3Q06 Agreements when the workpapers do not address those topics. Nor do they make any attempt to explain why their demand is so broad as to include the numerous other accounting and auditing issues relating to Motorola's accounts payable and inventory or to subsequent events. Moreover, Plaintiffs appear to be seeking documents from KPMG regarding Motorola's accounting which they have not sought in their discovery from Motorola, either because this issue is, in fact, not related to the claims and defenses in the lawsuit or because the basis for the demand is so speculative that discovery on that topic would not have been available. It is again clear from the unlimited nature of the demands that Plaintiffs' actual goal here is nothing more than a fishing expedition.


In any event, Plaintiffs' assertions fail to support its claim that all workpapers relating to accounts payable, inventory, and subsequent events are relevant to Motorola's accounting for and disclosure of the 3Q06 Agreements. To the extent that such workpapers related to the accounting for and disclosure of the 3Q06 Agreements, <u>such workpapers were produced</u>.

## CONCLUSION

For all of the reasons set forth above and in its Response to Plaintiffs' Motion to Compel, KPMG respectfully requests that this Court deny Plaintiffs' Motion.

Dated: June 3, 2010

Respectfully submitted,

KPMG LLP

By: <u>/s/ James R. Figliulo</u>
One of Its Attorneys

James R. Figliulo (ARDC No. 6183947)
Stephanie D. Jones (ARDC No. 6220362)
FIGLIULO & SILVERMAN, P.C.
10 South La Salle Street
Suite 3600
Chicago, Illinois 60603
(312) 251-5262

Scott R. Lassar (ARDC No. 1586270)
Jeffrey C. Sharer (ARDC No. 6239167)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Michael C. Kelley
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, California 90013
(213) 896-6000

Counsel for Non-Parties KPMG LLP,
David Pratt, and Dennis Parrott

11

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on June 3, 2010, service of the foregoing **Non-Party KPMG LLP's Surreply** was accomplished pursuant to ECF as to Filing Users and in compliance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ James R. Figliulo