UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| ERIC SILVERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 1:07-cv-04507 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge St. Eve Magistrate Judge Mason |
| MOTOROLA, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
IMPROPERLY WITHHELD DOCUMENTS

Pursuant to Fed. R. Civ. P. 26(b)(3), 34, and 37(a), plaintiffs Macomb County Employees'

Retirement System and St. Clair Shores Police and Fire Pension System (hereinafter, "plaintiffs")

respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion to Compel

Improperly Withheld Documents.

## I.    INTRODUCTION & OVERVIEW

This motion concerns plaintiffs' requests for relevant documents concerning the accounting

and disclosure of the IP licensing transactions Motorola, Inc. ("Motorola" or the "Company")

entered into with Freescale and Qualcomm in the waning moments of 3Q06 ("3Q06 IP Deals").

Through these last minute deals, defendants booked $440 million in 3Q06 and concealed an earnings

gap caused by undisclosed problems with the Company's 3G phone portfolio.  *See* Dkt. No. 208,

Second Amended Complaint for Violation of Federal Securities Laws ("Complaint"), ¶¶7-12, 152-

179.[1]  The relevance of the documents at issue here was established by this Court's February 24,

2010 Order.  *See* Dkt. No. 200 ("February 24, 2010 Order").  Subsequently, defendants have

withheld numerous documents they were ordered to produce on the basis that they are protected

from disclosure as privileged materials.[2]

Plaintiffs filed their Complaint on March 15, 2010, which alleges, *inter alia*, that the $440

million in nearly pure-profit 3Q06 IP Deals were neither properly disclosed nor appropriately

accounted for.  *See* ¶¶162-171, 173-179.  On March 30, 2010, defendants answered the Complaint

and raised various defenses, including, but not limited to "good faith" reliance on professionals (*i.e.,*

---

[1]    Unless otherwise noted, all references to "¶__" or "¶¶__" are to the Complaint.

[2]    The written communications at issue are documents 1, 6, 8-10, 13-17, 20, 29-31, 35, 39-40, 44, 46-50, 53-59, and 61 on defendants' March 19, 2010 (revised June 9, 2010) Privilege Log and 11-21 and 23-51 on defendants' Updated November 12, 2009 Privilege Log.  *See* Exs. A and B, respectively.  To the extent necessary, plaintiffs respectfully request that the Court conduct an *in camera* review of these documents to determine whether any privilege applies.

attorneys) for the disclosure and accounting of the 3Q06 IP Deals. *See* Dkt. No. 220, Defendants'

Answer to Second Amended Complaint ("Answer") at 126. There is no longer any dispute as to the

relevance of these communications and documents. And, certainly, defendants will be unable to

raise any legitimate argument that production of these documents, should the Court order it, would

impose any undue burden.

Therefore, the only issue before the Court is whether the documents defendants claim to be

privileged are, in fact, privileged.[3] They are not. First, the communications defendants have

withheld concern traditional business advice – not legal advice – which is not shielded from

production by claims of privilege. Second, defendants have already utilized in discovery documents

evidencing reliance on counsel for the accounting and disclosure of the 3Q06 IP Deals, so they have

waived any privilege related to that subject matter. Third, defendants' assertion of reliance on

advice of counsel as an affirmative defense to plaintiffs' claim that defendants acted with scienter

(*i.e.*, they acted intentionally, willfully or recklessly) is, in itself, sufficient to waive privilege

regarding the 3Q06 IP Deals. Accordingly, defendants should be ordered to produce the improperly

withheld documents.

## II.     RELEVANT BACKGROUND

### A.     Plaintiffs' Allegations Concerning the 3Q06 IP Deals

Plaintiffs allege that defendants' failure to disclose the 3Q06 IP Deals violated GAAP

because they were unusual or infrequent transactions. *See* ¶¶152-159, 162-165, 173-174. GAAP

required such transactions to be separately disclosed in Motorola's October 17, 2006 Form 8-K

---

[3]     The parties agree that only communications and documents regarding the 3Q06 IP Deals, made, created or generated before the date this action was commenced on August 9, 2007, are at issue. *See* Dkt. No. 283, Defendants' Motion for Protective Order Requesting Court's Ruling on Scope of Waiver ("Motion for Protective Order") at 8.

529538_1

earnings press release and the Company's 3Q06 Form 10-Q (filed November 2, 2006). *Id*. But for the 3Q06 IP Deals valued at $440 million, the reported earnings of Motorola's Mobile Devices business – the Company's largest operating unit – would have been cut by 50% and the imputed margins for handset sales would have dropped from 11.9% to 6.0%. ¶159. Had defendants disclosed the financial impact and nature of the transactions, analysts and investors would have discounted them as "one-time" events, and the degradation of Motorola's quality of earnings, the "monster issue" with the delayed Argon 3G chip, and the losses on the 3G portfolio would have immediately been exposed. *Id*.

Not only did the 3Q06 IP Deals have a material impact on Motorola's 3Q06 reported results, but they were also unusual in that they were not true "IP" transactions and they did not represent the Company's core or repeatable business. ¶¶163, 173. Although the accounting rules dictate that full delivery must occur before any revenue can be recognized, delivery of all the existing intellectual property or immediate services called for in the Freescale license agreement did not occur before the close of 3Q06. ¶¶167-168. In addition, revenue from the 3Q06 IP Deals should not have been characterized as revenue from a sale of IP under GAAP because the substance and value of the Freescale IP deal was primarily for the settlement of Motorola's claims against Freescale regarding Argon chip delays, related pricing disputes and the promise of future business. ¶169. Likewise, the Qualcomm IP deal was essentially a deal whereby Qualcomm paid to obtain increased UMTS chip purchase obligations from Motorola and a covenant not to sue for alleged violations of a prior agreement prepared by the two companies. ¶¶176-177. Finally, GAAP dictates that revenue may not be recognized upfront for any element of a multi-element software arrangement unless each element can be separately and objectively valued in accordance with "vendor-specific objective evidence of fair value" ("VSOE"), but the VSOE did not exist for most, if not all, of the separate elements of the 3Q06 IP Deals . ¶¶170-171, 179.

529538_1

### B.      Relevant Procedural History

On March 12, 2010, plaintiffs filed their Second Amended Consolidated Complaint. Defendants' subsequent answer, filed March 30, 2010, asserted "good faith" reliance upon advice of professional defenses regarding the accuracy of "all financial information" reported in their Class Period financial statements.  *See* Answer at 126; *see also* Motion for Protective Order at n.2.  Noting that defendants' good faith reliance defenses lacked any specificity, plaintiffs notified defendants of the obvious defect in their responsive pleading.  *See* Ex. C at 1, 3 (April 5, 2010 letter to James Thomas citing *Bank of Montreal v. SK Foods, LLC*, No. 09 C 3479, 2009 U.S. Dist LEXIS 106577, at *10-*11 (N.D. Ill. Nov. 13, 2009)).  On March 29, 2010, plaintiffs served interrogatories on defendants asking them to identify each professional they relied upon in support of their good faith defenses regarding the accuracy of Motorola's financial statements.  *See, e.g.*, Ex. D (Interrogatory No. 1, served on defendant Ronald Garriques).

Since defendants filed their answer and received the relevant interrogatories, however, defendants have been less than forthcoming in identifying attorneys (or other professionals) they relied upon, let alone whether they intended to utilize privileged communications, for the accounting of the 3Q06 IP Deals.  *See, e.g.*, Ex. E (defendants' April 26, 2010 email stating "we are confident that the issues raised therein can be addressed through the individual defendants' depositions"); Ex. F (plaintiffs' May 8, 2010 email requesting confirmation as to whether they relied on attorneys concerning the accounting for the 3Q06 deals).  On May 12, defendant responded that they believed they were not required to update their Fed. R. Civ. P. 26 disclosures or provide any additional information.  Ex. F.  Shortly thereafter, defendants offered to stipulate as to waiver of attorney communications limited to just communications regarding whether and when to disclose about the 3Q06 IP Deals, but excluding all communications regarding the deals themselves or the accounting of the deals.  Based on conversations with defendants and review of the discovery to date, it was

clear that the attorneys involved in any disclosure decision would ***not*** have had any involvement in the 3Q06 IP Deals, the decisions on how to account for the deals or the substance of the deals.  In other words, the "disclosure" attorneys were not relied upon to determine whether Motorola's reported financial information was accurate or in compliance with GAAP.  As a result, the parties were unable to reach an agreement on the scope of the waiver.  Plaintiffs, with good reason, rejected this offer as it was intended to artificially limit the reach of the subject matter of the proposed waiver.

### III.   WHETHER OR NOT DEFENDANTS HAVE WAIVED THEIR PRIVILEGE, THE DOCUMENTS AT ISSUE HAVE BEEN IMPROPERLY WITHHELD

The documents at issue are not protected by attorney-client privilege because the attorneys involved were acting in their business – not legal – capacity in their role with the 3Q06 IP Deals.  In the Seventh Circuit, "the attorney-client privilege is limited to situations in which the attorney is acting as a legal advisor."  *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (privilege does not exist where the attorney is making business decisions).  Given the role of lawyers in all aspects of modern corporations, communications where the legal advice is incidental to business advice do not qualify as privileged communications.  *See ConAgra, Inc. v. Arkwright Mut. Ins. Co.*, 32 F. Supp. 2d 1015, 1016 (N.D. Ill. 1999).  So even where legal advice is sought, "a document prepared for both legal and non-legal review is not privileged."  *In re Air Crash Disaster at Sioux City*, 133 F.R.D. 515, 519 (N.D. Ill. 1990); *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 U.S. Dist. LEXIS 10300, at *13 (N.D. Ill. June 19, 1987) ("Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged.").

In this case, the attorneys involved in the 3Q06 IP Deals, all of whom were in-house, were acting in their business capacity because, *inter alia*, they were authorized and did negotiate the

- 5 -

technical terms of the transactions with Qualcomm and Freescale. *See* Ex. G at 306:21-307:14 (4/9/10 Deposition of Dennis Strand). Indeed, according to testimony from defendant David Devonshire, Motorola's then CFO, the 3Q06 Qualcomm IP deal "was really struck between Ron and Sanjay ***along with the attorneys involved on both sides***" throughout the negotiation process. *See* Ex. H at 29:4-32:2; 261:10-15 (6/9-10/10 Deposition of David Devonshire ("Devonshire Depo.")).[4] The attorneys were so familiar with the transactions that when Michel Mayer, the CEO of Freescale, sought follow-up regarding Motorola's obligations under the terms of the licensing agreement with Freescale, it was the attorneys who were tasked to draft the response that defendant Nottenburg sent to Mayer. *See* Ex. I at 234:22-237:17; 238:24-240:6 (5/19/10 Deposition of Richard Nottenburg); Ex. J (Nottenburg's response to Mayer). And although Nottenburg's email directing counsel to draft the response likely seeks business rather than legal advice about the Freescale IP deal, defendants' privilege log describes Nottenburg's May 10, 2007 email to Michael Annes, Corporate Vice President of the Integrated Supply Chain Law Department, as an "Email to in-house counsel seeking legal advice. Redacted from MOT/SIL 818128." *See* Ex. A at No. 59 and Ex. K.

While defendants relied on Motorola's in-house counsel to be present "to make sure that the appropriate disclosures were made to internal audit, keep the minutes of the meetings that we had regarding press releases," they did not rely on them for legal advice as to how to disclose the 3Q06 IP Deals. *See* Ex. H at 24:18-26:11. The attorneys were there to make sure that, from a business standpoint, Motorola "fulfilled all the GAAP criteria and crossed all the T's and dotted all the I's in a way that it could be recognized in the third quarter of 2006." *Id*. at 22:21-24:7. Fulfilling "all the

---

[4]     Unless otherwise noted, all emphasis is added and all internal citations are omitted.

GAAP criteria" is an accounting and business function, not a legal one.  Thus, it appears that the lawyers involved in the 3Q06 IP Deals were substantially working in a business capacity.

## IV.   DEFENDANTS WAIVED ANY PRIVILEGE BY PUTTING RELIANCE ON COUNSEL AT ISSUE IN THE LITIGATION

### A.   Defendants' Act of Asserting Good Faith Reliance on Counsel Placed the Related Communications at Issue Because This Case Involves an Element of Intent

The documents plaintiffs seek from defendants' privilege logs cannot be withheld from discovery because any privilege was waived when defendants put reliance on advice of counsel at issue by raising it as an affirmative defense.  The "attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995).  "Where, as here, a party asserts as an essential element of his defense reliance upon the advice of counsel, we believe the party waives the attorney-client privilege with respect to ***all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought***." *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 721 (N.D. Ill. 1978) (finding waiver of privilege on the specific question of the illegality of a proposed business combination waives privilege as to all documents dealing with the efforts to accomplish the transaction).

Where an element of a claim involves intent, the assertion of reliance on counsel to defend against intent is a utilization of the underlying communications.  *See Solomon v. Kimberly-Clark Corp.*, No. 98 C 7598, 1999 U.S. Dist. LEXIS 1594, at *4 (N.D. Ill. Feb. 12, 1999) (finding that because "[l]iability for willfulness of [patent] infringement turns on considerations of intent, state of mind, and culpability," defendant waived privilege by asserting as an affirmative defense good faith reliance on the opinion of counsel that it was not guilty of infringing).  Like in willful patent infringement cases, liability for securities fraud under §10(b) and Rule 10b-5 requires a defendant to

have "acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  Accordingly, whether defendants here "reasonably believed that all financial information was accurately accounted for and/or disclosed in reliance upon professionals employed or retained by Motorola" is also a question of fact that requires consideration of what defendants knew at the time.  Answer at 126.  For example, while defendants indicate on their revised March 19, 2010 Privilege Log that defendant Garriques received the "requested legal advice regarding Freescale transaction" on September 21, 2006, plaintiffs have no way of determining what Garriques was told, without the document itself. *See* Ex. A at No. 40.  In fact, defendant Garriques has admitted to utilizing discussions with corporate counsel in support of his reasonable reliance defense that the Qualcomm transaction was appropriately valued pursuant to GAAP.  Ex. L at 187:15-188:13; 205:3-24 (6/15/10 Rough Draft Deposition of Ronald Garriques).  Defendants also describe a document dated September 28, 2006 that reflects "in house-counsel's legal thoughts, reflection, and analysis regarding Qualcomm" which may or may not comport with defendants' good faith defense.  Ex. A at No. 53.  Because defendants seek to defend against the claim that they acted with scienter by asserting reliance on advice of counsel for the accuracy of the accounting and disclosure of the 3Q06 IP Deals, that reliance is squarely at issue and cannot be shielded by a claim of privilege.  Here, as in *Panter*, defendants' efforts to accomplish the licensing transactions in 3Q06 is intertwined with why their accounting and disclosure of them was improper.  So, by raising reliance on counsel as an affirmative defense and placing it at issue in the litigation, defendants have waived any privilege associated with communications regarding the 3Q06 IP Deals.

- 8 -

**B.      Defendants' Utilization of Documents Pertaining to Their Assertion of Good Faith Reliance on Counsel Placed the Related Communications at Issue**

Even if defendants did not place any privileged communications at issue by merely raising a good faith reliance on counsel affirmative defense, they did so when they utilized communications with counsel in support of their assertion that they acted in "good faith" concerning the disclosure and accounting of the 3Q06 IP Deals.  In *United States v. Bilzerian*, the Second Circuit found waiver of privilege where the defendant did not raise an advice of counsel defense but claimed that he, in good faith, attempted to comply with the securities laws *because* such a claim *required* examination of protected communications.  926 F.2d 1285, 1292-94 (2d Cir. 1991) (declaring that "the attorney-client privilege cannot at once be used as a shield and a sword").  The defendant in *Bilzerian* specifically wanted to testify that he made changes to the structure of his financing arrangements "'in order to enable himself to be able to report as personal funds on the 13D the funds that he received from the trust that he would not have to disclose any of the investors' names and . . . he believed that was appropriate and proper.'"  *Id.*  However, his "testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue.  His conversations with counsel regarding the legality his schemes would [be] directly relevant in determining the extent of his knowledge and, as a result, his intent."  *Id.*

Similarly, in *In re Broadcom Corp. Sec. Litig.*, the Court found that by asserting "good faith based on an expectation the lawyers would tell them if anything illegal was happening" rather than just denying scienter, defendants "injected an issue that requires examination of the attorneys' communications with defendants to see if defendants are corroborated."  Nos. SA CV 01-275-GLT (MLGx), SA CV 02-301-GLT(ANx), 2005 U.S. Dist. LEXIS 44424, at *9-*11 (C.D. Cal. Feb. 11, 2005).  Defendants there disclaimed reliance on advice of counsel but "would testify that each and every S.E.C. filing and disclosure document was reviewed by the company lawyers, defendants are

- 9 -

not lawyers and don't have company responsibility for making the ultimate decision of what is legally required under applicable laws," so the *Broadcom* Court found that they had put reliance on counsel at issue and had waived privilege. *Id.*

Here, defendants already utilized reliance on counsel to support their position that the 3Q06 IP Deals were properly accounted for and disclosed. In testimony elicited to date, defendants have already argued that they relied upon professionals in Motorola's legal department to ensure that the Company's financial information – including that involving the 3Q06 IP Deals – was accurately accounted for and disclosed in conference calls and SEC filings. *See* Ex. H at 185:5-186:10; 206:18-24, 267:20-268:7; Ex. M at 69:2-8, 12-24 (5/26/10 Deposition of Gregory Brown); Ex. N at 170:10-23 (5/28/10 Deposition of Daniel Moloney). Defendants could have simply denied scienter, but instead, they chose to assert reliance on professionals who were tasked to examine the accounting and disclosure of the IP deals, including how the deals would enable Mobile Devices to "make the plan" in 3Q06. After wielding privilege to pierce plaintiffs' allegations regarding defendants' state of mind, defendants cannot use it to simultaneously shield other relevant communications from plaintiffs. By utilizing their communications with counsel, defendants have waived any privilege associated with the communications they had with their attorneys regarding the accounting and disclosure of the 3Q06 IP Deals. *Bilzerian*, 926 F.2d at 1294; *Broadcom*, 2005 U.S. Dist. LEXIS 44424, at *11. And, all of the documents at issue here are directly related to those IP deals.

Regarding scope of the waiver, the widely applied standard "is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005) (applying Seventh Circuit law with respect to questions of attorney-client privilege); accord *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 217 (N.D. Ill. 2001) (finding that as a matter of fairness, "a party must produce not only other communications and opinions of the same attorney, but also privileged information from other

- 10 -

counsel involving the same subject"). This Court has concluded that subject matter waiver extends to privileged materials "that contradict or cast doubt on the opinions that were revealed, irrespective of whether the documents indicate on their face that they were conveyed to the client." *Id.* at 218. Here, the scope of the waiver is defined by defendants' own affirmative defense that "all financial information was accurately accounted for and/or disclosed in reliance" on Motorola's counsel. Answer at 126. The documents at issue here relate directly to the accounting and disclosure of the 3Q06 IP Deals and fall squarely within the subject matter of the defense defendants have asserted.

In addition, defendants have carefully selected and produced a variety of documents disclosing communications with counsel that they intend to use to support their position that the 3Q06 IP Deals were properly accounted for and disclosed. For instance, on September 27, 2006, Kirk Dailey, Senior Counsel of Motorola's Law Department, informed defendant Devonshire that Scott Offer, Assistant Vice President of Legal in Mobile Devices, had reviewed the terms of the agreement with Freescale and placed his legal imprimatur on the transaction. *See* Ex. O at MOT/SIL1-1825798. The Executive Summary that Dailey attaches shows that the transaction was structured to recognize $123.1M of revenue in 3Q06 and $12.3M in each Q4 thereafter. *Id.* at MOT/SIL1-1825801. In addition, defendants disclosed Offer's memorialization to KPMG of the events on September 31, 2006 relating to the 3Q06 Qualcomm IP deal. *See, e.g.*, Ex. P. These business facts were provided to KPMG in an effort to support the conclusion that the transaction could be recognized "upfront" pursuant to relevant GAAP. By opening the door to and putting at issue their communications with counsel to support their position that the 3Q06 IP Deals were accurately accounted for and disclosed, defendants have also waived privilege as to any documents relating to the same subject matter that "contradict or cast doubt on the opinions that were revealed, irrespective of whether the documents indicate on their face that they were conveyed to" anyone at Motorola. *Beneficial*, 205 F.R.D. at 218.

- 11 -

529538_1

## V.     CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court order defendants to

produce the improperly withheld documents.

DATED:  June 17, 2010                        Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                             MICHAEL J. DOWD
                                             TOR GRONBORG
                                             SUSAN G. TAYLOR
                                             TRIG R. SMITH
                                             JENNIFER L. GMITRO
                                             IVY T. NGO


                                                    s/ IVY T. NGO
                                             ─────────────────────────────
                                                    IVY T. NGO

                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)

                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)

                                             Lead Counsel for Plaintiffs

                                             VANOVERBEKE MICHAUD & TIMMONY, P.C.
                                             THOMAS C. MICHAUD
                                             79 Alfred Street
                                             Detroit, MI  48201
                                             Telephone:  313/578-1200
                                             313/578-1201 (fax)

                                             Additional Counsel for Plaintiffs

- 12 -

MILLER LAW LLC
MARVIN A. MILLER
LORI A. FANNING
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 17, 2010.

s/ IVY T. NGO
IVY T. NGO

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:INgo@rgrdlaw.com

# Mailing Information for a Case 1:07-cv-04507

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **John Joseph Barber**
  jbarber@tdrlawfirm.com,edocket@tdrlawfirm.com

- **David K. Cole**
  courtnotification@mayerbrown.com

- **Michael J. Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **J. Timothy Eaton**
  teaton@shefskylaw.com,sfdocket@shefskylaw.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **James R. Figliulo**
  jfigliulo@fslegal.com

- **Michael David Frisch**
  courtnotification@mayerbrown.com

- **Jennifer L. Gmitro**
  JGmitro@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Mark H Horwitch**
  mhorwitch@tdrlawfirm.com,edocket@tdrlawfirm.com

- **Stephanie D. Jones**
  sjones@fslegal.com

- **M. Sean Laane**
  sean.laane@aporter.com

- **Scott R. Lassar**
  slassar@sidley.com,efilingnotice@sidley.com

- **Kim Ann Leffert**
  courtnotification@mayerbrown.com

- **Elizabeth Leise**
  elizabeth_leise@aporter.com,john_massaro@aporter.com

- **Erin K. Lynch**
  elynch@shefskylaw.com

- **Richard A. Maniskas**
  sradcliffe@glancylaw.com

- **John C Massaro**
  john_massaro@aporter.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com

- **Matthew P Montgomery**
  mattm@csgrr.com

- **Ivy T Ngo**
  ingo@rgrdlaw.com

- **David A Rosenfeld**
  drosenfeld@csgrr.com

- **Samuel H Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Joseph Russello**
  jrussello@csgrr.com

- **Stephen M Sacks**
  stephen_sacks@aporter.com

- **Jeffrey Charles Sharer**
  jsharer@sidley.com,efilingnotice@sidley.com

- **Michael P. Sheehan**
  msheehan@shefskylaw.com,sfdocket@shefskylaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,stremblay@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Susan G Taylor**
  SusanT@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **James W. Thomas , Jr**
  james.thomas@aporter.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Joseph I. Goldstein**
Murphy & McGonigle
555 13th Street, N.W.
Ste. 410 W
Washington, DC 20004

**Jerry A Isenberg**
Murphy & McGonigle

555 13th Street, N.W.
Ste. 410 W
Washington, DC 20004

**D Seamus Kaskela**
Schiffrin Barroway Topaz & Kessler LLP
280 King of Prussia Road
Radnor, PA 19087

**Michael Kelley**
Sidley and Austin
555 West Fifth Street
40th Floor
Los Angeles, CA 90013