# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERIC SILVERSMAN, On Behalf of Himself and All Others Similarly Situated. | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) No. 07 C 4507 |
| MOTOROLA, INC., *et al.*, | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiffs Macomb County Employees' Retirement System and St. Clair Shores Police and Fire Pension System's (collectively "Plaintiffs") Motion to Compel the Production of Documents from KPMG, LLP ("KPMG"). For the following reasons, the Court grants in part and denies in large part Plaintiffs' motion.

## BACKGROUND

This class action concerns Motorola, Inc.'s ("Motorola") and certain of its officers and directors' (collectively "Defendants") alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. Plaintiffs allege that Defendants made public misstatements and material omissions regarding Motorola's 3G mobile handset portfolio. Plaintiffs contend that throughout the Class Period (July 2006-January 2007), Motorola's 3G portfolio was not on track or running on the Argon platform due, in part, to third party supplier Freescale Semiconductor, Inc.'s ("Freescale") failure to provide chipsets to Defendants on time. Plaintiffs further allege that rather than disclosing the potential delays in

the 3G product launch, Motorola continued to assert that its products would ship in late 2006. Motorola, however, did not launch a Motorola 3G phone until 2007.

During the discovery period, Plaintiffs filed a motion to compel Defendants to produce documents related to licensing agreements that Defendants entered into with Freescale and Qualcomm, Inc. ("Qualcomm") at the end of the third quarter of 2006 ("3Q06"). The Court granted Plaintiffs' motion to compel in part noting that, "[t]he fact that Defendants entered into licensing agreements with Freescale and Qualcomm in late 3Q06, especially considering Freescale's role in the delay of the 3G releases, and that Defendants included the earnings from those agreements in their 3Q06 earnings statements could evidence an attempt to cover up the failed 3G developments." (R. 200, pp. 3-4.) Plaintiffs Second Amended Complaint, filed on March 15, 2010, contains allegations that Defendants "failed to disclose the nature and financial effect of either the Freescale and Qualcomm 3Q06 IP transactions, which far exceeded $50.00 million, in blatant violation of GAAP and SEC rules." (R. 211-1, Second Amended Complaint, ¶ 153.) In their answer to the Second Amended Complaint, Defendants asserted the affirmative defense that, "Motorola accounted for and/or disclosed all material transactions consistent with generally accepted accounting principles and the requirements of the Securities and Exchange Commission." (R. 220, Fifty-Seventh Affirmative Defense, p. 126.)

Presently before the Court is Plaintiffs' motion to compel production of documents from KPMG. After serving subpoenas on KPMG in December 2009, Plaintiffs received a production from KPMG in March 2010. (R. 242-1, Pls.' Mot., p. 1.) Plaintiffs contend that KPMG's production is deficient and seek "full sets of 3Q06 quarterly review and 2006 audit workpapers" from KPMG. *Id.* at p. 2.

## LEGAL STANDARD

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added). In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)). "Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties." *Id.* As with all discovery matters, district courts have broad discretion in determining motions to compel. *See id.*; *see also Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007).

## ANALYSIS

**I.  General Relevance of Documents Sought by Plaintiffs**

While the parties spend a significant portion of their briefing detailing the meet and confer process and earlier agreements between the parties, the issue presently before the Court is whether the documents sought by Plaintiffs are relevant to this litigation. In their motion, Plaintiffs argue that the Court should order KPMG to produce its full set of workpapers for the Mobile Devices business segment for 3Q06, a complete set of audit workpapers for the Mobile Devices business segment 3Q06, and specified audit files from the consolidated workpapers for Motorola for full year 2006. The Court has already ruled that documents relating to the licensing

3

agreements that Defendants entered into with Freescale and Qualcomm at the end of 3Q06 are relevant to this transaction. Plaintiffs now ask the Court to rule that the vast majority of KPMG's workpapers and audit files relating to Motorola's entire Mobile Devices unit for 3Q06 are relevant to this action.

In their motion, Plaintiffs contend that given that significant size of the two allegedly "sham" IP transactions, the Mobile Devices unit's "financial statements were globally infected by these serious issues." (R. 242, Pls.' Mot., p. 9.) In support, Plaintiffs rely on only one ruling issued by a court in this district. In *Robin v. Doctors Officenters Corp.*, 1986 WL 8054, 1986 U.S. Dist. LEXIS 22836 (N.D. Ill. July 14, 1986), the plaintiff alleged that a prospectus issued by the defendant in connection with a public offering of stock was materially false and misleading. Among the materials included in the prospectus with respect to the defendant's financial condition were financial statements of the defendant for full year 1982 and a seven-month period ending July 31, 1983. *Id.* A non-party accounting firm audited and certified the financial statements. *Id.* The court granted the plaintiff's motion to compel seeking all accounting work papers, correspondence and memorandum from the non-party firm because the firm audited and certified the financial statements that were referenced in the allegedly false and misleading prospectus. *Id.* Conversely, in the present case, Plaintiffs have not put the entirety of Defendants' 3Q06 and full year 2006 workpapers and audit files at issue. Instead, Plaintiffs have merely asserted a claim that implicates two specific transactions that occurred during 3Q06. Keeping in mind that non-parties are entitled to "somewhat greater protection" in the discovery process than parties to the litigation, *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009), the broad arguments raised by Plaintiffs in their initial motion fail to demonstrate that the

4

documents sought are relevant to this action. The Court recognizes that Plaintiffs have submitted the affidavit of an accounting expert retained by Plaintiffs who asserts that review of the full set of workpapers is "essential to Plaintiffs' complete understanding and analysis of the accounting and financial issues presented in this case." (R. 243, Gleitsmann Aff., ¶ 5.) The affidavit of the auditing expert retained by Plaintiffs, however, like their initial motion, deals in generalities and does not specifically address the relevancy of the particular documents sought by Plaintiffs. Given the breadth of these arguments, the Court denies Plaintiffs' blanket request for KPMG to produce all of its workpapers relating to 3Q06.

## II.     Relevance of Specific Documents Sought by Plaintiffs

In their reply in support of their motion to compel, Plaintiffs contend that the documents already produced by KPMG reveal that KPMG has not produced all workpapers related to the 3Q06 transactions at issue and identify the documents they contend the Court should order KPMG to produce. (R. 269-1, Pls.' Reply, p. 6.) While arguments raised in a reply brief are typically deemed waived, *London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 (7th Cir. 2010), the Court cured any prejudice to KPMG by permitting KPMG to file a sur-reply addressing Plaintiffs' newly raised arguments. Because Plaintiffs have provided tailored arguments to the Court regarding the relevancy of each document or category of documents, the Court will address each of the documents sought by Plaintiffs in turn.

Plaintiffs first assert that workpaper H-661.2 concerning the deal with Qualcomm refers to workpapers H-650 and H-601, but that KPMG has not disclosed these workpapers. The Court has reviewed the references to H-650 and H-601 contained in H-661.2, however, and there is no suggestion that either of these documents relates or refers to the 3Q06 transactions. Indeed,

5

KPMG explains that H-650 merely documents a review of Motorola's agreement with its top five customers (which do not include Qualcomm or Freescale) and that H-601 documents testing procedures associated with accounts receivables that did not involve the Qualcomm or Freescale transactions. Plaintiffs have not established that either of these documents is relevant to their claims and the Court accordingly denies Plaintiffs' motion to compel in this respect.

Plaintiffs next contend that KPMG produced drafts of workpapers H-630 and Q3-5 to Plaintiffs, but failed to produce final versions of those workpapers. The draft of workpaper H-630 produced to Plaintiffs contains a section that identifies and summarizes the 3Q06 deals with Freescale and Qualcomm. (R. 269-1, Ex. 4, KPMG 05928.) KPMG has explained, however, that this reference does not exist in the final version of the document. Accordingly, because it does not reference the 3Q06 transactions, KPMG need not turn over the final draft. Workpaper Q3-5 likewise provides a brief summary of the Qualcomm and Freescale deals. KPMG asserts in its sur-reply that the "passing reference to the 3Q06 Agreements does not make the workpaper relevant to the accounting for and disclosure of those agreements." (R. 282, KPMG's Sur-Reply, p. 5.) Given that KPMG has not denied that the final version of workpaper 3Q-5 discusses the 3Q06 transactions, which are directly relevant to Plaintiffs' claims, the Court orders KPMG to produce the final version of workpaper Q3-5 to Plaintiffs to the extent that it refers or relates to the 3Q06 transactions.

Plaintiffs also argue that references contained in workpaper "Completion Document," which includes findings relating to the 3Q06 deals, identify additional documents that KPMG must turn over to Plaintiffs. First, Plaintiffs highlight a handwritten notation identifying workpaper C1. The handwritten notation referring to workpaper C1, however, merely indicates

6

that workpaper C1 identifies the date of the workpaper and the date it was added to the workpaper file. (R. 269-1, Ex. 2, p. 113.) There is no indication that workpaper C1 contains any information relating to the 3Q06 deals. *Id.* In addition, the "Completion Document" also refers to a "fair value analysis" prepared by Motorola regarding the Qualcomm deal. KPMG, however, has explained that it is not in possession of Motorola's "fair value analysis." (R. 282, KPMG's Sur-Reply, p. 6.) Plaintiffs' motion to compel is therefore denied with respect to these requests.

Plaintiffs further contend that workpaper "Motorola Freescale ID," which discusses Motorola's proposed accounting treatment, references workpaper Q4-15-1. Motorola, however, has explained that workpaper Q4-15-1 is a "handwritten note referring to the general review of contracts contained in H-650." (R. 282-1, KPMG's Sur-Reply, p. 6.) As discussed above, KPMG has established that H-650 merely documents a review of Motorola's agreement with its top five customers (which do not include Qualcomm or Freescale). Plaintiffs have not demonstrated the relevancy of these documents and their motion to compel is accordingly denied in this regard.

Finally, Plaintiffs seek workpapers A-1, D-1 and D-2, but KPMG has confirmed that it has already produced these documents to Plaintiffs.

### III. Relevance of Categories of Documents Sought by Plaintiffs

Plaintiffs also argue that the following six categories of work papers are relevant to the 3Q06 agreements with Freescale and Qualcomm: (i) ER series workpapers, (ii) engagement management workpapers, (iii) planning and completion workpapers, (iv) financial reporting workpapers, (v) accounts receivable and revenue workpapers, and (vi) accounts payable, inventory and subsequent event workpapers. KPMG asserts that it has already produced the

relevant documents that relate to the accounting for or disclosure of the 3Q06 agreements from each of these categories. The Court will consider each category in turn.

First, Plaintiffs point to the ER series workpapers. A copy of Motorola's 3Q06 earnings press release included in KPMG's production contained a handwritten note directing the reader to "testwork and quarterly procedures" that KPMG performed in the ER series workpapers. (R. 269-1, Ex. 8.) KPMG, however, has asserted that the ER series workpapers are copies of Motorola's 3Q06 financial statements with notations documenting that KPMG confirmed the numbers in the release and that they do not specifically reference the 3Q06 agreements. The ER series workpapers are accordingly not relevant to Plaintiffs' claims and their motion to compel is denied as to this category.

Second, Plaintiffs assert that KPMG should produce all engagement management workpapers exchanged between KPMG, Motorola management and Motorola's audit committee. Plaintiffs contend that because "KPMG did not issue an opinion on Mobile Devices separately from Motorola, the extent to which Motorola's licensing revenue, including the 3Q06 IP deals, was discussed at the Corporate level bears directly on materiality." (R. 269-1, Pls.' Reply, p. 9.) Once again, however, the Court will not order KPMG to produce documents beyond those that relate to the 3Q06 agreements. Plaintiffs' conclusory assertion fails to demonstrate the relevance of the documents. *See EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 971 (7th Cir. 1996) ("discovery is not to be used as a fishing expedition"). Because KPMG has already produced communications that relate to Motorola's accounting for and disclosure of the 3Q06 agreements, the Court denies Plaintiffs' motion in this respect.

Third, Plaintiffs argue that KPMG's planning and completion workpapers identify and provide analysis for any usual or significant changes in Motorola's business since KPMG's last engagement. KPMG, however, has already produced these workpapers to Plaintiffs to the extent that they relate to the 3Q06 agreements. (R. 269-1, Ex. 2.) Plaintiffs' argument that whether KPMG did or did not evaluate Motorola's licensing revenue in general and for the 3Q06 deals in particular is unavailing for the same reason. The Court accordingly denies Plaintiffs' motion with respect to these documents.

Fourth, Plaintiffs seek KPMG's accounts receivable and revenue workpapers, again including documents unrelated to the 3Q06 agreements. Plaintiffs argue that these documents will demonstrate the unusual nature and treatment of the Freescale and Qualcomm deals. As noted by KPMG, however, merely because the transactions at issue are a component of total revenue and accounts receivable does not render those categories of documents relevant to this litigation. KPMG's actions with regard to transactions outside of the 3Q06 agreements with Freescale and Qualcomm are not at issue and the Court will not order a third-party to disclose documents that are merely tangential to the issues before the Court. In short, Plaintiffs have made no showing to the Court that workpapers not related to the 3Q06 agreements are relevant to Plaintiffs' claims against Motorola and the Court accordingly denies Plaintiffs' motion with respect to this category of documents.

Fifth, Plaintiffs assert that KPMG's financial reporting workpapers are relevant because they will contain documentation, or reveal a lack of documentation, regarding what information KPMG indicated should or should not have been disclosed in Motorola's 3Q06 10-Q and full year 2006 10-K filings. As before, however, KPMG has already produced its financial reporting

papers as they relate to the disclosure of the 3Q06 agreements at issue in this litigation and the Court will not require KPMG to release its records relating to all of the work it conducted for the Mobile Devices unit.

Sixth, Plaintiffs contend that KPMG's accounts payable, inventory and subsequent events workpapers are relevant because the "strategic inventory" arrangement with Freescale would necessarily implicate Mobile Devices' accounting for accounts payable and inventory. Plaintiffs further contend that analysis of the terms and the strategic inventory should be included in the accounts payable. Plaintiffs, however, have made no effort to tailor this request to the potentially relevant information concerning the 3Q06 agreements with Freescale and Qualcomm. Moreover, KPMG has already produced all workpapers in this category that relate to Motorola's accounting for and disclosure of the 3Q06 agreements. Again, the Court will not require a third party to disclose documents that Plaintiffs have failed to demonstrate are relevant to this litigation.

## IV. Burden on KPMG

Given that the Court has denied the vast majority of Plaintiffs' motion to compel and in light of Plaintiffs' agreement to reimburse KPMG for production and copying costs, the burden on KPMG to produce the remaining documents in accordance with this order is limited.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in large part Plaintiffs' motion to compel. KPMG is to produce its documents to Plaintiffs in accordance with this order on or before July 14, 2010.

DATED: June 30, 2010                  **ENTERED**:

                                                   AMY J. ST. EVE
                                                   United States District Court Judge