# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 4507 | **DATE** | 7/7/2010 |
| **CASE TITLE** | Silverman vs. Motorola, Inc et al | | |

**DOCKET ENTRY TEXT**

Plaintiffs' Motion to Compel Improperly Withheld Documents [289] is granted in part and denied in part.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

    Before the Court is Plaintiffs Macomb County Employees' Retirement System and St. Clair Shores Police and Fire Pension System's (collectively "Plaintiffs") Motion to Compel Improperly Withheld Documents. For the following reasons, the Court grants in part and denies in part Plaintiffs' motion.

### BACKGROUND

    As the Court has previously explained in its rulings on the parties' discovery motions, this class action concerns Motorola, Inc.'s ("Motorola") and certain of its officers and directors' (collectively "Defendants") alleged violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. Plaintiffs allege that Defendants made public misstatements and material omissions regarding Motorola's 3G mobile handset portfolio. Plaintiffs contend that throughout the Class Period (July 2006-January 2007), Motorola's 3G portfolio was not on track or running on the Argon platform due, in part, to third party supplier Freescale Semiconductor, Inc.'s ("Freescale") failure to provide chipsets to Defendants on time. Plaintiffs further allege that rather than disclosing the potential delays in the 3G product launch, Motorola continued to assert that its products would ship in late 2006. Motorola, however, did not launch a Motorola 3G phone until 2007.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

During the discovery period, Plaintiffs filed a motion to compel Defendants to produce documents related to licensing agreements that Defendants entered into with Freescale and Qualcomm, Inc. ("Qualcomm") at the end of the third quarter of 2006 ("3Q06"). The Court granted Plaintiffs' motion to compel in part noting that, "[t]he fact that Defendants entered into licensing agreements with Freescale and Qualcomm in late 3Q06, especially considering Freescale's role in the delay of the 3G releases, and that Defendants included the earnings from those agreements in their 3Q06 earnings statements could evidence an attempt to cover up the failed 3G developments." (R. 200, pp. 3-4.) Plaintiffs Second Amended Complaint, filed on March 15, 2010, contains allegations that Defendants "failed to disclose the nature and financial effect of either the Freescale and Qualcomm 3Q06 IP transactions, which far exceeded $50.00 million, in blatant violation of GAAP and SEC rules." (R. 211-1, Second Amended Complaint, ¶ 153.) In their answer to the Second Amended Complaint, Defendants asserted an affirmative defense that, "Motorola accounted for and/or disclosed all material transactions consistent with generally accepted accounting principles and the requirements of the Securities and Exchange Commission." (R. 220, Fifty-Seventh Affirmative Defense, p. 126.)

The present motion concerns Plaintiffs' request for documents concerning the accounting for and disclosure of the 3Q06 IP deals with Freescale and Qualcomm. Plaintiffs assert that Defendants have improperly withheld numerous documents on the basis that they are protected from disclosure as privileged materials.

## LEGAL STANDARD

### I. Motion to Compel

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added). In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)). "Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties." *Id.* As with all discovery matters, district courts have broad discretion in determining motions to compel. *See id.*; *see also Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007).

### II. Attorney-Client Privilege

"In order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). "The purpose of the privilege is to 'encourage full disclosure and to facilitate open communication between attorneys and their clients.'" *Id.* (internal citations omitted). "'[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly.'" *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007). "The burden falls on the party seeking to invoke the privilege to establish all the essential elements." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

## ANALYSIS

Plaintiffs make two primary arguments to support their contention that the documents withheld by Defendants should be disclosed. First, Plaintiffs assert that the documents concern business, and not legal, advice and are therefore not shielded by a claim of privilege. Second, Plaintiffs contend that Defendants have waived

the privilege by (i) utilizing documents in discovery that evidence reliance on counsel for accounting and disclosure of the 3Q06 IP deals, and (ii) asserting reliance on advice of counsel as an affirmative defense. The Court will address each of Plaintiffs' arguments in turn.

I. **The Majority of the Documents Withheld by Defendants' Are Protected from Disclosure by the Attorney-Client Privilege**

Plaintiffs first contend that the lawyers that provided advice to Defendants related to the 3Q06 licensing agreements were working substantially in a business capacity rather than a legal capacity and that therefore the documents at issue are not protected by the attorney-client privilege. "Because the attorney-client privilege is limited to situations in which the attorney is acting as a legal advisor," the Court must determine whether the attorney in question "was acting in his business or legal capacity when" in relation to the communications at issue. *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal citations omitted).

As requested by Plaintiffs, the Court has conducted an *in camera* review of the documents withheld by Defendants. Contrary to Plaintiffs' assertions, the documents do not reveal that the attorneys' were acting as "mere business advisors" with respect to all of their advice regarding the 3Q06 transactions. Review of the documents, however, reveals one of the documents contained in Plaintiffs' privilege log does not contain any privileged communications. While one of several recipients of the communication at issue was an attorney, the Court cannot conclude based on a review of the document -- and Defendants have not shown -- that the email sought or contained any legal advice. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Instead, the documents' contents reflect only business decisions and a request for business advice. The Court accordingly orders Defendants to disclose the document located at tab 8 of their March 19, 2010 (revised June 9, 2010) privilege log (the 9/25/2006 email from Robert Cash to Yvonne Verse, *et al*.).

II. **Defendants Have Not Waived the Attorney-Client Privilege By Putting Reliance on Advice of Counsel "At Issue" in the Litigation**

Plaintiffs maintain that Defendants should not be permitted to withhold the documents referenced on Defendants' privilege log because Defendants have asserted reliance on advice of counsel as an affirmative defense. Plaintiffs contend that assertion of this affirmative defense results in waiver of the attorney-client privilege with respect to advice relating to both the accuracy of the accounting for and the disclosure of the 3Q06 licensing agreements.

"The attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998). In their answer to the Second Amended Complaint, Defendants asserted an affirmative defense that, "Defendants reasonably believed that all financial information was accurately accounted for and/or disclosed in reliance upon professionals employed or retained by Motorola." (R. 220, Defendants' Answer to Second Amended Complaint, p. 126.) Despite the broad language contained in their affirmative defense, however, Defendants have narrowed their affirmative defense regarding accounting for and disclosure of the relevant transactions by making assertions in their filings with the Court. First, Defendants have stated that the individuals on whom they relied for *accounting and revenue recognition* advice were non-lawyers. In fact, those individuals have already been subject to discovery in this case. In addition, in their briefing on the present motion, Defendants unequivocally stated that, "Defendants are not going to defend this case on the ground that attorneys approved the *accounting* treatment of the transactions." (R. 292, Defendants' Opp'n, p. 2.) Conversely, Defendants assert that they did rely on legal advice from counsel with respect to *disclosure* of the 3Q06 transactions. Accordingly, the only legal advice placed at issue by Defendants is legal advice relating to *disclosure* of the 3Q06 licensing transactions. Given their representations to the Court, Defendants will not be permitted to rely on the advice of attorneys with respect to their defense of the allegations regarding *accounting* for the 3Q06 transactions.

Moreover, Plaintiffs' arguments that (i) Defendants have waived the attorney-client privilege by producing documents and deposition testimony demonstrating general attorney involvement in the 3Q06 transactions, and (ii) limited disclosure to Plaintiffs of advice of counsel related to *disclosure* of the 3Q06 transactions would result in waiver of *all* privileged communications regarding the 3Q06 transactions are without merit. As the Court has previously explained, the "at-issue" waiver doctrine is limited and should not be use to eviscerate the attorney client privilege. *See LG Electronics v. Whirlpool Corp.*, 2009 WL 3294802, 2009 U.S. Dist. LEXIS 108084 (N.D. Ill. June 22, 2009). Indeed, courts in this district have followed the Third Circuit's guidance that "at issue" waiver applies only where "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001) (quoting *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994)). Moreover, waivers of the attorney-client privilege are to be narrowly construed. *Id.* In light of these principles, Plaintiffs' reliance on two non-controlling cases to argue that Defendants' various references in discovery to attorney involvement in the 3Q06 deals "opens the door" for Plaintiffs to examine all communications relating to the accounting for the 3Q06 transactions is not persuasive. In fact, while Plaintiffs contend that the accounting and disclosure advice related to the 3Q06 transactions received by Defendants are inextricably intertwined, they have failed to respond to Defendants' contention that accountants were primarily responsible for the accounting for the 3Q06 transactions while a separate committee, including an attorney giving legal advice, was responsible for disclosure of the 3Q06 transactions. While the overarching issues of accounting for and disclosure of the 3Q06 transactions may be related, this relationship does not suggest that the legal advice, if any, relating to those transactions was necessarily intertwined.

In sum, given that Defendants have only asserted a reliance on counsel defense as it relates to *disclosure* of the 3Q06 transactions, Plaintiffs have not demonstrated that any communications with counsel regarding the *accounting* for the 3Q06 transactions are relevant to this litigation. Moreover, no controlling legal authority supports Plaintiffs' argument that Defendants' disclosure of attorney-client communications relating to their specific and narrow affirmative defense related to disclosure advice would result in waiver of the attorney-client privilege with respect to additional aspects of the 3Q06 transactions. Defendants are therefore ordered to disclose to Plaintiffs, to the extent not already produced, only those attorney-client communications that specifically relate to advice provided by counsel regarding disclosure of the 3Q06 transactions.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion to compel. Defendants are ordered to produce the document located at tab 8 of their March 19, 2010 (revised June 9, 2010) privilege log (the 9/25/2006 email from Robert Cash to Yvonne Verse, *et al.*) to Plaintiffs by July 13, 2010. In addition, Defendants are ordered to produce to Plaintiffs, to the extent not already produced, communications relating to advice of counsel as to disclosure of the 3Q06 transactions July 20, 2010.