approved by the Court was mailed to all persons or entities reasonably identifiable who purchased the common stock or call options of Oxford, or sold Oxford put options, during the period from November 6, 1996 through and including December 9, 1997 (the "Class Period"), and who were damaged thereby, except those persons or entities excluded from the definition of the Class or who previously excluded themselves from the Class, and that a summary notice of the hearing substantially in the form approved by the Court was published in the national edition of The Wall Street Journal pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested; and all capitalized terms used herein having the meanings as set forth and defined in the Stipulation.

Nothing in this Order and Final Judgment suggests that the prior dismissals by stipulation of Individual Defendants Robert M. Milligan, Benjamin H. Safirstein and Thomas A. Travers are in any way ineffective.

*The Court having made its findings of Fact and Conclusions of Law (see Transcript)*

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Court has jurisdiction over the subject matter of the Action, the plaintiffs, all Class Members, and the Oxford Defendants.

2.     The Court finds that the prerequisites for a class action under Rules 23 (a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representatives are typical of the claims of the Class they seek to represent; (d) the Class Representatives have and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact

common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies this action as a class action on behalf of all persons or entities who purchased the common stock of Oxford, or purchased Oxford call options or sold Oxford put options, during the period from November 6, 1996 through and including December 9, 1997, and who were damaged thereby (the "Class"), and a sub-class consisting of all persons or entities who purchased Oxford common stock contemporaneously with sales of such stock by Individual Defendants Stephen F. Wiggins, William M. Sullivan, Andrew B. Cassidy, Brendan R. Shanahan, Benjamin H. Safirstein, Robert M. Smoler, Robert M. Milligan, David Finkel, Jeffery H. Boyd and Thomas A. Travers during the Class Period, and who were damaged thereby (the "20A Sub-Class"). Excluded from the Class are Oxford, the Individual Defendants and KPMG LLP ("KPMG"), the officers and directors of the Company, members of the immediate families of the Individual Defendants and each of their legal representatives, heirs, successors, or assigns, and any entity in which any defendant has or had a controlling interest. Also excluded from the Class are the persons and/or entities who previously excluded themselves from the Class as listed on Exhibit A annexed hereto.

4.  Notice of the proposed Settlements in this Action was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the terms and conditions of the proposed Settlements met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15

-3-

U.S.C. 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

5. The Settlement with the Oxford Defendants is approved as fair, reasonable and adequate, and the parties are directed to consummate the Settlement with the Oxford Defendants in accordance with the terms and provisions of the Stipulation.

6. The Complaint, which the Court finds was filed on a good faith basis in accordance with the PSLRA and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information, is hereby dismissed with prejudice and without costs as against the Oxford Defendants.

7. Members of the Class who have not previously *and timely* excluded themselves therefrom and the successors and assigns of any of them are hereby permanently barred and enjoined from instituting, commencing or prosecuting any and all claims, rights, demands, suits, matters, issues, causes of action, or liabilities whatsoever, whether known or unknown, against the Oxford Defendants and/or the Oxford Released Parties whether under federal, state, local, statutory or common law or any other law, rule or regulation, and whether directly, indirectly, representatively or in any other capacity, in connection with, based upon, arising out of, or relating in any way to any allegations, claims, transactions, facts, matters or occurrences, representations or omissions involved, set forth, referred to or that could have been asserted by the Class Members in this Action relating to the purchase of Oxford common stock and/or purchase of Oxford call options and/or sale of Oxford put options during the Class Period,

including, but not limited to claims in connection with, based upon, arising out of, or relating to the Settlement (but excluding any claims to enforce the terms of the Settlement) (the "Oxford Settled Claims") against Oxford and the Individual Defendants, their past or present subsidiaries, parents, successors and predecessors, officers, directors, shareholders, agents, employees, attorneys, advisors, investment advisors, insurers, co-insurers, and reinsurers, and any person, firm, trust, corporation, foundation, officer, director or other individual or entity in which Oxford or any Individual Defendant has a controlling interest or which is related to or affiliated with Oxford or any of the Individual Defendants, and the legal representatives, heirs, successors in interest or assigns of Oxford and the Individual Defendants (the "Oxford Released Parties"). The Oxford Settled Claims are hereby compromised, settled, released, discharged and dismissed as against the Oxford Released Parties on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

8.      Oxford and the Individual Defendants, and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and unknown claims, that have been or could have been asserted in the Action the Derivative Action or any forum by the Defendants or any of them or the successors and assigns of any of them against any of the Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action except claims relating to the enforcement of the settlement of the Action (the "Settled Defendants' Claims"). The Settled Defendants' Claims of all of the Oxford

Released Parties are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

9. Pursuant to the PSLRA and 15 U.S.C. § 78u-4(f)(7), the Oxford Released Parties are hereby discharged from all claims for contribution by any person or entity, including without limitation the KPMG Released Parties, whether arising under state, federal or common law, based upon, arising out of, relating to, or in connection with the Oxford Settled Claims of the Class or any Class Member. Accordingly, to the full extent provided by the PSLRA, the Court hereby (i) bars any action by any person, including, but not limited to, KPMG, for contribution against the Oxford Defendants arising out of the Action, and (ii) bars any action by the Oxford Defendants against any person, including, but not limited to, KPMG, for contribution arising out of the Action.

10. Neither this Order and Final Judgment, the Stipulation, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a) offered or received against Oxford and the Individual Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of Oxford and the Individual Defendants with respect to the truth of any fact alleged by plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of Oxford and the Individual Defendants;

(b) offered or received against Oxford and the Individual Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Oxford or any Individual Defendant, or against the plaintiffs and the Class as evidence of any infirmity in the claims of plaintiffs and the Class;

(c) offered or received against Oxford and the Individual Defendants or against the plaintiffs or the Class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Stipulation, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that Oxford and the Individual Defendants may refer to the Stipulation to effectuate the liability protection granted them thereunder;

(d) construed against Oxford and the Individual Defendants or the plaintiffs and the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

(e) construed as or received in evidence as an admission, concession or presumption against plaintiffs or the Class or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the Settlement Fund.

11. The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Lead Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions.

-7-

12.     The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

13.     Plaintiffs' Counsel are hereby awarded __28__ % of the Gross Oxford Settlement Fund in fees, which the Court finds to be fair and reasonable, and $ _4,782,323.18_ in reimbursement of expenses, which expenses shall be paid to Plaintiffs' Lead Counsel from the Gross Oxford Settlement Fund with interest from the date such Settlement Fund was funded to the date of payment at the same net rate that the Gross Oxford Settlement Fund earns. The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion of Plaintiffs' Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Action.

14.     Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class.

15.     Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

16.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure.

Dated:          White Plains, New York
                June 12 , 2003


                        _Charles Brieant_
                        _____
                        HONORABLE CHARLES L. BRIEANT
                        UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION
- - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE OXFORD HEALTH PLANS, INC.    :
SECURITIES LITIGATION              :
- - - - - - - - - - - - - - - - - - - - - - - - - - x
THIS DOCUMENT APPLIES TO ALL       :
CLASS ACTIONS                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - x



MDL Dkt. No. 1222 (CLB)

## ORDER AND FINAL JUDGMENT WITH RESPECT TO KPMG LLP

On the 11th day of June, 2003, a hearing having been held before this Court to determine:

(1) whether the terms and conditions of the Stipulation and Agreements of Settlement dated April

14, 2003 (the "Stipulation") are fair, reasonable and adequate for the settlement of all claims

asserted by the Class against KPMG in the Complaint now pending in this Court under the above

caption, including the release of KPMG and the KPMG Released Parties from all KPMG Settled

Claims, and should be approved; (2) whether judgment should be entered dismissing the

Complaint on the merits and with prejudice in favor of KPMG and as against all persons or

entities who are members of the Class herein who have not requested exclusion therefrom; (3)

whether to approve the Plan of Allocation as a fair and reasonable method to allocate the

settlement proceeds among the members of the Class; and (4) whether and in what amount to

award Plaintiffs' Counsel fees and reimbursement of expenses.  The Court having considered all

matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing

substantially in the form approved by the Court was mailed to all persons or entities reasonably

identifiable, who purchased the common stock of Oxford Health Plans, Inc. ("Oxford"), or

purchased Oxford call options or sold Oxford put options, during the period from November 6,

1996 through and including December 9, 1997 (the "Class Period"), and who were damaged

MICROFILM

JUN 1 2 2003

USDC SD NY WP

COPIES MAILED BY THE CLERK'S OFFICE

thereby, except those persons or entities excluded from the definition of the Class or who previously excluded themselves from the Class, and that a summary notice of the hearing substantially in the form approved by the Court was published in the national edition of The Wall Street Journal pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested; and all capitalized terms used herein having the meanings as set forth and defined in the Stipulation. *The Court having made its Findings of Fact and Conclusions of Law (see transcript)*

*CB/VDS* NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Court has jurisdiction over the subject matter of the Action, the plaintiffs, all Class Members, and KPMG.

2.    The Court finds that the prerequisites for a class action under Rules 23 (a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representatives are typical of the claims of the Class they seek to represent; (d) the Class Representatives have and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies this action as a class action on behalf of all persons or entities who purchased the common stock of Oxford, or purchased Oxford call options or sold Oxford put options, during

the period from November 6, 1996 through and including December 9, 1997, and who were damaged thereby (the "Class"), and a sub-class consisting of all persons or entities who purchased Oxford common stock contemporaneously with sales of such stock by Individual Defendants Stephen F. Wiggins, William M. Sullivan, Andrew B. Cassidy, Brendan R. Shanahan, Benjamin H. Safirstein, Robert M. Smoler, Robert M. Milligan, David Finkel, Jeffery H. Boyd and Thomas A. Travers during the Class Period, and who were damaged thereby (the "20A Sub-Class"). Excluded from the Class are Oxford, the Individual Defendants and KPMG LLP ("KPMG") (collectively, the "Defendants"), the officers and directors of the Company, members of the immediate families of the Individual Defendants and each of their legal representatives, heirs, successors, or assigns, and any entity in which any defendant has or had a controlling interest. Also excluded from the Class are the persons and/or entities who previously excluded themselves from the Class as listed on Exhibit A annexed hereto.

4.  Notice of the pendency of this Action as a class action and of the proposed Settlement was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

5.      The Settlement with KPMG is approved as fair, reasonable and adequate, and the parties are directed to consummate the Settlement with KPMG in accordance with the terms and provisions of the Stipulation.

6.      The Complaint, which the Court finds was filed on a good faith basis in accordance with the PSLRA and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information, is hereby dismissed with prejudice and without costs as against KPMG.

7.      Members of the Class who have not previously *and timely* excluded themselves therefrom and the successors and assigns of any of them are hereby permanently barred and enjoined from instituting, commencing or prosecuting any and all claims, rights, demands, suits, matters, issues, causes of action, or liabilities whatsoever, whether known or unknown, against KPMG and/or the KPMG Released Parties whether under federal, state, local, statutory or common law or any other law, rule or regulation, in connection with, based upon, arising out of, or relating in any way to any allegations, claims, transactions, facts, matters or occurrences, representations or omissions involved, set forth, referred to or that could have been asserted in the Action relating to the purchase of Oxford common stock and/or purchase of Oxford call options and/or sale of Oxford put options during the Class Period, including, but not limited to claims in connection with, based upon, arising out of, or relating to the Settlement (but excluding any claims to enforce the terms of the Settlement) (the "KPMG Settled Claims") against KPMG and its present and former partners, principals, employees, predecessors, successors, affiliates, officers, attorneys, agents, insurers and assigns (the "KPMG Released Parties"). The KPMG Settled Claims are hereby compromised, settled, released, discharged and dismissed as against the KPMG Released Parties

-4-

on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

8.     KPMG and its successors and assigns, are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and unknown claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them or the successors and assigns of any of them against any of the Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action except claims relating to the enforcement of the settlement of the Action (the "Settled Defendants' Claims"). The Settled Defendants' Claims of all of the KPMG Released Parties are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

9.     Pursuant to the PSLRA and 15 U.S.C. § 78u-4(f)(7), the KPMG Released Parties are hereby discharged from all claims for contribution by any person or entity, including without limitation the Oxford Released Parties, whether arising under state, federal or common law, based upon, arising out of, relating to, or in connection with the KPMG Settled Claims of the Class or any Class Member. Accordingly, to the full extent provided by the PSLRA, the Court hereby (i) bars any action by any person, including, but not limited to, the Oxford Defendants, for contribution against KPMG arising out of the Action, and (ii) bars any action by KPMG against

any person, including, but not limited to, the Oxford Defendants, for contribution arising out of the Action.

      10.    Neither this Order and Final Judgment, the Stipulation, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

           (a) offered or received against KPMG as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by KPMG with respect to the truth of any fact alleged by plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of KPMG;

           (b) offered or received against KPMG as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by KPMG, or against the plaintiffs and the Class as evidence of any infirmity in the claims of plaintiffs and the Class;

           (c) offered or received against KPMG or against the plaintiffs or the Class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Stipulation, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that KPMG may refer to the Stipulation to effectuate the liability protection granted it thereunder;

(d) construed against KPMG or the plaintiffs and the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

(e) construed as or received in evidence as an admission, concession or presumption against plaintiffs or the Class or any of them that any of their claims are without merit or that damages recoverable under the Complaint would not have exceeded the KPMG Settlement Amount.

11. The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Lead Counsel and the Claims Administrator are directed to administer the Stipulation in accordance with its terms and provisions.

12. The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

13. Plaintiffs' Counsel are hereby awarded 28% of the Gross KPMG Settlement Fund in fees, which the Court finds to be fair and reasonable, and $1,594,107.73 in reimbursement of expenses, which expenses shall be paid to Plaintiffs' Lead Counsel from the Gross KPMG Settlement Fund with interest from the date such Gross KPMG Settlement Fund was funded to the date of payment at the same net rate that the Gross KPMG Settlement Fund earns. The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion of Plaintiffs' Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Action.

14. Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or

enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class.

15.     Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

16.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure.

Dated:          White Plains, New York
                _June 12_, 2003


                        _Charles Brieant_
                        HONORABLE CHARLES L. BRIEANT
                        UNITED STATES DISTRICT JUDGE

16

SENT BY:Xerox Telecopier 70 ; 8-27-97 ;10:03AM ; 313 769 1207;#13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



|  |  |
|---|---|
| IN RE SOYBEAN FUTURES LITIGATION | Civil Action<br>Nos. 89 C 7009<br>90 C 1138<br><br>Judge Charles R. Norgle, Sr.<br><br>Magistrate Judge Rebecca<br>R. Pallmeyer |

## FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE

The Plaintiffs and the Defendants (as those terms are defined
in the Stipulation of Settlement dated as of August 29, 1996) (the
"Stipulation"), having executed and filed the Stipulation; the
Court having entered its Order thereon dated October 15, 1996,
directing that a summary notice of the proposed settlement of this
action be published and a more detailed notice be mailed to the
Class and scheduling a hearing to be held to determine whether the
proposed settlement should be approved as fair, reasonable and
adequate; said notice having been given, a hearing having been held
on November 27, 1996, at which all interested persons were given an
opportunity to be heard and the Court having read and considered
all submissions in connection with the proposed settlement, and
having reviewed and considered the files and records herein, the
Court finds and concludes that:

This action (the "Action") was commenced on September 19,
1989, and the Consolidated Amended Class Action Complaint (the
"Complaint") was filed on March 9, 1993.

SENT BY:Xerox Telecopier 7 ; 6-27-97 ;10:04AM ;                         313 769 1207;#14

The Complaint asserts claims for Defendants' actions which allegedly (1) exceeded speculative position limits in violation of the Commodity Exchange Act and thereby intentionally manipulated to artificially high levels the prices of the July and August 1989 soybean futures contracts between June 1 and July 11, 1989; (2) manipulated, in violation of the Commodity Exchange Act, the prices of the July and August 1989 soybean futures contracts to artificially high levels between June 1 and July 11, 1989; and (3) constituted common law fraud. By Order entered June 7, 1995, this Court dismissed plaintiffs' claims for excessive speculation and common law fraud. Defendants deny that any of their actions manipulated soybean futures prices, and the Court has not ruled on the merits of plaintiffs' manipulation claim.

By Orders entered May 11 and December 27, 1993, the Court determined that this Action should be certified as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who (a) purchased July and/or August 1989 soybean futures contracts (other than to liquidate a pre-existing position in such contract) between June 1, 1989 and July 11, 1989, inclusive, and held that contract or contracts until at least the beginning of trading on July 10, 1989 (the "Long Subclass") or (b) sold July and/or August contracts (other than to liquidate a pre-existing position in such contract) between June 1, 1989 and July 5, 1989, inclusive, and who thereafter liquidated that position or purchased back that contract or contracts between the beginning of trading on June 14 and the end of trading on July 11,

-2-

1989 (the "Short Subclass"). Excluded from the Class are
Defendants, any entity in which any Defendant has a controlling
interest, or the legal representative, affiliate, successor,
predecessor in interest or assignee of any Defendant. Also
excluded are all persons who timely and validly excluded themselves
from the Class pursuant to the Notice of Pendency of Class Action
dated April 19, 1994. This definition defines the class (the
"Class") for purposes of the Action, the settlement and this Final
Judgment of Dismissal With Prejudice (the "Judgment").

The Stipulation between and among the Plaintiffs and
Defendants provides for the settlement of the Action on behalf of
the Plaintiffs and all members of the Class who did not file timely
and valid Requests for Exclusion ("Settling Plaintiffs") pursuant
to the Notice of Pendency subject to approval by this Court of its
terms and to the entry of this Judgment. The Court scheduled a
hearing to consider the approval of the Stipulation, and directed
that notice of the proposed settlement and hearing be mailed to
members of the Class at their last known addresses and that a
Summary Notice be published in the Chicago Tribune, New York
Times, and the national edition of the Wall Street Journal.

In accordance with the Stipulation and an Order of the Court
entered on October 23, 1996, Plaintiffs mailed to the Class a
notice (the "Notice") and caused a summary notice to be published
in Chicago Tribune, New York Times, and the national edition of
the Wall Street Journal (the "Summary Notice") of the proposed
settlement of the Action and of the opportunity to object to the

-3-

Settlement. An Affidavit of mailing of the Notice and publication of the Summary Notice was filed with the Court on November 1, 1996.

The Notice and Summary Notice provided to members of the Class constitute the best notice practicable under the circumstances and included individual notice to all members of the Class who could be identified by reasonable effort. The affidavit of mailing filed with this Court on November 1, 1996, demonstrates that this Court's Order, with respect to the Notice and Summary Notice, has been complied with and constituted valid, due, and sufficient notice to members of the Class, complying fully with due process and Rule 23 of the Federal Rules of Civil Procedure.

Plaintiffs and the Defendants have applied to the Court for approval of the terms of the Stipulation and for the entry of this Judgment. Pursuant to the Notice and Summary Notice, and upon notice to all parties, a hearing was held before this Court on November 27, 1996, to consider whether the settlement set forth in the Stipulation should be approved by this Court as fair, reasonable, and adequate.

The Stipulation is the product of good faith arm's-length negotiations by the parties thereto.

NOW THEREFORE, GOOD CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.    The members of the Class who have filed timely and valid requests for exclusion are not bound by this Judgment. A listing of those persons is attached as Schedule A to this Order.

SENT BY:Xerox Telecopier 7⬤ ; 3-27-97 ;10:06AM ;                    313 769 1207;#17

All other members of the Class are bound by this Judgment and by the Settlement, including the releases provided for in this Judgment.

2.    The Stipulation and settlement are not an admission by the Defendants, nor is this Judgment a finding of the validity of any claims in the Action or of any wrongdoing by Defendants. Furthermore, neither the Stipulation nor the Settlement is a concession by any Defendant and neither shall be used as an admission of any fault or omission by any person. Neither this Judgment, the Stipulation, nor any document referred to herein nor any action taken to carry out the Stipulation, is, may be construed as, or may be used as an admission by or against the Defendants of any fault, wrongdoing or liability whatsoever. Entering into or carrying out the Stipulation, the exhibits thereto, and any negotiations or proceedings relating thereto shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by any of the Defendants and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose whatsoever, other than to enforce the provisions of this Judgment, the Stipulation, or the provisions of this Judgment or any related agreement or release; except that the Stipulation and the exhibits may be filed in this Action or related Action as evidence of the Settlement or in any subsequent action against or by the Defendants

-5-

to support a defense of res judicata, collateral estoppel, release, or other theory of issue preclusion or similar defense.

3.    The Stipulation and Settlement are fair, reasonable and adequate as to the Class, and the Stipulation and Settlement are hereby finally approved in all respects, and the parties to the Stipulation are hereby directed to consummate and perform its terms.

4.    Upon the payment by Defendants of the Settlement Fund as set forth in the Stipulation of Settlement, any and all claims asserted against the defendants in this Action and in any of the actions consolidated in this Action, and any claims with respect to the May, July, or August 1989 soybean futures contracts which could have been asserted therein, are dismissed on the merits, with prejudice as to the Defendants and without costs to any party as against any other. All Plaintiffs and Class Members, whether or not they execute and deliver the Proof of Claim and Release and whether or not they have filed lawsuits, and their heirs, executors, administrators, successors, and/or assigns are forever barred and enjoined from instituting or prosecuting, either directly, indirectly, representatively or in any other capacity, a class action or any other action against Defendants and their respective predecessors, successors, affiliates, present or former directors, officers, employees, agents, advisors, and attorneys with respect to any causes of action, suits, claims, obligations, debts, demands, agreements, promises, liabilities, controversies, costs, expenses, and attorneys' fees whatsoever, whether based on

SENT BY:Xerox Telecopier 70    5-27-97 ;10:07AM ;                    76    54              313 769 1207;#19

any federal or state law or other right of action, foreseen or
unforeseen, matured or unmatured, known or unknown, accrued or not
accrued, which Plaintiffs and members of the Class had, have, or
may hereafter have against the defendants or any of them, for, by
reason of, or arising from or in any way based on, connected with
or related to the facts, circumstances, transactions, or
occurrences alleged or which could have been alleged directly or
indirectly in this Action, in any of the actions consolidated in
this Action or in the Consolidated Complaint.

5.      Each member of the Class who did not timely and validly
request exclusion from the Class is barred and permanently enjoined
from commencing or prosecuting, either directly, representatively,
or in any other capacity, any action or suit against the Defendants
with respect to any and all of the Released Claims.

6.      Members of the Class who have validly and timely
requested exclusion from the Class may pursue their own individual
remedies, if any, to the extent that such remedies, if any, are not
time barred.

7.      Without affecting the finality of this Judgment in any
way, this Court reserves jurisdiction over:  (a) implementation of
the Settlement and any award or distribution of the Settlement
Fund, including interest earned thereon; (b) disposition of the
Settlement Fund; (c) enforcing and administering the Stipulation
including any releases executed in connection therewith; and (d)
other matters related or ancillary to the foregoing.

8.    Class Counsel in the Action are hereby awarded attorneys'
fees in the amount of $7,166,666.00 and reimbursement of expenses
in the amount of $1,070,064.15, with the attorneys' fees to be
distributed and allocated by Class Co-Lead Counsel to all Class
counsel, taking into consideration the contributions of all counsel
to the Action.  The payment of attorneys' fees and reimbursement of
expenses, together with interest thereon at the same rate paid on
the Settlement Fund, to all Class Counsel shall not be made until
thirty five (35) days after the Effective Date set forth in the
Stipulation.

9.    The Method of Distribution specified in the Class Notice
is approved as fair and reasonable.

10.    The named plaintiffs in this Action are awarded a sum
over and above their respective shares of the Settlement Amount as
follows: John Burns $7,000; Gerald Verr $2,000; Sonny Merrit
$2,000; Wilbur Klein $2,000; and Gerald McCullough $2,000.   The
payment of the foregoing amounts shall not be made until thirty
five (35) days after the Effective Date set forth in the
Stipulation.

11.   It is expressly determined within the meaning of Rule
54(b) of the Federal Rules of Civil Procedure that there is no just

to enter and docket this final order and the final judgment

dismissing the Complaint with prejudice and without costs to any

party.

DATED: /1-27 , 1996.

CHARLES R. NORGLE, SR.
United States District Judge
for the Northern District
of Illinois

17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE SPYGLASS, INC. | ) | |
| SECURITIES LITIGATION | ) | Master File 99 C 0512 |
| | ) | Judge Ronald A. Guzman |
| THIS DOCUMENT RELATES To: | ) | Magistrate Judge Rosemond |
| All Actions | ) | |
| | ) | JURY TRIAL DEMANDED |

FINAL JUDGMENT AND BAR ORDER

This action (the "Action") was brought by Lead Plaintiffs Joseph Hurt, Pithayawat Chiaracharuwat, Cory Wadsworth, Georgia Shields, Robert H. Gold, Anthony Pienczykowski, Jerome Gardner, Donald Knowles, and Everette L. Miller LII, individually and as representatives of a class (the "Class"), against defendants Spyglass, Inc. ("Spyglass"), Douglas P. Colbeth, Gary L. Vilchick, Christian T. Nall, Michael F. Tyrrell, Randall T. Littleston, and Wayne Yurtin.

Pursuant to an order entered on April 20, 1999, the above identified plaintiffs were appointed Lead Plaintiffs, and the firms of Wolf Haldenstein Adler Freeman & Herz LLP and Berger & Montague, P.C. were appointed as plaintiffs' Co-Lead Counsel.

Pursuant to a Stipulation and Agreement of Compromise and Settlement (the "Stipulation") dated December 16, 1999, Lead Plaintiffs, acting on behalf of themselves and the Class, have entered into a Settlement with defendants and have applied to the Court for approval of the Settlement provided for in the Stipulation pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

On December 21, 1999, the Court entered a Preliminary Approval Order with respect to

1

notice of pendency of class action, proposed settlement thereof, fairness hearing and administration. It directed that notice be given to the Class of the proposed Settlement and of a hearing to determine whether the Settlement should be approved as fair, reasonable, and adequate, to consider the application of Co-Lead Counsel for the award of attorneys' fees and reimbursement of expenses, and to hear any objections to any of these matters. Such a hearing was held, as noticed, on March 24, 2000 before Magistrate Judge Rosemond. Magistrate Judge Rosemond heard Co-Lead Counsel on behalf of plaintiffs and the Class, and counsel on behalf of defendants, and reviewed all of the submissions presented with respect to the proposed Settlement. Prior to the hearing, notice was provided and proof of notice, as directed in the Order, was filed with the Court.

The Court has heard from Magistrate Judge Rosemond, having reviewed his report and recommendation. The Court has also reviewed the Agreement of Compromise and Settlement as well as the *Supplemental Memorandum in Support of Approval of Proposed Class Action Settlement* requested by the court. We have considered, among other things, the degree of actual compensation estimated to accrue to the individual class members under the proposed settlement, the estimated maximum amount recoverable if the litigation were totally successful, the risks of litigation – including the difficulties of proof and possible defenses and the delays inherent in such a lawsuit as well as the likelihood of actual recovery of any award obtained pursuant to litigation. Having considered, in light of the aforementioned, the submissions presented with respect to the proposed Settlement and request for attorneys' fees, and the Court having determined that the Settlement is fair, reasonable, and adequate, and having considered the application of Co-Lead

Counsel for the award of attorneys' fees and reimbursement of expenses, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. Notice to the Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been given in an adequate and sufficient manner, constituting the best notice practicable, complying in all respects with such Rule, the Private Securities Litigation Reform Act of *1995*, and due process.

2. The proposed Settlement (as provided for by the Stipulation) is in all respects fair, reasonable, and adequate to the Class and its members, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

3. Plaintiffs and defendants shall consummate the Settlement in accordance with the Stipulation, which is approved in all respects and all terms of which are hereby incorporated by reference.

4. Neither the Stipulation, nor the Settlement, nor the Magistrate's Report, nor this Final Judgment and Bar Order shall be deemed to constitute, or used as evidence of, an admission by any of the defendants of any liability or wrongdoing or damage whatsoever on the part of the defendants or the validity of any of the asserted claims, or an admission of lack of merit of asserted claims by plaintiffs.

5. Plaintiffs, the Class and each and every Class member, and their heirs, assigns, executors and successors in interest (other than any persons who have timely excluded themselves from the Class who are listed on Schedule A hereto) are permanently barred and enjoined from asserting against any or all defendants (or any of the other Released Defendants identified in paragraph 25 of the Stipulation) all claims whatsoever (whether individual, class or otherwise in nature), known or

3

unknown, which have been asserted or, based upon the facts, circumstances and claims alleged, could have been asserted by plaintiffs and the Class, or any of them in this Action against defendants, the Released Defendants, or any of them, in connection with, arising out of, or in any way related to, any acts, failures to act, omissions, representations or misrepresentations, facts, events, transactions, occurrences or other matters set forth, alleged, embraced or otherwise referred to in the Complaint herein, including (without limitation) the Released Claims (defined in paragraph 25 of the Stipulation) and all claims for violations of federal, state, common or other law relating in any manner to the purchases by the Class during the Class Period of common stock of Spyglass.

6.     The releases of the Released Defendants, as described and set forth in paragraph 25 of the Stipulation are, on the Effective Date (as defined in the Stipulation), rendered and declared fully effective and enforceable. On the Effective Date, Plaintiffs and the Class conclusively shall be deemed to have fully and forever released and discharged the Released Defendants with respect to any and all of the Released Claims, as defined in paragraph 25 of the Stipulation.

7.     Persons who have duly and timely requested exclusion from the certified Class, each of whom is identified in Schedule A attached hereto, may not participate in any of the benefits of this Settlement of the Action and shall not receive nor be entitled to receive any proceeds from the Settlement Fund and shall not be bound by this Judgment and the Stipulation. All Class members shall be bound fully by the terms and provisions of this Judgment and of the Stipulation.

8.     This Action is dismissed with prejudice and without costs, and all Released Claims, as defined in paragraph 25 of the Stipulation, are hereby extinguished against all Released Defendants

identified in paragraph 25 of the Stipulation.

9.       Co-Lead Counsel are hereby awarded attorneys' fees in the amount of 33% of the Settlement Amount (or $511,500) and reimbursement of expenses of $75,000, such amounts to be paid from the Settlement Fund. Co-Lead counsel is hereby authorized to distribute said fee award in their sole discretion among all plaintiffs' counsel.

10.      Any order, or any objection to or appeal from any order approving the Plan of Allocation or of any award of attorneys' fees or expenses or expenses shall in no way disturb or affect this Judgment and shall be considered separate from this Final Judgment dismissing with prejudice this Action.

11.      Without affecting the finality of this judgment, jurisdiction is hereby retained as to all matters related to administration and consummation of the Settlement hereby approved.

12.      The Court hereby directs entry of this Final Judgment and Bar Order with Prejudice as a final judgment pursuant to Rules 54(a) and (b) of the Federal Rules of Civil Procedure.

SO ORDERED

ENTERED: 5/23/00

*Ronald A. Guzman*

HON. RONALD A. GUZMAN
United States District Judge

18

LEXSEE

**IN RE WASTE MANAGEMENT, INC., SECURITIES LITIGATION**

**Master File No. NO. 97 C 7709**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**1999 U.S. Dist. LEXIS 16566**

**October 15, 1999, Decided**
**October 18, 1999, Docketed**

**SUBSEQUENT HISTORY:** Related proceeding at In re Waste Mgmt., Inc. Sec. Litig., 177 F. Supp. 2d 1373, 2001 U.S. Dist. LEXIS 18503 (J.P.M.L., 2001)
Motion denied by In re Waste Mgmt., 2003 U.S. Dist. LEXIS 4281 (N.D. Ill., Mar. 11, 2003)

**DISPOSITION:** [*1] Motion to intervene [214-1] denied.

**COUNSEL:** For JOSEPH HERMAN, plaintiff: Marvin Alan Miller, Miller, Faucher, Cafferty and Wexler, L.L.P., Roger Pascal, Sondra A. Hemeryck, Schiff, Hardin & Waite, Ronald L. Futterman, Michael I Behn, Futterman & Howard, Chtd., Chicago, IL.

For JOSEPH HERMAN, plaintiff: Ira M Press, Kaufman, Malchman, Kaufman & Kirby, Jeffrey S Abraham, Attorney at Law, Jeffrey Squire, Kaufman Malchman Kirby & Squire LLP, New York, NY.

For JOSEPH HERMAN, plaintiff: Charles J Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD.

For WASTE MANAGEMENT, INC., defendant: David E. Springer, Timothy Alan Nelsen, Timothy A. Nelson, Matthew Robert Kipp, Cyrus Amir-Mokri, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL.

For WASTE MANAGEMENT, INC., defendant: William P Frank, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY.

For JOHN D SANFORD, defendant: Leland W. Hutchinson, Jr., David H. Kistenbroker, Joseph L. Fogel, Freeborn & Peters, Chicago, IL.

For JAMES E KOENIG, defendant: Sarah R. Wolff, Jonathan Stuart Quinn, Lowell E. Sachnoff, Sachnoff & Weaver, Ltd., Chicago, IL.

For ARTHUR ANDERSEN LLP, defendant: Jeffrey Morris Strauss, [*2] Daniel J. Delaney, Jonathan C. Medow, Christopher Denis Landgraff, Christina M. Egan, Mayer, Brown & Platt, Chicago, IL.

For THOMAS C HAU, defendant: Janice R. Forde, Kevin Michael Forde, Mary Anne Elizabeth Mason, Kevin M. Forde, Ltd., Chicago, IL.

ROBERT A BRUNIG, proposed, Pro se, Southlake, TX.

**JUDGES:** WAYNE R. ANDERSEN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** WAYNE R. ANDERSEN

**OPINION**

**ORDER**

THIS MATTER comes before the Court on the Motion of Robert A. Brunig To Intervene and To Accept Objection *Nunc Pro Tunc* ("Motion to Intervene"). The Court has reviewed the movant's Supplemental Memorandum in Support of Renewed Motion to Intervene and to Accept Objection and the Memorandum in Opposition to Joint Application for Award of Attorney's Fees and Reimbursement of Expenses and has heard the oral argument of the putative intervenor. The Court has also received and reviewed the Plaintiffs' Memorandum of Law in Opposition to the Motion to Reopen Orders and Object to the Award of Attorneys Fees, counsel's affidavits relative to notice and objections to the settlement, the Affidavits and Supplemental Affidavits of Edward J. Sincavage and the Response of Arthur Andersen, LLP,

and [*3] Waste Management, Inc. to Renewed Motion to Intervene and to Accept Objection. For the following reasons the Motion to Intervene is denied.

This Court entered the Preliminary Approval Order on July 15, 1999, conditionally certifying a class for settlement purposes pursuant to Rule 23 of the Federal Rules of Civil Procedure and scheduling a hearing for September 17, 1999 to determine, *inter alia*, whether the proposed settlement and plan of allocation should be approved as fair, reasonable and adequate to the class and to rule on plaintiffs' counsel's petition for an award of fees and reimbursement of expenses.

Pursuant to the Preliminary Approval Order, all class members who sought exclusion from the class were required to request exclusion by first class mail, postmarked on or before September 2, 1999. The Order further provided that class members could object or oppose the approval of the settlement, the plan of allocation or the award of attorneys' fees by appearing in person at a hearing to be held on September 17, 1999 at 9:00 a.m. or by objecting in writing. The Preliminary Approval Order, however, specifically provided that no written objection or opposition would be considered [*4] unless on or before September 2, 1999 a written statement of the objection or opposition and the basis for the objection or opposition, together with copies of all other documents, briefs or affidavits that the class member wished the Court to consider, were delivered to the Court. All of these dates were contained in the Notice and Summary Notice approved by this Court in the Preliminary Approval Order.

As set forth in the affidavits of Edward J. Sincavage, C.P.A., the mailing and publication requirements of the Preliminary Approval Order were fully satisfied. The Claims Administrator appears to have satisfied its obligations under this Court's Order and, in fact, gone beyond the requirements of the Order to assure the widest dissemination practicable under the circumstances. The Summary Notice was also properly published in *The Wall Street Journal* on July 28, and August 5, 1999, and in the *Chicago Tribune* on July 28 and August 4, 1999. In accord with the Preliminary Approval Order, the Notice and relevant documents were published on the Claims Administrator's web site.

Not a single timely written objection was made to the settlement and no one appeared at the hearing to [*5] oppose or otherwise object to the settlement, plan of allocation or award of attorneys' fees. Other than the movant, no objection to the Notice, settlement or award of attorneys' fees and expenses has been made. The movant himself described this settlement as "excellent" for the class.

The instant Motion to Intervene was not received by this Court until after completion of the 9:00 a.m. hearing on September 17, 1999 at which all orders contemplated in the Preliminary Approval Order, including a Final Judgment, had been entered. No notice of motion was attached and the filing itself was not in compliance with the local rules. Counsel representing other parties at the September 17, 1999 hearing likewise did not receive timely notice of the movant's objection because the motion was sent via priority mail without a guarantee of next day delivery. More-over, there was no effort by the movant to appear at the hearing via phone or otherwise notify the Court or other counsel of his objection prior to the September 17, 1999 hearing. Thus, there is no question that his motion and objection were not filed in compliance with the Preliminary Approval Order. Indeed, given the exigent circumstances [*6] facing movant on September 14, 1999, his failure to appear, call counsel or ensure timely delivery of the objection is inexplicable.

A nonparty class member seeking to intervene must satisfy the requirements of Rule 24 before being allowed to intervene. Wright, Miller & Kline, *Federal Practice and Procedure*, § 1799. An application to intervene must be timely, whether asserted as a matter of legal right or requested as a matter of judicial discretion. Fed. R. Civ. P. 24. "Timeliness," for purposes of Rule 24 is not simply a function of counting days. Rather, it is to be determined by the totality of the circumstances. *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174 (3rd Cir. 1994).

Here, the movant does not contend that class counsel or the Claims Administrator were negligent or otherwise failed to fully comply with the Preliminary Approval Order. At oral argument on October 7, 1999, he acknowledged that he was aware of the pendency of the case since at least the filing in November, 1997 but that he had not followed the progress of the case, nor had he seen the Summary Notice published in *The Wall Street, Journal*. He stated that he did not receive the [*7] Notice from his nominee, Prudential Securities, Inc. until Tuesday, September 14, 1999, after the last date for filing written objections but prior to the Friday, September 17, 1999 final fairness hearing. He was unable to explain why it took fourteen days for the Notice to be received by him at his Fort Worth, Texas, post office box after apparent mailing by his nominee in New York on September 1, 1999.

As set forth in the Supplemental Affidavit of Edward J. Sincavage, the Claims Administrator fully satisfied his obligations under the Preliminary Approval Order. The movant's nominee was sent copies of the Notice at six different corporate offices on July 20, 1999. On the same date, copies of the Notice were also mailed to the Operational Services Office of Prudential Securities as part of the Claims Administrator's efforts to notify bro-

kerage firms and other nominees. Thus, at least seven copies of the Notice were sent, one of which contained a specific request that the Notice and Proof of Claim be sent to all persons for whom Prudential Securities was nominee and an undertaking by the Claims Administrator to pay for the cost of identifying and mailing the Notice to such nominees. [*8] Finally, when the movant's nominee did not respond with a request for copies of the Notice, the Claims Administrator called Prudential Securities representatives on at least two occasions to prompt the nominee to supply either a list of beneficial owners or to take copies of the Notice for mailing to such owners. Clearly, it was the movant who selected the method of holding his shares and the movant who chose Prudential to serve as his nominee. Given these circumstances, this Court concludes that the Motion to Intervene is untimely, and, therefore, is denied.

This Court further concludes that this is no basis for an enlargement of time pursuant to Rule 6(b)(2) or 60(b)(1) of the Federal Rules of Civil Procedure. Settled expectations should not be disturbed when a delay relating to notice is attributable to the moving party or his agents.

While not raised in the Motion to Intervene or the subsequent memoranda, at the October 7, 1999 hearing, the movant complained that the Notice approved by this Court on July 15, 1999, did not satisfy the requirements of Section 21(a)(7)(c) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") because the "cover page" of the Notice did [*9] not contain the required "statement of attorneys' fees or costs sought." 15 U.S.C. § 78u-4. The Court has reviewed the Notice and finds the movant's arguments unpersuasive. The required statement "summarizing the information contained" regarding "attorneys' fees or costs" was placed on the inside of the front cover. Thus, the requirements of the PSLRA were fully satisfied.

Despite the fact that the Motion to Intervene was not timely filed, all of the issues raised in the Motion to Intervene and supplemental memoranda were considered by the Court before it made its September 17, 1999 rul-

ing. For example, this Court specifically ruled that the secretarial overtime, insufficiently documented local transportation charges, local meals, postage, undocumented telephone expenses, and miscellaneous expenses that the movant identified, as well as first class travel and "wire expenses" must be deducted from the award of reimbursable expenses. The Court, therefore, refused to allow the reimbursement of more than $ 70,000 worth of counsels' claimed expenses. Moreover, the Court agreed with the movant that the 25% of the common fund provided in the Notice and the 22 1/2% [*10] requested in plaintiffs' counsels' request for fees might well overcompensate class counsel. This Court, therefore, exercised its discretion and awarded 20% of the original cash settlement and denied counsels' request for any part of the interest earned on the settlement fund. The Court appointed a special master who reviewed the fee petitions to assure that the time and expense entries were reasonable. The Court made the award only after receiving and reviewing the detailed time records of counsel. The percentage award was also compared to what might have been negotiated in an arms-length transaction to assume the representation of the plaintiffs on a contingent fee basis. Finally, the Court compared the award of a percentage of the settlement fund against the amount that would have been received had a strict loadstar calculation been appropriate. The Court, in fact, reviewed each of the issues raised by the movant and granted much of the relief the movant has requested. Had the Court timely received the Motion to Intervene and heard the movant's arguments prior to ruling on plaintiffs' counsels' petition, the award and rulings would have been the same. Thus, there is no prejudice [*11] from this order denying intervention.

For the reasons set forth above, the Motion to Intervene is denied.

SO ORDERED, this 15th day of October, 1999.

WAYNE R. ANDERSEN

UNITED STATES DISTRICT JUDGE

19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SANDY LIEBHARD, et al,                    )
                                          )
              Plaintiffs,                 )
                                          )
         v.                               )    No. 91 C 1103
                                          )
SQUARE D COMPANY and                      )    Judge Paul E. Plunkett
JERRE L. STEAD,                           )
                                          )
              Defendants.                 )

ORDER APPROVING SETTLEMENT
AND FINAL JUDGMENT

         This matter coming on to be heard upon the

motion of the parties, pursuant to Rule 23(e) of the

Federal Rules of Civil Procedure, for approval of a Stip-

ulation and Agreement of Settlement (the "Settlement

Agreement"), and the Court having previously entered an

order of March 17, 1993, requiring notice of the proposed

Settlement Agreement to be given to all member of the

Class, and the Court being fully advised in the premises,

the Court hereby finds as follows:

         1.  The notice to the members of the Class has

been made in accordance with the order of March 17, 1993,

and is found to meet the requirements of Rule 23 of the

Federal Rules of Civil Procedure.

costs. The Plaintiffs and members of the Class have released and forever discharged Square D Company and Jerre L. Stead and their past or present agents, directors, officers, employees, attorneys, heirs, executors, representatives, insurers, successors and assigns, partners, corporate parents or subsidiaries of any of the aforesaid released persons or entities from each and every Class or individual claim which was or could have been asserted in this Action or in any other court or forum, in connection with, arising out of, or in any way relating to any acts, facts, transactions, representations, omissions or other subject matters set forth, alleged, embraced or otherwise referred to in this Action or the Consolidated Class Action Complaint, which the Plaintiffs or the members of the Class had, now have, or may hereafter have, in any capacity against the aforementioned released persons or entities, or any of them, except for the right to enforce the terms of the Settlement Agreement. The Plaintiffs and the members of the Class are forever barred and enjoined from instituting or further prosecuting in any forum whatever, including but not limited to any state, federal or foreign court, each and every Class or individual any claim or cause of action against Defendants, their past or present agents,

3

directors, officers, employees, attorneys, heirs, execu-
tors, representatives, insurers, successors and assigns,
partners, corporate parents or subsidiaries, which was or
could have been asserted in this action or in any other
court or forum, in connection with, arising out of in
whole or in part, or in any way relating to any acts,
facts, transactions, representations, omissions or other
subject matters set forth, alleged, embraced or otherwise
referred to in this action or the Consolidated Class
Action Complaint, which the Plaintiffs or the members of
the class had, now have, or may hereafter have, in any
capacity against the aforementioned Defendants or enti-
ties, or any of them, except for the right to enforce the
terms of the Settlement Agreement.

3. The following amounts, together with a <u>pro
rata</u> share of the interest earned on such amounts from
the establishment of the Settlement Fund, are approved to
be distributed from the Settlement Fund in payment of
attorney fees and expenses to the attorneys for Plain-
tiffs and the Class, and to the representative Plaintiffs
as incentive awards as follows:

    a.  Fees:         $ 2,500,000

    b.  Expenses:    $ 251,991.03

    c.  Sandy Liebhard  $ 20,000

4

d.   Seth Rosenberg  $ _5,000_

e.   Prasad B. Medepalli
     MDPA Defined Benefit
     Pension Trust  $ _5,000_

The foregoing fees, expenses and awards shall not be paid
out of the Settlement Fund until the later of (a) thirty-
one (31) days after docketing of this Order if no appeal
therefrom is taken, or (b) this Order shall have been
affirmed on any appeal therefrom and no further appeals
have been taken therefrom, and such affirmance has become
final.  Said fees shall be allotted among Plaintiffs'
counsel by Plaintiffs' lead counsel, Kreindler &
Kreindler.

     4.   The attorneys for Plaintiffs and the Class
shall, as soon as practicable following the end of the
time for submission of Proofs of Claim to the Claims
Administrator, file with this Court a motion for approval
of distribution of the Net Settlement Fund to the members
of the Class, as well as for distribution of any rever-
sion not distributed to members of the Class.

     5.   Without in any way affecting the finality
of this final judgment and order, the Court retains ju-
risdiction over this case solely for the purpose of fur-
ther matters arising out of the Settlement Agreement,

5

including administration of and distribution of the Net
Settlement Fund as defined in the Settlement Agreement.

Dated: _June 15, 1993_

Enter:

United States District Judge

20

LEXSEE

**Pavlik et al vs. FDIC et al**

**10 C 816**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS**

**2011 U.S. Dist. LEXIS 126016**

**November 1, 2011, Decided
November 1, 2011, Filed**

**PRIOR HISTORY:** Pavlik v. FDIC, 2010 U.S. Dist. LEXIS 106645 (N.D. Ill., Oct. 5, 2010)

**COUNSEL:** [*1] For Joseph Pavlik, Donna Smithey, on behalf of themselves, Universal Federal, and a class of FDIC certified Universal Federal claimants, Plaintiffs: Clinton A. Krislov, LEAD ATTORNEY, Jeffrey Michael Salas, Krislov & Associates, Ltd., Chicago, IL.

For Federal Deposit Insurance Company, in its Corporate and Receivership Capacity, Defendant: Barbara Katron, PRO HAC VICE, Barbara Sarshik, PRO HAC VICE, Federal Deposit Insurance Corporation, Arlington, VA; Larry Lee Goodman, PRO HAC VICE, FDIC, Arlington, VA.

**JUDGES:** Amy J. St. Eve.

**OPINION BY:** Amy J. St. Eve

**OPINION**

**STATEMENT**

Before the Court is Plaintiffs' Petition for an Award of Attorney Fees and request for costs and incentive awards. For the following reasons, the Court grants Plaintiffs' Petition in part and denies it in part.

**BACKGROUND**

Plaintiffs Joseph Pavlik and Donna Smithey (the "Named Plaintiffs"), on behalf of themselves, Universal Federal, and a putative class of Federal Deposit Insurance Corporation ("FDIC")-certified Universal Federal claimants, filed a Complaint against Adam Resnick and the Federal Deposit Insurance Corporation, in its corporate receivership capacity, on February 5, 2010. (R. 1, Complaint.) In their complaint, Plaintiffs, represented

[*2] by the law firm of Krislov & Associates, asked the Court to require the FDIC to 1) pay former depositors the remaining unpaid portions of their Universal Federal Bank deposits in excess of $100,000.00 from Defendant Resnick's *qui tam* settlement; 2) pay creditors pursuant to 12 U.S.C. § 1821's priority scheme; and 3) return all profits gained from Defendant Resnick's restitution to the bank's depositors, as mutual owners of the bank. (*Id.* ¶ 1.) According to the Complaint, all of the Plaintiffs were FDIC-certified claimants, meaning that the FDIC had already admitted their statutory rights to the money by the time they filed the complaint. (*Id.*)

Former Defendant Adam Resnick perpetrated a check-kiting scheme that led to the FDIC's takeover of Universal Bank, a mutually-owned savings bank located in Chicago, in 2002. [1] The FDIC insured Universal's deposits, and the FDIC served as the FDIC's receiver. On November 15, 2007, the FDIC terminated the Universal Federal receivership.

1

Plaintiffs voluntarily dismissed Mr. Resnick from the case on September 9, 2010. (R. 25.)

Mr. Resnick pled guilty to the check-kiting fraud, and Judge Wayne Anderson sentenced him to forty-two months in prison and [*3] imposed a restitution obligation of approximately $10 million. Before Mr. Resnick was indicted, he was employed as a consultant for a company called U.S. Pharmacy. During his employment there, he became aware of healthcare fraud and thereafter initiated a False Claims Act whistleblower case. While Mr. Resnick was in prison, the whistleblower case settled, resulting in a recovery to him individually in the

amount of $5,402,687.95. After attorneys' fees and taxes, there was over $2,000,000 remaining. Pursuant to his restitution order, that amount was distributed to FDIC corporate (the "Restitution Proceeds"), since the FDIC had, by that time, closed its Universal Bank receivership.

The FDIC was unaware of Mr. Resnick's *qui tam* lawsuit, which was under seal until 2009, or his recovery under the settlement until it received a copy of the Complaint in this lawsuit. At the time Plaintiffs filed their Complaint, the FDIC had not yet received any of the Restitution Proceeds. The case was generally inactive during the first several months after Plaintiffs filed it. In early May 2010, the FDIC moved to dismiss the complaint for lack of ripeness because the FDIC had not yet received any of the [*4] Restitution Proceeds. Plaintiffs did not file a response to the FDIC's motion because the Court stayed the case for 60 days in late May and denied the FDIC's motion as moot. On September 1, the FDIC filed an answer and affirmative defenses, which Plaintiffs moved to strike. After the Court denied Plaintiffs' motion to strike the FDIC's answer and granted the motion to strike the affirmative defenses with leave to amend, the FDIC filed an amended answer on October 26, 2010. In early October, Plaintiffs served interrogatories (9) and requests for production of documents (10), to which the FDIC responded in November 2010.

As soon as the FDIC received the Restitution proceeds, the case moved into court-sponsored mediation. The Court held a settlement conference on January 20, 2011, which lasted approximately four hours. One week before the settlement conference, the FDIC sent Plaintiffs' counsel a letter containing a written offer and expressing its willingness to provide Plaintiffs with the relief they requested in the Complaint.

The FDIC states that by the end of the January 20, 2011 settlement conference, the parties had agreed on almost every significant term of the settlement. At the [*5] conference, the FDIC's counsel told the Court and the Plaintiffs' counsel that it had recently learned that the Internal Revenue Service ("IRS") was asserting a superior claim to a portion of the Restitution Proceeds. [2]

2

> On May 2, 2011, the IRS asserted a lien on the Restitution Funds.

FDIC's counsel drafted a settlement agreement and delivered it to Plaintiffs' counsel on February 1, 2011. The FDIC asserts that, even though the parties had resolved all key issues surrounding the settlement, Plain-

tiffs' counsel unnecessarily delayed the settlement for months by raising new issues and trying to re-negotiate terms to which they had already agreed. Plaintiffs' counsel disagrees and states there were several outstanding issues that required negotiation after the FDIC delivered the first draft of the agreement. The parties participated in two additional settlement conferences with the Court-one on May 5, 2011, which lasted less than an hour, and another June 10, 2011, which lasted less than 30 minutes. The FDIC states that it provided all of the intermittent draft settlement agreements to Plaintiffs' counsel. The parties executed a final settlement agreement on June 17, 2011.

The settlement [*6] agreement provides that the Court shall determine the amount of Plaintiffs' attorneys' fees and expenses in connection with this case. *See* R. 57-1, ¶ 5. Plaintiffs' counsel has a contingency fee agreement with the Named Plaintiffs for 33 1/3% plus costs.

## LEGAL STANDARD

### I. Attorneys' Fees

When, as here, the parties reach a settlement in a class action, the class's attorneys petition the court for compensation from the common fund created for the class's benefit. *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007). Known as the "common fund doctrine," this payment scheme "is based on the equitable notion that those who have benefitted from litigation should share in its costs." *Id.* (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988), *cert. denied*, 493 U.S. 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989)). In these types of cases, the court "becomes the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." *Skelton*, 860 F.2d at 253. In determining a reasonable fee, the Court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and [*7] of protecting the interests of the class members in the fund." *Skelton*, 860 F.2d at 258. To determine the reasonableness of the sought-after fee in a common fund case, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692; *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citing cases).

Although the Seventh Circuit has noted that such an estimation is "inherently conjectural," it has instructed district courts to consider the following benchmarks in its analysis: "(1) actual fee agreements; (2) data from large common fund cases where the parties negotiated the fees privately, and (3) bids and results from class

counsel auction cases for insight into the fee levels attorneys in competition were willing to accept." *Sutton*, 504 F.3d at 692, n.2. The probability of success at the outset of the litigation is also relevant to this inquiry. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). District courts are not, however, to award fees in common fund cases based on the attorneys' "degree of success." *Id.* at 693 [*8] (holding that the "degree of success" standard in *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) does not apply to cases where Congress has not authorized a fee award to the prevailing party).

Although there is "no one correct formula for determining a fee award," *Evans v. City of Evanston*, 941 F.2d 473, 477 (7th Cir. 1991), the "percentage-of-fund" method and the lodestar method are two generally-accepted approaches. *Florin*, 34 F.3d at 565. Pursuant to the lodestar method, the court calculates the fee by multiplying the time reasonably expended on the case by a reasonable hourly fee. *Florin*, 34 F.3d at 562 n.3. The court has discretion whether to use a percentage method or a lodestar method. *Id.* at 566.

## II. Incentive Awards

Incentive payments "are justified when necessary to induce individuals to become named representatives." *Synthroid*, 264 F.3d at 722. Therefore, "if such individuals 'would have stepped forward without the lure of an incentive award,' there is no need for such additional compensation[.].'" *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, No. 10 C 2278, 2011 U.S. Dist. LEXIS 61198, 2011 WL 2173726, at *2 (N.D. Ill. June 2, 2011) (citing *Synthroid*, 264 F.3d at 722). [*9] In deciding whether an incentive award is proper, and if so, in what amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time ad effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

## III. Costs

With respect to Plaintiffs' counsel's request for costs, the Seventh Circuit has explained that district courts must exercise their discretion to "disallow particular expenses that are unreasonable whether because excessive in amount or because they should not have been incurred at all." *Zabkowicz v. W. Bend Co., Div. of Dart Indus., Inc.*, 789 F.2d 540, 553 (7th Cir. 1986) (quoting *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984)). When determining whether the level of detail in the request for costs is sufficient, courts should consider whether a paying client would be satisfied with the level of detail. *See Synthroid*, 264 F.3d at 722 ("If counsel submit bills with

the level of detail that paying clients find satisfactory, a federal court should not require more.").

## ANALYSIS

### I. 36.5% of the Common [*10] Fund is Too High

In their Petition, Plaintiffs' counsel requests a fee award of $375,000, or 36.5% of the actual cash the FDIC will distribute to certified claimants under the parties' settlement agreement, which they claim is $1,026,829.30. (R. 57, Fee Petition at 2, 8.) They argue that the requested amount is within the "normal market range of 20%-50% of the common fund awarded in numerous cases of this size." (*Id.* 8-9).

Plaintiffs' counsel has a contingency fee agreement with the named plaintiffs for 33 1/3% plus costs. (*Id.* at 11.) Plaintiffs' counsel concedes that this amount is reasonable. (*Id.* at 10.) In 2010, following an examination of every federal class-action settlement in 2006 and 2007, one researcher found that, for cases with recovery ranges of the one at issue here (i.e., between $750,000.00 and $1,750,000), the mean fee award was 28.7% and the median fee award was 30%. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPRICAL LEGAL STUD. 811, 839 (2010)). Additionally, an earlier study of data from 1993 to 2002 concluded that in cases of this size, the mean fee awarded based on published opinion data was 29.5% and the [*11] median fee was 30.0%. Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. EMPIRICAL LEGAL STUD. 27, 73. The same study reported that based on Class Action Reports Data ("CAR") cases involving recoveries below $1.4 million, the median fee in nonsecurities cases was 30.9% and the median was 33.2%. *Id.* Plaintiffs' counsel's 36.5% request clearly exceeds these ranges. Their agreed-upon contingency fee of 33 1/3%, however, only slightly exceeds these ranges.

Based on the actual contingency fee agreements Plaintiffs' counsel signed with the two named plaintiffs, as well as the market data for fees in cases of this size, the Court finds that Plaintiffs' counsel are entitled to attorneys fees in the amount of 33 1/3% of the common fund.

### II. The Common Fund Consists of the Residual Amount Available for Distribution to Universal's Depositors After the FDIC Makes the Statutorily-Required Distributions to Universal's Creditors

Plaintiffs' counsel argues that its fee award should be based on the FDIC's payout to all of the FDIC-certified claimants under the settlement agreement-in other words, the entire $1,026,829.30. They assert that the FDIC

[*12] would not have made any of the payments they agreed to in the settlement had Plaintiffs' counsel not brought this action. In support of their argument, they rely on the FDIC's Answer to Plaintiffs' complaint, wherein the FDIC denied that it had to abide by 12 U.S.C. § 1821 and that it owed money to depositors.

The FDIC, on the other hand, asserts that Plaintiffs' counsel's award should be based only on the residual amount ($611,135.26) available for distribution to former depositors, including the two named plaintiffs, after the FDIC pays the distributions owed to Universal's proven creditors pursuant to the priority scheme in 12 U.S.C. § 1821(d). According to the FDIC, the issue of whether Universal's former depositors were entitled to this residual amount was the only real disputed issue in the litigation. The FDIC further argues that, if the case had proceeded to the class certification stage, [3] Plaintiffs' counsel would not have been able to demonstrate that it could adequately represent the interests of all of Universal's creditors, especially given that the largest creditor was the FDIC itself, [4] and they therefore would have represented only Universal's former depositors.

3

The [*13] FDIC asserts that case was never certified as a class action because the FDIC, within approximately one month after receiving the proceeds at issue, agreed to settle the case with Plaintiffs.

4

Universal owed the FDIC $592,000 on its subrogated claims.

The Court agrees with the FDIC's arguments and finds that the "common fund" for purposes of determining Plaintiffs' counsel's fees is $611,135.26. [5] In addition to finding the FDIC's arguments persuasive, the Court also finds it relevant that the named plaintiffs, who agreed to the 33 1/3% contingency fee with Plaintiffs' counsel, were former depositors who will receive a proportionate share of recovery from the $611,135.26, and not the entire $ 1,026,829.30. This is so because, as the FDIC points out, it is statutorily required to distribute the Restitution Proceeds pursuant to the priority scheme in 12 U.S.C. § 1821 after deducting its own fees and Plaintiffs' counsel's fees, and then any remaining amounts

after those distributions will go to former depositors, including the named plaintiffs. In other words, Plaintiffs' counsel's fees will be deducted from the residual amount available to the named plaintiffs and other former depositors, [*14] and will not reduce the amount going to Universal's proven creditors pursuant to 12 U.S.C. § 1821. [6] Awarding $375,000 to Plaintiffs' counsel would effectively revamp the contingency fee agreement from 33 1/3% to 61.4%-an undoubtedly perverse result. Therefore, the Court awards Plaintiffs' counsel, Krislov & Associates, attorneys' fees in the amount of $203,711.55, or 33 1/3% of $611,135.26. [7]

5

Wayne S. Green, a Financial Manager in the FDIC's General Accounting Department, submitted a Declaration in support of the FDIC's Response to Plaintiffs' counsel's fee petition, in which he states that the net amount available to Universal's depositors after the § 1821(d) distributions is $611,135.26. (R. 61-1, Green Decl. at Tab 1.)

6

As the FDIC pointed out in its response brief, the named Plaintiffs, whose combined interests equal less than four percent of total deposits, would stand to collect under $25,000 combined, excluding Plaintiffs' counsel's fee. If the Court were to award the $375,000 Plaintiffs' counsel seeks, the $611,000 available to former depositors, including Plaintiffs, would dwindle to $236,000. Under that factual scenario, Plaintiffs' combined distribution would equal only [*15] $9,400.

7

The Court notes that this amount is just shy of 20% of Plaintiffs' suggested common fund amount ($1,026,829.30), a percentage

Plaintiffs' counsel conceded was reasonable for cases of this size. *See* Petition at 8.

The Court does not need to resort to a lodestar calculation to reinforce the same conclusion. *See Florin*, 34 F.3d at 566 ("It bears reiterating here that we do not believe that the lodestar approach is so flawed that it should be abandoned . . . . We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court. We recognize here . . . that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration."); *AT&T*, 2011 U.S. Dist. LEXIS 61198, 2011 WL 2173746, at *11 (citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-CV-698, 2010 U.S. Dist. LEXIS 123349, 2010 WL 4818174, at *3 ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive.").

### III. Incentive Awards

Plaintiffs' counsel seeks incentive awards for the two named Plaintiffs in the amount of $5,000 each based on the Named Plaintiffs' [*16] involvement in the case-specifically, reviewing the complaint and settlement agreement, and Plaintiff Smithey's attendance at two settlement conferences. The FDIC objects to Plaintiffs' counsel's request on two grounds: 1) the settlement agreement does not permit incentive awards; and 2) incentive awards are unwarranted in this case because they were unnecessary to induce the Named Plaintiffs, whose combined interests entitle them to the largest share of the distribution, to participate in the litigation.

Plaintiffs' counsel fails to respond to the FDIC's argument that incentive awards are not permitted by the settlement agreement, nor do they offer any reason why they could not have negotiated incentive awards in connection with the settlement agreement. Moreover, the Court never certified a class in this case, and the Named Plaintiffs did not need incentive awards to induce them to become named plaintiffs. *In re Synthroid Mktg. Litig.*, 264 F.3d at 721 ("[i]ncentive awards are justified when necessary to induce individuals to become named representatives"). Collectively, their interests in Universal entitle them to the largest share of the distribution. This is unlike a large nationwide [*17] consumer class action where individual damages are likely to be relatively small--instead, the Named Plaintiffs stand to recover several thousands of dollars each, even after attorneys' fees are deducted. This is a classic example of a case where the Named Plaintiffs "would have stepped forward without the lure of an 'incentive award,'" and therefore "there is no need for such additional compensation." *Id.*

### IV. The Court Denies Plaintiffs' Counsel's Request for Costs

Plaintiffs' counsel requests an award of costs in the amount of $3,417.99. In support of this request, Clinton A. Krislov submitted an affidavit with a list of the costs attached. (R. 57-2.) The list, however, is extremely vague and does not include any invoices or detailed descriptions of any of the purported expenses. There is a $31.00 expense for "Taxi," for example, but there is no information as to who took the taxi, when it was taken, or where it was taken. Additionally, there is a $301.00 charge for "Photocopies," but there is no information as to what was copied, whether it was done in-house or through a third party, or whether it was done for attorney convenience or for court copies. *Cf. Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 [*18] (photocopies made for attorney convenience are not recoverable under 28 U.S.C. § 1920(4)). A cost of $43.05 is claimed for "Transcript," but the list does not identify what transcript Plaintiffs' counsel ordered, when, or for what purpose. None of the entries list any dates or names of vendors. Additionally, Plaintiffs' counsel's request for "Online research" is not only vague and completely void of any substantive detail, but also must be denied because computerized legal research costs are construed as attorneys' fees and are not recoverable as "costs." *Haroco v. Am. Nat'l Bank & Trust of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 2004); *Rogers v. Baxter Int'l Inc. et al.*, No. 04 C 6476, 2011 U.S. Dist. LEXIS 27111, 2011 WL 941188 (N.D. Ill. Mar. 16, 2011) (denying request for legal research costs).

Because Plaintiffs' counsel fails to provide any detail from which the Court may conclude that the purported costs are for items that were reasonably necessary for use in this case and further fails to provide any invoices evidencing the claimed costs, the Court denies Plaintiffs' counsel's request for costs.

### CONCLUSION

For the reasons set forth above, the Court awards attorneys' fees to Krislov & Associates in the amount [*19] of $203,711.55, and denies Plaintiffs' counsel's request for costs and incentive awards.

21