**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC SILVERMAN, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 07 C 4507 |
| v. | ) ) | |
| MOTOROLA, INC., et al., | ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

Plaintiffs have filed a motion for an award of attorney's fees and expenses and reimbursement of the class representatives' expenses pursuant to 15 U.S.C. § 78u-4(a)(4). For the reasons explained below, the Court grants in part and denies in part Plaintiffs' motion. In the present order, the Court assumes familiarity with the underlying facts of the case, which are set forth in detail in the Court's summary judgment order. *See Silverman v. Motorola*, *Inc*., 798 F. Supp. 2d 954 (N.D. Ill. 2011).

**LEGAL STANDARD**

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In determining a reasonable fee, the Court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp*., 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989). To determine the reasonableness of the

sought-after fee in a common-fund case, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). The probability of success at the outset of the litigation is relevant to this inquiry. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994).

In *Synthroid*, the Seventh Circuit held that the "market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Synthroid*, 264 F.3d at 721. The Seventh Circuit has further explained that "[t]he object in awarding a reasonable attorney's fee . . . is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). *See also In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011) (recognizing that "[s]uch [an] estimation is inherently conjectural").

The Federal Rules of Civil Procedure allow the Court, in a certified class action, to "award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit has explained that district courts must exercise their discretion to "disallow particular expenses that are unreasonable whether because excessive in amount or because they should not have been incurred at all." *Zabkowicz v. W. Bend Co., Div. of Dart Indus., Inc.*, 789 F.2d 540, 553 (7th Cir. 1986) (quoting *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984)).

## ANALYSIS

The proposed settlement in this case is $200 million (the "Settlement Amount"), which Plaintiffs represent is the third-largest securities class action settlement in the Seventh Circuit. (R. 455, Mem. of Law at 1.)  Class Counsel seek an attorney's fee award of 27.5% of the Settlement Amount, litigation costs of $4,814,298.54, and reimbursement of the litigation expenses incurred by the class representatives, Macomb County Employees' Retirement System ("Macomb County") and St. Clair Shores Police & Fire Retirement System ("St. Clair"), in the amount of $6,450.00 and $4,350.00, respectively.  (*Id.*).

## I.      Attorney's Fees

On March 19, 2012, Plaintiffs filed their motion for final approval of the settlement, the plan of allocation, and class counsel's fee and expense request.  (R. 454, Mot.)  Class members had until April 2, 2012 to object.  Only one class member, Mr. Edward Falkner ("Mr. Falkner"), timely objected to the attorney fee request.[1]  He sets forth two arguments, both of which the Court rejects.

First, Mr. Falkner argues that Class Counsel did not give reasonable notice of the fee motion to class members.  (R. 463, Falkner Obj. at 1.)  Pursuant to the Court's Order, Class

---

[1] Class member Paul Liles filed an objection to the proposed settlement and to Class Counsel's request for attorney's fees on April 30, 2012, which was 28 days after the objection deadline.  Mr. Liles did not, however, sufficiently explain the basis for his objection to the request for attorney's fees, stating only that "[i]n light of both class counsel's failure to follow the notice requirements of the PSLRA with regard to The Notice to absent class members; and, the size of the settlement fund, I maintain that the proposed $55 million in attorney's fee is both unreasonable and excessive." (R. 466, Liles Obj. at 4.)  Because the Court determines that the attorney's fee request is reasonable, as explained herein, Mr. Liles' objection is overruled.  The Court has addressed Mr. Liles' objection to the proposed settlement in a separate order. *See* R. 468.

Counsel, through a third party claims administrator, sent a Notice of Proposed Settlement of Class Action (the "Notice") to class members on February 27, 2012 and also published the Notice with the Depository Trust Corporation's Legal Notice System.  (R. 462, Sylvester Decl. ¶¶ 4-7.)   The Notice stated that "[i]f the settlement is approved by the Court, Plaintiffs' counsel will apply to the Court for attorneys' fees of 27.5% of the Settlement Fund and expenses not to exceed $4,950,000, plus interest thereon, to be paid from the Settlement Fund . . . .  In addition, each of the two Plaintiffs may seek up to $7,500 in expenses incurred in representing the Class." (R. 462-1, Notice § IV.)   The Notice further provided that the deadline for objections to the motion for attorney's fees and expenses was April 2, 2012.  (*Id.* § XVIII.)  Finally, the Notice provided that class members could examine the papers on the Court's docket "for a more detailed statement of the matters involved in the Litigation," and could contact Class Counsel if they had questions about the settlement.  (*Id.* § XX.)  Moreover, the Court's Order Preliminarily Approving Settlement and Providing for Notice, which was available on the Claims Administrator's website, stated that Class Counsel's request for attorney's fees was due by March 19, 2012 and that objections were due on April 2, 2012.  (R. 450, Order at ¶¶ 2, 10, 12; R. 462, Slyvester Decl. ¶ 12.)

Mr. Falkner nevertheless contends that notice was inadequate under Federal Rule of Civil Procedure 23(h) because Class Counsel did not provide reasonable service of the actual motion for attorney's fees to the class.  (R. 463, Falkner Obj. at 1, relying on *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).)  *Mercury Interactive* is inapposite, however, because the issue in that case was whether the "district court erred in setting the objection deadline for class members on a date before the deadline for lead counsel to file their

fee motion." *Id.* at 993. Unlike in *Mercury Interactive*, class members in this case were provided with an "adequate opportunity to object to the motion itself," which was filed two weeks before the objection deadline. *Id.* at 994. Indeed, although he argues that class members were not afforded an adequate opportunity to object to the motion, Mr. Falker himself timely objected to the motion. The Court therefore rejects his first argument.

Mr. Falkner's second argument fares no better. Relying on *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005), he argues that the class representatives did not "discharge their fiduciary duty" to negotiate an *ex ante* fee agreement with counsel. (R. 463, Falkner Obj. at 3.) He further contends that the Court should award, at most, 15% of the Settlement Amount in attorney's fees. (*Id.* at 6.) Contrary to Mr. Falkner's contention, the *Taubenfeld* court did not hold, or even suggest, that lead plaintiffs must negotiate a fee agreement at the outset of the case.[2] The Private Securities Litigation Reform Act similarly contains no such requirement. Moreover, the Court declines Mr. Falkner's invitation to adopt the fee award percentage negotiated in *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008), a markedly different case than the present one, as the "market rate." (R. 463, Falkner Obj. at 4.) The Court likewise rejects Mr. Falkner's request to award Class Counsel a fee "of no more than 15%." Instead, after evaluating the factors the Seventh Circuit set forth in *Synthroid*,

---

[2] Indeed, the Seventh Circuit in *Taubenfeld* affirmed the district court's attorney's fee award of 30% of the settlement fund, noting that the district court had correctly considered awards made by courts in other class actions where counsel was awarded 30-39% of the settlement fund. *Id.* at 600. Likewise, Class Counsel has listed several securities fraud class actions in this District in which courts have awarded more than 30% of the settlement fund in attorney's fees. (R. 455, Mem. of Law at 32 n.11.)

as discussed more fully below, the Court finds that the request of 27.5% of the Settlement Amount is consistent with the market rate.

The risk of nonpayment and the stakes of this complex securities fraud case were significant. Class Counsel litigated this case aggressively for four and one-half years, on a fully contingent basis, before securing what appears to be the third-largest settlement amount in a securities fraud class action in the Seventh Circuit. Despite successfully defeating Motorola's motion for summary judgment, Plaintiffs faced significant risks at trial in proving both loss causation and damages. Trial undoubtedly would have been lengthy and would have involved numerous witnesses, both fact and expert.

The representation that Class Counsel provided to the class was significant, both in terms of quality and quantity. The parties engaged in four and one-half years of complex litigation and formal settlement negotiations. Among other things, Class Counsel (1) conducted detailed investigative interviews of witnesses, including former Motorola employees; (2) successfully opposed Defendants' motion to dismiss; (3) obtained certification of the class (which included expert reports and discovery); (4) conducted significant merits discovery, including reviewing and analyzing approximately 3.8 million pages of documents and deposing or defending the depositions of 50 fact witnesses and 7 expert witnesses; (5) responded to discovery requests from Defendants; (6) litigated numerous complex discovery motions; (7) completed expert discovery, including preparing multiple expert witnesses and reviewing Defendants' expert reports; (8) successfully litigated Defendants' motions for summary judgment, involving extensive briefing and the submission of hundreds of exhibits; (9) fully briefed seven *Daubert* motions; (10) commenced extensive trial preparation, including completing exhibit and witness lists and

6

preparing motions in limine, videotaped deposition designations, and jury instructions; (11) participated in multiple formal and lengthy mediation sessions with Judge Daniel Weinstein (Ret.), a nationally-recognized and highly-respected mediator, including preparing comprehensive mediation presentations; and (12) negotiated the final terms of the settlement contained in the parties' stipulation. Moreover, there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense.

The two class representatives, Macomb County and St. Clair, both of which are institutional investors that have significant financial stakes in this litigation, have assessed the issue of attorney's fees independently of Class Counsel and have approved Class Counsel's request to seek a 27.5% fee award. (R. 458, Provenzano Decl. ¶¶ 3-4; R. 459, Haddad Decl. ¶ 5.) Both class representatives were actively involved in this litigation and are, as a result, uniquely familiar with Class Counsel's work on the case. Additionally, Class Counsel retained an expert, Professor Charles Silver,[3] to evaluate the reasonableness of the fee request in light of the risks Class Counsel faced, the quality of their representation, the caliber of the result obtained, and contingent fees awarded in similar litigation. Professor Silver concluded that the fee request was

---

[3] Professor Silver is the Roy W. And Eugenia C. McDonald Endowed Chair in Civil Procedure at the University of Texas School of Law, where he also serves a Co-Director of the Center on Lawyers, Civil Justice, and the Media. He received an M.A. in political science at the University of Chicago and a J.D. from the Yale Law School. From 2003 to 2010, he served as an Associate Reporter on the American Law Institute's Project on the Principles of Aggregate Litigation. Federal and state judges, as well as leading treatises, have cited his work.

reasonable and in line with privately-negotiated arrangements in similar cases. (R. 457, Silver

Rep., *passim*.)

    Given all of the relevant factors, Class Counsel's fee request of 27.5% of the Settlement

Amount is reasonable. It is unnecessary to resort to a lodestar calculation to reinforce the same

conclusion. *See Florin*, 34 F.3d at 566 ("We . . . restate the law of this circuit that in common

fund cases, the decision whether to use a percentage method or a lodestar method remains in the

discretion of the district court. We recognize here . . . that there are advantages to utilizing the

percentage method in common fund cases because of its relative simplicity of administration.");

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill.

2011) (same; citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-CV-698, 2010 WL 4818174, at

*3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is

unnecessary, arbitrary, and potentially counterproductive.") (citing cases).

## II.    Class Counsel's Costs and Plaintiffs' Litigation-Related Expenses

    Class Counsel seek an award of costs in the amount of $4,814,298.54. They submit

declarations from representatives of the Miller Law Firm and Robbins Gellar Rudman & Dowd

LLP in support of their request, which detail the litigation-related expenses those firms incurred

during this case. (R. 460, Park Decl.; R. 461, Miller Decl.) No class member has objected to

Class Counsel's request for costs, which amount consists of 2.4% of the relief obtained for the

class. *Cf.* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:*

*An Empirical Study*, 1 J. EMPIRICAL LEGAL STUD. 27, 70 (2004) (finding that "[c]osts and

expenses for the sample as a whole were, on average 4 percent of the relief for the class[.]").

The Court finds Class Counsel's request for costs reasonable with one exception. The Seventh Circuit and courts in this District have held that computer research expenses are not recoverable as costs in common fund cases where, as here, the attorneys recover fees based on a percentage of the common fund. *See, e.g., Montgomery v. Aetna Plywood*, 231 F.3d 399, 409-410 (7th Cir. 2000), *cert. denied*, 532 U.S. 1038, 121 S. Ct. 2000, 149 L. Ed. 2d 1003 (2001), ("As a form of attorneys' fees, the charges associated with [computer] research are not separately recoverable expenses. When a court uses the percentage-of-recovery method of calculating attorney's fees, such charges are simply subsumed in the award of attorneys' fees."); *Adams v. Van Kampen Funds, Inc*., No. 01 C 7538, 2006 WL 163023, at *5 (N.D. Ill. Jan. 18, 2006). Accordingly, the Court will subtract $84,555.38 from Class Counsel's request, representing the costs incurred for computerized legal research, and will award costs in the amount of $4,729,743.16.

No class member has objected to the request for reimbursement of the class representatives' litigation-related expenses, which are allowable under 15 U.S.C. § 78u-4(a)(4). The Court therefore awards $6,450.00 and $4,350.00 to Macomb County and St. Clair, respectively. These amounts are reasonable and reflect the class representatives' time spent reviewing pleadings, preparing for depositions, complying with discovery requests, consulting with Class Counsel, and participating in mediation.

**CONCLUSION**

The Court awards attorney's fees in the amount of 27.5% of the Settlement Amount and

awards $4,729,743.16 in costs. The Court further awards reimbursement of expenses to

Macomb County in the amount of $6,450.00 and to St. Clair in the amount of $4,350.00.

Dated: May 7, 2012

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**